| | |
|---|---|
| 1 | JERRY H. STEIN (State Bar No. 78309)<br>LEVIN & STEIN |
| 2 | 28494 Westinghouse Place, Suite 201<br>Valencia, California 91355 |
| 3 | Telephone: (310) 207-4663<br>Facsimile: (310) 207-2803 |
| 4 | Email: jstein@lscslaw.com |
| 5 | KEN T. KUNIYUKI<br>KUNIYUKI & CHANG |
| 6 | Suite 2660, Pauahi Tower<br>1003 Bishop Street |
| 7 | Honolulu, HI 96813-3429<br>Telephone: (808) 524-4111 |
| 8 | Facsimile: (808) 521-2389<br>Email: ken@law-hawaii.com |
| 9 | |
| 10 | Attorneys for Defendants and Counter-Claimants<br>JOHN DOE and JANE DOE |

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ERIC GRANT, | ) | CASE NO.:08-00672 FCD-KSM |
| Plaintiff, | ) | DECLARATION OF JANE DOE IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION |
| v. | ) | |
| KAMEHAMEHA SCHOOLS/BERNICE PAUAHI BISHOP ESTATE; J. DOUGLAS ING, NAINOA THOMPSON, DIANE J. PLOTTS, ROBERT K.U. KIHUNE, and CORBETT A.K KALAMA, in their capacities as Trustees of the Kamehameha Schools/ Bernice Pauahi Bishop Estate; JOHN DOE; and JANE DOE, | ) | |
| Defendants. | ) | |
| JOHN DOE; and JANE DOE, | ) | |
| Counter-Claimants | ) | |
| v. | ) | |
| KAMEHAMEHA SCHOOLS/BERNICE PAUAHI BISHOP ESTATE; J. DOUGLAS ING, NAINOA THOMPSON, DIANE J. PLOTTS, ROBERT K.U. KIHUNE, and CORBETT A.K KALAMA, in their capacities as Trustees of the Kamehameha Schools/ Bernice Pauahi Bishop Estate; and ERIC GRANT, | ) | |
| Counter-Defendants | ) | |

1

DECLARATION OF JANE DOE

I, Jane Doe, declare as follows:

1.     I am one of the Counter-Claimants in this action. I have personal knowledge of all of the facts set forth in this Declaration. If called and sworn as a witness, I would competently and truthfully testify hereto.

2.     I along with my at the time minor child, referred to herein as John Doe, were also the plaintiffs in certain litigation styled, *Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate* (collectively the *"Estate'*), et al., Case No. 03-00316, previously venued in the United States District Court for the District of Hawaii (the "Underlying Litigation"). In the Underlying Litigation we sought a declaration from the District Court that the Estate's self-described preference for student applicants of native Hawaiian ancestry constituted discrimination on the basis of race in violation of federal civil rights statutes.

3.     The Underlying Litigation was extremely controversial and involved the danger of invasion of privacy, retaliation and physical or mental harm to me and John Doe to such a degree that the District Court, The Ninth Circuit Court of Appeal and Unites States Supreme Court permitted us to litigate our case against the Estate using fictitious names. The controversy and threat to us continues and, therefore, we are again denominated in this action by such fictitious names.

4.     The procedural history of the Underlying Litigation is complex. Judgment was entered in favor of the Estate in December of 2003. That Judgment was reversed by the Ninth Circuit Court of Appeal, Docket No. 04-15044 in April of 2005, and then reinstated by the Ninth Circuit, sitting en banc in December of 2006. Whereupon, on March 1, 2007, we timely filed a petition for a writ of certiorari in the United States Supreme Court.

5.     In May of 2007, while our petition for a writ of certiorari was pending, John Doe, the Estate and I entered into a settlement agreement pursuant to which the Estate made a substantial monetary payment to us in exchange for our dismissing the Underlying Litigation. A true and correct copy of the Settlement Agreement pursuant to which the Underlying Litigation will be filed under seal with the Court as Exhibit 1. The financial terms of the Settlement Agreement have been redacted.

