| | |
|---|---|
| JERRY H. STEIN (State Bar No. 78309)<br>LEVIN & STEIN<br>28494 Westinghouse Place, Suite 201<br>Valencia, California 91355<br>Telephone: (310) 207-4663<br>Facsimile: (310) 207-2803<br>Email: jstein@lscslaw.com<br><br>KEN T. KUNIYUKI<br>KUNIYUKI & CHANG<br>Suite 2660, Pauahi Tower<br>1003 Bishop Street<br>Honolulu, HI 96813-3429<br>Telephone: (808) 524-4111<br>Facsimile: (808) 521-2389<br>Email: ken@law-hawaii.com<br><br>Attorneys for Defendants and Counter-Claimants JOHN DOE and JANE DOE | |

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC GRANT,<br><br>    Plaintiff,<br>  v.<br>KAMEHAMEHA SCHOOLS/BERNICE PAUAHI BISHOP ESTATE; J. DOUGLAS ING, NAINOA THOMPSON, DIANE J. PLOTTS, ROBERT K.U. KIHUNE, and CORBETT A.K KALAMA, in their capacities as Trustees of the Kamehameha Schools/ Bernice Pauahi Bishop Estate; JOHN DOE; and JANE DOE,<br><br>    Defendants.<br><br>JOHN DOE; and JANE DOE,<br><br>    Counter-Claimants<br>  v.<br>KAMEHAMEHA SCHOOLS/BERNICE PAUAHI BISHOP ESTATE; J. DOUGLAS ING, NAINOA THOMPSON, DIANE J. PLOTTS, ROBERT K.U. KIHUNE, and CORBETT A.K KALAMA, in their capacities as Trustees of the Kamehameha Schools/ Bernice Pauahi Bishop Estate; and ERIC GRANT,<br><br>    Counter-Defendants | CASE NO.:08-00672 FCD-KSM<br><br>EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION; AND; MEMORANDUM OF POINTS AND AUTHORITIES |

1

EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION

PLEASE TAKE NOTICE that, pursuant to FRCP 65, Defendants and Counter-Claimants JOHN DOE and JANE DOE (collectively the "Does") hereby seek:

1.  A Temporary Restraining Order immediately enjoining defendants ESTATE OF BERNICE PAUAHI BISHOP and KAMEHAMEHA SCHOOLS (collectively the "Estate") and their agents and employees from disclosing the Does' identities;

2.  An order requiring that any filing and/or exhibits which refer to the actual identities of the Does be filed under seal in this matter; and

3.  On a date and time to be set by the Court, a preliminary injunction enjoining the Estate and their agents and employees from disclosing the Does' identities and its agents and employees from disclosing the Does' identities.

This motion for a temporary restraining order; for the order requiring certain documents to be filed under seal; and for a preliminary injunction is made on the grounds that: (1) In prior litigation the Does challenged the Estate's policy of accepting only student applicants of native Hawaiian ancestry; (2) Because this is a emotionally charged issue with native Hawaiians, and there have been threats of physical violence, the Does were permitted to prosecute the prior litigation using fictitious names; (3) The Does and the Estate settled the prior litigation pursuant to agreement in which the Estate agreed, among other things, to keep the Does' identities confidential; (4) Despite the fact that as part of a settlement of prior litigation between the Does and the Estate, the Estate specifically agreed not to disclose the Does' identities, the Estate has now nevertheless threatened to disclose the Does' identities; and (5) If the Does' identities becomes known, the Does fear for their safety and will be forced to go into hiding.

The Estate claims it needs to disclose the Does' identities in connection with its seeking a prejudgment writ of attachment to secure its claim that it has suffered $2 million in damages as a result of the disclosure of the monetary terms of the prior settlement by John Goemans ("Goemans"), a former attorney of the Does.[1] By this Motion the Does are not seeking to prevent the Estate from seeking a writ of

---

[1] It is undisputed that the Does themselves have done nothing wrong. In fact, in an attempt to avoid litigation with the Estate, on the Does' behalf an injunction was issued in California to prevent
(continued...)

attachment (or any other remedy), but rather from disclosing the Does' identities until the Estate can convince the Court that it is entitled to a writ and that disclosure of the Does' identities is necessary to effectuate the Court's order granting the writ of attachment. While, as demonstrated below, the Estate's claim against the Does is frivolous, the injunction sought is narrowly crafted to protect the Does without any prejudice to the Estate. Under the circumstances the injunction requested is essential to prevent severe and irreparable injury to the Does.

