1  Bingham McCutchen LLP
   CHARLENE S. SHIMADA (SBN 91407)
2  charlene.shimada@bingham.com
   Three Embarcadero Center
3  San Francisco, CA 94111-4067
   Telephone: 415.393.2000
4  Facsimile: 415.393.2286

5  Alston Hunt Floyd & Ing
   PAUL ALSTON (Admitted Pro Hac Vice)
6  palston@ahfi.com
   American Savings Bank Tower, 18th Floor
7  1001 Bishop Street
   Honolulu, HI 96813
8  Telephone: 808.524.1800
   Facsimile: 808.524.4591
9
   Attorneys for Defendants
10 KAMEHAMEHA SCHOOLS/BERNICE
   PAUAHI BISHOP ESTATE; J. DOUGLAS
11 ING, NAINOA THOMPSON, DIANE J.
   PLOTTS, ROBERT K.U. KIHUNE, and
12 CORBETT A.K. KALAMA, in their capacities
   as Trustees of the Kamehameha
13 Schools/Bernice Pauahi Bishop Estate

14                UNITED STATES DISTRICT COURT

15              EASTERN DISTRICT OF CALIFORNIA

16 | ERIC GRANT, | No. 08-00672 FCD-KJM |

17         Plaintiff,       KAMEHAMEHA
   v.           SCHOOLS'

18                    MEMORANDUM OF
KAMEHAMEHA SCHOOLS/BERNICE PAUAHI BISHOP   POINTS AND

19 ESTATE; J. DOUGLAS ING, NAINOA THOMPSON, DIANE   AUTHORITIES IN
J. PLOTTS, ROBERT K.U. KIHUNE, and CORBETT A.K.   OPPOSITION TO JOHN

20 KALAMA, in their capacities as Trustees of the Kamehameha   AND JANE DOE'S
Schools/Bernice Pauahi Bishop Estate; JOHN DOE; and JANE   MOTION FOR

21 DOE,                          PRELIMINARY
                             INJUNCTION

22         Defendants.

23 JOHN DOE and JANE DOE,     Date: April 17, 2008
                     Time: 4:00 p.m.

24       Cross and Counter-Claimants,    Courtroom: 2
   v.                   Before: Hon. Frank C.

25 KAMEHAMEHA SCHOOLS/BERNICE PAUAHI BISHOP          Damrell, Jr.
ESTATE; J. DOUGLAS ING, NAINOA THOMPSON, DIANE

26 J. PLOTTS, ROBERT K.U. KIHUNE, and CORBETT A.K.
KALAMA, in their capacities as Trustees of the Kamehameha

27 Schools/ Bernice Pauahi Bishop Estate; and ERIC GRANT,

28 Cross and Counter-Defendants.

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................................................................................ 1

II.   FACTUAL BACKGROUND ...................................................................................... 4

    A.   The Underlying Litigation and Settlement ........................................................ 4

    B.   Breach of the Settlement Agreement and Kamehameha Schools'
        Evaluation of Its Claims ................................................................................... 4

    C.   Meeting Between Schulmeister and Kuniyuki ................................................. 5

III.  ARGUMENT .............................................................................................................. 7

    A.   The Does Are Not Entitled To a Preliminary Injunction Because They
        Have Not Established the Court's Jurisdiction ................................................. 7

        1.   There Is No Reasonable Probability of Personal Jurisdiction Over
               Kamehameha Schools Because It Lacks Minimum Contacts With
               California ............................................................................................. 8

               a.   The Does Cannot Show General Jurisdiction Is Reasonably
                     Probable ................................................................................... 9

               b.   There Is No Reasonable Probability of Specific Jurisdiction
                     Over the Does' Claims ............................................................. 11

        2.   The Court Lacks Subject Matter Jurisdiction Over the Does'
               Claims ............................................................................................... 14

    B.   Even If Jurisdiction Existed, the Does Have Not Met the Requirements for
        Preliminary Injunctive Relief .......................................................................... 16

        1.   The Standard for Preliminary Injunctive Relief ....................................... 16

        2.   The Does Cannot Establish Probable Success on the Merits or the
               Threat of Immediate Irreparable Injury ................................................... 17

IV.   CONCLUSION ........................................................................................................... 20

Cases

*Amerco v. Nat'l Labor Relations Bd.,* 458 F.3d 883 (9th Cir. 2006) .......................................... 7

*Bancroft & Masters, Inc. v. Augusta National, Inc.,* 223 F.3d 1082 (9th Cir. 2000), *overruled on other grounds, Yahoo! Inc. v. La Ligue Contre le Racisme et l'Antisemitisme,* 433 F.3d 1199 (9th Cir. 2006) ...................................... 9, 11, 13

*Brunson v. Kalil & Co.,* 404 F. Supp. 2d 221 (D. D.C. 2005) ................................... 13

*Burger King Corp. v. Rudzewicz,* 471 U.S. 462 (1985) ...................................... 8

*Bush v. Stern Bros. & Co.,* 524 F. Supp. 12 (S.D.N.Y. 1981) ...................................... 10

*Colorado River Indian Tribes v. Town of Parker,* 776 F.2d 846 (9th Cir. 1985) ...................... 19

*Council of Unit Owners of Wisp Condominium, Inc. v. Recreational Industries, Inc.,* 793 F. Supp. 120 (D. Md. 1992) ...................................... 15

*Daniel v. Am. Bd. of Emerg. Medicine,* 988 F. Supp. 127 (S.D.N.Y. 1997) .............................. 10

*Doe v. Kamehameha Schools,* 470 F.3d 827 (9th Cir. 2006), *cert. dismissed,* 127 S. Ct. 2160 (2007) ...................................... 12

*Douglas Furniture Co. v. Wood Dimensions, Inc.,* 963 F. Supp. 899 (C.D. Cal. 1997) ...................................... 13

*Dymo Indus. v. Tapeprinter, Inc.,* 326 F.2d 141 (9th Cir. 1964) ...................................... 16

*Easter v. American West Financial,* 381 F.3d 948 (9th Cir. 2004) ...................................... 8

*Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana,* 762 F.2d 464 (5th Cir. 1985) ...................................... 7, 14

*Far West Capital, Inc. v. Towne,* 46 F.3d 1071 (10th Cir. 1995) ...................................... 10

*Hanson v. Denckla,* 357 U.S. 235 (1958) ...................................... 11, 13

*Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408 (1984) ................ 9, 10, 11, 13

*Helix Elec., Inc. v. Div. of Labor Standards Enforcement,* No. Civ. 05-2303 FCD KJM, 2006 WL 464083 (E.D. Cal. Feb. 27, 2006), *aff'd,* 203 Fed. Appx. 813 (9th Cir. 2006) ...................................... 16, 19

*Henderson v. Felker,* No. CIV S-06-1325 FCD EFB P, 2008 WL 650253 (E.D. Cal. March 5, 2008) ...................................... 16, 17

*Hendricks v. Bank of America, N.A.,* 408 F.3d 1127 (9th Cir. 2005) ...................................... 7

