| | |
|---|---|
| 1 | Bingham McCutchen LLP |
|   | CHARLENE S. SHIMADA (SBN 91407) |
| 2 | charlene.shimada@bingham.com |
|   | Three Embarcadero Center |
| 3 | San Francisco, CA  94111-4067 |
|   | Telephone:  415.393.2000 |
| 4 | Facsimile:  415.393.2286 |
| 5 | Alston Hunt Floyd & Ing |
|   | PAUL ALSTON (Admitted Pro Hac Vice) |
| 6 | palston@ahfi.com |
|   | 18th Floor American Savings Bank Tower |
| 7 | 1001 Bishop Street |
|   | Honolulu, HI  96813 |
| 8 | Telephone:  808.524-1800 |
|   | Facsimile:  808-524-4591 |
| 9 |   |
|   | Attorneys for Defendants |
| 10 | KAMEHAMEHA SCHOOLS/BERNICE |
|   | PAUAHI BISHOP ESTATE; J. DOUGLAS |
| 11 | ING, NAINOA THOMPSON, DIANE J. |
|   | PLOTTS, ROBERT K.U. KIHUNE, and |
| 12 | CORBETT A.K. KALAMA, in their capacities |
|   | as Trustees of the Kamehameha |
| 13 | Schools/Bernice Pauahi Bishop Estate |

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| 16 | ERIC GRANT, | No. 08-00672 FCD-KJM |
| 17 | Plaintiff, | DECLARATION OF DAVID SCHULMEISTER IN SUPPORT OF KAMEHAMEHA SCHOOLS DEFENDANTS' OPPOSITION TO JOHN AND JANE DOE'S MOTION FOR PRELIMINARY INJUNCTION |
|    | v. | |
| 18 |   | |
| 19 | KAMEHAMEHA SCHOOLS/BERNICE PAUAHI BISHOP ESTATE; J. DOUGLAS ING, NAINOA THOMPSON, DIANE J. PLOTTS, ROBERT K.U. KIHUNE, and CORBETT A.K. KALAMA, in their capacities as Trustees of the Kamehameha Schools/Bernice Pauahi Bishop Estate; JOHN DOE; and JANE DOE, | |
| 20 | | |
| 21 | | |
| 22 | Defendants. | |
| 23 | JOHN DOE and JANE DOE, | Date:  April 17, 2008 |
|    |                        | Time:  4:00 p.m. |
|    | Cross and Counter-Claimants, | Courtroom:    2 |
| 24 | v. | Before:  Hon. Frank C. Damrell, Jr. |
| 25 | KAMEHAMEHA SCHOOLS/BERNICE PAUAHI BISHOP ESTATE; J. DOUGLAS ING, NAINOA THOMPSON, DIANE J. PLOTTS, ROBERT K.U. KIHUNE, and CORBETT A.K. KALAMA, in their capacities as Trustees of the Kamehameha Schools/ Bernice Pauahi Bishop Estate; and ERIC GRANT, | |
| 26 | | |
| 27 | | |
| 28 | Cross and Counter-Defendants. | |

DECLARATION OF DAVID SCHULMEISTER IN SUPPORT OF KAMEHAMEHA SCHOOLS DEFENDANTS' OPPOSITION
TO JOHN AND JANE DOE'S MOTION FOR PRELIMINARY INJUNCTION; CASE NO.08-00672 FCD-KJM

I, David Schulmeister, declare as follows:

1. I am a member of Cades Schutte LLP ("Cades Schutte") and make this declaration based upon personal knowledge.

2. As a member of Cades Schutte, I serve as outside counsel on various matters for the Kamehameha Schools/Bernice Pauahi Bishop Estate and J. Douglas Ing, Nainoa Thompson, Diane J. Plotts, Robert K.U. Kihune, and Corbett A.K. Kalama, in their capacities as Trustees of the Kamehameha Schools/Bernice Pauahi Bishop Estate (collectively, the "Kamehameha Schools" or the "Estate").

