JERRY H. STEIN (State Bar No. 78309)
LEVIN & STEIN
28494 Westinghouse Place, Suite 201
Valencia, California 91355
Telephone: (310) 207-4663
Facsimile: (310) 207-2803
Email: jstein@lscslaw.com

KEN T. KUNIYUKI
KUNIYUKI & CHANG
Suite 2660, Pauahi Tower
1003 Bishop Street
Honolulu, HI 96813-3429
Telephone: (808) 524-4111
Facsimile: (808) 521-2389
Email: ken@law-hawaii.com

Attorneys for Defendants, Counter and Cross-Claimants JOHN DOE and JANE DOE

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC GRANT,<br><br>    Plaintiff,<br>    v.<br>KAMEHAMEHA SCHOOLS/BERNICE PAUAHI BISHOP ESTATE; J. DOUGLAS ING, NAINOA THOMPSON, DIANE J. PLOTTS, ROBERT K.U. KIHUNE, and CORBETT A.K KALAMA, in their capacities as Trustees of the Kamehameha Schools/ Bernice Pauahi Bishop Estate; JOHN DOE; and JANE DOE,<br><br>    Defendants.<br><br>JOHN DOE; and JANE DOE,<br><br>    Counter-Claimants<br>    v.<br>KAMEHAMEHA SCHOOLS/BERNICE PAUAHI BISHOP ESTATE; J. DOUGLAS ING, NAINOA THOMPSON, DIANE J. PLOTTS, ROBERT K.U. KIHUNE, and CORBETT A.K KALAMA, in their capacities as Trustees of the Kamehameha Schools/ Bernice Pauahi Bishop Estate; and ERIC GRANT,<br><br>    Counter-Defendants | CASE NO.:08-00672 FCD-KSM<br><br>THE DOES' REPLY TO OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER AND FOR PRELIMINARY INJUNCTION |

**I    INTRODUCTION**

In its settlement agreement with the Does the Estate agreed not only that it would not disclose the Does' identities, but that this promise could be enforced by injunctive relief. Nevertheless, in its Opposition Cross-defendants Estate of Bernice Pauahi Bishop and Kamehameha Schools (collectively the "Estate") claim that the injunctive relief requested by the Does should be denied because the Does' motion is a "trumped up claim for injunctive relief premised on the false claim that Kamehameha Schools threatened to disclose the Does' identities in breach of the Settlement Agreement. In truth, Kamehameha Schools made no threat."[1] (Opposition, p 1, lns 17-20) The Estate's claim that no threat to disclose the Does' identity was made is based upon the Declaration of David Shulmeister ("Shulmeister"), the Estate's former attorney. Not only is Shulmeister's Declaration directly contradicted by the original and supplemental declarations of the Does' attorney, Ken T Kuniyuki ("Kuniyuki")[2], but a careful reading of Shulmeister's Declaration demonstrates that just as Kuniyuki testified,[3] Shulmeister threatened the Does with disclosure of their identities if they did not comply with the Estate's wishes.

Thus, Shulmeister admits that he told Kuniyuki that:

1.    "[T]he Estate believes the settlement agreement had been breached and that it is entitled to

---

[1]    Nowhere in its Opposition does the Estate explain why, if there was no threat from the Estate's attorneys to disclose the Does identities, would the Does would spend the considerable time and money necessary to pursue their claim for injunctive relief.

[2]    As demonstrated below, in the context of this Motion the Court need not resolve the conflict in testimony between Kuniyuki and Shulmeister. All the Court need to find to grant the inunction requested is that Kuniyuki's Declarations raise serious questions as to whether the threat was made, i.e., that the Does have a fair chance of success on the merits on this issue. *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 422 (9th Cir. 1991).

