Alston Hunt Floyd & Ing
PAUL ALSTON (Admitted Pro Hac Vice)
CLYDE J. WADSWORTH (SBN 118928)
palston@ahfi.com
cwadsworth@ahfi.com
American Savings Bank Tower, 18th Floor
1001 Bishop Street
Honolulu, HI 96813
Telephone: 808.524.1800
Facsimile: 808.524.4591

Bingham McCutchen LLP
CHARLENE S. SHIMADA (SBN 91407)
JOHN D. PERNICK (SBN 155468)
ROBERT BRUNDAGE (SBN 159890)
charlene.shimada@bingham.com
john.pernick@bingham.com
robert.brundage@bingham.com
Three Embarcadero Center
San Francisco, CA 94111-4067
Telephone: 415.393.2000
Facsimile: 415.393.2286

Attorneys for Defendants and Cross-
Defendants KAMEHAMEHA SCHOOLS/
BERNICE PAUAHI BISHOP ESTATE; J.
DOUGLAS ING, NAINOA THOMPSON,
DIANE J. PLOTTS, ROBERT K.U. KIHUNE,
and CORBETT A.K. KALAMA, in their
capacities as Trustees of the Kamehameha
Schools/Bernice Pauahi Bishop Estate

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC GRANT,<br><br>　　　　　　Plaintiff,<br>　　　v.<br><br>KAMEHAMEHA SCHOOLS/BERNICE PAUAHI BISHOP ESTATE; J. DOUGLAS ING, NAINOA THOMPSON, DIANE J. PLOTTS, ROBERT K.U. KIHUNE, and CORBETT A.K. KALAMA, in their capacities as Trustees of the Kamehameha Schools/Bernice Pauahi Bishop Estate; JOHN DOE; and JANE DOE,<br><br>　　　　　　Defendants. | No. 08-00672 FCD-KJM<br><br>KAMEHAMEHA SCHOOLS DEFENDANTS' AND CROSS-CLAIM DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS<br><br>Date: October 31, 2008<br>Time: 10:00 a.m.<br>Courtroom: 2<br>Before: Hon. Frank C. Damrell, Jr. |
| And Related Cross and Counterclaims. | |

1

KAMEHAMEHA SCHOOLS DEFENDANTS' AND CROSS-CLAIM DEFENDANTS' MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS, CASE NO.08-00672 FCD-KJM

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................... 1

II. FACTS ..................................................................................................................... 1

    A. The Underlying Litigation in Hawai`i.................................................................. 1

        1. The Does Bring An Action Against KS in Hawai`i District Court........... 1

        2. KS and the Does Enter into a Settlement Agreement in Hawai`i ............. 3

    B. The Does and Grant Get Into Litigation Over the Fees Due................................. 4

    C. The Does and Goemans Agree to Disagree Over His Entitlement to Legal Fees ..................................................................................................................... 4

    D. The Does and Grant Reach a Settlement Regarding Grant's Fees ........................ 5

    E. Grant Sues Goemans Pursuant to His Settlement Agreement with the Does ........ 5

    F. Grant Obtains A Protective Order Against Goemans ........................................... 5

    G. The Does' Counsel Discloses the Settlement Terms to the Hawai`i Media .......... 6

    H. Grant Files This Action in the Eastern District of California ............................... 6

III. ARGUMENT ........................................................................................................... 7

    A. The Court Lacks Subject Matter Jurisdiction Because there is Not Complete Diversity When the Parties Are Correctly Aligned ............................... 7

    B. The Court Lacks Personal Jurisdiction Over KS ................................................ 12

        1. The Court Lacks General Jurisdiction Over KS ..................................... 12

        2. The Court Lacks Specific Jurisdiction ................................................... 15

    C. Even If Subject Matter and Personal Jurisdiction Exist, the Court Should Exercise Its Discretion to Decline to Entertain Grant's Declaratory Judgment Claim ................................................................................................ 22

IV. CONCLUSION ...................................................................................................... 24

<span style="display:block; text-align:center">TABLE OF AUTHORITIES</span>

Page

**FEDERAL CASES**

*Aetna Cas. & Sur. Co. v. Quarles,*
    92 F.2d 321 (4th Cir. 1937)..................................................................23

*American States Insurance Co. v. Kearns*,
    15 F.3d 142 (9th Cir. 1994)..................................................................22

*Bou-Matic, LLC v. Ollimac Dairy, Inc.,*
    2007 WL 2898675 (E.D. Cal. 2007) (Appendix, Ex. 17).....................10, 11, 22

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462 (1985).............................................................12, 14, 16, 17,
    18, 19

*City of Dawson v. Columbia Ave. Sav. Fund, Safe Deposit, Title & Trust Co.,*
    197 U.S. 178 (1905)...........................................................................8

*Quarles v. Fuqua Ind., Inc.,*
    504 F.2d 1358 (10th Cir. 1974)............................................................14

*Continental Airlines, Inc. v. Goodyear Tire & Rubber Co.*,
    819 F.2d 1519 (9th Cir. 1987)...................................................9, 10, 11

*Continental Casualty Company v. Robsac Industries,*
    947 F.2d 1367 (9th Cir. 1991)..............................................................23

*Construction Aggregates v. Senior Commodity Co.,*
    860 F. Supp. 1176 (E.D. Tex. 1994)......................................................14

*Crown Cork & Seal Co., Inc. v. Borden, Inc.*,
    779 F. Supp. 33 (E.D. Pa. 1991).....................................................22, 23

*Cubbage v. Merchant*,
    744 F.2d 665 (9th Cir. 1984)................................................................13

*Cunningham Brothers, Inc. v. Bail*,
    407 F.2d 1165 (7th Cir. 1969)........................................................22, 23

*Daniel v. America Board of Emerg. Medicine*,
    988 F. Supp. 127 (W.D.N.Y. 1997)........................................................14

*Doe v. Kamehameha Schools*,
    127 S. Ct. 2160 (2007) (No. 06-1202) (Appendix, Ex. 22)...........................4

*Doe v. Kamehameha Schools*,
    295 F. Supp. 2d 1141 (D. Haw. 2003), *aff'd,* 470 F.3d 827 (9th Cir. 2006)
    (en banc), *cert. dismissed*, 127 S. Ct. 2160 (2007)..................................2

*Doe v. Kamehameha Schools*,
    470 F.3d 827 (9th Cir. 2006), *cert. dismissed*, 127 S. Ct. 2160 (2007).............1, 2, 3

*Dolch v. United Cal. Bank*,
    702 F.2d 178 (9th Cir. 1983) .................................................................. 8, 9, 11

*Eikel v. States Marine Lines, Inc.*,
    473 F.3d 959 (5th Cir. 1973) ...................................................................... 9, 10

*Far West Capital, Inc. v. Towne*,
    46 F.3d 1071 (10th Cir. 1995) ........................................................................ 14

*Gray & Co. v. Firstenberg Machinery Co., Inc.*,
    913 F.2d 758 (9th Cir. 1990) .......................................................................... 19

*Hanson v. Denckla*,
    357 U.S. 235 (1958) ....................................................................................... 16

*Helicopteros Nacionales de Colombia v. Hall*,
    466 U.S. 408 (1984) ................................................................... 12, 13, 16, 17

*Holt Oil & Gas Corp. v. Harvey*,
    801 F.2d 773 (5th Cir. 1986) .......................................................................... 17

*Huth v. Hartford Insurance Co.*,
    298 F.3d 800 (9th Cir. 2002) .......................................................................... 24

*Hydrokinetics, Inc. v. Alaska Mechanical, Inc.*,
    700 F.2d 1026 (5th Cir. 1983) ........................................................................ 17

*Indianapolis v. Chase National Bank*,
    314 U.S. 63 (1941) .......................................................................................... 8

*Kulko v. Superior Court of the California In and For City and County of San Francisco*,
    436 U.S. 84, 98 S. Ct. 1690 (1978) ................................................................ 17

*Maryland Casualty Co. v. Knight*,
    96 F.3d 1284 (9th Cir. 1996) .......................................................................... 23

*McGlinchy v. Shell Chemical Co.*,
    845 F.2d 802 (9th Cir. 1988) ..................................................................... 17, 18

*Minnesota Mining & Manufacturing Co. v. Nippon Carbide Industries Co.*,
    63 F.3d 694 (8th Cir. 1995), *cert. denied*, 516 U.S. 1184 (1996) .............. 19, 20

*Mizlou Television Network v. National Broadcasting Co.*,
    603 F. Supp. 677 (D. D.C. 1984) .................................................................... 14

*Railcar Ltd. v. Southern Ill. Railcar Co.*,
    42 F. Supp. 2d 1369 (N.D. Ga. 1999) ............................................................. 19