6.     Our settlement agreement (the "Agreement") with the Estate contained a confidentiality

1  provision, which provided, among other things, that the parties would keep the terms of the settlement
2  confidential and that the Estate would not disclose any information concerning our identities. The
3  Agreement also provides that: "In addition to any other rights or remedies, this [confidentiality] provision
4  shall be enforceable by injunctive or other equitable relief."

5  7. John Goemans ("Goemans") is an attorney who was at one time one of our attorneys in the Underlying Litigation. Goemans did not participate in the negotiation with the Estate that led to the settlement. Those negotiations, as wells as the review of the settlement agreement itself, were handled for us by attorney Eric Grant ("Grant"). In fact, the only reference to any counsel for us in the settlement agreement is to Grant, who executed the agreement as our counsel, acknowledging his approval of the form of the agreement.

8. There is currently a dispute over fees between Grant and Goemans pending in the California Superior Court for the County of Sacramento. Because Goemans was threatening to disclose the terms of the settlement with the Estate, at my insistence, in February of 2008, Grant sought an Order from the Court prohibiting Goemans from disclosing the terms of the settlement with the Estate. On or about February 5, 2008, the California Superior Court for the County of Sacramento in the action entitled "*Eric Grant v. John Goemans et al.*" Case No.: 07AS04172, issued a Temporary Protective Order prohibiting Goemans from disclosing any information relating to the settlement between us and the Estate. A true and correct copy of the Temporary Protective Order is attached hereto as Exhibit 2.

9. On February 8, 2008, the Honolulu Advertiser printed an article setting forth the monetary terms of the settlement with the Estate. A true and correct copy of this article is attached as Exhibit 3. The Honolulu Advertiser article specifically states that the information regarding the terms of the settlement was provided to it by Goemans.

10. According to the Advertiser's web site, there have been 1551 comments posted by readers to the Advertiser's February 8, 2008 article disclosing the terms of the settlement case. I have reviewed most of these posts. Many of them are extremely critical of us. Some include threats of violence against us. Examples of the negative comments and threats posted to the Honolulu Advertiser's February 8, 2008 article include:

> "Seriously...Lawyers like Grant should be killed off...what a slime ball he his...and the "John Doe" hiding behind...grrr...makes my non Hawaiian blood boil....greedy SOB's they all are...**If I catch these people alone just for a few minutes ...I guarantee I would break every bone and make this bastards suffer...**." [Emphasis Added]
>
> "I cannot believe that these people have the nerve to go there!!! Kamehameha Schools was formed well before we became a state! So I feel that has nothing to do with the constitution that the United states has forced upon us! **Im scared for the boy. His stupid parents were the greedy ones and now the boy will have to pay. Now he is probably going to get beat up. I know people who attend Kamehameha, who want to kick this boys \*\*\*\*** I pray he'll be spared that humiliation. Thanks for listening." [Emphasis Added]
>
> "I believe someone should go out there to review the California court records to find out who this John and Jane Doe is. Why hide behind the scenes and be ashamed of what they did to the Hawaiian children that may be stripped of their benefits. They need to stand up and face those that they are robbing."

11. I have lived in Hawaii for many years. The negative comments and threats posted to the Honolulu Advertiser's February 8, 2008 article are entirely consistent with my experience with many local residents regarding the admissions policy of the Kamehameha Schools. Based upon the posts on the Advertiser's web site and my experience in living in Hawaii for many years, both John Doe and I fear for our safety if our identities are made public by the Estate. We are prepared to move and go into hiding if the estate in fact makes our identities public.

12. I have read the Declaration of Ken T. Kuniyuki being filed concurrently herewith. At no time was it ever communicated to me that it was the Estate's position that the confidentiality clause in the settlement agreement was being valued at $2,000,000. Had the Estate's position on that issue been communicated to me, I never would have entered into the settlement agreement.

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 2, 2008.

/s/ Jane Doe [1]
Jane Doe

---

[1] Counsel has signed original.