Specifically, this Motion will be based upon the following grounds:

1) The Does and the Estate were parties in previous litigation styled, *Doe v. Kamehameha Schools/Bernice Pauahi Estate, et al.*, Case No. 03-00316, venued in the United States District Court for the District of Hawaii (the "Underlying Litigation"). In the Underlying Litigation the Does sought a declaration from this Court that the Estate's self-described preference for student applicants of native Hawaiian ancestry constituted discrimination on the basis of race in violation of federal civil rights statutes. Because the Underlying Litigation was extremely controversial and involved the danger of invasion of privacy, retaliation and physical or mental harm to the Does, the District Court, as well as the Ninth Circuit Court of Appeal and Unites States Supreme Court permitted the Does to litigate their case against the Estate using fictitious names.

2) In May of 2007, the Does and the Estate entered into a settlement agreement pursuant to which the Estate made a substantial monetary payment to the Does in exchange for the Does dismissing the Underlying Litigation. The settlement agreement (the "Agreement") between the Does and the Estate contained a confidentiality provision which provided, among other things, that the parties would keep the terms of the settlement confidential and that the Estate would not disclose any information concerning the Does' identities. The Agreement also provides that: "In addition to any other rights or remedies, this [confidentiality] provision shall be enforceable by injunctive or other equitable relief."

3) Goemans is an attorney who once represented the Does in the Underlying Litigation. On or

---

[1](...continued)
Goemans from disclosing the monetary terms of the settlement. Unfortunately, Goemans chose to disregard that injunction. Thus, Goemans was neither acting as the Does' attorney, nor in their best interests, when he made the disclosure in question.

about February 5, 2008, in an action pending in the California Superior Court for the County of Sacramento entitled "*Eric Grant v. John Goemans et al.*" Case No.: 07AS04172, a Temporary Protective Order was issued by the Court prohibiting Goemans from disclosing any information relating to the settlement between the Does and the Estate. Despite the Temporary Protective Order being issued, Goemans disclosed the monetary terms of the settlement in an interview with the Honolulu Advertiser. On February 8, 2008, the Honolulu Advertiser printed an article setting forth the monetary terms of the settlement.

4) There have been over 1,500 comments to the Honolulu Advertiser's February 8th article posted on the paper's web site. Many of the comments are extremely critical of the Does. Some threaten physical violence if the Does' identities become known.

5) On March 24, 2008, the Estate's counsel informed the Does' counsel that the Estate's position was that Goemans' disclosure of the monetary terms of the settlement constituted a breach of the Agreement by the Does; That the Estate was going to shortly file a breach of contract action against the Does in which the Estate was going to seek $2 million in damages; that the Estate was also going to immediately seek a writ of attachment against the Does; and because the Estate was seeking a writ of attachment against the Does, it intended to disclose the Does' identities in its Court filings.

6) Not only is the Estate not entitled to a writ of attachment, there is no reason why the Does' identities must be disclosed at the outset of the litigation between the Estate and the Does. If the Estate obtains a Court determination that it is entitled to the writ of attachment, **then** the Does' identities can be included in any writ that needs to be served in order to effectuate the Court's order granting the writ. As demonstrated below, given the potential harm to the Does from disclosure, and the lack of merits in the Estate's position, the Court should enjoin the Estate from disclosing the Does' identities until it is absolutely necessary to effectuate an order granting a writ of attachment in the Estate's favor.

This motion is based upon this Notice, the attached Memorandum of Points and Authorities, the declarations of Jane Doe and Ken T. Kuniyuki filed concurrently herewith, and upon such other oral and documentary evidence as may be presented at the hearing of this Application.