*Hensley v. City of San Buenaventura*, No. 07-CV-0398-W (NLS), 2008 WL 768134 (S.D. Cal. March 18, 2008) ...................................................................... 16

*Hitchman Coal & Coke Co. v. Mitchell,* 245 U.S. 229 (1917) .................................... 7

*Industrial Elec. Corp. v. Cline,* 330 F.2d 480 (3d Cir.1964) ..................................... 7

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) ............................................. 8, 14

*Isenberg v. Yanni's Remodeling,* No. 07-3646, 2007 WL 3252542 (E.D. Pa. Oct. 31, 2007) ...................................................................................................... 10

*Johnson v. Columbia Props. Anchorage, Ltd. P'ship*, 437 F.3d 894 (9th Cir. 2006) .................... 2

*Kulko v. Superior Court,* 436 U.S. 84 (1978) ................................................... 8, 13

*Los Angeles Memorial Coliseum Comm'n v. National Football League,* 634 F.2d 1197 (9th Cir. 1980) ............................................................................... 17

*Madery v. Int'l Sound Technicians*, 79 F.R.D. 154 (C.D. Cal. 1978) ......................... 16

*Mizlou Television Network v. Nat'l Broadcasting Co.,* 603 F. Supp. 677 (D. D.C. 1984) ...................................................................................... 10

*Nelson v. Mass. General Hosp.,* No. 04-CV-5382 (CM), 2007 WL 2781241, *29-30 (S.D.N.Y. Sept. 20, 2007) ......................................................................... 10

*Oakland Tribune, Inc. v. Chronicle Pub. Co.*, 762 F.2d 1374 (9th Cir. 1985) ........... 16

*Ochoa v. J.B. Martin & Sons Farms, Inc.,* 287 F.3d 1182 (9th Cir. 2002).................... 8

*Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437 (1952) ..................................... 9

*Rosenberg Bros. & Co. v. Curtis Brown Co.,* 260 U.S. 516 (1923) ............................ 11

*Ruud v. U.S. Dep't of Labor*, 347 F.3d 1086 (9th Cir. 2003)..................................... 14

*Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797 (9th Cir. 2004)................. 8, 9, 10, 11

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,* 240 F.3d 832 (9th Cir. 2001) ...................... 16

*United Mine Workers v. Gibbs*, 383 U.S. 715 (1966) .......................................... 14, 15

*Visual Sciences, Inc. v. Integrated Communications, Inc.,* 660 F.2d 56 (2d Cir. 1981) .......................................................................................... 7

*Yahoo! Inc. v. La Ligue Contre le Racisme et l'Antisemitisme,* 433 F.3d 1199 (9th Cir. 2006), *cert. denied,* 126 S.Ct. 2332 (2006) ................................ 8, 11, 13, 14

*Zango, Inc. v. PC Tools Pty Ltd.*, 494 F. Supp. 2d 1189 (W.D. Wash. 2007) ............... 7

# TABLE OF AUTHORITIES
(continued)

Page

Statutes

28 U.S.C. § 1331 ................................................................................................. 14

28 U.S.C. § 1332 ................................................................................................. 14

28 U.S.C. § 1367(a) ...................................................................................... 2, 14, 15

Treatises

13 James Wm. Moore et al., Moore's Federal Practice ¶ 65.05[1] (3d ed. 2008) ........................ 7

**I.    INTRODUCTION**

The pending motion for preliminary injunction filed by Cross- and Counter-Claimants John Doe and Jane Doe (collectively, the "Does") against Kamehameha Schools[1] is a transparently groundless effort by Hawai`i citizens and their attorneys to manufacture jurisdiction in a forum thousands of miles from the Defendants' homes, and to cast themselves as victims in a dispute that has injured only Kamehameha Schools.  The motion should be denied on both jurisdictional and substantive grounds.

In May 2007, the Does and Kamehameha Schools signed a confidential settlement agreement (the "Settlement Agreement" or "Agreement") that resolved litigation brought by the Does against Kamehameha Schools in federal court in Hawai`i (the "Underlying Litigation").  The confidentiality requirements of the Agreement prohibited public disclosure of *all* settlement terms, not just monetary terms.  Nevertheless, in February 2008, one of the attorneys of record for the Does, John Goemans, disclosed the settlement amount to a Honolulu newspaper.  Kamehameha Schools was the only party damaged by this wrongful disclosure.  Yet, Plaintiff Eric Grant – another of the Does' attorneys – contrived a suit against Kamehameha Schools and the Does in Sacramento, seeking a declaratory judgment relieving him of responsibility for the breach.  Within days, the Does followed with a similar plea for judicial absolution, along with a trumped up claim for injunctive relief premised on the false claim that Kamehameha Schools threatened to disclose the Does' identities in breach of the Settlement Agreement.  In truth, Kamehameha Schools made no threat.

By these tactics, the parties responsible for the only *actual* breach of the Agreement attempted to transform themselves – based on a misrepresentation of the Estate's position – into injured parties in need of extraordinary judicial protection.

At the outset, the motion must be denied because this Court lacks both personal

---

[1] Throughout this Memorandum, we will refer to Defendant Kamehameha Schools/Bernice Pauahi Bishop Estate and J. Douglas Ing, Nainoa Thompson, Diane J. Plotts, Robert K.U. Kihune, and Corbett A.K. Kalama, in their capacities as Trustees of the Kamehameha Schools/Bernice Pauahi Bishop Estate, collectively, as "Kamehameha Schools" or the "Estate."

1   jurisdiction over Kamehameha Schools and subject matter jurisdiction over the Does' claim for

2   injunctive relief.  The Court has no personal jurisdiction because Kamehameha Schools is a

3   Hawai`i citizen[2] (as are the Does) lacking minimum contacts with California.  The limited

4   California contacts alleged in Plaintiff Grant's Complaint (there are none alleged by the Does)

5   are plainly insufficient to *plead* a basis for personal jurisdiction, much less establish a reasonable

6   probability of success on the jurisdictional issue, as required in this context.  As a matter of law,

7   hiring a California lawyer in the Underlying Litigation, having the lawyer participate in

8   negotiating the Settlement Agreement, and forwarding a settlement payment to the Does' lawyer

9   in California cannot support jurisdiction in this case.  Moreover, the acts of the Estate's

10  California lawyer and the forwarding of the settlement payment in the Underlying Litigation do

11  not give rise to the current claims, which stem in the first instance from the disclosure by *the*

12  *Does' former counsel*, Goemans, of the monetary terms of the settlement and, in the second

13  instance, from the fact that the Does filed a partially redacted version of the Settlement

14  Agreement in this Court without assuring it was filed under seal.  Because these claims do not

15  arise from the alleged forum contacts, Grant and the Does cannot establish a reasonable

16  probability of specific jurisdiction over the Estate.