3. One such matter that I served as outside counsel for the Kamehameha Schools was to defend it with other outside counsel against claims brought by "John Doe, a minor, by his mother and next friend, Jane Doe" in litigation initiated on June 25, 2003 in the United States District Court for the District of Hawaii and assigned Civil No. CV03-00316 ACK LES (the "Underlying Litigation"), which sought declaratory relief, a permanent injunction, and compensatory and punitive damages. A true and correct copy of the complaint filed by attorneys John W. Goemans, Eric Grant, and James F. Sweeney in the Underlying Litigation is attached hereto as Exhibit "A."

4. Following the February 8, 2008 publication in The Honolulu Advertiser of details of the confidential settlement agreement entered into between the Kamehameha Schools and "Jane Doe" and "John Doe" to resolve the Underlying Litigation that were reportedly revealed by John Goemans, I was requested by the general counsel of the Kamehameha Schools to explore with the current Hawaii counsel for the Does, Ken T. Kuniyuki, the possibility of resolving the breach of the confidentiality provision of the settlement agreement without the necessity of filing a lawsuit.

5. On March 24, 2008, I met with Mr. Kuniyuki in my office in Honolulu. I told him that the Estate believes the settlement agreement had been breached and that it is entitled to damages. I further explained that a public lawsuit could make it difficult for that anonymity to be preserved, particularly at the post judgment execution stage, but I assured him the Estate was cognizant of Does' desire to remain anonymous.

1

6. I also told him the Estate was concerned that the settlement proceeds, which were seen as the primary source of recovery for the Estate, might be hidden or dissipated. I suggested that this concern could easily be allayed by the Does depositing the sum of $2 million dollars in an escrow or trust account, which would then give the parties ample time to try to resolve the matter free of any concerns over whether the proceeds would remain available, and without the need to file a lawsuit.

7. I asked Mr. Kuniyuki to consider my suggestion, discuss it with his clients, and let me know whether this would be agreeable. I also invited him to consider with his clients making an alternative proposal for how to move the matter to an acceptable resolution.

8. At no time during this meeting did I state that the Estate had already decided to file a lawsuit; that the Estate was going to unilaterally disclose the Does' identities in connection with any future lawsuit; or that the Estate's efforts to obtain any pre- or post-judgment remedy would necessarily disclose the Does' identities. I did say that some future disclosure might occur, but I was contemplating disclosure by third parties (such as someone involved in effecting a writ of attachment or garnishment), not unilateral disclosure by the Estate or anyone acting on its behalf. I made it clear to Mr. Kuniyuki that my purpose in meeting with him was to try to reach an accommodation that would save all parties time and money and give his clients complete protection that their anonymity would be maintained by avoiding risks created by the litigation process.

9. At no time during this meeting did I say that the Estate intended to sue Eric Grant. While Mr. Kuniyuki stated that he and his clients believed any deposit of funds should be made by Mr. Grant and/or Mr. Goemans, I did not express any view one way or the other on what the source of the funds should be.

10. At the close of the meeting, I advised Mr. Kuniyuki that I would be traveling out of the state during the week of March 31, 2008, and he responded that he could easily get back to me before I left.

11. My next communication with Mr. Kuniyuki was on March 28, 2008, when I called to him to remind him that I would be traveling the following week, and that he had

promised to get back to me before I left.  During that conversation, which lasted only a few minutes, he stated that the Does had unsuccessfully sought to have Mr. Grant and Mr. Goemans contribute towards a deposit, and that the Does refused to do so.

12. I then asked him if he had any alternative proposal to make, to which he responded in the negative.  He then stated that he did not believe it would be necessary for the Does to be identified prior to my client establishing its entitlement to any specific amount of damages or to any pre-judgment remedy.  He did not, however, ask me whether I agreed with this assertion or for any assurances that the Does' identities would not be disclosed by the Estate without prior court approval.  If he had requested such an assurance, I would have given it to him without qualification.

13. At no time prior to this action being filed did Mr. Kuniyuki or anyone else advise me that this action was being contemplated or that such an assurance was desired by the Does.

I declare under penalty of law that the foregoing is true and correct.

DATED:  Honolulu, Hawaii, April 10, 2008.

/s/ David Schulmeister
DAVID SCHULMEISTER
(original signature retained by Paul Alston)