[3]    Kuniyuki testified that Schulmeister told Kuniyuki him that: (1) that the Estate's position was that Goemans disclosure of the monetary terms of the settlement constituted a breach of the confidentiality provision in the Agreement by the Does; (2) That the Estate was going to shortly file a breach of contract action against the Does in which the Estate was going to seek $2 million in damages; (3) That upon the filing of its action the Estate was also going to immediately seek a writ of attachment against the Does; and (4) That because the Estate was seeking a writ of attachment against the Does, it intended to disclose the Does' identities in its Court filings.

damages" from the Does. (Shulmeister Dec., ¶ 5, 1:24-26)

2. "[T]he Estate was concerned that the settlement proceeds, which were seen as the primary source of recovery for the Estate, might be hidden or dissipated." (Shulmeister Dec., ¶ 6, 2:1-2)

3. The Does should deposit $2 million in an escrow or trust account to alleviate the Estate's concerns. (Shulmeister Dec., ¶ 6, 2:2-5)

4. A public lawsuit could make it difficult for confidentiality of the Does' identities to be preserved. (Shulmeister Dec., ¶ 5, 26:-27)

5. **"[T]hat some future disclosure [of the Does' identities] might occur..."** (Shulmeister Dec., ¶ 8, 2:14-15)

Thus, even accepting for purposes of argument Shulmeister's version of the facts, what he told Kuniyuki was that it was the Estate's position that the Does were liable for Goemans' disclosure; that the Estate wanted the Does to deposit $2 million to secure the Estate's claim; and that if Does did not do what the Estate wanted and the Estate sued the Does, that it was likely that the Does' identities would be disclosed in the course of the litigation. That is a threat to disclose the Does' identities.[4]

Nor has the Estate effectively recanted its threat. The Estate repeatedly claims that it has no present intention to sue Grant, or to disclose the Does' identities. As explained by Charlene Wong, the Estate's general counsel, "...given the conflicting statements by the Does, Mr. Grant and Mr. Goemans regarding the wrongful disclosure of the monetary terms of the Settlement Agreement, Kamehameha Schools has been reviewing, and continues to evaluate, its rights and claims." Not only are the Does unaware of any conflicting statements by the Does, Grant and/or Goemans regarding the Goemans' disclosure of the

---

[4] Instead of actually telling Kuniyuki that disclosure of the Does' identities would occur when the Estate sought a writ of attachment against the Does, Shulmeister claims that this was only something that he "was contemplating." (Shulmeister Dec., ¶ 8, 2:14) Apparently Kuniyuki must be mind reader because in a subsequent conversation with Shulmeister, Shulmeister acknowledged that Kuniyuki told Shulmeister that Kuniyuki did not believe it would be necessary for the Does to be identified prior to the Estate establishing its entitlement to any pre-judgment remedy. (Shulmeister Dec., ¶ 12, 3:5-7) Shulemister's Declaration leaves unanswered the question of why would Kuniyuki be concerned about the Estate's need to disclose the Does' identities in connection with an application for a writ of attachment if the subject had not been previously raised by Shulmeister.

monetary terms of the Settlement Agreement,[5] but such a statement is clearly inconsistent with the statement in Wong's and Shulmeister's Declaration that the Estate's position is that the settlement agreement was breached by the Does.

The bottom line is that if the Court denies the requested preliminary injunction, there is nothing to prevent the Estate from filing suit against the Does and Grant in a week or in a month; and nothing to prevent the Estate from disclosing the Does' identities. As demonstrated in the Does' moving papers, given the threat that has already been made and the potential of devastating harm to the Does, the Court should exercise its equitable powers and issue the injunction requested.

In addition to claiming that the Does "trumped up" their claim for an injunction, the Estate also claims that, as a matter of law, the Court lacks personal and subject matter jurisdiction. As admitted in the Estate's Opposition, the Court need not decide the jurisdictional issues in the context of this motion. Rather, so long as the Court finds that there is a reasonable probability that the Court has personal jurisdiction over the Estate the Court can issue the injunction requested.[6]

As will be demonstrated below, for purposes of this motion it is undisputed that the contract that is at the center of this dispute, the settlement agreement in the underlying litigation was negotiated in California and was to be performed by the Estate in California and was designed, at least in part, to prevent a California resident, Grant, from disclosing the terms of the settlement. Given these facts, there is ample case law to support a finding that this Court has jurisdiction of the claims of both Grant and the Does.