*Richards v. Duke University*,
    480 F. Supp. 2d 222 (D. D.C. 2007) ............................................................... 15

*Roth v. Gascia Marquez,*
  942 F.2d 617 (9th Cir. 1991) ............................................................... 20

*Scherer v. Curators of the University of Missouri,*
  152 F. Supp. 2d 1278 (D. Kan. 2001) ................................................. 15

*Schwarzenegger v. Fred Martin Motor Co.,*
  374 F.3d 797 (9th Cir. 2004) ......................................................... 12, 13

*Shaffer v. Heitner,*
  433 U.S. 186 (1977) ....................................................................... 13, 14

*Sher v. Johnson,*
  911 F.2d 1357 (9th Cir. 1990) ................................................. 15, 17, 18

*Shute v. Carnival Cruise Lines,*
  897 F.2d 377 (9th Cir. 1990), *overruled on other grounds,* 499 U.S. 585 (1991) ............ 13

*Stratagene v. Parsons Behle & Latimer,*
  315 F. Supp. 2d 765 (D. Md. 2004) ............................................... 21, 22

*T.M. Hylwa, M.D., Inc. v. Palka,*
  823 F.2d 310 (9th Cir. 1987) .............................................................. 21

*Travelers Ins. Co. v. Davis,*
  490 F.2d 536, 543 (3rd Cir. 1974) .................................................... 23

*U.S. Fidelity & Guaranty Co. v. Thomas Solvent,*
  955 F.2d 1085 (6th Cir. 1992) ............................................................. 9

*Van Steenwyk v. Interamerican Management Consulting Corp.,*
  834 F. Supp. 336 (E.D. Wash. 1993) ............................................... 18

*Yahoo! Inc. v. La Ligue Contre le Racisme et l'Antisemitisme, ,*
  433 F.3d 1199 (9th Cir. 2006), *cert. denied,* 126 S.Ct. 2332 (2006) ................... 12, 15, 20

**STATE CASES**

*The Board of Regents for Northwest Missouri State University v. MSE Corp.,*
  1990 WL 212098, 1990 U.S. LEXIS 17344 (W.D. Mo. Nov. 20, 1990) ..................... 23

**DOCKETED CASES**

*Grant v. Doe*, Amended Complaint
  Civ. No. 2:07-CV-01087-GEB-EFB (RJN, Ex. 15) ............................... 4

*Grant v. Goemans*, Case No. 07AS04172
  (RJN, Ex. 16) ..................................................................................... 5

**FEDERAL STATUTES**

42 U.S.C. § 1981 ...................................................................................................... 2

28 U.S.C. § 1332 ...................................................................................................... 7

28 U.S.C. §2201) ...................................................................................................... 1

**STATE STATUTES**

Haw. Rev. Stat. §§ 605-1 *et seq* ............................................................................ 16

**COURT RULES**

Hawaii Rules of Professional Conduct 8.5
(Appendix Ex. 20) ......................................................................................... 2, 16

Local Rule 83.1, United States District Court for the District of Hawaii
(Appendix Ex. 19) ......................................................................................... 2, 16

Local Rule 83.3, United States District Court for the District of Hawaii
(Appendix Ex. 21) ......................................................................................... 16

**MISCELLANEOUS**

10A Wright, Miller, and Kane, *Federal Practice and Procedure*, § 2751 at 569 (1983) ............. 22

12 *Moore's Federal Practice* § 57.42[3] (3d ed.) ........................................................ 23

Schwarzer, Tashima & Wagstaff, *Cal. Prac. Guide:  Fed. Civ. Pro. Before Trial*
(The Rutter Group 2002) § 10:47 ...................................................................... 24

# I.    INTRODUCTION

The Kamehameha Schools/Estate of Princess Bernice Pauahi Bishop and its trustees (collectively "KS") move to dismiss this action on three grounds.  First, the court lacks subject matter jurisdiction. John and Jane Doe (the "Does") and Plaintiff Eric Grant ("Grant") are not adverse to each other with respect to the principal issue, which is whether KS has a claim for breach of the settlement agreement in the underlying litigation (the "Settlement Agreement").  Therefore, under controlling Supreme Court precedent, the Does must be aligned as involuntary (and diversity-jurisdiction-destroying) Plaintiffs.  Second, even if the existing alignment is proper and subject matter jurisdiction exists, the Court has no personal jurisdiction over KS.  KS has had insufficient past contacts with California to permit this Court to exercise either general or specific personal jurisdiction over KS with respect to this distinctly Hawai`i-based dispute.  Third, even if there are no jurisdictional problems, the Court should exercise its discretion and dismiss Grant's declaratory relief claim (which would result in dismissal of the Does' claims) because Grant is not properly before this Court under Declaratory Judgment Act (28 U.S.C. § 2201).

# II.    FACTS

## A.    The Underlying Litigation in Hawai`i

### 1.    The Does Bring An Action Against KS in Hawai`i District Court

KS is a private, nonprofit K-12 educational institution in Hawai`i.  Declaration of Brad Santiago ("Santiago Decl."), ¶ 3.  It was created under the last will and testament of Princess Bernice Pauahi Bishop, the last royal descendant of King Kamehameha I of Hawai`i.  She left property in trust for schools dedicated to the education and upbringing of Hawaiian children.  *Id.*; *see Doe v. Kamehameha Schools,* 470 F.3d 827, 831 (9th Cir. 2006) (en banc) (internal quotation marks and citation omitted), *cert. dismissed*, 127 S. Ct. 2160 (2007).  KS operates three K-12 campuses and 30 preschools, all in the State of Hawai`i.  Santiago Decl., ¶ 3.

In 2003, the Does sued KS in the United States District Court for the District of Hawai`i.  The Does alleged that KS' policy of giving preference in admissions to children of

1   Hawaiian ancestry in selecting students violated 42 U.S.C. § 1981[1].  They sought damages and

2   an injunction barring KS from implementing its admissions preference policy.[2]  John Goemans,

3   a Hawai`i-licensed attorney, and Grant represented the Does.  Does Compl., Caption (RJN, Ex.

4   1).  Grant, a California attorney, expressly sought and received admission *pro hac vice* to

5   practice in Hawai`i.[3]  KS was represented by two Hawai`i law firms. They worked with Kathleen

6   Sullivan, Dean of Stanford Law School, who appeared *pro hac vice*.[4]  In appearing *pro hac vice,*

7   both Grant and Sullivan submitted to the jurisdiction of the Hawai`i District Court and the

8   Hawai`i State Bar Association.[5]

9           In Fall 2003, the parties filed cross-motions for summary judgment.  Grant flew to

10  Hawai`i to argue the motions.[6]  .The District Court granted summary judgment to KS.  *Doe v.*

11  *Kamehameha Schools,* 295 F. Supp. 2d 1141.  The Does appealed.  In November 2004, their

12  appeal was argued before a three-judge Ninth Circuit panel in Honolulu.[7]  Grant again flew to

13  Hawai`i to argue.[8]

14          The three-judge panel reversed the District Court.  However, KS successfully

15  petitioned for review *en banc.*[9]  After hearing argument in San Francisco, the *en banc* panel

16  upheld KS' policy and affirmed the District Court's judgment.  *Doe v. Kamehameha Schools,*

17  470 F.3d 827.

18          The Does' case stirred exceptional interest in Hawai`i.  The State of Hawai`i, the

19  Hawai`i Congressional delegation, the Hawai`i Civil Rights Commission, the Mayor of the City

20  _____

21  [1] Does Complaint ("Does Compl."), ¶¶ 21, 24 (Request for Judicial Notice ("RJN"), Ex. 1).
    [2] Does Compl., Prayer for Relief (RJN, Ex. 1).

22  [3] Docket, entry 4, *Doe v. Kamehameha Schools,* 295 F. Supp. 2d 1141 (D. Haw. 2003), *aff'd,*
    470 F.3d 827 (9th Cir. 2006) (en banc), *cert. dismissed,* 127 S. Ct. 2160 (2007) (RJN, Ex. 2).

23  [4] Application of Kathleen M. Sullivan to Appear Pro Hac Vice; Consent of David Schulmeister;
    Declaration of Kathleen Sullivan; Order Permitting Kathleen M. Sullivan to Appear Pro Hac

24  Vice; Certificate of Service (RJN, Ex. 3).
    [5] *See* U.S. District Court for the District of Hawai`i L.R. 83.1; Hawai`i Rule of Professional

25  Conduct 8.5 and comment (Appendix, Ex. 19, 20).
    [6] Grant discovery response 4 (Declaration of Paul Alston ("Alston Decl."), Ex. 5).