DATED: April 2, 2008          LEVIN & STEIN

By: /s/ Jerry H. Stein
    JERRY H. STEIN
    Attorneys for Defendants and Counter-Claimants
    JOHN DOE and JANE DOE

# MEMORANDUM OF POINTS AND AUTHORITIES

## I   INTRODUCTION

The Does seek a temporary restraining order and preliminary injunction because they fear for their safety if the Estate discloses their identity in contravention of the confidentiality provision in the parties' agreement that settled the Underlying Litigation. As demonstrated below, the Estate claims it needs to disclose the Does' identities in connection with its seeking a prejudgment writ of attachment to secure its claim that it has been damaged in the amount of $2 million as a result of the disclosure of the monetary terms of the settlement by Goemans.

By this Motion the Does are not seeking to prevent the Estate from seeking a writ of attachment (or any other remedy), but rather from disclosing the Does' identities until the Estate can convince the Court that it is entitled to a writ and that disclosure of the Does' identities is necessary to effectuate the Court's order granting the writ of attachment.

The Does are not responsible for Goemans' disclosure of the monetary terms of the settlement. However, even if they were, the Estate's claim that they have suffered $2 million in actual damages as a result of such breach and that they are entitled to a writ of attachment is totally and completely without substance. There is no liquidated damage provision in the Agreement, and as far as can be ascertained, the Estate has suffered no actual harm or out of pocket damage as a result of Goemans' disclosure. Furthermore, in the unlikely event that the Estate can convince the Court that it is entitled to a writ of attachment, pursuant to HRS § 651-17, the Does can post security to discharge the writ, thereby eliminating the need to disclose the Does' identity in order to satisfy the writ.

Given the threat of physical harm to the Does if their identity is disclosed, the remedy of enjoining disclosure until the Estate can convince the Court that it is entitled to a writ and that disclosure of the Does' identities is necessary to effectuate the Court's order granting the writ of attachment protects the rights of both parties. On the other hand, denial of the injunction requested would essentially force the Does into hiding for safety reasons even though they did nothing to violate their agreement with the Estate.

## II    STATEMENT OF FACTS

As set forth above, in the Underlying Litigation the Does sought a declaration from the Federal District Court that Kamehameha Schools preference for student applicants of native Hawaiian ancestry constituted discrimination on the basis of race in violation of federal civil rights statutes. Because the Underlying Litigation was extremely controversial and involved the danger of invasion of privacy, retaliation and physical or mental harm to the Does, the Courts in the Underlying Litigation permitted the Does to litigate their case using fictitious names. (Doe Dec., ¶¶ 2-3)

The procedural history of the Underlying Litigation is complex. Judgment was entered in favor of the Estate in December of 2003. That Judgment was reversed by the Ninth Circuit Court of Appeal, Docket No. 04-15044 in April of 2005, and then reinstated by the Ninth Circuit, sitting en banc in December of 2006. Whereupon, on March 1, 2007, the Does timely filed a petition for a writ of certiorari in the United States Supreme Court. (Doe Dec., ¶ 4)

In May of 2007, while the Does' petition for a writ of certiorari was pending, the Does and the Estate entered into a settlement agreement pursuant to which the Estate made a substantial monetary payment to the Does in exchange for the Does dismissing the Underlying Litigation. (Doe Dec., ¶ 5) The Agreement between the Does and the Estate (Exhibit 1) contained a confidentiality provision which provided:

> "As part of the consideration for this Settlement Agreement and General Release, no signatory or Bishop Releasee or Doe Releasee (including counsel) will disclose, provide, furnish or deliver, or permit to be disclosed, provided, furnished or delivered,
>
> (a) all or any part of this Settlement Agreement and General Release or any copy hereof or any information relating to the amount or any term or provision hereof, or any communication, negotiation or document relating to any of the foregoing, or
>
> **(b) the true names of, addresses of, or any other information identifying John Doe or Jane Doe or their family (whether individually or collectively)**
>
> to any person or entity, including, but not limited to, any publisher, reporter, or other agent or representative of any newspaper, magazine, journal, periodical, radio, television, or other media, except pursuant to a court order compelling it to do so, when necessary to obtain tax, accounting, legal or other professional advice, when necessary to comply with any applicable state or Federal disclosure or other regulatory requirements, or when necessary to effectuate the purposes and benefits of this Settlement Agreement and General Release. These confidentiality requirements are a material term of this Settlement Agreement and General Release. **In addition to any other rights or remedies, this provision shall be enforceable by injunctive or other equitable relief.** Provided, however, that no signatory shall be liable