17          The Court also lacks subject matter jurisdiction over the Does' claim for

18  injunctive relief.  It is undisputed that their claims do not arise under federal law and that there is

19  no diversity of citizenship, since the Does and the Estate are all Hawai`i citizens.  Supplemental

20  jurisdiction is also absent because the Does' claim for injunctive relief is not "so related to

21  claims in the action within [the Court's] original jurisdiction that they form part of the same case

22  or controversy under Article III."  28 U.S.C. § 1367(a) (2008).  Here, the only claims arguably

23  within the Court's original jurisdiction are those that may satisfy diversity requirements:  Grant's

24  _____

25  [2]      For jurisdictional purposes, a trust is a citizen of the state where its trustees are citizens.
26  *See, e.g., Johnson v. Columbia Props. Anchorage, Ltd. P'ship,* 437 F.3d 894, 899 (9th Cir.
    2006).  As Plaintiff Grant alleged, all of Kamehameha Schools' trustees are citizens of Hawai`i.
27  Both Grant (Complaint ¶ 6) and the Does (Answer ¶ 1) admit that the Trustees are Hawai`i
    citizens.

28

claims against the Estate and the Does (California vs. Hawai`i citizens), and the Does'

counterclaim against Grant (Hawai`i vs. California citizens), all seeking to avoid liability for

Goemans' disclosure of the Settlement Agreement's monetary terms.  In contrast, the Does'

claim for injunctive relief derives from different facts – or more precisely, the false allegation

that Kamehameha Schools threatened to disclose the Does' identities in violation of a specific

settlement provision protecting that information.  *See* Cross-Claim ¶¶ 7, 13, 15.  The issue of

liability on the Does' injunction claim is separate from, and does not depend in any way on, the

issues raised by the declaratory relief claims.  The Does' claim for injunctive relief is, therefore,

not "so related" to the other claims that they form part of the same Article III case or

controversy.  Absent this basis for supplemental jurisdiction, the Does cannot establish a

reasonable probability that subject matter jurisdiction will be established.

Moreover, even if jurisdiction existed in this case, the Does have failed at the

most fundamental level to satisfy the requisite elements for obtaining a preliminary injunction

against Kamehameha Schools.  The Does have neither established probable success on the merits

nor proven that there is any genuine threat of irreparable harm.  It is beyond dispute that

Kamehameha Schools has never breached any part of the Settlement Agreement, including any

of its confidentiality provisions.  Rather, the Does' motion for injunctive relief rests entirely on a

false characterization of the alleged *threat* by the Estate to cause a *future* disclosure of the Does'

identities in violation of the settlement terms.

Irrefutable evidence shows, however, that the Estate has no intention of making

such a disclosure and that no threat to do so was ever communicated to the Does or their

attorneys by Kamehameha Schools or anyone acting on its behalf.  *See* accompanying

Declarations of David Schulmeister ("Schulmeister Decl.") and Colleen I. Wong ("Wong

Decl.").  The absence of even the *threat* of such disclosure by Kamehameha Schools completely

destroys any possibility of success on the merits and, by definition, any *threat* of irreparable

harm.

At bottom, the Does' motion – and the TRO they obtained *ex parte* – rests solely

on their self-serving *misrepresentation* of Kamehameha Schools' response to the *actual* breach

1    of the Settlement Agreement that occurred when its monetary terms were wrongfully disclosed.

2    For now, the Estate is still evaluating its claims and remedies.  Wong Decl. ¶ 5.  It has no

3    intention, now or in the future, of disclosing the Does' identities in connection with any litigation

4    or any effort to obtain post-judgment remedies.  *Id.*  Kamehameha Schools will NOT violate the

5    Settlement Agreement under any circumstances.  Wong Decl. ¶ 6.  Accordingly, there is no basis

6    for the requested preliminary injunction, and the Does' motion must be denied.

7    **II.     FACTUAL BACKGROUND**

8           **A.     The Underlying Litigation and Settlement**

9                  The Does, who are Hawai`i citizens, originally filed suit against Kamehameha

10   Schools on June 25, 2003 in the United States District Court for the District of Hawai`i, Civil

11   No. CV03-00316 ACK LES, seeking declaratory relief, a permanent injunction, and

12   compensatory and punitive damages (the "Underlying Litigation").  Schulmeister Decl. ¶ 3.  The

13   Does' attorneys of record in the Underlying Litigation – in the district court, the Ninth Circuit,

14   and the Supreme Court – included both John W. Goemans and Eric Grant.

15                  On or about May 11, 2007, the Does and Kamehameha Schools entered into the

16   Settlement Agreement to resolve the Underlying Litigation.  Wong Decl. ¶ 3.  *All* settlement

17   terms, including monetary terms, were made strictly confidential.  Cross-Claim ¶ 7.

18          **B.     Breach of the Settlement Agreement and Kamehameha
19                  Schools' Evaluation of Its Claims**

20                  On February 8, 2008, The Honolulu Advertiser published details of the Settlement

21   Agreement, including its monetary terms, which were reportedly revealed by John Goemans.

22   Wong Decl. ¶ 4.  Following that publication, Kamehameha Schools requested that outside

23   counsel David Schulmeister, a member of the Cades Schutte LLP law firm in Honolulu, explore

24   with the current Hawai`i counsel for the Does, Ken T. Kuniyuki, the possibility of resolving the

25   breach of the confidentiality provision of the Settlement Agreement.  *Id.*

26                  In that regard, Kamehameha Schools believes that the Settlement Agreement was

27   breached.  However, it has no present intention to file suit.  Wong Decl. ¶ 5.  Similarly, the

28   Estate has no present intention to disclose the identities of the Does in connection with any future

litigation or any effort to obtain any post-judgment remedy.  *Id.*  Rather, given the conflicting statements by the Does, Grant and Goemans regarding the wrongful disclosure of the monetary terms of the Settlement, Kamehameha Schools has been reviewing, and continues to evaluate, its rights and claims.  *Id.*

Now and in the future – regardless of what Kamehameha Schools decides at the conclusion of its evaluation of the circumstances leading to the breach of the Settlement Agreement – Kamehameha Schools will not, under any circumstances, violate the Settlement Agreement.  Wong Decl. ¶ 6.  In particular, Kamehameha Schools will not publicly identify the Does without a court order obtained after notice and hearing.  *Id.*  This is not to say that Kamehameha Schools presently intends to seek such an order; rather, Kamehameha Schools is reserving its rights to seek such orders as may be necessary to vindicate its rights.  *Id.*

## C.     Meeting Between Schulmeister and Kuniyuki

On March 24, 2008, Schulmeister met with Kuniyuki in Schulmeister's Honolulu office.  Schulmeister Decl. ¶ 5.  Schulmeister told Kuniyuki that the Estate believed the Settlement Agreement had been breached and that the Estate was entitled to damages.  *Id.*  He further explained that a public lawsuit could make it difficult for the Does' anonymity to be preserved, particularly at the post-judgment execution stage, but he assured Kuniyuki that the Estate was cognizant of the Does' desire to remain anonymous.  *Id.*