**II      BOTH PERSONAL AND SUBJECT MATTER JURISDICTION EXIST IN THIS CASE**

   A.     <u>Applicable Legal Standard</u>

As acknowledged in the Estate's Opposition, California's long-arm jurisdictional statute is coextensive with federal due process requirements, so that the jurisdictional analysis under state law and federal due

---

[5] It is undisputed that at the Does' insistence Grant obtained an injunction from the California Superior Court to prevent Goemans from disclosing the terms of the settlement and that Goemans simply ignored the injunction. As a result the Court recently found Goemans in contempt, fined him $4,000; ordered him to reimburse Grant's attorneys' fees and to serve 8 days in county jail.

[6] The Does incorporate by reference the facts and arguments set forth in Eric Grant's Brief filed with respect to jurisdictional issues.

process are the same. *Cal. Civ. Proc. Code* § 410.10; *Roth v. Garcia Marquez*, 942 F.2d 617, 620 (9th Cir. 1991). In order for a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have "minimum contacts" with the forum state so that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945). Depending on the nature of the contacts between the defendant and the forum state, personal jurisdiction is characterized as either general or specific. A court has general jurisdiction over a nonresident defendant when that defendant's activities within the forum state are "substantial" or "continuous and systematic," even if the cause of action is "unrelated to the defendant's forum activities." *Data Disc, Inc. v. Sys. Tech. Assoc., Inc.*, 557 F.2d 1280, 1287 (9th Cir. 1977).

The standard for establishing general jurisdiction is "fairly high" and requires that the defendant's contacts be substantial enough to approximate physical presence. *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). "Factors to be taken into consideration are whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there." Id.

A court may assert specific jurisdiction over a claim for relief that arises out of a defendant's forum-related activities. *Rano v. Sipa Press, Inc.*, 987 F.2d 580, 588 (9th Cir. 1993). The test for specific personal jurisdiction has three parts: (1) the defendant must perform an act or consummate a transaction within the forum, purposefully availing himself of the privilege of conducting activities in the forum and invoking the benefits and protections of its laws; (2) the claim must arise out of or result from the defendant's forum-related activities; and (3) exercise of jurisdiction must be reasonable. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). The plaintiff bears the burden of satisfying the first two prongs, and if either of these prongs is not satisfied, personal jurisdiction is not established. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). If the plaintiff establishes the first two prongs regarding purposeful availment and the defendant's forum-related activities, then it is the defendant's burden to "present a compelling case" that the third prong, reasonableness, has not been satisfied. *Schwarzenegger*,

374 F.3d at 802.[7]

The purposeful availment prong is treated differently in a contract case. Because a contract is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction," a court must evaluate four factors to determine whether this prong is met: (1) prior negotiations, (2) contemplated future consequences, (3) the terms of the contract, (4) the parties' actual course of dealing. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478-479, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985).

Generally, negotiation, formation, and performance of contracts within a jurisdiction constitute a business transaction sufficient to establish personal jurisdiction. See *Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004)* ["A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there."]; *Daar & Newman v. Vrl International* (2005) 129 Cal. App. 4th 482; 492-493, 28 Cal. Rptr. 3d 566; *Vorys, Sater, Seymour & Pease v. Ryan* (1984) 154 Cal. App. 3d 91, 94, 200 Cal. Rptr. 858; *Brunson v. Kalil & Co.,* 404 F. Supp. 2d 221 (D. D.C. 2005) ["It is true that both the United States Court of Appeals and the District Court in this Circuit have held that negotiation, formation, and performance of contracts constitute a business transactions under [the D.C.'s long-arm statute]."

To justify personal jurisdiction, a plaintiff need not show multiple transactions by defendant within a forum state; a single transaction of business within the state may constitute sufficient contact. *Henry R. Jahn & Son v. Superior Court* (1958) 49 Cal.2d 855, 861, 323 P.2d 437; *Daar & Newman v. Vrl International, supra.*

If this were a motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, the Does would only need make a prima facie showing of jurisdictional facts to withstand the motion to dismiss. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995); *Doe v. Unocal Corp.*, 27 F. Supp. 2d 1174, 1181

---

[7] The Estate has not attempted to meet its burden with respect to the third prong, reasonableness. Consequently, the Court need not consider this prong in deciding this Motion.