26  [7] Docket, entries 38, 45, *Doe v. Kamehameha Schools,* 470 F.3d 827 (9th Cir. 2006) (en banc)
    (No. 04-15044), *cert, dismissed,* 127 S. Ct. 2160 (2007) (RJN, Ex. 6).

27  [8] Grant discovery response 4 (Alston Decl., Ex. 4).
    [9] Docket, entry 146, *Doe v. Kamehameha Schools,* 470 F.3d 827 (RJN, Ex. 6).

28

2

1 & County of Honolulu (Mufi Hannemann), the Native Hawaiian Legal Corporation, the Native

2 Hawaiian Bar Association, the Hawai`i Business Roundtable and the `Ilio`ulaokalani Coalition (a

3 Hawaiian rights organization based in Honolulu), among others, filed amicus briefs supporting

4 KS.[10] Three Honolulu television stations and the University of Hawai`i all sought leave to

5 videotape the Ninth Circuit arguments, and the Honolulu Star-Bulletin and Honolulu bureau of

6 the Associated Press sought to take photographs.[11]

### 2. KS and the Does Enter into a Settlement Agreement in Hawai`i

Having lost in the Ninth Circuit, the Does petitioned for certiorari in the United

States Supreme Court. While the petition was pending, the parties settled.[12] Settlement

negotiations were conducted between Grant and Sullivan in California and Emmett Lewis, KS'

counsel in Washington D.C. However, the lawyers had no authority to reach a binding

agreement. Only the clients—all of whom were in Hawai`i -- had that power.[13]

After discussing the terms in a conference call with Grant and Goemans, the Does

signed the agreement in Hawai`i.[14] KS' representatives also signed the agreement in Hawai`i

(aside from one trustee and one former trustee who signed the agreement while they were

traveling on business unrelated to KS).[15] By its express terms, the Settlement Agreement was

"by and between" the Does and the then-current and former trustees of KS – all citizens of

Hawai`i.[16] The Settlement Agreement was approved only "as to form" by attorneys Grant and

[10] Docket, entries 76-122, *Doe v. Kamehameha Schools,* 470 F.3d 827 (RJN, Ex. 6).
[11] Docket, entries 42, 43, 148, 149, *Doe v. Kamehameha Schools,* 470 F.3d 827 (RJN, Ex. 6).
[12] Ex. 8, Grant Complaint ("Grant Compl."), ¶¶ 14-15; Ex. 7, Does Answer, ¶ 1.
[13] Grant discovery response 1.b, 1.c (Alston Decl., Ex. 4); Does discovery response 1.b, 1.c. (Alston Decl., Ex. 5).
[14] Grant discovery response 1.d with email supplement (Alston Decl., Ex. 4); Does discovery response 1.d (Alston Decl., Ex. 5).
[15] J. Douglas Ing Decl., ¶ 5; Corbett A.K. Kalama Decl., ¶ 6; Robert K.U. Kihune Decl., ¶ 5; Contance Lau Decl., ¶ 6; Diane J. Plotts Decl., ¶ 5; Nainoa Thompson Decl., ¶ 5 (collectively "Trustees' Decls.").
[16] Ex. 8, Grant Compl., ¶ 5-6, 8, 15. This document was filed under seal by the Does as Exhibit 1 to the Declaration of Jane Doe in support of their Motion for Temporary Restraining Order and Preliminary Injunction on April 3, 2008.

3

1 Sullivan.[17]  Goemans did not sign it.

2        The Settlement Agreement obligated KS to pay "to Doe" a confidential sum and

3 obligated the Does to withdraw their petition for certiorari.[18]  The agreement released all parties

4 and their attorneys from all claims.[19]  Critically, the agreement provided that no signatory or

5 releasee -- "including counsel" -- would disclose the Does' names or any term of the Settlement

6 Agreement.[20]  The confidential information specifically included the settlement amount,[21] which

7 had already been disclosed to Goemans during the pre-signing conference call.[22]  After the

8 agreement was signed, the Does dismissed the certiorari petition, and KS made the required

9 payment.[23]  Some, if not all of the Does' portion of the settlement proceeds was forwarded to

10 them in Hawai`i, where they spent some of it.[24]

11        **B.      The Does and Grant Get Into Litigation Over the Fees Due**

12        Shortly after the Settlement Agreement was signed, the Does and Grant got into a

13 dispute over the amount of fees he was owed.[25]  Grant sued the Does in this Court.  *Grant v.*

14 *Doe*, Civ. No. 2:07-CV-01087-GEB-EFB (E.D. Cal.).[26]  Grant's amended complaint[27] contained

15 four claims seeking 40% of the underlying settlement amount for his fees.[28]

16        **C.      The Does and Goemans Agree to Disagree Over His**
          **Entitlement to Legal Fees**
17

18        In August 2007, the Does and Goemans reached a preliminary agreement

19 regarding disposition of his claim for "attorneys fees," and committing Goemans to maintain the

20 confidentiality of the KS/Doe Settlement Agreement.  Pursuant to the Stipulated Protective

21 _____
     [17] *Id.*, at ¶ 15.
22   [18] *Id.*, at ¶ 16, 18.
     [19] Ex. 9, Does Cross-Claim, ¶ 7.
23   [20] *Id.*
     [21] Ex. 8, Grant Compl, ¶ 18.
24   [22] *See* note 14, *supra.*
     [23] Ex. 8, Grant Compl., ¶ 17; Ex. 7, Does Answer, ¶ 1; *Doe v. Kamehameha Schools,* 127 S. Ct.
25   2160 (2007) (No. 06-1202) (Appendix, Ex. 22).
     [24] Does discovery responses 1.f,g (Alston Decl., Ex. 4).
26   [25] Ex. 8, Grant Compl., ¶ 19.
     [26] RJN, Ex. 8, ¶ 19.
27   [27] RJN, Ex. 15 at 7-9.
     [28] RJN, Ex. 15 at 7-9.
28

Order, filed June 16, 2008, KS is submitting this agreement with a motion to file it under seal in unredacted form.

**D.      The Does and Grant Reach a Settlement Regarding Grant's Fees**

In early September, 2007, the Does and Grant settled their fee dispute and agreed to dismiss Grant's lawsuit.[29]  Under that agreement, the Does and Grant settled all existing claims between them and agreed to terms which aligned their interests against KS and Goemans in virtually all respects.

Pursuant to Section 6 of the Stipulated Protective Order between the parties, KS is submitting this settlement agreement between the Does and Grant under seal.  Plaintiffs direct the Court's attention specifically to paragraphs 3-6 of that agreement.

**E.      Grant Sues Goemans Pursuant to His Settlement Agreement with the Does**

Days after settling with the Does, Grant sued Goemans in Superior Court.[30]  He claimed that they acted as co-counsel in representing the Does in the litigation against KS and sought (1) a declaration that Goemans' attorneys' fees would be paid solely out of the portion of the settlement proceeds Grant was paid under his agreement with the Does, and (2) a determination that Goemans' only claim to compensation was based upon quantum meruit and his services were "of little, if any benefit" and he had "unclean hands" due to unspecified "misconduct" in derogation of his "professional duties of loyalty and confidentiality."[31]  That case is still pending.

**F.      Grant Obtains A Protective Order Against Goemans**

In early February 2008, nearly 5 months after suing Goemans, Grant belatedly asked the Superior Court to issue a protective order barring Goemans from disclosing any of the confidential terms of the KS/Doe Settlement Agreement.[32]  The motion was granted on

---

[29] Ex. 8, ¶ 19.
[30] Ex. 8, ¶ 23.
[31] RJN, Ex. 16, ¶¶ 22, 27.
[32] Ex. 8, ¶ 24.