>in money damages for a breach of this provision unless such signatory or their counsel shall have personally made such disclosure; and that such damages shall not, in the event of a breach by counsel, exceed $2,000,000.00 (Two Million Dollars even)." [Emphasis Added]

Goemans is an attorney who once represented the Does in the Underlying Litigation. (Doe Dec., ¶ 7) On or about February 5, 2008, in an action pending in the California Superior Court for the County of Sacramento entitled "*Eric Grant v. John Goemans et al.*" Case No.: 07AS04172, a Temporary Protective Order was issued by the Court prohibiting Goemans from disclosing any information relating to the settlement between the Does and the Estate. (Exhibit 2)

Despite this Order, Goemans subsequently disclosed the monetary terms of the settlement to the Honolulu Advertiser. On February 8, 2008, the Honolulu Advertiser printed an article setting forth the monetary terms of the settlement. (Doe Dec., ¶ 9)

While the provisions of the confidentiality arguably make the Does liable for the actual damages suffered by the Estate if there was a disclosure by the Does' "counsel," the only references to the Does' "counsel" in the Agreement are to Eric Grant. Thus, in a Declaration attached to the Agreement, Grant states that he is the Does' counsel of record. In addition, the "Approval as to Form" portion of the Agreement, which is executed by Grant, refers to Grant as "counsel for the Does." (Exhibit 1)

There is no mention of Goemans in the Agreement and no definition of the term "counsel" that would make the Does liable for any breach of the confidentiality provision by their former counsel Goemans. In short, by the express terms of the Agreement, the Does are not responsible for Goemans' disclosure of the monetary terms of the settlement agreement.

On March 24, 2008, the Does' attorney, Ken T. Kuniyuki ("Kuniyuki"), met with the Estate's attorney, David Schulmeister ("Schulmeister") of the Cades Schutte law firm, to discuss the Bishop's Estate's position vis a vis the Does. As set forth in Kuniyuki's Declaration filed herewith, Schulmeister told Kuniyuki that: (1) that the Estate's position was that Goemans disclosure of the monetary terms of the settlement constituted a breach of the confidentiality provision in the Agreement by the Does; (2) That the Estate was going to shortly file a breach of contract action against the Does in which the Estate was going to seek $2 million in damages; (3) That upon the filing of its action the Estate was also going to immediately seek a writ of attachment against the Does; and (4) That because the Estate was seeking a writ of attachment

against the Does, it intended to disclose the Does' identities in its Court filings.

According to Schulmeister, the $2 million in damages that the Estate would be seeking in its action against the Does was not based upon any actual out of pocket losses incurred by the Estate as a result of Goemans' disclosure of the monetary terms of the settlement, but rather on the Estate's position that it would have settled the case for $2 million less but for the inclusion of the confidentiality provision. (Kuniyuki Dec., ¶4) In other words, the Estate is claiming what amounts to a liquidated damage provision even though such a provision was never bargained for or included in the parties' Agreement.

As set forth above, because the Underlying Litigation was extremely controversial and involved the danger of invasion of privacy, retaliation and physical or mental harm to the Does, the Courts in the Underlying Litigation permitted the Does to litigate their case against the Estate using fictitious names. The fact that the monetary terms of the settlement have been disclosed has only heightened the risk to the Does. There have been 1551 comments posted by readers to the Honolulu Advertiser's February 8, 2008 article disclosing the terms of the settlement case. (Doe Dec., ¶ 11) Many of the posts are extremely critical of the Does. Some include threats of violence against the Does. Examples of the negative comments and threats posted to the Honolulu Advertiser's February 8, 2008 article include:

> "Seriously...Lawyers like Grant should be killed off...what a slime ball he his...and the "John Doe" hiding behind...grrr...makes my non Hawaiian blood boil....greedy SOB's they all are...**If I catch these people alone just for a few minutes ...I guarantee I would break every bone and make this bastards suffer...**." [Emphasis Added]

> "I cannot believe that these people have the nerve to go there!!! Kamehameha Schools was formed well before we became a state! So I feel that has nothing to do with the constitution that the United states has forced upon us! **Im scared for the boy. His stupid parents were the greedy ones and now the boy will have to pay. Now he is probably going to get beat up. I know people who attend Kamehameha, who want to kick this boys \*\*\*\*** I pray he'll be spared that humiliation. Thanks for listening." [Emphasis Added]

> "I believe someone should go out there to review the California court records to find out who this John and Jane Doe is. Why hide behind the scenes and be ashamed of what they did to the Hawaiian children that may be stripped of their benefits. They need to stand up and face those that they are robbing."

Not surprisingly, the Does fear for their safety if their identities are disclosed. If there identities are disclosed they fear they will have to go into hiding in order to avoid undue harassment and potential physical violence. (Doe Dec., ¶ 11)

1 **III PURSUANT TO FRCP 65, THE DOES ARE ENTITLED TO A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION TO PREVENT THE ESTATE FROM DISCLOSING THEIR IDENTITIES**

The issuance of a temporary restraining order and preliminary injunction to avoid immediate and irreparable injury, loss, or damage to the moving party is authorized by FRCP 65. This circuit's longstanding standard for a preliminary injunction is well known: The moving party must show either (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) that serious questions[2] are raised and the balance of hardships tips sharply in favor of the moving party. *Bernhardt v. County of Los Angeles*, 339 F.3d 920, 926 (9th Cir. 2003); Dr. *Seuss Enters. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1397 n.1 (9th Cir. 1997). "This Court has explained that these two alternatives represent extremes of a single continuum, rather than two separate tests. Thus, the greater the relative hardship to the moving party, the less probability of success must be shown." *Immigrant Assistance Project of Los Angeles County Fed'n of Labor (AFL-CIO) v. INS*, 306 F.3d 842, 873 (9th Cir. 2002)

As demonstrated below, the tests for the granting of the injunctive relief requested can be easily established. In fact, this is a "text book" case for the Court to invoke its equitable powers to protect innocent parties from irreparable injury

A. <u>The Parties' Agreement Establishes That The Does Will Likely Prevail On The Merits Of Their Claim For An Injunction</u>.

As set forth above, subject to certain exceptions, which as demonstrated below are not applicable, the Estate specifically agreed not to disclose the Does' identities. The Estate also agreed that its promise not to disclose the Does' identities could be enforced by injunctive relief if necessary.

---

[2] "Serious questions" as used in the test for injunctive relief are those "which cannot be resolved one way or the other at the hearing on the injunction"; they "need not promise a certainty of success, nor even present a probability of success". *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988) In accord, *Bernhardt v. County of Los Angeles*, 339 F.3d 920, 927 (9th Cir. 2003). See also *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 422 (9th Cir. 1991) ["Serious questions need not promise a certainty of success, nor even present a probability of success, but must involve a 'fair chance of success on the merits.' (Citation Omitted)"]

10
EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION

The exceptions to non-disclosure set forth in the confidentiality provision (quoted above at page 7) of the Agreement are: (1) If there is a court order compelling disclosure; (2) When disclosure is necessary to obtain tax, accounting, legal or other professional advice; (3) When disclosure is necessary to comply with any applicable state or Federal disclosure or other regulatory requirements; or (4) When disclosure is necessary to effectuate the purposes and benefits of the Agreement.