Schulmeister also told Kuniyuki that the Estate was concerned that the settlement proceeds, which were seen as the primary source of recovery for the Estate, might be hidden or dissipated.  *Id.* ¶ 6.  Schulmeister suggested that this concern could easily be allayed by the Does depositing the sum of $2 million dollars in an escrow or trust account, which would then give the parties ample time to try to resolve the matter free of any concerns over whether the proceeds would remain available.  *Id.*

Schulmeister asked Kuniyuki to consider his suggestion, discuss it with his clients, and let him know whether this would be agreeable.  *Id.* ¶ 7.  Schulman also invited Kuniyuki to consider with his clients making an alternative proposal for how to move the matter to an acceptable resolution.  *Id.*

1            At no time during this meeting did Schulmeister state that the Estate had already

2  decided to file a lawsuit; that the Estate was going to unilaterally disclose the Does' identities in

3  connection with any future lawsuit; or that the Estate's efforts to obtain any pre- or post-

4  judgment remedy would necessarily disclose the Does' identities. *Id.* ¶ 8.  Schulmeister did say

5  that some future disclosure might occur, but he was contemplating disclosure by third parties

6  (such as someone involved in effecting a writ of attachment or garnishment), not unilateral

7  disclosure by the Estate or anyone acting on its behalf. *Id.*  Schulmeister made it clear to

8  Kuniyuki that his purpose in meeting with him was to try to reach an accommodation that would

9  save all parties time and money and give his clients complete protection that their anonymity

10  would be maintained by avoiding risks created by the litigation process. *Id.*

11            At no time during this meeting did Schulmeister say that the Estate intends to sue

12  Eric Grant. *Id.* ¶ 9.  While Kuniyuki stated that he and his clients believed any deposit of funds

13  should be made by Grant and/or Goemans, Schulmeister did not express any view one way or the

14  other on what the source of the funds should be. *Id.*

15            At the close of the meeting, Schulmeister advised Kuniyuki that he would be

16  traveling out of the state during the week of March 31, 2008, and Kuniyuki responded that he

17  could easily get back to Schulmeister before he left. *Id.* ¶ 10.

18            Schulmeister's next communication with Kuniyuki was on March 28, 2008, when

19  he called Kuniyuki to remind him that he would be traveling the following week, and that

20  Kuniyuki had promised to get back to him before he left. *Id.* ¶ 11.  During that conversation,

21  which lasted only a few minutes, Kuniyuki stated that the Does had unsuccessfully sought to

22  have Grant and Goemans contribute toward a deposit, and that the Does refused to do so. *Id.*

23            Schulmeister then asked Kuniyuki if he had any alternative proposal to make, to

24  which he responded in the negative. *Id.* ¶ 12.  Kuniyuki then stated that he did not believe it

25  would be necessary for the Does to be identified prior to the Estate establishing its entitlement to

26  any specific amount of damages or to any pre-judgment remedy. *Id.*  He did not, however, ask

27  Schulmeister whether he agreed with this assertion or for any assurances that the Does' identities

28  would not be disclosed by the Estate without prior court approval. *Id.*  If he had requested such

1      an assurance, Schulmeister would have given it to him without qualification.  *Id.*

2          At no time prior to this action being filed did Kuniyuki or anyone else advise the

3 Estate that this action was being contemplated or that such an assurance was desired by the Does.

4 *Id.* ¶ 13.

5 **III.     ARGUMENT**

6      **A.     The Does Are Not Entitled To a Preliminary Injunction**
7               **Because They Have Not Established the Court's Jurisdiction**

8          To grant injunctive relief, the Court must first have personal jurisdiction over the

9 parties and subject matter jurisdiction over the dispute.  *Hitchman Coal & Coke Co. v. Mitchell,*

10 245 U.S. 229, 234-35 (1917) (district court erred in enjoining parties who had not been served or

11 appeared); *Hendricks v. Bank of America, N.A.,* 408 F.3d 1127, 1134-35 (9th Cir. 2005) (district

12 court must consider personal jurisdiction "as 'a logical predicate to' its preliminary injunction

13 order"); *Amerco v. Nat'l Labor Relations Bd.,* 458 F.3d 883, 884 (9th Cir. 2006) (affirming

14 dismissal of motion for preliminary injunction based on lack of subject matter jurisdiction);

15 13 James Wm. Moore et al., *Moore's Federal Practice* ¶ 65.05[1] (3d ed. 2008) ("In order to

16 grant injunctive relief, a court must first have personal and subject matter jurisdiction.").

17          Where, as here, Kamehameha Schools contests jurisdiction, the burden is on the

18 Does "to adequately establish that there is at least a reasonable probability of ultimate success

19 upon the question of jurisdiction when the action is tried on the merits."  *Enterprise Int'l, Inc. v.*

20 *Corporacion Estatal Petrolera Ecuatoriana,* 762 F.2d 464, 470-71 (5th Cir. 1985) (reversing

21 injunction) (citation omitted); *accord Visual Sciences, Inc. v. Integrated Communications, Inc.,*

22 660 F.2d 56, 58-59 (2d Cir. 1981) (same); *Industrial Elec. Corp. v. Cline,* 330 F.2d 480, 482 (3d

23 Cir.1964) (same); *Zango, Inc. v. PC Tools Pty Ltd.*, 494 F. Supp. 2d 1189, 1195-96 (W.D. Wash.

24 2007).

25          Here, the Does cannot show a reasonable probability of either personal

26 jurisdiction over Kamehameha Schools or subject matter jurisdiction over the Does' claim for

27 injunctive relief.

28

1    **1.      There Is No Reasonable Probability of Personal**
              **Jurisdiction Over Kamehameha Schools Because It**
2             **Lacks Minimum Contacts With California**

3                   Again, the plaintiff bears the burden of demonstrating personal jurisdiction.

4    *Ochoa v. J.B. Martin & Sons Farms, Inc.,* 287 F.3d 1182, 1187 (9th Cir. 2002).  Where, as here,

5    no federal statute governs personal jurisdiction, the district court applies the law of the state in

6    which the court sits, here California.  *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797,

7    800 (9th Cir. 2004).  Because California's long-arm jurisdictional statute is coextensive with

8    federal due process requirements, the jurisdictional analysis under California law and federal due

9    process is the same.  *Id.* at 800-01.