(C.D. Cal. 1998), aff'd, 248 F.3d 915 (9th Cir. 2001). The Does' version of the facts would be taken as true for purposes of the motion if not directly controverted, and conflicts between the parties' affidavits must be resolved in the Does' favor for purposes of deciding whether a prima facie case for personal jurisdiction exists. *AT & T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996); *Unocal*, supra, 27 F. Supp. 2d at 1181. With respect to this Motion, the Does' burden of establishing jurisdiction is even less as the Estate acknowledges that all the Does must do is establish a reasonable probability that jurisdiction exists.

B. <u>Application of the Law To the Facts of This Case</u>.

1. *A Reasonable Probability Exists For Establishing General Jurisdiction Over The Estate.*

When the Court granted the Temporary Restraining Order in this case it required the Estate Opposition to be filed by 4:00 p.m. on Friday April 11th and the Does Reply by 4:00 p.m. on April 15th. In an attempt to avoid the hearing on the preliminary inunction and allow the parties time to negotiate an agreement that would avoid the necessity of proceeding with the preliminary injunction hearing, the Does agreed to extend the time for the filing of the Estate's Opposition until 4:00 p.m on Monday April 14th. When such an agreement could not be reached, the Does ended up with only 24 hours to respond to the Estate's Opposition, which made it impossible for the Does to conduct any meaningful analysis of the Estate's overall contacts with California. However, it is clear even from a quick perusal of information available on the internet that the Estate is no stranger to California. Thus, the Estate has bought and sold substantial property in California including a sale of property in Riverside California in June of 2003 that had a mortgage against it of $19,400,000. [Exhibit 1 to Stein's Decl.] In addition, according to its web site the Kamehameha Schools appears to provide scholarships for study in California. While the full extent of the Estate's activities in California will not be known until discovery is conducted on this issue, there is a reasonable probability of establishing general jurisdiction over the Estate in California. However, even if ultimately there is not general jurisdiction over the Estate, as demonstrated below, there is a strong probability of establishing specific jurisdiction over the Estate.

2. *There Is A Strong Probability For Establishing Specific Jurisdiction Over The Estate.*

As set forth above, for purposes of this Motion the Does and Grant's version of the facts must be

taken as true if not directly controverted, and conflicts between the parties' affidavits must be resolved in plaintiff's favor for purposes of deciding whether a prima facie case for personal jurisdiction exists. *AT & T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996). Here, the relevant jurisdictional allegations from Grant's Complaint are:

1. While the Does' petition was under consideration by the Supreme Court, the Does and the Estate engaged in settlement negotiations. "These negotiations were conducted in California, including a face-to-face meeting, exclusively by Plaintiff and [the Estate's] California counsel working from California." (Complaint § 14) (Jane Doe Dec., § 7)

2. Grant executed the settlement, approving it as to form, in California as did the Estate's California counsel. (Complaint § 15)

3. Pursuant to the terms of the settlement agreement, the Estate's payment was to be made to a specified bank in California. (Complaint § 16)

4. In the Honolulu Advertiser Article (Exhibit 3 to Doe's Declaration) Goemans claimed "an attorney representing Grant breached the confidentiality clause by mailing a copy of the agreement to Goemans last year." The transmittal of the agreement to Goemans took place in California. (Kuniyuki Decl, ¶ 7)

4. The Estate originally claimed that Grant is liable for Goemans' disclosure of the terms of the settlement. (Complaint § 16)

5. While the Estate claims it has no present intention to sue Grant, it has refused to acknowledge it has no claim against Grant and claims that it is still evaluating its claims against Grant. (See Alston's April 9th Email, Exhibit 2 to Stein's Dec. )[8]

---

[8] In *Societe de Conditionnement en Aluminum v. Hunter Engineering Co.*, 655 F.2d 938, 944-945 (9th Cir. 1981), a representative of Hunter threatened litigation. After the plaintiff filed an action for declaratory relief, as the Estate did here, Hunter claimed it had no present intention of filing an action against the plaintiff and, therefore, there was no case of controversy on which an declaratory relief
(continued...)

6. The Estate's claim that the Does are liable to the Estate for $2 million in damages is not based upon any actual out of pocket losses incurred by the Estate as a result of Goemans' disclosure of the monetary terms of the settlement, but rather on the Estate's position that it would have settled the case for $2 million less but for the inclusion of the confidentiality provision. (Kuniyuki Dec. § 4)

7. The crux of both Grant and the Does' declaratory relief action is whether they are liable under the terms of the settlement agreement for Goemans' disclosure.