February 5, 2008. *Id.*

**G.      The Does' Counsel Discloses the Settlement Terms to the Hawai`i Media**

Despite the newly issued protective order issued by the Superior Court, on February 7, 2008, Goemans spoke by telephone with representatives of newspapers and television stations in Hawai`i.[33]  In those interviews, Goemans disclosed what he claimed to be the amount of the settlement between the Does and KS.[34]  Goemans' disclosure caused great public controversy in Hawai`i.  It was featured in Honolulu television newscasts, and both of Hawai`i's leading newspapers.[35]

In light of this flagrant breach of the confidentiality provisions of the Settlement Agreement,[36] on March 24, 2008, one of KS' attorneys, David Schulmeister, met with the Does' Hawai`i attorney, Ken Kuniyuki, in Honolulu.  Schulmeister told Kuniyuki that (1) KS believed the Settlement Agreement had been breached and that KS was entitled to damages, (2) KS was contemplating seeking prejudgment remedies to secure its ability to collect damages, (3) KS was concerned that litigation (and, in particular, the effort to garnish or attach funds) might lead to disclosure of the Does' identities, and (4) KS suggested the Does avoid all those risks by agreeing to sequester a portion of the settlement proceeds pending resolution of KS's claims.[37]  However, at no time did Schulmeister state that KS had decided to file a lawsuit against Grant.[38]  As to this last point, the Does concede Schulmeister only told Kuniyuki that KS "reserved its claims" as to Grant.[39]

**H.      Grant Files This Action in the Eastern District of California**

A few days later, on March 28 2008, Grant filed this action seeking a declaration

---

[33] Ex. 8, Grant Compl., ¶ 26; Ex. 9, Does Cross-Claim, ¶ 9).
[34] Ex. 8, Grant Compl., ¶ 26; Ex. 9, Does Cross-Claim, ¶ 9.
[35] RJN, Exs. 10-14.  Exhibits 13a-e to the RJN are video news clips, being separately filed pursuant to the Notice of Manual Filing.
[36] Grant initiated criminal contempt proceedings in Superior Court after Goemans' disclosure. Goemans was convicted (RJN, Ex. 18)
[37] Schulmeister Decl (filed herein on April 10, 2008), ¶¶ 5-7.
[38] *Id.,* ¶ 8.
[39] Does' Discovery Responses 7.b (Alston Decl., Ex. 5).

1   that he is not liable to KS or to the Does for Goemans' breach.[40]

2          Grant alleges that KS "threatened" to sue him.[41]  This allegation is inconsistent

3   with the sworn statements of Schulmeister and Kuniyuki -- the only participants in the March 24

4   meeting.[42]  Just five days later, without being formally served, the Does answered Grant's

5   complaint, cross-claimed against KS and counterclaimed against Grant.[43]  Against KS, they

6   alleged that KS (through Mr. Schulmeister at the March 24 meeting) had threatened to sue them

7   for damages arising from Goemans' disclosure and to reveal their identities in seeking a

8   prejudgment remedy.[44]  The Does seek an injunction against disclosure of their names and a

9   declaration that Goemans' disclosure did not breach the Settlement Agreement's confidentiality

10  provision.[45]

11  **III.    ARGUMENT**

12          **A.    The Court Lacks Subject Matter Jurisdiction Because there is
13                  Not Complete Diversity When the Parties Are Correctly
                    Aligned**

14          Grant wrongly claims there is diversity jurisdiction under 28 U.S.C. § 1332.

15  Because he is a California citizen, while KS and the Does, are Hawai`i citizens, he alleges

16  complete diversity exists.[46]  Grant is wrong.  Diversity jurisdiction is not controlled by artful

17  pleading.  For jurisdictional purposes, the parties must be aligned according to their interests in

18  the principal issue in the litigation.  Here, the Does are aligned with Grant, not KS.  Therefore,

19  realignment destroys diversity jurisdiction because KS, a Hawai`i citizen, will then be on the

20  opposite side from the Does, who are also Hawai`i citizens.

21  _____

22  [40] Ex. 8, Grant Compl., at ¶¶ 32, 33.
23  [41] Ex. 8, Grant Compl., ¶ 27; Grant discovery responses 7.b (Alston Decl., Ex. 4).
    [42] Schulmeister Decl. ¶ 9, Kuniyuki Dec. ¶¶ 4-5 (filed herein April 15, 2008).
24  [43] The pro hac vice application for Mr. Kuniyuki is dated March 28, the same date this action
    was filed.  The Does' answer is dated April 2, 2008.  The docket reveals no evidence of service
25  of process upon the Does—informal or otherwise.
    [44] Does Cross-Claim, ¶ 13.
26  [45] Does Cross-Claim, ¶¶ 15, 20.
    [46] Goemans was identified as a California resident in Grant's September 2007 complaint in
27  Superior Court.  (RJN Ex. 16, ¶ 2).  If that is correct, it explains why Grant has not sued
    Goemans in this action.
28

1        The fact that Grant named the Does as defendants is irrelevant.  The court is

2    responsible for aligning the parties according to their interests.  *See, e.g., Indianapolis v. Chase*

3    *Nat'l Bank*, 314 U.S. 63, 69 (1941).  In that case, the Supreme Court explained that "[d]iversity

4    jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who

5    are plaintiffs and who are defendants."  It is, the Supreme Court explained, the duty of every

6    federal court to "look beyond the pleadings and arrange the parties according to their sides in the

7    dispute."  314 U.S. at 69, citing *City of Dawson v. Columbia Ave. Sav. Fund, Safe Deposit, Title*

8    *& Trust Co.*, 197 U.S. 178, 180 (1905).  On this basis, the Court realigned a mortgagee and

9    lessor to be on the "same side" and then held diversity was lacking because they both wanted the

10   lease to be enforced against the city and that was the "primary and controlling matter," in the

11   litigation.  The Supreme Court prescribed a simple test for this court to follow:  Does an

12   alignment of the parties in relation to their real interest in the "matter in controversy satisfy the

13   settled requirements of diversity jurisdiction?"  *Id.* at 69-70.  This means, the Ninth Circuit has

14   explained, realigning parties according to their interest in the principal issue in dispute.  *See*

15   *Dolch v. United Cal. Bank*, 702 F.2d 178, 181 (9th Cir. 1983).

16       *Dolch* is squarely on point.  In that case, the plaintiff brought suit seeking to

17   establish that she and her siblings were owners of assets assigned to a bank in trust.  *Id.* at 179-

18   80.  Plaintiff named her sister, co-trustee of the trust, as one of the defendants.  *Id.*  Plaintiff

19   alleged there was diversity jurisdiction because she was a citizen of New York and the

20   defendants--bank and her sister --were citizens of California.  *Id.* at 180.  The district court

21   rejected that argument, realigned the sister-trustee, and dismissed for lack of diversity

22   jurisdiction.  The Ninth Circuit affirmed.  It agreed the sister/trustee should re "realigned"

23   because both sisters' interests were the same with respect to the "purpose of the lawsuit" insofar

24   as they both stood to benefit financially from a decision against the bank.  *Id.* at 181.  Further,

25   the Ninth Circuit explained that "[r]ealignment may be required even if a diversity of interest

26   exists on other issues."  *Id.*

27       Here, the Does and Grant (as their interests are framed by their September 2007

28   settlement agreement) share an interest in establishing that KS has no claim for breach of the

1  Settlement Agreement based upon Goemans' disclosures.[47]  That is the principal issue in this

2  litigation.  If Goemans was a rogue actor, for which no one else is accountable, then Grant and

3  the Does have nothing to dispute.  This means that even though they may disagree about their

4  respective indemnity rights vis-à-vis each other if KS has any viable claim, the Does and Grant

5  must be realigned together for jurisdictional purposes.  *Id.*

6          The irrelevance of a dispute over indemnity rights was explained in *Continental*

7  *Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1523 n.2 (9th Cir. 1987).  There,

8  one of Continental's planes was destroyed and passengers were injured and killed in a serious

9  accident.  The manufacturer of the aircraft sued both one of its suppliers and Continental in

10  federal court, seeking a declaratory ruling it was not liable for damages.  Although the supplier

11  and the manufacturer had conflicting interests *vis-à-vis* each other--and "would have disputed

12  their respective liability" to Continental--both shared a common interest in established that an

13  exculpatory clause in the manufacturer's contract with Continental barred all of the airline's

14  claims, regardless who it sued.  *Id.* at 1523.[48]

15          The Ninth Circuit considered the question as to which issue was "primary and

16

17  _____

18  [47] Pursuant to Section 6 of the Stipulated Protective Order (filed June 11, 2008), KS will be
    moving to file under seal the settlement agreement between the Does and Grant.  *See* ¶¶ 3-6 of
19  that agreement.
    [48] Echoing these principles, the Sixth Circuit has decided that where parties' interests are aligned
20  with respect to the main issue, realignment is not prevented by the existence of contribution or
    indemnity claims between them.  *See, e.g., U.S. Fidelity & Guaranty Co. v. Thomas Solvent,* 955
21  F.2d 1085, 1089 (6th Cir. 1992).  In *Solvent*, an insurer sued its insured and other insurers.  All
    insurers were on the same side of the primary dispute, -- which was whether the insurers owed a
22  duty to indemnify the insured.  If they lost that issue, the insurers would have had claims against
    one another.  The Sixth Circuit held that the insurers must be realigned because their contribution
23  claims were ancillary to the primary dispute and would ripen only if the insurers lost the main
    dispute.  *Id.* at 1090-91.  *See also Eikel*, 473 F.2d at 964-65 (attorneys suing former client for
24  fees must be aligned together; dispute among attorneys over division of fees, which would ripen
    only if they prevailed on the main issue, did not prevent realignment).  Here, Grant and the Does
25  are clearly aligned on the principal issue of whether any actionable breach of contract has
    occurred.  Both say no because both deny responsibility for Goemans' actions.  Whether Grant
26  (who has already and independently accepted a duty to defend) also has a duty to indemnify the
    Does, or vice versa, clearly depends on an initial finding of breach.  Accordingly, these
27  secondary disputes do not preclude realignment.