Clearly exceptions (1) through (3) could not possibly justify disclosure by the Estate of the Does' identities in this case. The Estate may argue that disclosure of the Does' identities will be necessary in order to enforce any writ of attachment obtained so, therefore, disclosure is permitted under exception (4), to effectuate the purposes and benefits of the Agreement. However, the Does are not seeking an injunction to prevent disclosure of their identities in order to prevent the Estate from seeking a prejudgment writ of attachment. Rather, the only relief that the Does are currently seeking is to prevent disclosure of their identities before the Court rules on any application by the Estate on its right to a writ of attachment. If, as the Does strongly believe, the Court will ultimately deny the Estate's application for a writ of attachment, or if the Does discharges the Writ by posting security, there would be no need to disclose the Does' identities in order to effectuate the purposes and benefits of the Agreement.

As to why the Does strongly believes, the Court will ultimately deny the Estate's application for a writ of attachment, while *Section 651-2* of the Hawaii attachment statute provides that a writ of attachment applies to actions "upon a contract, express or implied," the attachment remedy is not available in all actions based upon contract. Relying in part on Section 651-3 of the attachment statute, which requires "an affidavit showing that the defendant is indebted to the plaintiff, specifying the amount of the indebtedness over and above all just credits and offsets," the Court in *Frank F. Fasi Supply Co. v. Wigwam Investment Co.,* 308 F. Supp. 59 (D.Haw.1969) held that attachment is only available where the contract at issue also establishes a debtor-creditor relationship for the payment of money. As the Court stated in *Fasi* after a comprehensive analysis of Hawaii law:

> "[T]he Hawaii statute still requires, as a prerequisite for invoking the drastic remedy of garnishment, especially against residents, a clear showing of the existence of a debtor-creditor relationship arising out of an express or implied contract to pay a monetary amount; . . . the monetary amount of the claim must either be clearly indicated by the pleadings and/or the described contract, or by the stated facts giving rise to the implied contract, or be ascertainable with reasonable certainty according to standards set forth in such contract or facts, or the

pleadings, or both."[3] *Frank F. Fasi Supply Co. v. Wigwam Investment Co.,* 308 F. Supp. at 64

In accord see *Vazquez v. Center Art Gallery*, 485 F. Supp. 1015, 1017-1018 (D. Haw. 1980), where the Court applied the *Fasi* decision to deny plaintiff's claim for a writ of attachment based upon a breach of contract arising out of Defendants' sale of numerous works of art to Plaintiff. The *Vazquez* Court explained its holding as follows:

> "Consistent with the preceding language, the *Fasi* Court refused to apply Hawaii's garnishment statute in an action for damages allegedly arising from the breach of various covenants in a lease because the lease, although contractual, did not establish a debtor-creditor relationship. Similarly, Plaintiff's complaint in the present case merely alleges the existence of a contract; no evidence additionally suggests a debtor-creditor relationship for the payment of a monetary amount. If Plaintiff and Defendants entered into a contract at all, it was a contract by which Plaintiff obtained rights to certain works of art, not a monetary amount. Accordingly, the holding of *Fasi* compels this Court to find that attachment under Hawaii Revised Statutes Section 651-2 is not available to Plaintiff here."

As was the case in *Fasi* and *Vazquez*, because the contract in question does not create a debtor-creditor relationship for the payment of a monetary amount, attachment under HRS Section 651-2 is not available to the Estate even if it can prove that the Does are liable for Goemans' disclosure of the monetary terms of the settlement. [4]

---

[3] *Fasi* makes clear that the requirement of a debtor-creditor relationship for the payment of a definitely ascertainable monetary sum applies equally to attachment proceedings.

[4] In Hawaii, "the existence of mutual assent or intent to accept is determined by an objective standard." *Earl M. Jorgensen Co. v. Mark Constr., Inc.*, 56 Haw. 466, 470, 540 P.2d 978, 982 (1975). A party's words or acts are judged under a standard of reasonableness in determining whether he has manifested an objective intention to agree. All reasonable meanings will be imputed as representative of a party's corresponding objective intention. *Jorgensen*, 56 Haw. at 470, 540 P.2d at 982.