10                  For personal jurisdiction to comport with due process, the defendant must have

11   "minimum contacts with [the forum] such that the maintenance of the suit does not offend

12   'traditional notions of fair play and substantial justice.'"  *Int'l Shoe Co. v. Wash.*, 326 U.S. 310,

13   316 (1945) (citation omitted); *Yahoo! Inc. v. La Ligue Contre le Racisme et l'Antisemitisme,* 433

14   F.3d 1199, 1205 (9th Cir. 2006) (en banc), *cert. denied,* 126 S Ct. 2332 (2006).  For a court to

15   have jurisdiction, "the defendant's conduct and connection with the forum State [must be] such

16   that he should reasonably anticipate being haled into court there."  *Burger King Corp. v.*

17   *Rudzewicz,* 471 U.S. 462, 474 (1985) (citation omitted).  There must "be some act by which the

18   defendant *purposefully avails* itself of the privilege of conducting activities within the forum

19   State."  *Kulko v. Superior Court,* 436 U.S. 84, 94 (1978) (citation omitted; emphasis added).

20                  A defendant may be subject to either general or specific jurisdiction.  *See Easter*

21   *v. American West Financial,* 381 F.3d 948, 960 (9th Cir. 2004).  Kamehameha Schools' alleged

22   contacts with this State are insufficient for both purposes.[3]

23   _____

24   [3] Ruling on a preliminary injunction does not require the Court to decide definitively whether it
     has jurisdiction, nor does Kamehameha Schools ask the Court to do so.  The only issue at present
25   is whether the Does have demonstrated that the Court probably has jurisdiction.  Kamehameha
     Schools has waived service of summons, expressly retaining defenses or objections based on
26   jurisdiction (other than defects in the summons or in service of the summons or certain
     documents).  *See* Waiver of Service of Summons and Acceptance of Service of Documents Filed
27   in The Case at 2-3 (docket #22 filed 4/08/08).  Kamehameha Schools will file a noticed motion
     to dismiss the complaint and cross-claim shortly.

28

**a.** **The Does Cannot Show General Jurisdiction Is Reasonably Probable**

General jurisdiction requires that the defendant's contacts with the forum be "continuous and systematic." *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415-16 (1984). The contacts must be so pervasive as to "approximate physical presence." *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 801 (9th Cir. 2004); *Bancroft & Masters, Inc. v. Augusta National, Inc.,* 223 F.3d 1082, 1086 (9th Cir. 2000), *overruled on other grounds, Yahoo! Inc. v. La Ligue Contre le Racisme et l'Antisemitisme*, 433 F.3d 1199, 1207 (9th Cir. 2006) (en banc), *cert. denied,* 126 S. Ct. 2332 (2006). *See, e.g., Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437, 447-48(1952) ("continuous and systematic" contact established because foreign corporation's president maintained long-term office, conducted company activities, kept company files, held directors' meetings, carried on correspondence relating to the business, distributed salary checks, and supervised policies dealing with the company property). As the Ninth Circuit has explained, "This is an exacting standard . . . because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Schwarzenegger,* 374 F.3d at 801.

The limited California contacts alleged in the complaint do not remotely suffice. Kamehameha Schools is a citizen of Hawai`i, not California. Complaint ¶¶ 5, 6; Doe Cross-Claim ¶¶ 5, 6. It is not alleged to do business in California, maintain offices in California, solicit students from California, or have any contact of any sort with California in the normal course of affairs. Indeed, on this record, Kamehameha Schools' only alleged contacts with California arise from the Does' having sued it in *Hawai`i.* Complaint ¶ 9. Those contacts are: (1) retaining a California lawyer to represent Kamehameha Schools in the prior litigation, (2) having that lawyer participate in negotiating the Settlement Agreement with the Does' lawyer, and (3) forwarding a settlement payment to the Does' lawyer at his bank in California. Complaint ¶¶ 11-17.[4] These contacts are not, by any stretch, "continuous and systematic."

---

[4] It is not clear that contacts alleged in Plaintiff Grant's original complaint may be used to

(Footnote Continued on Next Page.)

1     Precedent plainly demonstrates that these alleged contacts cannot justify general

2 jurisdiction.  Kamehameha Schools did not subject itself to general jurisdiction by hiring a

3 California lawyer in the prior litigation.  No defendant expects that merely hiring an out-of-state

4 lawyer to defend a lawsuit in the defendants' home state would allow it to be "haled into court"

5 in the lawyer's State "to answer for any of its activities anywhere in the world."

6 *Schwarzenegger,* 374 F.3d at 801.  *See, e.g., Far West Capital, Inc. v. Towne,* 46 F.3d 1071,

7 1076 (10th Cir. 1995) (hiring agent in Utah did not support jurisdiction there on unrelated cause

8 of action, nor would "retaining legal counsel or contracting with an accounting firm"); *Mizlou*

9 *Television Network v. Nat'l Broadcasting Co.,* 603 F. Supp. 677, 683 (D. D.C. 1984) ("[T]he

10 mere fact that FCSA retained counsel in the District of Columbia will not confer personal

11 jurisdiction over that or any other defendant in an action not arising from the lawyer/client

12 relationship"); *Daniel v. Am. Bd. of Emerg. Medicine,* 988 F. Supp. 127, 223 (S.D.N.Y. 1997)

13 ("the location in New York of service organizations, such as law firms . . . which perform

14 financial and related legal services for the hospital Defendants . . . does not represent activity in

15 New York by the hospital Defendants for jurisdictional purposes."); *Isenberg v. Yanni's*

16 *Remodeling,* No. 07-3646, 2007 WL 3252542, *4 (E.D. Pa. Oct. 31, 2007) (hiring in-forum

17 attorney did not create general jurisdiction); *cf. Bush v. Stern Bros. & Co.*, 524 F. Supp. 12, 14

18 (S.D.N.Y. 1981) (hiring New York broker did not create general jurisdiction in New York);

19 *Nelson v. Mass. General Hosp.,* No. 04-CV-5382 (CM), 2007 WL 2781241, *29-30 (S.D.N.Y.

20 Sept. 20, 2007) (similar).

21     Similarly, Kamehameha Schools' negotiation of the settlement agreement with

22 the Does' lawyer in California is not continuous and substantial contact and cannot support

23 general jurisdiction.  *Helicopteros,* 466 U.S. at 416 (1984) (trip to "negotiate[e] the

24 _____

25 (Footnote Continued from Previous Page.)

26 support personal jurisdiction on the Does' cross-claim.  But even if those contacts are
considered, there is no jurisdiction.  Accordingly, for purposes of this opposition only,

27 Kamehameha Schools assumes that jurisdiction over the cross-claim may be based on contacts
alleged in the original complaint.

28

1    transportation-services contract with Consorcio/WSH cannot be described or regarded as a

2    contact of a 'continuous and systematic' nature . . . and thus cannot support an assertion of *in*

3    *personam* jurisdiction"); *Bancroft & Masters,* 223 F.3d at 1086 (even ongoing contracts with

4    California businesses did not establish general personal jurisdiction).

5              Lastly, Kamehameha Schools' actions in sending money to California to settle the

6    Hawai`i-based litigation is a one-time event, not a systematic and continuous contact.  In fact,

7    mere payments into a state cannot create general jurisdiction there, even if there are repeated

8    payments.  *Helicopteros,* 466 U.S. at 417 (purchasing helicopters) (citing *Rosenberg Bros. & Co.*

9    *v. Curtis Brown Co.,* 260 U.S. 516, 518 (1923) (regular business trips to forum state to buy

10   merchandise did not support general jurisdiction)); *Schwarzenegger,* 374 F.3d at 801 (regular

11   purchases from California could not support general jurisdiction); *Hanson v. Denckla,* 357 U.S.