Thus, what the record before the Court demonstrates is that the settlement agreement was negotiated in California; was to be performed in California by the Estate by payment to a specified California bank, the agreement (according the Estate) was designed at least in part to prevent a disclosure of the terms of the settlement by Grant, a California resident,[9] and to the extent that there was conduct that potentially makes Grant liable, the transmittal of the settlement agreement to Goemans, that conduct occurred in California. Under these facts specific jurisdiction clearly exists in an action that seeks to enforce the parties' rights under the settlement agreement that was negotiated, executed (by Grant) and performed in California. See for example, *3M v. Nippon Carbide Indus. Co.*, 63 F.3d 694, 698 (8th Cir. 1995) where the Court stated: "NCI argues that its contacts with Minnesota are insignificant because the essence of the dispute is foreign, but 'an ordinarily insignificant contact with a state becomes

---

[8](...continued)
action could be based. In rejecting this argument the Ninth Circuit explained:

> "It is not relevant that Hunter attempted to withdraw its "threat" after the filing of this lawsuit. We do think it relevant, in the light of the circumstances, that Hunter has not indicated that it will not sue SCAL for infringement or in any other manner agree to a non-adversary position with respect to the patent. **Thus, dismissal of this suit would leave SCAL with the 'Damoclean threat' of litigation hanging over its head**. (Citation Omitted)" [Emphasis Added]

Similarly, the Estate's we aren't going to sue you now but might in the future position in no way impacts either Grant or the Does' ability to proceed with their declaratory relief actions.

[9] If the Estate did not believe the settlement agreement was designed to prevent disclosure by Grant it would have acknowledged that it had no claim against Grant instead of reserving its right to sue Grant.

REPLY TO OPPOSITION MOTION FOR TEMPORARY RESTRAINING ORDER AND FOR PRELIMINARY INJUNCTION

constitutionally significant when it gives rise to the claim involved in the lawsuit.'(citations omitted). Here, the very suit is for breach of the contract that was made in Minnesota." Similarly, where the suits by Grant and the Does arise out of the very contract that was negotiated and to be performed (at least in part) in California, there is a strong probability that subject matter jurisdiction exists.

        3.    *The Estate's Arguments With Respect To Specific Jurisdiction are Irrelevant Because the Estate Misconstrues The Claims Being Made By The Parties.*

In its Opposition the Estate takes a very slanted view of what is at the heart of this action. Thus, at page 12 of its Opposition the Estate claims:

> "The causes of action here also do not arise out of Kamehameha Schools' having negotiated the settlement of the previous suit in California and wired the money to the Does' California counsel, Grant. Complaint ¶ 17. They arise out of Goemans' disclosure of a confidential settlement term and Kamehameha Schools' response in Hawai`I to that disclosure."

Actually, the Estate's hypothesis of what ultimately at issue in this case is inaccurate. In order to ultimately decide whether Doe and/or Grant are liable, the Court is going to have to have to construe the terms of the settlement to determine whether the Does and/or Grant are liable for Goemans' disclosure. Given that there is nothing on the face of the agreement that would make the Does or Grant liable for Goemans' disclosure, in order to prevail the Estate will have to somehow establish that during the negotiations between Grant and the Estate's California attorney that it was somehow agreed by the parties that the term "counsel" as used in the agreement referred to Goemans and that the parties understood that the Estate was, in substance, paying $2,000,000 for the confidentiality provision.

The Estate also claims that its actions in California can be ignored by the Court because:
> "In any case, contacts with Grant cannot create the contacts needed for personal jurisdiction because those contacts were compelled when the Does sued Kamehameha Schools and retained Grant. Complaint ¶ 9. Kamehameha Schools had no choice but to respond to the litigation and deal with the Does' chosen lawyer. Such involuntary contact with the Does' chosen representative is not a contact for jurisdictional purposes." (Opposition p. 12)

While the Estate may have been compelled to respond to the Does' lawsuit in Hawaii, it was not compelled to hire its own California counsel; to negotiate the settlement in California; or to agree to make payment in California. Simply put, the Estate's argument that its extensive contacts in California can be

ignored simply because the Does had a California counsel is ludicrous.