28

controlling," from two perspectives.[49]  On one hand, it considered the fact that both the

manufacturer and the supplier wanted to invoke the exculpatory clause to preclude all claims.

On the other hand, because the manufacturer was seeking only "declaratory" relief, it considered

the "underlying cause of action," which was the airline's claim for damages.  From both

perspectives, the dispute over indemnity rights between the manufacturer and the supplier was

only "ancillary to the essential controversy."  *See also Eikel v. States Marine Lines, Inc.,* 473

F.3d 959, 962 (5th Cir. 1973) (former law partners had to be aligned together in a suit against a

client to recover fees, even though they were concurrently suing each other regarding allocation

of the fee.

       If any further support for KS's position on these issues is needed, it is readily

found in *Bou-Matic, LLC v. Ollimac Dairy, Inc.,* 2007 WL 2898675 (E.D. Cal. 2007).[50]  There, a

distributor of allegedly defective dairy equipment sued the buyer as well as the companies that

manufactured the equipment and its components.  The distributor's lawsuit was filed in response

to the buyer's threat to sue the distributor for fraud and breach of contract.  The defendant-buyer

moved to dismiss, arguing that it was the "real plaintiff" and, if it were aligned correctly,

diversity jurisdiction did not exist.

       Judge Wanger granted the motion.  He determined (1) the distributor's preemptive

suit was not an appropriate use of the Declaratory Judgment Act, which was intended to provide

a means of minimizing "avoidable loss" and unnecessary accrual of damages;" (2) an injured

party should not have to litigate a forum chosen by one of the alleged wrongdoers; (3) the

alleged injury had already occurred and declaratory relief would serve no purpose after the

claims were "actualized;" and (4) antagonism between the parties who built and sold the dairy

---

[49] In addition, the Court noted that federal courts "have special jurisdictional discretion" in
declaratory judgment actions" in order to "prevent parties from using such actions "to
circumvent the removal statute or create a race to judgment." 819 F.2d at 1524.  This, too, is a
case where that special discretion is appropriate.  If the same parties had been joined in a suit for
damages by KS, there would have been no federal jurisdiction at all.  The parties are in this court
only because of forum shopping.
[50] *See* Appendix, Ex. 17.

1 equipment regarding express or implied indemnity claims was no reason to refrain from aligning

2 the injured seller against all those parties, as the buyer requested.

3        The same principles apply here:  Grant's preemptive action relating to damages

4 already accrued in a misuse of the Declaratory Judgment Act, which creates only the illusion of

5 diversity jurisdiction.  The Does and Grant belong on the same side—aligned against KS—and,

6 if that occurs, there is no diversity jurisdiction.

7        The same is true here.  The principal purpose of this lawsuit is to determine that

8 KS cannot sue any of the other parties based upon Goemans' disclosure to the press.  Both Grant

9 and the Does claim that they cannot be held accountable for Goemans' actions.[51]  Their own

10 disagreements—like the similar dispute between the manufacturer and supplier in *Continental*

11 *Airlines*—are merely collateral to that issue, especially in light of the fact that Grant has, by

12 contract, agreed to pay for the Does' defense.  A ruling against KS, finding that no actionable

13 breach occurred or that Goemans who is not before the Court, is solely liable for the breach,

14 would benefit both Grant and the Does.  Therefore, under *Dolch, Continental Airlines* and *Bou-*

15 *Matic*,[52] the Does must be realigned with Grant, placing Hawai`i citizens on both sides of this

16 case and destroying diversity jurisdiction.

17        Lastly, the Does' request for an injunction against KS does not prevent

18 realignment.[53]  Grant is not adverse to the Does on that issue—he has already committed to

19 protecting the confidentiality of the Does' identities. If anything, alignment based on the Does'

20 injunction claim would destroy diversity:  The Does and KS -- all citizens of Hawai`i -- are on

21 opposite sides.

22        In sum, the Does and Grant must be aligned together because they share a

23 common interest in defeating KS with respect to the main dispute.  Once that occurs, there is no

24 complete diversity of citizenship, and this case must be dismissed.

25

26 [51] Ex. 8, Grant Compl., ¶ 32, 34; Ex. 9, Does Cross-Claim, ¶ 18, 20.
27 [52] *See* Appendix, Ex. 17.
   [53] *See* Ex. 9, Does Cross-Claim, ¶ 15.

28

1
      **B.**      **The Court Lacks Personal Jurisdiction Over KS**

2
      A plaintiff bringing an action in federal court has the burden of proving that the

3
court has personal jurisdiction over the defendant. *Schwarzenegger v. Fred Martin Motor Co.,*

4
374 F.3d 797, 800 (9th Cir. 2004). For personal jurisdiction to exist, the defendant must have

5
"minimum contacts with [the forum] such that the maintenance of the suit does not offend

6
'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S.

7
310, 316 (1945) (citation omitted); *Yahoo! Inc. v. La Ligue Contre le Racisme et l'Antisemitisme,*

8
433 F.3d 1199, 1205 (9th Cir. 2006) (en banc), *cert. denied*, 126 S.Ct. 2332 (2006). This means

9
"the defendant's conduct and connection with the forum State [must be] such that he should

10
reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz,* 471 U.S.

11
462, 474 (1985) (citation omitted). As detailed below, KS' past scant contacts with California do

12
not come close to satisfying these standards.

13
      **1.**      **The Court Lacks General Jurisdiction Over KS**

14
      The broadest form of personal jurisdiction is general jurisdiction. *See*

15
*Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 415 (1984); *Schwarzenegger,* 374

16
F.3d at 801. "For general jurisdiction to exist over a nonresident defendant . . . the defendant

17
must engage in continuous and systematic general business contacts . . . that approximate

18
physical presence in the forum state." *Schwarzenegger,* 374 F.3d at 801 (citation and internal

19
quotation marks omitted). "This is an exacting standard . . . because a finding of general

20
jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its

21
activities anywhere in the world." *Id.*

22
      Nothing about KS' contacts with California can be considered "continuous and

23
systematic." KS' operations are all based in Hawai`i. Santiago Decl., ¶ 3. It has no property in

24
California. *Id.*, ¶ 4.[54] It has no campus in California. *Id.*, ¶ 3. It has no agent for service of

25
process in California. *Id.*, ¶ 5. It is not registered to do business in California. *Id.*, ¶ 6. It has no

26
_____

27
[54] KS formerly owned property in Riverside County. It sold this property in June 2003, before
the underlying lawsuit was even filed. Santiago Decl., ¶ 4.

28

1  offices in California and none of its employees works in this state. *Id.*, ¶ 7. None of its trustees,

2  officers or administrators is a citizen of California. *Id.*, ¶ 8.

3        On facts like these, the Supreme Court and Ninth Circuit have consistently

4  declined to find general jurisdiction. *See Helicopteros,* 466 U.S. at 416-18 (no general

5  jurisdiction over a foreign defendant that "[did] not have a place of business in Texas and has

6  never been licensed to do business in the State"); *Shute v. Carnival Cruise Lines,* 897 F.2d 377,

7  381 (9th Cir. 1990) (no general jurisdiction where defendant "has no offices and no exclusive

8  agents in Washington, it is not registered to do business there, and it pays no taxes there"),

9  *overruled on other grounds,* 499 U.S. 585 (1991); *Cubbage v. Merchant,* 744 F.2d 665, 667-68

10 (9th Cir. 1984) (no general jurisdiction over defendants who were not residents of or licensed by

11 forum state and who did not perform services there).

12       Indeed, KS' contacts with California are so limited that they are not even close to

13 the level of contacts that the Supreme Court and Ninth Circuit have already found *in*sufficient to

14 establish jurisdiction. In *Helicopteros,* the Supreme Court held there was no general jurisdiction

15 in Texas even though the defendant had spent "substantial sums" in Texas buying helicopters,

16 equipment and training services from a Texas supplier, sent personnel to Texas for training, sent

17 its chief executive officer to Texas to negotiate a contract and accepted checks drawn on a Texas

18 bank. 466 U.S. at 416-18. In *Schwarzenegger*, the Ninth Circuit held there was no general

19 jurisdiction even though the defendant car dealer had regularly bought vehicles imported through

20 California, regularly retained a California marketing company, hired a California-incorporated

21 training company for consulting, maintained a web site accessible from California and bought

22 vehicles by contracts containing California choice-of-law provisions. 374 F.3d at 801.