Here, while arguably the confidentiality provision makes the Does liable for disclosure by their "counsel," the only "counsel" identified in the Agreement is Eric Grant. There is nothing in the Agreement which defined the term "counsel" in such a manner as to make the Does liable for any disclosure by Goemans. Had the Estate intended the Does to be liable for any disclosure by Goemans, it could have clearly so provided. Having failed to so provide it is well settled that "the purely subjective, or secret, intent of a party in assenting is irrelevant in an inquiry into the contractual intent of the parties." *Standard Management, Inc. v. Kekona*, 99 Hawai'i 125, 134, 53 P.3d 264, 273 (App. 2001). In other words what the Estate may have intended is irrelevant unless specifically made part of the parties' agreement.

(continued...)

### B. The Balance Of Irreparable Damage Favors The Issuance Of The Injunctive Relief Requested.

As set forth above, one of the primary considerations for determining whether an injunction should be granted is whether the balance of irreparable damage favors the issuance of a temporary injunction. Here, the balance of irreparable damage unquestionable favors the issuance of a temporary injunction because while the Estate will not be hurt if an injunction is granted, if the Does' identifies are disclosed, the Does will be subject to extreme physical and mental duress and will be forced into hiding.[5] There could be no clearer case where the balance of irreparable damage favors the issuance of injunctive relief.

Finally, while the Does believe they have an extremely strong case on the merits for injunctive relief, as the Court noted in *Nadarajah v. Gonzales*, 443 F.3d 1069, 1083-1084 (9th Cir. 2006), "the greater the relative hardship to the moving party, the less probability of success must be shown." Given the fact that the balance of irreparable in this case is completely one sided, in reality the Does' only have a minimal burden of showing the likelihood of his success on the merits, which they have easily met.

## IV    CONCLUSION

In its settlement agreement with the Does the Estate agreed not only that it would not disclose the Does' identities, but that this promise could be enforced by injunctive relief if necessary. Such an injunction is now absolutely necessary because the Estate is threatening to disclose the Does' identities when it files its complaint alleging that the Does are legally responsible for Goemans disclosing the monetary terms of

---

[4](...continued)
Similarly, had the Estate wanted to include a liquidated damage provision in the Agreement it should have demanded that such a provision be included. Having failed to do so, its damages are limited to its actual damages which must be susceptible of ascertainment in some manner other than by mere speculation, conjecture, or surmise. *Uyemura v. Wick,* 57 Haw. 102, 111, 551 P.2d 171 (Haw. 1976) Absent a liquidated damage clause it would be impossible for the Estate to prove that it has incurred $2 million in actual damages since the Honolulu Advertiser article was printed on February 8, 2008.

[5]    Courts have frequently found that an injunction is the appropriate remedy where a plaintiff's health or well-being is threatened. See e.g., *Lee v. McManus*, 543 F. Supp. 386, 392 (D. Kan. 1982) ["...physical pain or injury constitutes the type of irreparable harm upon the threat of which preliminary injunctive relief may be predicated."] and *Qualls v. Rumsfeld*, 357 F. Supp. 2d 274, 285 (D.D.C. 2005).

the parties' settlement and seeks a writ of attachment to support a frivolous claim that it has suffered $2 million in actual damages as a result of Goemans' actions.

Given that the Does did nothing wrong[6]; there is nothing in the Agreement which makes them liable for Goemans' disclosure; there is no liquidated damage provision in the Agreement; and no evidence that the Estate suffered any damages, it is highly unlikely that the Estate will prevail on any application for a writ of attachment. Couple this with the fact that there is strong possibility that the Does will be subject to severe mental and physical harassment if their identities are disclosed, while the Estate will suffer no injury of the injunctions granted, a temporary and preliminary injunction are absolutely necessary to protect the Does. Consequently, the Court should invoke its equitable powers and grant the injunctive relief requested.

DATED: April 2, 2008          LEVIN & STEIN

                              By: /s/ Jerry H. Stein
                                  JERRY H. STEIN
                                  Attorneys for Defendants and Counter-Claimants
                                  JOHN DOE and JANE DOE

---

[6] It must be remembered that in order to avoid litigation with the Bishop Estate at their request Grant obtained an injunction to prevent Goemans from disclosing the terms of the settlement, which Order Goemans completely disregarded.