12   235, 252 (1958) (no personal jurisdiction in Florida over out-of-state trust company that, *inter*

13   *alia,* had sent payments to Florida under trust at issue in case).

14             In short, the Does cannot establish that general jurisdiction is reasonably

15   probable.

16             **b.       There Is No Reasonable Probability of Specific**
                          **Jurisdiction Over the Does' Claims**
17
                 In the Ninth Circuit, to establish specific jurisdiction, a plaintiff must meet a
18
     three-prong test:
19

20       •    "The non-resident defendant must purposefully direct his activities or
              consummate some transaction with the forum or resident thereof; or perform
21            some act by which he purposefully avails himself of the privilege of conducting
              activities in the forum, thereby invoking the benefits and protections of its laws";
22
         •    the claim must "arise[] out of or relate[] to the defendant's forum-related
23            activities"; and

24       •    the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*
              must be reasonable.
25

26   *Yahoo,* 433 F.3d at 1205-06.  The Does cannot show that Kamehameha Schools' contacts with

27   California satisfy any of these prongs.

28             In the first place, Kamehameha Schools' retention of a California lawyer to

1    defend it in the Does' prior suit in Hawai`i cannot sustain specific jurisdiction because the Does'

2    claim does not arise out of the retention of counsel. Kamehameha Schools' California counsel in

3    the prior suit was Kathleen Sullivan, then of Stanford, California. *See Doe v. Kamehameha*

4    *Schools,* 470 F.3d 827, 828 (9th Cir. 2006), *cert. dismissed,* 127 S. Ct. 2160 (2007) (en banc)

5    (listing counsel). She is not alleged to have been involved in the supposed threat to reveal the

6    Does' names or in any other events relating to this lawsuit. Rather, the Does allege that the

7    supposed threat came from "David Schulmeister . . . of the Cades Schutte law firm." Cross-

8    Claim ¶ 13. Schulmeister and Cades Schutte are *Hawai`i* lawyers with offices in *Hawai`i. See*

9    *Doe,* 470 F.3d at 828*; see also* http://www.cades.com/ContactUs/dsp_contactUs.cfm (Cades

10   Schutte web site stating that Cades Schutte has two offices, "Honolulu" and "Big Island").

11            Sullivan also had nothing to do with the conduct giving rise to the Does' or

12   Plaintiff Grant's declaratory-relief claims against Kamehameha Schools. Those claims arise out

13   of the disclosure *by the Doe*s' former counsel, Goemans, of the monetary terms of the Settlement

14   Agreement to the media in Hawai`i, which disclosure severely damaged Kamehameha Schools.

15   Grant and the Does seek declaratory relief that they are not liable for Goemans' disclosure.

16   Complaint ¶¶ 26-27, 31-34; Cross-Claim ¶¶ 17-20. The only allegation attempting to connect

17   Sullivan to Goemans' disclosure alleges that *Grant* called *her,* after the fact, and she did not

18   respond. Complaint ¶ 27.

19            The causes of action here also do not arise out of Kamehameha Schools' having

20   negotiated the settlement of the previous suit in California and wired the money to the Does'

21   California counsel, Grant. Complaint ¶ 17. They arise out of Goemans' disclosure of a

22   confidential settlement term and Kamehameha Schools' response in Hawai`i to that disclosure.

23   In any case, contacts with Grant cannot create the contacts needed for personal jurisdiction

24   because those contacts were compelled when the Does sued Kamehameha Schools and retained

25   Grant. Complaint ¶ 9. Kamehameha Schools had no choice but to respond to the litigation and

26   deal with the Does' chosen lawyer. Such involuntary contact with the Does' chosen

27   representative is not a contact for jurisdictional purposes. It is well established that "unilateral

28   activity of another party or a third person is not an appropriate consideration when determining

1 whether a defendant has sufficient contacts with a forum State to justify an assertion of

2 jurisdiction." *Helicopteros,* 466 U.S. at 417 (plaintiff's unilateral choice of Texas bank from

3 which to pay defendant did not create jurisdiction in Texas); *Kulko,* 436 U.S. at 93 (spouse's

4 unilateral choice to spend time in California while having custody of child did not give

5 California jurisdiction over other spouse in domestic-relations case); *Hanson,* 357 U.S. at 253

6 (trust settlor's unilateral decision to move to Florida and execute documents there did not subject

7 trustee to Florida jurisdiction). *See Brunson v. Kalil & Co.,* 404 F. Supp. 2d 221, 234 (D. D.C.

8 2005) (defendant's settlement negotiations with plaintiff's lawyer in forum did not support

9 specific jurisdiction; settlement talks merely evidenced defendants' desire to be paid, not to

10 transact business in forum).

11       Finally, it would be futile for the Does to argue that the alleged threat to sue Grant

12 eventually made its way back to Grant in California, even if indirectly through an intermediary.

13 There is no allegation that Kamehameha Schools sent any threat to sue into California, but it

14 would not matter if it had.  Threatening to sue is not sufficient to establish personal jurisdiction

15 in the recipient's home forum.  If it were, prospective plaintiffs could not initiate informal

16 settlement talks without subjecting themselves to far-away jurisdiction.  *Yahoo,* 433 F.3d at

17 1202, 1208-09 (letter threatening to bring legal action unless California web site operator

18 stopped selling certain merchandise was not sufficient to create personal jurisdiction in

19 California); *Douglas Furniture Co. v. Wood Dimensions, Inc.,* 963 F. Supp. 899, 903 (C.D. Cal.

20 1997) (similar).[5]

21       Nor would it be reasonable to exercise jurisdiction in California based on such

22 thin contacts.  Kamehameha Schools is a Hawai`i citizen whose only California contacts arose in

23 prior litigation initiated by the Does.  The Does' injunction claim does not arise out of those

24 _____

25 [5] A threat to sue might support jurisdiction in an appropriate case if the threat itself were unlawful.  *See Yahoo,* 433 F.3d at 1208 (distinguishing "abusive, tortious, or otherwise

26 wrongful" threat-to-sue letters such as those in *Bancroft & Masters,* 223 F.3d at 1087).  That is not this case.  Grant does not allege that Kamehameha Schools' alleged threat to sue was

27 unlawful; he merely seeks a declaration that he is not liable for Goemans' disclosure.  Complaint ¶ 32.

28

contacts, but out of threats supposedly made by a Hawai`i lawyer in Hawai`i, in response to disclosure of confidential information to a Hawai`i newspaper. Exercising jurisdiction would not comport with "fair play and substantial justice," and the Court should not do so. *See Yahoo,* 1205-06; *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

In short, the Does have not "adequately establish[ed] that there is at least a reasonable probability of ultimate success upon the question of jurisdiction when the action is tried on the merits.'" *Enterprise,* 762 F.2d at 470-71. The Court should deny the preliminary injunction.