Because the case law cited by the Estate is designed the support their "straw man" arguments based upon their overly narrow and incorrect view of what is at issue in this litigation, the Does will not address the specific authorities cited by the Estate.

4.  *There Is A Strong Probability For Establishing Subject Matter Jurisdiction.*

The test for establishing supplemental jurisdiction is well settled. In *Council of Unit Owners of Wisp Condominium, Inc. v. Recreational Industries, Inc.*, 793 F. Supp. 120, 122 (D. Md. 1992), a case cited by the Estate, the Court summarized the test as follows:

> "In examining this Court's jurisdiction pursuant to § 1367(a), the initial inquiry is whether plaintiff's claim for injunctive relief is 'so related to' claims over which this Court has original jurisdiction that it forms part of the same case or controversy under Article III of the Constitution. The test for determining whether plaintiff's present motion constitutes the "same case or controversy" as its antitrust action has been articulated by the Supreme Court in *United Mine Workers v. Gibbs*, 383 U.S. 715, 16 L. Ed. 2d 218, 86 S. Ct. 1130 (1966). Under the Gibbs analysis of the doctrine of pendent jurisdiction, claims are part of the same case or controversy if they "derive from a common nucleus of operative fact" and "are such that . . . [they] would ordinarily be expected to . . . [be tried] in one judicial proceeding . . . ." Id. at 725."

The Estate then claims that the Does' injunction claim does not derive from a common nucleus of facts with Grant and the Does declaratory relief claims based upon the following argument: In their declaratory relief actions both Grant and the Does seek declaratory judgment to the effect that they are not liable to the Estate for Goemans' disclosure. The Estate then claims that the Does injunctive claim revolves around totally different facts, namely that: "that the settlement agreement bars Kamehameha Schools from identifying the Does in the course of obtaining judicial remedies, that their safety will be imperiled if their names are revealed, and that Kamehameha Schools threatened to do so in the course of obtaining a writ of attachment." (Opposition p. 15)

What the Estate conveniently ignores in making this argument that the merits of the injunction claim ultimately turn on the determination of whether Grant and/or the Goemans are responsible for the disclosure by Goemans. For example, if the Estate establishes that there was prior breach of the confidentiality provision by the Does, the Estate could take the position that as a matter of law it is no

11

longer bound by the prohibition against disclosing the Estate's identity. Even without its prior breach argument, the Estate's supposed justification for disclosing the Does' identities is its need to secure payment of its damage claim. If the Estate has no damage claim, then it has no justification for disclosing the Does' identities. Ultimately the ability of the Does to obtain injunctive relief in this case turns upon whether they are liable for Goemans' disclosure. In other words, the Estate's arguments on this issue are totally and completely without any real substance.

The cases cited by the Estate only highlight the absurdity of Estate's arguments. For example, in *Hensley v. City of San Buenaventura*, No. 07-CV-0398-W (NLS), 2008 WL 768134, 5-6 (S.D. Cal. March 18, 2008) the Court found that there was no supplemental jurisdiction even though all claims arose out of the same property, because the property was taken by different people at different times and, therefore, there was no common nucleus of operative facts. Clearly, the cases cited by the Estate involve totally different factual settings and are completely distinguishable from the case at bar.

**III     THE DOES HAVE MET THE TEST FOR A PRELIMINARY INJUNCTION**

In their moving papers the Does demonstrated that the test for the granting of preliminary injunction is that the moving party must show either (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised and the balance of hardships tips sharply in favor of the moving party. The Does also demonstrated that the greater the relative hardship to the moving party, the less probability of success must be shown.

The Estate does not challenge the Does recitation of the applicable law, but claims based upon the Shulmeister's Declaration that no threat of disclosure of the Does' identities was ever made. Shulmeister's Declaration is directly contradicted by Kuniyuki's original declaration and Kuniyuki's Supplemental Declaration filed with this Reply. Based upon the undisputed law in the Ninth Circuit the Court does not have to decide whether to believe Shulmeister or Kuniyuki. Rather, in order to grant the inunction requested all the Court has to decide is that Kuniyuki's testimony raises serious questions about

a threat being made (which it obviously does)[10] and that the balance of hardships tips sharply in favor of the moving party, which has never been disputed by the Estate.