23       KS' past ownership of land in Riverside (which it sold years ago) adds nothing to

24 this equation. As a matter of law, ownership of property in a state does not support personal

25 jurisdiction on a cause of action unrelated to the property. *Shaffer v. Heitner,* 433 U.S. 186, 213

26 (1977) (no basis for personal jurisdiction where property "is not the subject matter of this

27 litigation, nor is the underlying cause of action related to the property").

28       The fact that KS' hired California co-counsel to help defend the underlying

13

litigation is similarly unavailing. Merely hiring an out-of-state lawyer does not subject a person to suit in the lawyer's home state on unrelated causes of action.[55]  *See, e.g., Far West Capital, Inc. v. Towne,* 46 F.3d 1071, 1076 (10th Cir. 1995) (hiring agent in Utah did not support jurisdiction there on unrelated cause of action, nor would "retaining legal counsel or contracting with an accounting firm"); *Mizlou Television Network v. Nat'l Broadcasting Co.,* 603 F. Supp. 677, 682 (D. D.C. 1984) ("[T]he mere fact that FCSA retained counsel in the District of Columbia will not confer personal jurisdiction over that or any other defendant in an action not arising from the lawyer/client relationship"); *Daniel v. Am. Bd. of Emerg. Medicine,* 988 F. Supp. 127, 223 (W.D.N.Y. 1997) ("the location in New York of firms, such as law firms . . . which petition services for a defendant for a fee does not represent activity by the Defendant in New York for jurisdictional purposes").  Likewise, the fact that KS has joined or invested in entities that do business in California is not a bases for asserting general jurisdiction.  *See, e.g., Quarles v. Fuqua Ind., Inc.,* 504 F.2d 1358 (10th Cir. 1974) (diversified holding company is not subject to personal jurisdiction on the basis of the activities of a subsidiary if parent acts only in "keeping with its stockholder interest")*; Construction Aggregates v. Senior Commodity Co.,* 860 F. Supp. 1176, 1179-80 (E.D. Tex. 1994) (passive investments, as in a limited partnership, do not support general jurisdiction).  *Cf. Shaffer v. Heitner, supra* (position as officer of Delaware corporation does not support jurisdiction over officers or his assets in Delaware when claim did not arise there).

Finally, it is baseless for Grant and the Does to suggest that general jurisdiction might exist based on the fact that a KS alumni group (which is neither owned nor controlled by KS, *see* Santiago Decl. ¶ 11) offers a scholarship to students from California.  Schools "are not subject to personal jurisdiction in all states from which their students hail, as this would unfairly

---

[55] To the extent Grant and the Does contend that their causes of action *are* related to the hiring of a California lawyer, they are arguing for specific jurisdiction.  *See Burger King,* 471 U.S. at 472 ("specific jurisdiction" arises when defendant has purposefully directed his activities at residents of the forum and "litigation results from alleged injuries that 'arise out of or relate to' those activities").  They do not meet the test for specific jurisdiction.  See II.B.2, below.

expose them to litigation in many distant forums." *Richards v. Duke University,* 480 F. Supp. 2d 222, 230 (D. D.C. 2007) (school not subject to general personal jurisdiction in District of Columbia merely because it recruits students from there, meets with recruits there and admits D.C. students); *Scherer v. Curators of the Univ. of Missouri,* 152 F. Supp. 2d 1278, 1282-83 (D. Kan. 2001) (similar; citing cases).

### 2. The Court Lacks Specific Jurisdiction

The alternative to general jurisdiction is specific jurisdiction, that is, jurisdiction that is "dispute specific" and which suffices for the purposes of this case only. To establish this basis for personal jurisdiction, a plaintiff must prove:

- "The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof [in a tort case]; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws [in a contract case]";

- the claim must "arise[] out of or relate[] to the defendant's forum-related activities"; and

- the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* must be reasonable.

*Yahoo,* 433 F.3d at 1205-06. Grant and the Does cannot meet any of the prongs of this test.

### a. KS Did Not Purposefully Avail Itself of the Privilege of Conducting Activities in California And Grant's Claim Does Not Arise Out of California-Related Activities

"'Purposeful availment' requires that the defendant have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Sher v. Johnson,* 911 F.2d 1357, 1362 (9th Cir. 1990) (citation and internal quotation marks omitted). KS has engaged in no conduct in connection with this action that that allows or promotes the transaction of business in California. All of its activities relevant to this action were directed at resolving a Hawai`i lawsuit that was between only Hawai`i parties and related to the admissions policies of a Hawai`i school. KS did cause the Does to hire a California lawyer, and it did not choose either to have portions of this case heard in California or to engage in negotiations with a California lawyer. Those things were thrust on KS, as was the need to

1    employ the expertise of Ms. Sullivan, as defense counsel.  Accordingly, KS has not purposely

2    availed itself of the privilege of conducting activities relating to the Does in California.

3        Indeed, to the extent that KS engaged in any activities related to California in

4    connection with this action, those activities cannot confer personal jurisdiction because they

5    were merely fortuitous and attenuated events that occurred during KS' efforts to resolve Hawai`i

6    litigation between Hawai`i parties.  *See Burger King,* 471 U.S. at 475 (the "'purposeful

7    availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a

8    result of 'random,' 'fortuitous,' or 'attenuated' contacts . . . .").  It was the Does who sued KS in

9    Hawai`i, but then appealed an unfavorable decision to the Ninth Circuit, compelling KS to

10    respond in California.  "Such unilateral activity of another party or a third person is not an

11    appropriate consideration when determining whether a defendant has sufficient contacts with a

12    forum State to justify an assertion of jurisdiction."  *Helicopteros,* 466 U.S. at 417; *Hanson v.*

13    *Denckla*, 357 U.S. 235, 253 (1958).

14        Moreover, it was purely fortuitous that KS, like the Does, chose to be represented

15    in Hawai`i by a lawyer residing in California.  KS' choice of counsel had nothing to do with her

16    residency in California.  And, any mainland lawyer KS chose would have had to avail herself of

17    *Hawai`i* law, just as Grant did -- physically coming to Hawai`i, seeking admission to practice

18    *pro hac vice* in Hawai`i and conforming to rules enacted by the Hawai`i District Court, the

19    Hawai`i Legislature and the Hawai`i Supreme Court.[56]

20        The fact that Grant and one of KS' counsel nonetheless found it convenient to

21    negotiate a potential settlement in California, does not change the facts that it was *Hawai`i*

22    litigation they were negotiating about, *Hawai`i* clients they represented and *Hawai`i* principals

23    who had sole approval authority over any agreement.  The attorneys involved had no power to

24

25 _____

26 [56] *See* U.S. District Court for the District of Hawai`i L.R. 83.1, 83.3 (*pro hac vice* admittees are subject to Hawai`i ethical rules); Hawai`i Rule of Prof. Conduct 8.5 and comment 4 (same);

27 Haw. Rev. Stat. §§ 605-1 *et seq.* (governing practice of law).  (Appendix, Exs. 19, 20, 21.)

28

make an agreement.[57]  Moreover, the parties expressly did not intend to be bound by the

negotiations of counsel, only by the written agreement, which stated:  "there are no agreements,

warranties, understandings or undertakings among [the parties] other than those set forth herein,"

and the written agreement "supersedes all other prior agreements and understandings . . . whether

written or oral."  KS could not have "reasonably anticipat[ed] being haled into court," *Burger*

*King*, 471 U.S. at 474, in California based on short-lived negotiations of the lawyers, when the

parties with whom it was contracting, the dispute it was settling, and all ongoing contacts

between the parties were in Hawai`i.  *See Sher,* 911 F.2d at 1362-63 & n.3 (out-of-state lawyers

who entered into agreement with California resident were not subject to personal jurisdiction in

California, even though lawyers repeatedly traveled to California for representation).