### 2. The Court Lacks Subject Matter Jurisdiction Over the Does' Claims

Even aside from the probable lack of personal jurisdiction, the Does have not established a reasonable probability of subject matter jurisdiction. The Does do not allege that their claim arises under federal law, and it does not. *See* 28 U.S.C. § 1331 (federal-question jurisdiction). There is no diversity of citizenship, since the Does and Kamehameha Schools are all citizens of Hawai`i. *See* 28 U.S.C. § 1332; Complaint ¶ 8 (Grant's allegation that Does are citizens of Hawai`i); Does' Answer to Complaint ¶ 1 (admitting this allegation); Cross-Claim ¶ 6 (Kamehameha Schools is a citizen of Hawai`i). Instead, for their injunction claim against Kamehameha Schools, the Does rely on supplemental jurisdiction under 28 U.S.C. § 1367 (2008. Cross-Claim ¶ 1. Supplemental jurisdiction, however, does not apply.

Supplemental jurisdiction extends only to claims "so related to claims in the action within [the Court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. §1367(a). To form the same case or controversy, claims "must derive from a common nucleus of operative fact" so that "considerations of judicial economy, convenience, and fairness to litigants" support joining the claims in one judicial proceeding. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725-26 (1966); *see Ruud v. U.S. Dep't of Labor*, 347 F.3d 1086, 1089 n.3 (9th Cir. 2003) (noting that Congress codified the *Gibbs* test at 28 U.S.C. § 1367).

Here, the only claims arguably within the Court's original jurisdiction are those

1  that may fall within diversity jurisdiction:  Grant's claims against Kamehameha Schools and the

2  Does (California vs. Hawai`i citizens), and the Does' counterclaim against Grant (Hawai`i vs.

3  California ctizens), which seek to avoid or transfer liability for Goemans' disclosure.  Those

4  claims and the Does' injunction claim must derive from a common nucleus of operative fact for

5  supplemental jurisdiction to apply.  *See* § 1367(a); *Gibbs,* 383 U.S. at 725-26.  They do not.  The

6  "operative facts" on the two claims are different, either claim could easily be decided without the

7  other, and liability on the injunction claim does not depend in any way on liability in the

8  declaratory-relief claims.

9         Specifically, the operative facts in the claims within diversity jurisdiction revolve

10  around Goemans' disclosure of a confidential settlement term to the media, and whether the

11  Does and/or Grant are liable for that disclosure.  Grant claims that he is not liable "whether in

12  contract or tort or on any other basis whatsoever."  Complaint ¶ 32.  The Does claim that "they

13  are not responsible" for Goemans' disclosure, that Goemans is not a party to the agreement, that

14  Goemans' disclosure "does not constitute a breach of the confidentiality provision," and that

15  Grant owes them indemnity if they are liable for Goemans' disclosure.  Cross-Claim ¶¶ 10, 18,

16  20, 21-31.

17         In contrast, the injunction claim revolves around totally different facts.  The Does

18  allege that the settlement agreement bars Kamehameha Schools from identifying the Does in the

19  course of obtaining judicial remedies, that their safety will be imperiled if their names are

20  revealed, and that Kamehameha Schools threatened to do so in the course of obtaining a writ of

21  attachment.  *See* Cross-Claim ¶¶ 7, 11-13.

22         It does not matter that all claims ultimately trace back to the settlement

23  agreement.  The test is commonality of "*operative*" facts.  *Gibbs,* 383 U.S. at 725-26 (emphasis

24  added).  Mere overlap of factual *background* does not suffice.  *See, e.g., Council of Unit Owners*

25  *of Wisp Condominium, Inc. v. Recreational Industries, Inc.*, 793 F. Supp. 120, 122 (D. Md. 1992)

26  (where defendant withdrew its rooms from plaintiff hotel's listing and established competing

27  hotel, court's original jurisdiction over antitrust claim based on defendant's refusal to provide

28  access to amenities did not confer supplemental jurisdiction over claim that withdrawal violated

15

contract; though both arose from defendant's withdrawal, the claims involved different operative facts); *Madery v. Int'l Sound Technicians*, 79 F.R.D. 154, 157 (C.D. Cal. 1978) (plaintiff's federal sex-discrimination claim and state-law emotional-distress claims all concerned her employment with defendants, but "are not derived from a common nucleus of operative facts"); *Hensley v. City of San Buenaventura*, No. 07-CV-0398-W (NLS), 2008 WL 768134, *5-6 (S.D. Cal. March 18, 2008) (no supplemental jurisdiction even though all claims arose out of the same property, because property was taken by different people at different times; there was "no common nucleus of operative facts.").

Because the key differences between the operative facts in the declaratory-relief and injunctive-relief claims make supplemental jurisdiction unlikely, the Does have failed to establish that the Court probably has subject matter jurisdiction. The preliminary injunction should be denied.

**B.     Even If Jurisdiction Existed, the Does Have Not Met the Requirements for Preliminary Injunctive Relief**

**1.     The Standard for Preliminary Injunctive Relief**

As this Court recently stated, "[a] preliminary injunction represents the exercise of a very far reaching power never to be indulged except in a case clearly warranting it." *Henderson v. Felker,* No. CIV S-06-1325 FCD EFB P, 2008 WL 650253, *1 (E.D. Cal. March 5, 2008) (citing *Dymo Indus. v. Tapeprinter, Inc.,* 326 F.2d 141, 143 (9th Cir. 1964)). This is not such a case.

The standard the Does must meet to obtain preliminary injunctive relief is well established. To obtain such relief, the Does must demonstrate: (1) probable success on the merits and irreparable injury or (2) serious questions going to the merits, with the balance of hardships tipping sharply in the Does' favor. *See Helix Elec., Inc. v. Div. of Labor Standards Enforcement,* No. Civ. 05-2303 FCD KJM, 2006 WL 464083, *2 (E.D. Cal. Feb. 27, 2006), *aff'd,* 203 Fed. Appx. 813 (9th Cir. 2006); *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,* 240 F.3d 832, 839-40 (9th Cir. 2001). "Under either formulation of the test, a plaintiff must still demonstrate a significant threat of irreparable injury." *Helix,* 2006 WL 464083, at *2; *Oakland*

*Tribune, Inc. v. Chronicle Pub. Co.*, 762 F.2d 1374, 1376 (9th Cir. 1985). A plaintiff must do more than merely allege imminent harm sufficient to establish standing; it must demonstrate "immediate" threatened injury as a prerequisite to preliminary injunctive relief. *Henderson,* 2008 WL 650253, *2; *Los Angeles Memorial Coliseum Comm'n v. National Football League,* 634 F.2d 1197, 1201 (9th Cir. 1980).

### 2. The Does Cannot Establish Probable Success on the Merits or the Threat of Immediate Irreparable Injury

The Does have failed to meet their burden to demonstrate probable success on the merits and irreparable harm. Simply put, the absence of even the *threat* of the disclosure of the Does' identities by Kamehameha Schools destroys in one breath any possibility of success on the merits and any threat of irreparable harm.