While the Does believe they have an extremely strong case on the merits for injunctive relief, as demonstrated in the Does' moving papers, the greater the relative hardship to the moving party, the less probability of success must be shown. Given the fact that the balance of irreparable injury in this case is completely one sided, in reality the Does' only have a minimal burden of showing the likelihood of his success on the merits, which they have easily met. Consequently, the requested injunction should be granted.

Finally, having made their original threat, the Estate cannot moot the Does' right to injunction by claiming that it has no intention of breaching the confidentiality provisions of the settlement agreement. *See FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1238 (9th Cir. 1999) where the Court explained:

> "It is possible, of course, that a defendant's conduct can moot the need for injunctive relief, but the "test for mootness in cases such as this is a stringent one." *United States v. Concentrated Phosphate Export Ass'n., Inc.*, 393 U.S. 199, 203, 21 L. Ed. 2d 344, 89 S. Ct. 361 (1968). The reason that the defendant's conduct, in choosing to voluntarily cease some wrongdoing, is unlikely to moot the need for injunctive relief is that the defendant could simply begin the wrongful activity again: 'Mere voluntary cessation of allegedly illegal conduct does not moot a case; if it did, the courts would be compelled to leave 'the defendant . . . free to return to his old ways.'" Id. (quoting United States v. W.T. Grant Co., 345 U.S. 629, 632, 97 L. Ed. 1303, 73 S. Ct. 894 (1953))."

Here, even though the Estate had ample time to recant its threats between March 24, 2008 and April 7th when the TRO was issued, the Estate's promises not to breach the confidentiality provisions of the settlement agreement came only after the Does obtained their TRO. Absent the issuance of an injunction there is nothing to protect the Does from the Estate simply changing its mind and again

---

[10] While Shulmeister claims he never made an actual threat to disclose the Does' identities he admits he told Kuniyuki was that it was the Estate's position that the Does were liable for Goemans' disclosure; that the Estate was concerned that the Does would hide their money and, therefore, the Estate wanted the Does to deposit $2 million to secure the Estate's claim; and that if Does did not do what the Estate wanted and the Estate sued the Does, that it was likely that the Does' identities would be disclosed in the course of the litigation. The concept that litigation counsel would tell all of this to opposing counsel but then conclude at the end the end by stating, in substance, that he has no intention of actually taking action to protect his client's $ 2 million claim is completely unbelievable. The bottom line is that what looks like a duck, sounds like a duck and acts like a duck is usually a duck.

threatening the Does with disclosure of their identities. If the Estate truly had no interest in threatening the Does with disclosure of their identities, the Estate would have stipulated to the injunction while preserving its rights to challenge the jurisdiction of the Court and, if its lost its jurisdictional challenge, while the parties litigated the merits of the Estate's claim against the Does. However, under no circumstances should the Does be left at the mercy of the Estate.

**IV    CONCLUSION**

Although the Estate claims that is suffered severe damage as result of Goemans' disclosure, there is no evidence before the Court of the Estate suffering any actual damage. Nor is there any liquidated damage provision in the Agreement. So on the record before this Court there isn't a scintilla of evidence to support any damage claim against the Does, let alone a claim for $2 million.

Couple that with the fact that the Estate failed to counter the Does' arguments that there is nothing in the Agreement which makes them liable for Goemans' disclosure and it becomes highly unlikely that the Estate will ever prevail on any application for a writ of attachment, which was the supposed justification for its disclosure of Does' identities. Factor in the undisputed evidence that there is strong possibility that the Does will be subject to severe mental and physical harassment if their identities are disclosed, while the Estate will suffer no injury of the injunctions granted, and it becomes crystal clear that a preliminary injunction is absolutely necessary to protect the Does. Consequently, for all of the reasons set forth in this reply and in the Does' moving papers, the Court should invoke its equitable powers and grant the injunctive relief requested.

DATED:   April 15, 2008            LEVIN & STEIN


                                   By: /s/ Jerry H. Stein
                                       JERRY H. STEIN
                                       Attorneys for the DOES