        KS' settlement payment to Grant's client trust account in California was also

fortuitous and attenuated.  Mere payments into the forum normally do not create personal

jurisdiction. *See, e.g., Hydrokinetics, Inc. v. Alaska Mechanical, Inc.,* 700 F.2d 1026, 1029 (5th

Cir. 1983) ("Nor do we weigh heavily the fact that Alaska Mechanical may have mailed payment

checks into the forum state in exchange for the goods."); *Holt Oil & Gas Corp. v. Harvey,* 801

F.2d 773, 778 (5th Cir. 1986) (finding no specific jurisdiction over nonresident who entered into

contract with forum resident, sent agreement and checks to forum, and engaged in extensive

telephonic and written communication with plaintiff in Texas).  That is especially true when the

payment in California was made to resolve a Hawai`i-based dispute and the destination of the

funds was not chosen by KS, but by its adversaries.  The Does and Grant who specified where

the settlement payment was to be sent.  KS, the defendant, had no choice but to deal with the

plaintiffs and their chosen lawyer, wherever they were.  Again, "unilateral activity of another

party or a third person is not an appropriate consideration when determining whether a defendant

has sufficient contacts with a forum State to justify an assertion of jurisdiction."  *Helicopteros,*

466 U.S. at 417 (plaintiff's unilateral choice of Texas bank from which to pay defendant did not

---

[57] Trustees' Decls., ¶ 4; Grant discovery answers 1.b,c,d (Alston Decl., Ex. 4); Does' discovery
answers 1.a,b,c,d (Alston Decl., Ex. 5).

1   create jurisdiction in Texas); *Kulko v. Superior Court of California in and for the City and*

2   *County of San Francisco,* 436 U.S. 84, 93 (1978) (spouse's unilateral choice to spend time in

3   California while having custody of child did not give California jurisdiction over other spouse in

4   domestic-relations case).

5           Finally, Grant's communication with the U.S. Supreme Court from California to

6   dismiss the Does' petition for certiorari are irrelevant to the issue of jurisdiction over KS.  *See*

7   Plaintiff's Reply to KSBE Defendants' Opposition to Doe Defendants' Motion for Preliminary

8   Injunction at 6-7.  Grant cannot rely on his *own* action in California to establish minimum

9   contacts; "a plaintiff's performance in California cannot give jurisdiction over . . . a nonresident

10  defendant; it is a defendant's activity that must provide the basis for jurisdiction." *McGlinchy v.*

11  *Shell Chem. Co.,* 845 F.2d 802, 816-17 (9th Cir. 1988) (internal brackets and quotation marks

12  omitted).

13          The Ninth Circuit's decision in *Sher* confirms the lack of jurisdiction here.  *Sher*

14  held that even the existence of a contract between two parties in a forum is not necessarily

15  sufficient to demonstrate purposeful availment of the privilege of conducting activities in that

16  forum.  *Sher,* 911 F.2d at 1362.  *Accord, Burger King,* 471 U.S. at 478.  Rather, a court must

17  look "to 'prior negotiations and contemplated future consequences, along with the terms of the

18  contract and the parties' actual course of dealing' to determine if the defendant's contacts are

19  *'substantial'* and not merely 'random, fortuitous, or attenuated.'"  There is "no substantial

20  connection" with California if a defendants does not "deliberately creat[e] it, and no "affirmative

21  action to promote business" with that state. *Sher,* 911 F.2d at 1362 (quoting *Burger King,* 471

22  U.S. at 479-80) (emphasis added).  The test for purposeful availment is satisfied where the

23  defendant "engaged in significant activities within a State . . . [or] created 'continuing

24  obligations' between himself and residents of the forum." *Burger King,* 471 U.S. at 475-76.

25          Here, unlike *Sher*, there is not even a California contract, but only a settlement

26  agreement between Hawai`i residents signed in Hawai`i.  *See* II.A.2, above.  The fact that a

27  handful of related activities occurred fortuitously in California cannot reasonably be construed as

28  significant, particularly since those activities could have been accomplished anywhere.

18

1       In any event, activities are not considered significant unless they create substantial

2 or "continuing" obligations toward residents of the forum state. *See Gray & Co. v. Firstenberg*

3 *Machinery Co., Inc.,* 913 F.2d 758, 761 (9th Cir. 1990) (no jurisdiction because, in part, "There

4 is no evidence the sale contemplated a continuing relationship between Gray and the

5 defendants."); *Van Steenwyk v. Interamerican Mgmt. Consulting Corp.,* 834 F. Supp. 336, 342

6 (E.D. Wash. 1993) (finding no personal jurisdiction where "the contract in issue . . . would not

7 have created ongoing work in this state"); *Railcar Ltd. v. Southern Ill. Railcar Co.,* 42 F. Supp.

8 2d 1369, 1375 (N.D. Ga. 1999) (no personal jurisdiction because lease agreement for 337 railcars

9 for a "limited time period" "did not contemplate or establish a continuing relationship with

10 Railcar in Georgia or long term connections to the forum State").  As the Supreme Court

11 explained in *Burger King* it has "emphasized that parties who 'reach out beyond one state and

12 create *continuing relationships* and obligations with citizens of another state' are subject to

13 regulation and sanctions in the other State for the consequences of their activities."  471 U.S. at

14 473.  Thus, there was jurisdiction over an out-of-state defendant who had entered into a "long-

15 term" franchise relationship that "envisioned continuing and wide-reaching contacts" with the

16 forum.  471 U.S. at 480.  KS assumed *continuing* obligations of confidentiality only toward the

17 Does in Hawai`i.

18       Because the parties' obligations are owed to each other in Hawai`i, Grant and the

19 Does are not assisted by their principal case, *Minnesota Mining & Manufacturing Co. v. Nippon*

20 *Carbide Industries Co.,* 63 F.3d 694 (8th Cir. 1995), *cert. denied,* 516 U.S. 1184 (1996).  *See*

21 Plaintiff's Reply to KSBE Defendants' Opposition to Doe Defendants' Motion for Preliminary

22 Injunction at 7.  There, a foreign defendant (NCI) went to Minnesota seeking to negotiate a

23 potential resolution of patent-infringement claims with a Minnesota-based plaintiff (3M).  After

24 one and one-half years of negotiations, they signed a settlement agreement in Minnesota.  63

25 F.3d at 696.  The Eighth Circuit held that the settlement agreement created contacts needed for

26 personal jurisdiction because NCI undertook to perform its continuing settlement-related

27 obligations for 3M's benefit in Minnesota.  It emphasized that the *Burger King* test is met "if a

28 defendant has deliberately engaged in activities, such as having created continuing obligations,

19

within a state," and that in settling NCI had undertaken "continuing obligations" toward 3M. *Id.* at 697-699. There, the defendant's "continuing obligations" were toward *a resident of the forum*. This case is different. KS' only continuing obligations are *toward residents of Hawai`i,* the *Does*. KS has no continuing obligations toward residents of California, including Grant.

In sum, KS' contacts with California regarding a Hawai`i agreement that settled a Hawai`i lawsuit between Hawai`i citizens were attenuated and fortuitous and not directed toward creating any ongoing obligations toward anyone in California. In addition, Grant's claim against KS did not arise out of California-related activities. Therefore, this Court lacks personal jurisdiction over KS.

### b. Personal Jurisdiction in California Is Not Reasonable

Another insurmountable barrier to the exercise of personal jurisdiction over KS is created by the fact that the exercise of such jurisdiction would not "comport with fair play and substantial justice" and would not be "reasonable." *See Yahoo,* 433 F.3d at 1205-06. The Ninth Circuit has identified seven factors that bear on reasonableness: (1) the extent of the defendants' purposeful interjection into the forum state's affairs, (2) the burden on the defendant of defending in the forum, (3) the extent of conflict with the sovereignty of defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance to the forum of the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum. *See, e.g., Roth v. Gascia Marquez,* 942 F.2d 617 (9th Cir. 1991).

Virtually all of these factors (apart from concern for the sovereignty of Hawai`i) indicates that it would be unreasonable to exercise jurisdiction over KS in California. Specifically:

- KS did not purposefully interject itself into California affairs. KS, a Hawai`i citizen, was sued in Hawai`i by other Hawai`i citizens and it simply defended and resolved the litigation. Its contacts with California during the proceedings were minor and fortuitous, as described earlier

1    • KS would also suffer substantial burdens litigating in California. All of KS' employees
2        and witnesses are in Hawai`i. To attend proceedings in this Court, KS' representative
3        must fly to California, a five-hour flight each way, and stay overnight in a hotel.
4        Moreover, the Does, the only other parties to the settlement agreement, are Hawai`i
5        residents, as are the witnesses to Goemans' disclosure and the resulting discussions
6        between counsel for KS and the Does.

7    •  Hawai`i has a far stronger interest in resolving the dispute than California. As detailed
8        above, the underlying litigation and its settlement involved schools and children in
9        Hawai`i; the litigation generated intense interest in Hawai`i, including numerous amicus
10       briefs, letters from dozens of everyday Hawaiians, and wide news reporting. The effect
11       of Goemans' disclosure was also felt in Hawai`i, where the purported dollar value of the
12       settlement was headline news. Every issue in dispute in this case is a dispute primarily
13       between Hawai`i residents.