Regarding the merits, the Does' request for injunctive relief arises solely from their First Claim for Relief (Cross-Claim ¶¶ 4-16), which is premised on an alleged anticipated disclosure of the Does' identities by Kamehameha Schools in violation of the Settlement Agreement. There is no dispute that, to date, Kamehameha Schools has not breached any part of the Settlement Agreement, including any of its confidentiality provisions. Rather, the dispute concerns the alleged *intent* of Kamehameha Schools to take *future* action in breach of the confidentiality provisions. Thus, the Does' motion for injunctive relief rests entirely on the alleged *threat* by Kamehameha Schools to make a *future* disclosure of the Does' identities in violation of the settlement terms. *See* Ex Parte Motion at 2 ("the Estate has now nevertheless threatened to disclose the Does' identities"). If there was no such threat (and there was not, *see infra*), there is no possibility that the Does can establish the merits of their First Claim for Relief and, in turn, no basis for the requested preliminary injunction.

Similarly, the Does' ability to show the immediate threat of irreparable injury depends entirely on establishing an immediate threat by Kamehameha Schools to disclose their identities in any future litigation. If there was no such threat, then, by definition, the Does cannot establish the threat of irreparable harm, and there is no basis for the requested injunction.

The irrefutable evidence shows that no threat to disclose the Does' identities was

1   ever made to the Does or their attorneys by Kamehameha Schools or anyone acting on its behalf.

2   *See* Schulmeister Decl. ¶ 8 ; Wong Decl ¶ 5.  While Kamehameha Schools believes the

3   Settlement Agreement was breached by the disclosure of its monetary terms, the Estate has no

4   intention to disclose the Does' identities in connection with any future litigation over the breach

5   or any effort to obtain any post-judgment remedy.  Wong Decl. ¶ 5.  Rather, the Estate continues

6   to evaluate its rights and claims.  *Id.*  The Estate has made clear that, regardless of what it

7   decides at the conclusion of this evaluation, it will not under any circumstances violate the

8   Settlement Agreement.  *Id.* ¶ 6.  It will not publicly identify the Does without a court order

9   obtained after notice and hearing, should such an order become necessary to vindicate its rights.

10  *Id.*  In short, Kamehameha Schools does not intend to disclose the Does' identities in this or any

11  future litigation and, thus, no threat to do so was made to the Does or their attorneys.

12          The Estate's outside counsel, Schulmeister, has confirmed under oath that he

13  never stated any threat to disclose the Does' identities.  Schulmeister Decl. ¶¶ 5-12.  In that

14  regard, Schulmeister's Declaration is quite specific as to what he said to the Does' attorney,

15  Kuniyuki, during their March 24, 2008 meeting and the weeks thereafter.  He told Kuniyuki that

16  the Estate believed the Settlement Agreement had been breached, that it was entitled to damages,

17  and that it was concerned that the settlement proceeds might be hidden or dissipated.  *Id.* ¶ 6.  He

18  suggested that the Does could allay this concern by depositing $2 million in an escrow or trust

19  account.  *Id.*  He further explained that a public lawsuit could make it difficult to preserve the

20  Does' anonymity, particularly at the post-execution stage (when, of course, third parties beyond

21  Kamehameha Schools' influence or control could be involved in effecting a writ of attachment or

22  garnishment).  *Id.* ¶ 5.  At no time did he state that the Estate had already decided to file a

23  lawsuit; that the Estate was going to unilaterally disclose the Does' identities in connection with

24  any future lawsuit; or that the Estate's efforts to obtain any pre- or post-judgment remedy would

25  necessarily disclose the Does' identities.  *Id.* ¶ 8.  Schulmeister made it clear to Kuniyuki that his

26  purpose in meeting with him was to try to reach an accommodation that would save all parties

27  time and money and give his clients complete protection that their anonymity would be

28  maintained by avoiding risks created by the litigation process.  *Id.*

1    The only contrary "evidence" proffered by the Does is the self-serving,

2    uncorroborated statement of their attorney Kuniyuki, who only described Schulmeister's

3    statements "in substance."  Declaration of Ken T. Kuniyuki ¶ 3.  Thus, he makes the conclusory

4    (and false) assertion that Schulmeister told him that "the Estate would shortly file a breach of

5    contract action against [the Does]; . . . the Estate was also going to seek a writ of attachment

6    against [the Does] to secure its damage claim of $2 million; and . . . it intended to disclose [the

7    Does] identities in its Court filings."  *Id.*  As the Declarations of Colleen I. Wong and David

8    Schulmeister make clear, this is a complete misrepresentation of (1) the Estate's position and (2)

9    Schulmeister's statements regarding its position.  The Estate is still evaluating its claims and

10   remedies and has no intention of disclosing the Does' identities in connection with any future

11   litigation.  Accordingly, there is no basis for the requested preliminary injunctive relief.

12   In *Helix Electric*, this Court denied the plaintiff's motion for a preliminary

13   injunction because it failed to show either the likelihood of irreparable harm or probable success

14   on the merits.  *Helix Electric,* 2006 WL 464083, at *2.  There, an electrical contractor sought to

15   enjoin the County from releasing the home addresses of the contractor's employees to a labor

16   organization on the ground that such disclosure would expose non-union employees to

17   harassment or intimidation by union organizers.  The Court found that the plaintiff had failed to

18   show that the employee information would be improperly used and that, therefore, the potential

19   injury to the employees was "wholly speculative."  *Id.*

20   Similarly, here, the Does have failed to show that Kamehameha Schools intends

21   or ever threatened to disclose the Does' identities in violation of the Settlement Agreement.  In

22   the absence of evidence substantiating the Does' allegations, the potential for injury to the Does

23   is "wholly speculative."  As the Court stated in *Helix Electric*: "Speculative injury does not

24   constitute irreparable harm."  *Id.* (quoting *Colorado River Indian Tribes v. Town of Parker,* 776

25   F.2d 846, 849 (9th Cir. 1985)).  Nor does it establish the merits of the Does' claim.  Having

26   offered nothing but rank speculation, wrapped in a misstatement of the Estate's position in this

27   matter, the Does have not satisfied their burden for the issuance of a preliminary injunction.

28

1   IV.   CONCLUSION

2         For all of these reasons, the Does' motion for a preliminary injunction should be

3   denied.

4

    DATED:  April 14, 2008                    Bingham McCutchen LLP
5
                                              Alston Hunt Floyd & Ing
6

7

                                              By:              /s/ Paul Alston
8                                                 Paul Alston
                                              Attorneys for Defendants
9                                             KAMEHAMEHA SCHOOLS/BERNICE PAUAHI
                                              BISHOP ESTATE; J. DOUGLAS ING, NAINOA
10                                            THOMPSON, DIANE J. PLOTTS, ROBERT K.U.
                                              KIHUNE, and CORBETT A.K. KALAMA, in their
11                                            capacities as Trustees of the Kamehameha
                                              Schools/Bernice Pauahi Bishop Estate
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28