14   • Hawai`i is a readily available forum, and these controversies can be most efficiently
15       resolved in the courts of that State, where the Settlement Agreement at issue was entered
16       into, where Goemans' disclosure was broadcast and its effects felt, and where the vast
17       majority of the witnesses are. In contrast, the importance to California – particularly to a
18       federal court in California – of Grant's or the Does' interest in convenient and effective
19       relief is scant.

20   • Grant and the Does cannot credibly complain about litigating in Hawai`i. This lawsuit
21       grows out of a case Grant voluntarily filed in Hawai`i, for Hawai`i residents (the Does),
22       against Hawai`i residents. To pursue the case, Grant actively sought permission to
23       practice law in Hawai`i. *See* II.A.1, above. Having purposefully interjected himself into
24       Hawai`i affairs, Grant can reasonably expect to litigate any resulting dispute in Hawai`i.
25       *See T.M. Hylwa, M.D., Inc. v. Palka,* 823 F.2d 310, 314-15 (9th Cir. 1987) (out-of-state
26       accountant who performed work for California resident and periodically traveled to
27       California "deliberately created continuing obligations between himself and residents of
28       the forum" and "should reasonably anticipate being haled into court there"); *Stratagene v.*

21

1   *Parsons Behle & Latimer,* 315 F. Supp. 2d 765, 769 (D. Md. 2004) (out-of-state lawyers

2   who traveled to Maryland to represent party in litigation in federal court in Maryland

3   were subject to personal jurisdiction in that court in suit arising out of that litigation;

4   refusing to transfer case to lawyers' home state).

5        In short, this is a Hawai`i case. It is in the Eastern District now due solely to the

6   procedural manipulation of a California lawyer who, having voluntarily interjected himself in a

7   Hawai`i dispute, has employed a pre-emptive declaratory relief action to manufacture a

8   California forum. That does not comport with fair play and substantial justice. The Court lacks

9   personal jurisdiction over KS and should dismiss.

10    **C.**    **Even If Subject Matter and Personal Jurisdiction Exist, the Court Should Exercise Its Discretion to Decline to Entertain**
11           **Grant's Declaratory Judgment Claim**

12        As Judge Wanger explained in *Bou-Matic* (*see* pages 10-11, *supra*), the

13   Declaratory Judgment Act is designed to assist parties in making choices about their future

14   conduct and to avoid the unnecessary accrual of damages, not to adjudicate liability for past

15   conduct.[58] 10A Wright, Miller, and Kane, *Federal Practice and Procedure*, § 2751 at 569

16   (1983) (purpose of Declaratory Judgment Act is to minimize the danger of unavoidable loss and

17   the unnecessary accrual of damages and to afford one threatened with liability an early

18   adjudication without waiting until his adversary should see fit to begin an action after the

19   damage has accrued). For this reason, courts generally decline to exercise jurisdiction[59] over a

20   declaratory relief action unless the plaintiff is able to show that a declaratory judgment would

21   enable it to change its conduct to avoid damages that have not accrued. *See, e.g., Cunningham*

22   *Bros., Inc. v. Bail*, 407 F.2d 1165, 1168 (7th Cir. 1969) (where action not brought to avoid

23   damages which would accrue if certain conduct were continued, plaintiff must establish that suit

24   falls within some other purpose of the Act); *Crown Cork & Seal Co., Inc. v. Borden, Inc.*, 779

25   _____

26   [58] *See* Appendix, Ex. 17.
27   [59] *See, e.g., American States Ins. Co. v. Kearns*, 15 F.3d 142, 144 (9th Cir. 1994) (Declaratory
    Judgment Act gives discretion to courts in deciding whether to entertain declaratory judgment
    claims).

28

F. Supp. 33, 36 (E.D. Pa. 1991) (declaratory judgment not meant to prevent cost of litigating where a violation has already occurred); *The Board of Regents for Northwest Missouri State University v. MSE Corp.*, 1990 WL 212098, 1990 U.S. LEXIS 17344 (W.D. Mo. Nov. 20, 1990) (declaratory judgment inappropriate solely to adjudicate past conduct).

Grant cannot show this is a proper case for declaratory relief because he is only seeking an exculpatory ruling that he is not liable for any damages caused by the past breach of the Settlement Agreement. Nothing the Court might decide in connection with that past breach can help guide Grant's future conduct or affect the damages resulting from that breach. Accordingly, allowing Grant's declaratory relief action to proceed would be contrary to the purposes of the Act.

Indeed, Grant only filed this lawsuit because he allegedly feared that KS was going to sue him in Hawai`i for Goemans' disclosure. Grant Compl., ¶¶ 26-30. Courts regularly abstain from exercising jurisdiction over such pre-emptive relief claims:

> [A] district court should . . . decline jurisdiction when the federal action has simply been filed in anticipation of an impending state court suit; for example, when an insurer anticipates that its insured intends to file a non-removable state court action, it "rush[es] to file a declaratory judgment action in federal court in hopes of "preempt[ing] any state court proceeding."

*Maryland Cas. Co. v. Knight,* 96 F.3d 1284, 1289 (9th Cir. 1996) (citing *Continental Casualty Company v. Robsac Industries,*, 947 F.2d 1367, 1372-73 (9th Cir. 1991)). As the Seventh Circuit stated in *Bail*, "it is not one of the purposes of [the Act] to enable a prospective . . . defendant to obtain a declaration of non-liability." *Cunningham Bros., Inc. v. Bail*, 407 F.2d at 1168 (1969).

Moreover, allowing suits like this one to proceed only encourages forum shopping, which is also contrary to the purposes of the Act. *See, Travelers Ins. Co. v. Davis*, 490 F.2d 536, 543 (3rd Cir. 1974) (the object of the Act is "to afford a new form of relief where needed, not to furnish a new choice of tribunals . . .") (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 324 (4th Cir. 1937)); 12 *Moore's Federal Practice* § 57.42[3] (3d ed.) ("The Declaratory Judgment act may not be used for procedural fencing, or as a tool for forum shopping. For example, a declaratory relief plaintiff may not rush to file in federal court solely

1    to evade the forum choice of the [declaratory judgment defendant] . . . ."); Schwarzer, Tashima

2    & Wagstaff, *Cal. Prac. Guide: Fed. Civ. Pro. Before Trial* (The Rutter Group 2002) § 10:47

3    ("Federal courts usually abstain where a declaratory judgment action appears to have been filed

4    to 'preempt' litigation in state court between the same parties on the same state law issues; i.e.

5    where the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to

6    provide an arena for a race to res judicata.'").

7         Grant and the Does rushed to file their declaratory relief claims in this Court in

8    anticipation that Goeman's disclosure of settlement terms would cause KS to file a Hawai`i state

9    court lawsuit. They filed it here, in a forum with only the most tenuous ties to this dispute, solely

10    to use the Declaratory Judgment Act as a procedural weapon to force KS to litigate in a distant

11    and inconvenient forum, and to deprive KS of its choice of forum if it decides to seek damages.

12    They are not asking the Court to determine how they should act in the future. They only seek

13    declarations that they cannot be held liable (under Hawai`i – not federal law) for something that

14    has already happened.

15         This is precisely the type of opportunistic forum-driven declaratory relief claim

16    that courts consistently decline to entertain. The fact that KS has not yet filed suit does not alter

17    the pre-emptive nature of Grant's action and should not change the outcome. *Huth v. Hartford*

18    *Ins. Co.,* 298 F.3d 800, 802-03 (9th Cir. 2002) (absence of a pending state action does not

19    preclude district court from declining discretionary jurisdiction). The Court should exercise its

20    discretion and dismiss Grant's declaratory relief action.

21    **IV.    CONCLUSION**

22         The Court lacks both subject matter over this case and personal jurisdiction over

23    KS. Even if jurisdiction were present, Grant's declaratory relief action is the kind of

24    opportunistic forum shopping that is inconsistent with the purposes of the Declaratory Judgment

25    Act. The Court should, therefore, grant this motion.

26

27

28

1   DATED:  July 9, 2008              Bingham McCutchen LLP

2                                     Alston Hunt Floyd & Ing

3

4                                     By:_____/s/  Paul Alston_____
                                              Paul Alston
5                                     Attorneys for Defendants and Cross-Defendants
                                      KAMEHAMEHA SCHOOLS/BERNICE PAUAHI
6                                     BISHOP ESTATE; J. DOUGLAS ING, NAINOA
                                      THOMPSON, DIANE J. PLOTTS, ROBERT K.U.
7                                     KIHUNE, and CORBETT A.K. KALAMA, in their
                                      capacities as Trustees of the Kamehameha
8                                     Schools/Bernice Pauahi Bishop Estate

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28