JERRY H. STEIN (State Bar No. 78309)
LEVIN & STEIN
28494 Westinghouse Place, Suite 201
Valencia, California 91355
Telephone: (310) 207-4663
Facsimile: (310) 207-2803
Email: jstein@lscslaw.com

KEN T. KUNIYUKI
KUNIYUKI & CHANG
Suite 2660, Pauahi Tower
1003 Bishop Street
Honolulu, HI 96813-3429
Telephone: (808) 524-5111
Facsimile: (808) 521-2389
Email: ken@law-hawaii.com

Attorneys for Defendants and Counter-Claimants JOHN DOE and JANE DOE

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC GRANT,<br><br>Plaintiff,<br>v.<br><br>KAMEHAMEHA SCHOOLS/BERNICE PAUAHI BISHOP ESTATE; J. DOUGLAS ING, NAINOA THOMPSON, DIANE J. PLOTTS, ROBERT K.U. KIHUNE, and CORBETT A.K KALAMA, in their capacities as Trustees of the Kamehameha Schools/ Bernice Pauahi Bishop Estate; JOHN DOE; and JANE DOE,<br><br>Defendants.<br><br>JOHN DOE; and JANE DOE,<br><br>Counter-Claimants<br><br>v.<br><br>KAMEHAMEHA SCHOOLS/BERNICE PAUAHI BISHOP ESTATE; J. DOUGLAS ING, NAINOA THOMPSON, DIANE J. PLOTTS, ROBERT K.U. KIHUNE, and CORBETT A.K KALAMA, in their capacities as Trustees of the Kamehameha Schools/ Bernice Pauahi Bishop Estate; and ERIC GRANT,<br><br>Counter-Defendants | CASE NO.:08-00672 FCD-KSM<br><br>JOHN AND JANE DOE'S OPPOSITION TO MOTION TO DISMISS<br><br>Date: October 31, 2008<br>Time: 10:00 a.m.<br>Courtroom 2<br>Before: Hon. Frank C. Damrell, Jr. |

# TABLE OF CONTENTS

I.    INTRODUCTION AND STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II    AS ALLEGED IN GRANT'S COMPLAINT, AND AS EVIDENCED BY GRANT'S MOTION FOR SUMMARY JUDGMENT, THERE IS AN ACTUAL AND SUBSTANTIAL CONTROVERSY BETWEEN GRANT AND THE DOES WHICH PRECLUDES THE REALIGNMENT REQUESTED BY KS. . . . . . . . . . . . . . . . . . 4

    A.    The Controversy Between the Does and Grant Arises From Their September 2007 Settlement Agreement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    B.    Because There Is An Actual And Substantial Controversy Between Grant And The Does, The Realignment Requested By KS Is Precluded. . . . . . . . . . . . . . . . . . . . . 5

III    SPECIFIC JURISDICTION EXISTS IN THIS CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    A.    Applying The Three-Prong Specific Jurisdiction Test To Determine Personal Jurisdiction Results In The Inescapable Conclusion That Specific Jurisdiction Exists Over KS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    1.    Because the KS/Doe Settlement Agreement was negotiated and required at least part performance in California, the purposeful availment test for establishing specific jurisdiction is satisfied. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        a.    The Prior Negotiations Factor Weighs In Favor Of Establishing  Purposeful Availment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        b.    The Contemplated Future Consequences Factor Weighs In Favor Of Establishing Purposeful Availment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        c.    The Contract Terms Factor Weights In Favor of Establishing Purposeful Availment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        d.    The Actual Course of Dealing Factor Weighs In Favor Of Purposeful Availment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    2.    The Claim Arose Out of or Resulted to Forum-Related Activities. . . . . . . . . . . . . . . 17

    3.    Personal Jurisdiction in California is Reasonable. . . . . . . . . . . . . . . . . . . . . . . . . . . 17

IV    THE COURT SHOULD NOT DECLINE JURISDICTION TO DETERMINE GRANT'S COMPLAINT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

    A.    While There Are No Unsettled Issues Of Hawaiian Law Relating To Breach Of The Confidentiality Provision, There Are Unsettled Issues of California Law Relating To Grant's Liability to The Does. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

    B.    The Remaining *Brillhart* Factors Weigh In Favor Of The Court Retaining Jurisdiction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

V.    CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

1

*3M v. Nippon Carbide Indus. Co.*, 63 F.3d 694, 698 (8th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *20*

*AT & T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . 12

*Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Bou-Matic, LLC v. Ollimac Dairy, Inc.*, 2007 WL 2898675 (E.D. Cal. 2007). . . . . . . . . . . . . . . . . . *10, 11*

*Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 62 S. Ct. 1173, 86 L. Ed. 1620 (1942). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *21, 22, 23, 24, 25*

*Brunson v. Kalil & Co.,* 404 F. Supp. 2d 221 (D. D.C. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478-479, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985). . . 13

*CE Distrib., LLC v. New Sensor Corp.*, 380 F.3d 1107, 1112 (9th Cir. Ariz. 2004). . . . . . . . . . . . . 19*, 20*

*City of Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 62 S. Ct. 15, 86 L. Ed. 47 (1941). . . . 5, 6, 7, 8, 11

*Continental Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1523  (9th Cir. 1987). . . 9, 10

*Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1489 (9th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . 19

*Daar & Newman v. Vrl International* (2005) 129 Cal. App. 4th 482; 492-493, 28 Cal. Rptr. 3d 566. . . 13

*Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 841 (9th Cir. 1986). . . . . . . . . . . . . . . . 20

*Doe v. Unocal Corp.*, 27 F. Supp. 2d 1174, 1181 (C.D. Cal. 1998), aff'd, 248 F.3d 915 (9th Cir. 2001*). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *12*

*Dolch v. United Cal. Bank*, 702 F.2d 178, 181 (9th Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Government Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998). . . . . . . . . . . . . . . . . . . 21

*Henry R. Jahn & Son v. Superior Court* (1958) 49 Cal.2d 855, 861, 323 P.2d 437. . . . . . . . . . . . . . . . 13

*In re San Juan Dupont Plaza Hotel Fire Litig.*, 802 F. Supp. 624, 631 (D.P.R. 1992). . . . . . . . . . . . . . . 7

*J. G. Boswell Tomato Company - Kern, LLC v. Private Label Foods, Inc,* 2008 U.S. Dist. LEXIS 66103 (E.D. Cal. July 31, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 18

*Lenscrafters, Inc. v. Liberty Mut. Fire Ins. Co.*, 2007 U.S. Dist. LEXIS 71101 (N.D. Cal. Sept. 18, 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Lu v. Dryclean-U.S.A. of Cal.*, 11 Cal. App. 4th 1490, 1493, 14 Cal.Rptr.2d 906 (1992). . . . . . . . . . . . . 20

*Naumes Inc. v. Alimentos Del Caribe*, 77 F. Supp. 2d 1158, 1162 (D. Or. 1999) (citing *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1320 (9th Cir. 1998)). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Polido v. State Farm Mut. Auto. Ins. Co.*, 110 Cal. App. 1418,1422 (9th Cir. 1997). . . . . . . . . . . . . . . . 21

*Prince v. Pacific Gas & Electric Co.*, 145 Cal. App. 4th 289, 298 (Cal. App. 2006). . . . . . . . . . . . 22, 23

***TABLE OF AUTHORITIES CONT'D***.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)............. 12, 13, 17

*Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990) ....................................... 18

*Standard Management, Inc. v. Kekona, 99 Hawai'i* 125, 134, 53 P.3d 264, 273 (App. 2001).............. 19

*Taubler v. Giraud*, 655 F.2d 991, 995 (9th Cir. 1981). ...................................... 15

*Terracom v. Valley Nat. Bank*, 49 F.3d 555, 561 (9th Cir. 1995), (quoting *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 385-86 (9th Cir. 1990). ................................................ 17

*Unocal*, supra, 27 F. Supp. 2d at 1181.................................................. 12

*Vorys, Sater, Seymour & Pease v. Ryan* (1984) 154 Cal. App. 3d 91, 94, 200 Cal. Rptr. 858. ........ 13

*Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 419 (9th Cir. 1977). ............... 14

*Zurn Industries, Inc. v. Acton Constr. Co.*, 847 F.2d 234, 236-237 (5th Cir., 1988).............. 6, 7, 8

JOHN AND JANE DOE'S OPPOSITION TO MOTION TO DISMISS

I       INTRODUCTION AND STATEMENT OF FACTS

Kamehameha Schools/Estate of Princess Bernice Pauahi Bishop and its trustees' (collectively "KS") Motion to Dismiss is based upon three grounds:

(1)       In determining whether there is diversity jurisdiction in this case KS claims that the Court must realign Defendants John and Jane Doe (the "Does") with Plaintiff Eric Grant ("Grant") because Grant and the Does purportedly have an identical interest in proving that they have no liability as a result of John Goemans' ("Goemans") disclosure of the confidential financial terms of the settlement between KS and the Does.  KS argues that if the Does are realigned with Grant, then because there are Hawaiian citizens on each side of the case, there is no diversity jurisdiction.

(2)       KS claims that this Court lacks either general of specific jurisdiction over it.

(3)       Alternatively, even if there are otherwise no jurisdictional defects, KS asks the Court to exercise its discretion to decline jurisdiction and dismiss this action.

KS's challenge to diversity jurisdiction in this case is based upon the incorrect assumption that Grant and Does have an identical interest in defeating KS's claims and, therefore, there is no actual and substantial controversy as between Grant and the Does.  As evident from the recent Motion For Summary Judgment filed by Grant, Grant's position is that regardless of whatever ultimately may by the Does' contractual liability to KS for Goemans' disclosure, under California law, Grant has no liability to the Does, if he has no liability to KS.  Consequently, in his Motion Grant seeks to exonerate himself, while leaving the Does still potentially liable to KS.

Although KS refuses to recognize the reality of the Does' position, the Does are aligned with KS for purposes of defeating Grant's Motion for Summary Judgment.  Moreover, even if it is ultimately determined that the Does are not liable to KS for Goemans' disclosure, there is still an ongoing dispute between the Does and Grant in that the Does claim that, pursuant to the terms of the settlement agreement between Grant and the Does (the "Grant/Doe Settlement Agreement"), Grant must reimburse the Does for at least the first $100,000 of fees that the Does will incur in this action.

For purposes of this Motion the Does are only contending that there is specific jurisdiction over KS.  With respect to whether specific jurisdiction exists over KS, KS takes a very narrow and slanted view of the facts.  As demonstrated below, specific jurisdiction over KS is established by the following

1

undisputed facts in the record before the Court:

1.      The instant action arises out of a settlement agreement between KS and the Does (the "KS/Doe Settlement Agreement"[1]) that was negotiated exclusively in California by California attorneys, Kathleen Sullivan ("Sullivan") representing KS, and Grant representing the Does.  (See Paragraphs 11 and 12 of Grant's Declaration filed in Support of his Reply to KSBE Defendants' Opposition to Doe Defendants' Motion for Preliminary Injunction ("Grant Dec.").

2.      The KS/Doe Settlement Agreement was signed by five KS trustees and one former trustee. Two of these six trustees signed the settlement agreement while in California. [2]

3.      On a separate page of the KS/Doe Settlement Agreement entitled "Approval as to Form," Sullivan and Grant, while in California, each executed a provision stating: "On behalf of our respective clients, we approve the foregoing Settlement Agreement and General Release as to form."  (Grant Dec., ¶ 13)

4.      At KS's specific demand, Grant while in California, executed a separate declaration that became part of the KS/Doe Settlement Agreement confirming that the signatures of both "John Doe" and "Jane Doe" were genuine. (Grant Dec., ¶ 14)

5.      Payment of the settlement amount by KS was made to Grant's client trust account at Grant's bank in Sacramento. (Grant Dec., ¶ 15)

6.      The Does' immediate performance under the KS/Doe Settlement Agreement, dismissing their pending petition for certiorari, was accomplished by a stipulation executed by Grant and Sullivan in California and faxed to the United States Supreme Court Clerk from California. (Grant Dec., ¶ 14)

7.      As part of the KS/Doe Settlement Agreement KS not only released any and all claims against the Does, it also released any and all claims against the Does' attorneys.  This release clearly included Grant, and according to KS, would also have included Goemans, who was also a California

---

[1]      The KS/Doe Settlement Agreement was filed under seal by the Does as Exhibit 1 to the Declaration of Jane Doe in support of their Motion for Temporary Restraining Order and Preliminary Injunction on April 3, 2008.

[2]      See Declarations of Constance Lau and Corbett A.K. Kalama.

citizen at the time.[3]   (¶ 5 of KS/Doe Settlement Agreement)

8.      As interpreted by KS, the KS/Doe Settlement Agreement not only required confidentiality from the Does, but also by California citizens Grant and Goemans.

9.      By August of 2007, Grant, Goemans and the Does were involved in a dispute as to how the contingent fee to be paid by the Does from the settlement with KS was to be divided between Grant and KS.  On or about August 23, 2007, the Does advanced certain monies to Goemans and Goemans agreed in writing, among other things that he would not take "...any other action which would jeopardize the confidentiality section of the underlying settlement agreement unless authorized to do so by a Court of competent jurisdiction." This agreement indicates that it was executed by Goemans on August 23, 2007 in Beverly Hills, California.   (Exhibit A to the Grant/Doe Settlement Agreement; this document was filed under seal by KS as exhibit 24)

10.     In order to attempt to keep Goemans from violating the confidentiality provision in the KS/Doe Settlement Agreement, at the Does' insistence, Grant obtained a temporary restraining order prohibiting Goemans from making the disclosures that he ultimately made.  (Declaration of Eric Grant in Support of his Motion for Summary Judgment, ("Grant S/J Dec.")¶ 8)

11.     KS's threat to sue Grant was communicated by the Does' counsel to Grant's California counsel.

12.     On both March 24 and March 25, 2008, the Does through their California counsel also threatened to sue Grant, asserting in conversations with Grant's California counsel that Grant was responsible in whole or in part for any breaches of the KS/Doe Settlement Agreement resulting from Goemans' disclosures, such that Grant had an obligation under the Grant/Doe Settlement Agreement or otherwise to defend and/or indemnify the Does against any action brought against them by KS. (Declaration of Jerry Stein ("Stein Dec.), ¶ 5)

13.     While Grant denies either owing a duty to KS or breaching that duty, if KS is correct and there was a breach of some duty by Grant, that breach arose from the following events in California: (a)

---

[3]      Goemans stated in an August 2008 Declaration (Exhibit 1 to Stein's Declaration) that was signed in Los Angeles, California, that while the underlying ligation was on going that he was a resident of California. See Goemans' Declaration, ¶ 4

A telephone conference between the Does, Grant, while he was in California, and Goemans that took place before the KS/Doe Settlement Agreement was executed in which Grant disclosed the financial terms of the proposed settlement to the Does and to Goemans (Grant S/J Dec."¶ 3); and (b) the transmittal of the executed KS/Doe Settlement Agreement by Grant's California counsel to Robert Esensten ("Esensten"), a California attorney who was representing both the Does and Goemans in the fee dispute with Grant. (Declaration of James Banks, Exhibits 1-2)

**II    AS ALLEGED IN GRANT'S COMPLAINT, AND AS EVIDENCED BY GRANT'S MOTION FOR SUMMARY JUDGMENT, THERE IS AN ACTUAL AND SUBSTANTIAL CONTROVERSY BETWEEN GRANT AND THE DOES WHICH PRECLUDES THE REALIGNMENT REQUESTED BY KS**

    A.    <u>The Controversy Between the Does and Grant Arises From Their September 2007 Settlement Agreement</u>.

In arguing that the parties need to be realigned before there can be a determination of whether diversity jurisdiction exists in this case, KS focuses almost exclusively on the rights of the parties under the KS/Doe Settlement Agreement and ignores the impact of the Grant/Doe Settlement Agreement. In order for the Court to understand the nature of the controversy between Grant and the Does, the Court needs to be aware of the relevant terms of the Grant/Doe Settlement Agreement.

As set forth above, shortly after KS paid the settlement proceeds to Grant's trust account, a dispute arose between the Does, Grant and Goemans as to how much of a fee was owed, and how that fee should be divided between Grant and Goemans. In September of 2007, the Does and Grant entered into a settlement agreement which, among other things, set the amount of the total fee to be paid by the Does; required Grant to seek a determination of what portion of the fee was owed to Goemans; guaranteed that the total fee payable to Grant and Goemans would not be higher than the agreed amount; and required Grant to defend and indemnify the Does from any suit by Goemans.

With respect to KS, the Doe/Grant Settlement Agreement provided that:

"Grant will apply for a protective order in that litigation requiring Goemans to maintain the confidentiality of the settlement reached in the Underlying Litigation and the identities of Jane Doe and John Doe. As need be, Grant will seek enforcement of the protective order, if entered by the court, and take reasonable steps in that litigation to preserve the confidentiality of the settlement and settlement agreement in the Underlying Litigation and to protect the identities of Jane Doe and John Doe." (Paragraph 3(b))

"The Parties acknowledge that the agreement memorializing the settlement of the Underlying Litigation contains a confidentiality clause. If the Bishop Trust (or its

4

assignee) brings suit against the Does seeking damages or to enforce the confidentiality clause in the agreement memorializing the settlement of the Underlying Litigation, Grant will defend the Does in any such litigation, provided that, those claims are based upon a breach (or threatened breach) of the confidentiality clause by Grant. Grant shall have no obligation to defend the Does for any other alleged breach of the confidentiality clause (including but not limited to an alleged breach by the Does personally). Grant's obligation to defend is subject to the same $100,000 combined limit set forth in paragraph 4..." (Paragraph 5)

In addition, the Does' release of Grant released all claims: "save and except any claim of indemnity which the Does may have against Grant in the event that the Bishop Trust or its assignee initiates suit against the Does as a consequence of Goemans and/or Grant's breach of the confidentiality provisions of the agreement memorializing the settlement of the Underlying Litigation." (Paragraph 6(b))

B. <u>Because There Is An Actual And Substantial Controversy Between Grant And The Does, The Realignment Requested By KS Is Precluded.</u>

KS contends that, pursuant to the principles set forth in *City of Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 62 S. Ct. 15, 86 L. Ed. 47 (1941), for purposes of determining diversity jurisdiction the Does should be realigned with Grant because according to KS: "[t]he principal purpose of this lawsuit is to determine that KS cannot sue any of the other parties based upon Goemans' disclosure to the press." (Motion, 11:7-8). However, in so arguing KS misapplies controlling law and misstates the principal purpose of Grant's lawsuit.

As demonstrated below, the determination of the primary and controlling matter in dispute does not include the cross-claims and counterclaims filed (or to be filed) by the defendants, KS and the Does. Instead, the primary and controlling matter in dispute is to be determined by **Grant's** principal purpose for filing his action. As demonstrated by Grant's recent Motion for Summary Judgment, Grant's interest is not to protect the Does from KS's claims, but to prove that he has no liability to either KS or the Does. Consequently, because there is an actual, substantial controversy between Grant and the Does, KS's request to realign the Does as plaintiffs for diversity determination should be denied.

In *City of Indianapolis*, the Court explained that there must be an actual, substantial controversy between citizens of different states to sustain diversity jurisdiction. *Id.* at 69, 62 S. Ct. at 17. To ensure that such an actual and substantial controversy exists the *City of Indianapolis* Court instructed that a court must "look beyond the pleadings, and arrange the parties according to their sides in the dispute."

*Id.* (quotation omitted). The "necessary 'collision of interest'" has to be determined "from the 'principal purpose of the suit,' and the 'primary and controlling matter in dispute.'" *Id.*

In *Zurn Industries, Inc. v. Acton Constr. Co.*, 847 F.2d 234, 236-237 (5th Cir., 1988), the Court held that for purposes of a proposed *City of Indianapolis* realignment, the determination of the "primary and controlling matter in dispute" must be based upon the plaintiff's principal purpose for filing his suit and should not include any cross-claims and counterclaims filed by the defendants. Thus, in *Zurn Industries, Inc.*, the action arose out of the construction of a sewage treatment plant in Garland, Texas. Zurn was the subcontractor who built the carbon absorption system, one component of the project. Acton Construction Company, a Minnesota citizen, was one of the two general contractors. URS Company, a Texas citizen, was the design engineer for the whole project.

Shortly after the new plant started up, the underdrains on the carbon absorption unit ruptured. Zurn then attempted to repair and modify the underdrains. After considerable work, Zurn abandoned the effort. Eventually, the unit was repaired and included in a system that was different than the originally designed plant.

Zurn, a Pennsylvania citizen, brought its action in Federal Court against Garland, URS, and Acton. Zurn sought approximately $900,000 for the extra work in the attempted repair of the underdrain. Zurn alleged that URS's design error, or Garland's operational error, caused the underdrain to rupture. The action against Acton was based on contract.

Garland then cross-claimed and counterclaimed against Zurn, Acton and others seeking some $5,000,000 on the theory that the underdrain was negligently designed or built. Various other cross-claims and counterclaims were filed and additional parties added. The district court sorted through all the various claims and stated that there were two "primary" claims: (1) the process design claim, or whether the design could have ever worked, and (2) the underdrain claim, or whether the underdrain was properly constructed. The district court decided that Garland was the real plaintiff in interest on both the claims and realigned Garland as the plaintiff. The realignment put Texas citizens on both sides of the suit, Garland as plaintiff, URS as defendant, and diversity jurisdiction was destroyed. The court then dismissed the entire case for lack of subject matter jurisdiction.

In reversing the trial court and holding that diversity jurisdiction existed, the *Zurn* Court held that

the trial court erred in determining realignment based upon Garland's cross and counter-claims and ignoring Zurn's initial complaint for the $900,000 in extra work. The *Zurn* Court explained its holding as follows at page 237:

> "The district court realigned the parties according to what it viewed as the two 'primary' claims. The court took all of the various claims including the counterclaims and cross-claims and determined which two were the 'primary' claims. **Joining of all the claims and deciding which are the 'primary' claims is not warranted by** *City of Indianapolis*. **The objective of** *City of Indianapolis* **realignment is only to insure that there is a bona fide dispute between citizens of different states.** 314 U.S. at 69, 62 S. Ct. at 17. The determination of the 'primary and controlling matter in dispute' does not include the cross-claims and counterclaims filed by the defendants. Instead, it is to be determined by plaintiff's principal purpose for filing its suit....
>
> The principal claim here is Zurn's claim for almost $ 900,000 for extra work. That claim continues to exist. It is a bona fide claim, as all parties admit, not just asserted to create federal jurisdiction. On that claim, none of the defendants should be realigned under *City of Indianapolis*. Zurn has a legitimate dispute with URS, Garland and Acton. **The fact that Zurn is on the same side as Acton and URS on Garland's cross-claims and counterclaims is of no consequence to the jurisdiction over the original claim**."
> [Emphasis Added]

In accord, *In re San Juan Dupont Plaza Hotel Fire Litig*., 802 F. Supp. 624, 631 (D.P.R. 1992)["Although it is a well recognized axiom that the Court has a duty to look beyond the pleadings and determine the primary and controlling matter in the dispute and align the parties according to their genuine interests, *id*., it need not take into consideration the counterclaims and cross-claims filed by defendants but only the plaintiffs' principal purpose in filing the suit."]

As reflected in his Complaint and Motion for Summary Judgment, Grant's position vis-a-vis KS is that: (1) Grant had no contractual relationship with KS; (2) Even if Grant assumed a contractual duty to KS, Grant cannot be held liable to KS for any purported breach of confidentiality provision resulting from Goemans' disclosure; and (3) There is no conceivable tort theory on which Grant can be held liable to KS arising from Goemans' disclosure. Thus, Grant's complaint and Summary Judgment Motion focus exclusively on Grant's potential liability to the Estate, rather than the Does' potential liability.

In fact, as explained in the next paragraph, the granting of the summary judgment sought by Grant, would hurt, rather then help the Does. Thus, despite KS's claims that the interests of the Does and Grant are aligned against KS, with respect to Grant's current Summary Judgment Motion the Does are actually aligned with KS with respect to wanting the Court to deny Grant's Motion.

In his Motion Grant takes the position that he can only be liable to indemnify the Does if he is

liable to KS. For example, in the portion of his Motion directed at the Does Grant concludes:[4]

> "There can be no indemnity in favor of the Does without liability to KSBE on Grant's part. But as demonstrated above, Grant is simply not liable to KSBE on any ground. To say the same thing, indemnity requires a determination of fault on Grant's part. But as demonstrated above, Grant is without fault." (Grant's Motion:16:16-19)

As evident from Grant's Complaint and his Motion for Summary Judgment, there is an actual and substantial controversy between the Does and Grant, which actually aligns the Does with KS in opposing the declaratory relief that Grant seeks in his Complaint.

As noted by the portion of the *Zurn* decision quoted above, the fact that Grant may benefit if the Does prevail on their counter-claims against KS is of no consequence to issue of whether jurisdiction exists over Grant's complaint. In fact, even if the Does are completely exonerated with respect to liability for Goemans' breach, under the express terms of the Grant/Doe Settlement Agreement (paragraph 5), they still have a claim against Grant to recoup the first $100,000 of litigation expenses that they incurred in this case. Because there is an actual and substantial controversy between the Does and Grant with respect to Grant's contention that he has no indemnity obligations to the Does, the *City of Indianapolis* realignment requested by KS should be denied.

Finally, the cases cited by KS in its Motion do not require a different result. The primary case relied upon by KS is *Dolch v. United Cal. Bank*, 702 F.2d 178, 181 (9th Cir. 1983). In *Dolch,* Dr. and Mrs. Dolch, owned valuable copyrights. After the death of Mr. Dolch, Mrs. Dolch and her five children. executed assignments of the renewal rights to these copyrights to the bank, which was a trustee of the trusts set up by Dr. and Mrs. Dolch for their children and grand-children.

After the death of Mrs. Dolch, Marguerite Dolch, one of the three surviving Dolch children, brought suit in District Court to overturn the assignments. She sought an accounting and a declaration that she and her two surviving siblings, Catherine McAndrew and Eleanor LaRoy, were each owners of an undivided one-third interest in the renewal rights. Marguerite's lawsuit was brought against the bank, which was a trustee of both trusts set up by the Dolchs, and her sister, Catherine McAndrew, a co-trustee of one of the trusts.

The grandchildren and great-grandchildren whose interests in the renewal rights were created by

---

[4]     Erroneously in the Does' opinion.

the assignments intervened, asking the district court to realign Catherine as a plaintiff and so defeat diversity jurisdiction.  In dismissing the complaint the District Court found that Catherine not only had the same ultimate interest in the outcome of the action as Marguerite, as demonstrated by the fact that Catherine even admitted all of allegations in Marguerite's complaint, but that Catherine, rather than the plaintiff  Marguerite, was the "driving force" behind the action.

The Ninth Circuit affirmed the dismissal noting that Catherine had clearly pursued her personal interests by trying to have the assignments voided.  Thus, in *Dolch,* not only was the primary purpose of the dispute absolutely clear from the Marguerite's complaint, but it was also absolutely clear that the interests of Marguerite and Catherine were completely aligned to the point that it was defendant Catherine, rather than plaintiff Marguerite, who was the "driving force" in seeking to have the assignments voided.

KS's reliance upon *Continental Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1523 (9th Cir. 1987) is also misplaced.   In *Continental Airlines*, Continental bought an airplane from McDonnell Douglas Corporation  ("MDC"), pursuant to a contract which included a limited warranty in which MDC undertook certain servicing obligations and an exculpatory clause in which Continental waived all other remedies against MDC.   While nearing takeoff two front tires of the purchased plane blew out. The pilot aborted the takeoff, but the landing gear broke away from the plane, rupturing a fuel tank, which burst into flame. The emergency escape slides failed, apparently due to the heat of the ensuing fire.  Four passenger died, and over seventy suffered injuries. The plane was destroyed.

Continental filed two suits, one state and one federal. In state court, Continental sued MDC and Sargent Industries, supplier of the failed escape slides. In federal court, Continental sued Goodyear and B.F. Goodrich, each of which had supplied one of the two blown-out tires. In each suit, Continental sought damages for the lost airplane and indemnity against liability to passengers.

MDC sought a federal forum. It tried initially to remove the state case, but the district judge, after finding no federal question and no diversity because Sargent and Continental were both California citizens, remanded the case to the state court. MDC then instituted a federal declaratory judgment action. It named Continental, Sargent, Goodyear and Goodrich as defendants, basing jurisdiction on diversity. At Continental's request, the federal actions were consolidated.

MDC sought summary judgment in its federal action. At the same time, Continental moved to dismiss or stay MDC's federal action in favor of the state litigation. The district court denied Continental's motion and granted partial summary judgment in favor of MDC. It held that MDC's exculpatory clause was enforceable under California law and effective against Continental's negligence and strict liability claims as to loss of the aircraft.

On appeal, the Court raised the issue of whether there was actually diversity jurisdiction for MDC's action sua sponte, holding that Sargent needed to be realigned with MDC and against Continental and, therefore, there was no complete diversity as both Sargent and Continental were California citizens. The Court explained its ruling as follows at page 1523:

> "Sargent, properly aligned, does belong with MDC. Sargent's strongest contention below was that MDC's exculpatory clause barred Continental's claims against the parts manufacturers. Indeed, the district court so held. MDC took the same position, because if Continental had been able to recover against Sargent, Sargent could have sought indemnity against MDC. **Thus both manufacturers had an identical interest in proving the validity and scope of MDC's exculpatory clause. Indeed Sargent filed papers below supporting MDC's winning summary judgment motion, and the two parties arranged to be represented by the same counsel on this appeal.**" [Emphasis Added]

Here, unlike the situation in the *Continental Airlines* case, Grant does not have the same interest as the Does in establishing that the Does have no liability under the KS/Doe Settlement Agreement. As explained above, Grant's position is that even if the Does may ultimately be liable to KS, he escapes all liability to the Does if he demonstrates that he has no liability to KS. Thus, rather than supporting Grant's Motion for Summary Judgment, as Sargent did MDC's motion in the *Continental Airlines* case, the Does intend to oppose Grant's Motion for Summary Judgment. In addition, even if the Does ultimately prevail as to their claim that they are not liable to KS for Goemans' disclosure, it is the Does's position that they still have indemnity claims against Grant pursuant to the Grant/Doe Settlement Agreement. Not surprisingly, Grant denies any such indemnity liability.

KS also cites and unpublished case out of the Eastern District of California, *Bou-Matic, LLC v. Ollimac Dairy, Inc.*, 2007 WL 2898675 (E.D. Cal. 2007). However, *Bou-Matic* is also clearly distinguishable from the instant case.

In *Bou-Matic,* a Wisconsin manufacturer of robotic milking machines sold a milking machine to a California end user, Ollimac Dairy*,* through an independent California equipment dealer, defendant

Turlock Dairy and Refrigeration, Inc. (TDR).   When the milking machine did not work as represented Ollimac complained that it had been defrauded by Bou-Matic and TDR.  While negotiations were ongoing with Ollimac, Bou-Matic filed a federal action against Ollimac and TDR, seeking a declaration of its rights and responsibilities with respect to any liability for any misrepresentations in the design or operation of the milking machine.

Whereupon, Ollimac moved to dismiss the complaint claiming that the parties needed to be realigned so that it was on opposite sides from TDR and, therefore, there was no diversity jurisdiction. The District Court agreed holding that the based upon the allegations of the Complaint, which disclosed a products liability case, Ollimac's interests were clearly adverse to both *Bou-Matic* and TDR with respect to whether the milking machine was defective and if there were any misrepresentations made to Ollimac.  The District Court also noted that even though there might be subsequent express or implied equitable indemnity claims among TDR, Bou-Matic, and the other defendants if Ollimac prevails, that did not change this antagonism of interests over the primary matter in the complaint, which was a products liability dispute.

Thus, in *Bou-Matic* the Court looked at the dispute as set forth in the Complaint and determined that the parties should be realigned because both TDR and Bou-Matic denied selling a defective milking machine to Ollimac, or making any misrepresentations to Ollimac.  The Court noted in its opinion:

> "Here, the alignment of the parties for diversity purposes must be ascertained from "the principal purpose of the suit," and "the primary and controlling matter in dispute." *City of Indianapolis*, supra, 314 U.S. at 69. **This is determined by the Complaint**." [Emphasis Added]

While in *Ollimac Dairy, Inc*., the complaint disclosed that the TDR and Bou-Matic should be aligned on opposite sides of the case from Ollimac because their positions vis-a vis Ollimac were identical, here Grant's Complaint disclosed that while any potential claim by KS against the Does would primarily be for breach of the KS/Doe Settlement Agreement, KS's claims against Grant would be based on some undisclosed non-contract theory, as Grant was not party to the KS/Doe Settlement Agreement. Furthermore,  a determination that Grant had no liability to KS, Grant's best argument, would not only not exonerate the Does from potential liability to KS, but such a determination might eliminate Grant's potential liability to the Does.

Focusing on Grant's Complaint, Grant has a bona fide dispute with both KS as to his liability, if any, resulting from Goemans' disclosures, and the Does with respect to his liability under the Grant/Doe Settlement Agreement. Despite KS's claims that the Does and Grant's interests coincide, it is in **both** KS and the Does' best interest to defeat the relief that Grant is seeking. Consequently, the realignment sought by the KS should be denied.

## III     SPECIFIC JURISDICTION EXISTS IN THIS CASE

Where, as here, the motion to dismiss for lack of personal jurisdiction is being decided without an evidentiary hearing, the Does need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995); *Doe v. Unocal Corp.*, 27 F. Supp. 2d 1174, 1181 (C.D. Cal. 1998), aff'd, 248 F.3d 915 (9th Cir. 2001). The Does version of the facts must be taken as true for purposes of the motion if not directly controverted, and conflicts between the parties' affidavits must be resolved in the Does' favor for purposes of deciding whether a prima facie case for personal jurisdiction exists. *AT & T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996); *Unocal*, supra, 27 F. Supp. 2d at 1181.  As demonstrated below, the Does have more than satisfied the burden of making a prima facie showing of jurisdictional facts to withstand KS's Motion to Dismiss.

A.     Applying The Three-Prong Specific Jurisdiction Test To Determine Personal Jurisdiction Results In The Inescapable Conclusion That Specific Jurisdiction Exists Over KS.

Depending on the nature of the contacts between the defendant and the forum state, personal jurisdiction is characterized as either general or specific.  For purposes of this Motion, the Does are only contenting that there is specific jurisdiction.

The test for specific personal jurisdiction has three parts:  (1) the defendant must perform an act or consummate a transaction within the forum, purposefully availing himself of the privilege of conducting activities in the forum and invoking the benefits and protections of its laws; (2) the claim must arise out of or result from the defendant's forum-related activities; and (3) exercise of jurisdiction must be reasonable. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).  The plaintiff bears the burden of satisfying the first two prongs, and if either of these prongs is not satisfied, personal jurisdiction is not established. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802

(9th Cir. 2004). If the plaintiff establishes the first two prongs regarding purposeful availment and the defendant's forum-related activities, then it is the defendant's burden to "present a compelling case" that the third prong, reasonableness, has not been satisfied. *Schwarzenegger*, 374 F.3d at 802.

Generally, negotiation, formation, and performance of contracts within a jurisdiction constitute a business transaction sufficient to establish personal jurisdiction. See *Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004)* ["A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there."]; *Daar & Newman v. Vrl International* (2005) 129 Cal. App. 4th 482; 492-493, 28 Cal. Rptr. 3d 566; *Vorys, Sater, Seymour & Pease v. Ryan* (1984) 154 Cal. App. 3d 91, 94, 200 Cal. Rptr. 858; *Brunson v. Kalil & Co.,* 404 F. Supp. 2d 221 (D. D.C. 2005) ["It is true that both the United States Court of Appeals and the District Court in this Circuit have held that negotiation, formation, and performance of contracts constitute a business transactions under [the D.C.'s long-arm statute]." Furthermore, to justify personal jurisdiction, a plaintiff need not show multiple transactions by defendant within a forum state; a single transaction of business within the state may constitute sufficient contact. *Henry R. Jahn & Son v. Superior Court* (1958) 49 Cal.2d 855, 861, 323 P.2d 437; *Daar & Newman v. Vrl International, supra.*

1. ***Because the KS/Doe Settlement Agreement was negotiated and required at least part performance in California, the purposeful availment test for establishing specific jurisdiction is satisfied.***

It is well-established that the purposeful availment prong is treated differently in a contract case. Because a contract is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction," a court must evaluate four factors to determine whether this prong is met: (1) prior negotiations, (2) contemplated future consequences, (3) the terms of the contract, (4) the parties' actual course of dealing. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478-479, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985). A review of each of these factors clearly demonstrates that the purposeful availment prong for establishing specific jurisdiction is satisfied.

a. ***The Prior Negotiations Factor Weighs In Favor Of Establishing Purposeful Availment.***

When considering how contract negotiations impacts a determination of jurisdiction courts

typically consider the following factors: (1) the extensiveness of negotiations; (2) the location of negotiations; and (3) whether the defendant traveled to the forum to negotiate the contract. *J. G. Boswell Tomato Company - Kern, LLC v. Private Label Foods, Inc,* 2008 U.S. Dist. LEXIS 66103 (E.D. Cal. July 31, 2008); *Naumes Inc. v. Alimentos Del Caribe*, 77 F. Supp. 2d 1158, 1162 (D. Or. 1999) (citing *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1320 (9th Cir. 1998)). No one factor is dispositive. *J. G. Boswell Tomato Company - Kern, LLC v. Private Label Foods, Inc., supra.*

Here, the facts regarding the negotiations are set forth in the Grant's Declaration filed in Support of his Reply to KSBE Defendants' Opposition to Doe Defendants' Motion for Preliminary Injunction. Grant testified that the negotiations which led up the settlement agreement were initiated by a telephone call from KS's California counsel, Sullivan, to Grant (Grant Dec., ¶11); that Sullivan and Grant then met at a restaurant in Pleasanton, California, where they conducted negotiations over a long lunch; (Grant Dec., ¶11); that negotiations between Grant and Sullivan continued over the next three days during which Grant and Sullivan spoke approximately a dozen times and exchanged at least thirty e-mail messages. (Grant Dec., ¶12)

Thus, Grant's Declaration establishes that there were extensive negotiations that occurred entirely in California, clearly establishing the first two factors in determining whether the prior negotiations factor for establishing specific jurisdiction in California is satisfied. As to the third factor, whether the defendant traveled to the forum, while KS did not physically travel to California, it did hire a California agent, Sullivan, to negotiate on its behalf. Because for purposes of personal jurisdiction, the actions of an agent are attributable to the principal (*Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 419 (9th Cir. 1977)), having Sullivan negotiate on its behalf must be treated as if KS came to California to negotiate the settlement. Consequently, the prior negotiations factor weighs heavily in favor of establishing jurisdiction over KS.

b. ***The Contemplated Future Consequences Factor Weighs In Favor Of Establishing Purposeful Availment***.

The second of the four factors for determining purposeful availment is "contemplated future consequences." Here, the essence of the settlement between KS and the Does was an exchange by which the Does received monetary compensation from KS for dismissing their pending petition for certiorari.

14

The KS/Doe Settlement Agreement specifically provided that the Does' counsel, Grant, would cause the petition for certiorari to be dismissed (Paragraph 1) and that KS's payment would be to Grant's trust account in California. (Paragraph 2)  Consequently, the Settlement Agreement specifically contemplated performance by both the Does and KS in California.

As the Court is well aware, the Settlement Agreement also contained a confidentiality provision which, according to KS, required not only the Does to maintain the confidentiality of the financial terms of the settlement, but also required Grant and Goemans, who were both California residents, to maintain the confidentiality of the financial terms of the settlement.  In order to enforce the confidentiality provision in the KS/Doe Settlement Agreement, the parties contemplated the need for injunctive relief. In fact, the confidentiality provision in the KS/Doe Settlement Agreement (paragraph 7) expressly provided that: "...this provision shall be enforceable by injunctive or other equitable relief."

Since the parties recognized that an injunction might be necessary to enforce the settlement, and since two of the individuals who could potentially disclose the settlement were California residents, it was therefore a contemplated future consequence of the settlement that an injunction from a California Court might be necessary to prevent disclosure by Grant and/or Goemans.  As it turned out, while  such an injunction was obtained against Goemans, Goemans ignored the injunction.

Because the Settlement Agreement required performance by both the Does and KS in California and sought to prevent disclosure of the financial terms of the settlement by California citizens Grant and Goemans, the "contemplated future consequences" factor for determining purposeful availment also weighs is in favor of jurisdiction over KS.

        c.    ***The Contract Terms Factor Weighs In Favor Of Establishing Purposeful Availment***.

The third factor to be considered in determining  purposeful availment concerns the contract terms.   Contractual terms specifying payment in a forum state may support a finding for personal jurisdiction by the forum state over an out-of-state defendant. *Taubler v. Giraud*, 655 F.2d 991, 995 (9th Cir. 1981).  As set forth above, the contract not only required KS to make payment in California, and the Does' California counsel to dismiss the pending petition for certiorari, but according to KS it required California citizens Grant and Goemans to abide by the terms of the settlement.  Consequently, the

contract terms factor also weighs in favor of a finding of purposeful availment.

        d.    ***The Actual Course of Dealing Factor Weighs In Favor Of Purposeful Availment***.

    The last purposeful availment factor is the parties' course of dealing. As previously detailed, and as contemplated by the KS/Doe Settlement Agreement, there was extensive activity in California including:

    (1)    Although not parties to the agreement, on a separate page of the agreement entitled "Approval as to Form," Sullivan and Grant executed a provision that stated: "On behalf of our respective clients, we approve the foregoing Settlement Agreement and General Release as to form." In addition, at KS's specific demand, Grant executed a separate declaration, which also became part of the Settlement Agreement confirming that the signatures of "John Doe" and "Jane Doe" were genuine. (Grant Dec., ¶ 13)

    (2)    Payment was in fact made by KS to Grant's California trust account. (Grant Dec., ¶ 14)

    (3)    Grant and Sullivan effectuated the dismissal of the petition for certiorari from their offices in California by execution of a Stipulation which was then faxed to the Clerk of the United States Supreme Court. (Grant Dec., ¶ 14)

    (4)    When Goemans threatened to disclose the terms of the settlement, Grant, pursuant to his contractual obligation to the Does, obtained an injunction from a California Court prohibiting Goemans from disclosing the confidential terms of the settlement. (Grant S/J Dec., ¶ 8)

    (5)    If Grant is liable to KS, his liability would arise from actions that he undertook in California, namely disclosing the terms of the settlement to Goemans prior to the settlement being executed (Grant S/J Dec. ¶ 3) and allowing his California counsel to provide a copy of the settlement agreement to Robert Esensten, a California attorney who was representing both the Does and Goemans in the fee dispute with Grant. (Exhibits 1 and 2 to Banks' Dec.)

    Given the extensive nature of the activity in California resulting from the Settlement Agreement, the actual course of dealing factor also weighs in favor of a finding for purposeful availment.

    In summary, the record before the Court demonstrates that the KS/Doe Settlement Agreement was negotiated in California; was to be performed in California by KS by payment to a specified California bank and by the Does by dismissal of their petition for certiorari; the agreement (according the KS) was designed at least in part to prevent a disclosure of the terms of the settlement by Grant and Goemans, California

residents; and to the extent that there was conduct that potentially makes Grant liable, the transmittal of the settlement agreement to Goemans, that conduct occurred in California. Based upon these facts, each of the four factors to be reviewed in determining whether KS purposefully availed itself of the privilege of conducting activities in California and invoking the benefits and protections of California's laws clearly weights in favor of finding that jurisdiction exists.

### 2. *The Claim Arose Out Of Or Resulted To Forum-Related Activities*.

"The second prong of the specific jurisdiction test is met if 'but for' the contacts between the defendant and the forum state, the cause of action would not have arisen." *Terracom v. Valley Nat. Bank*, 49 F.3d 555, 561 (9th Cir. 1995), (quoting *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 385-86 (9th Cir. 1990), rev'd on other grounds, 499 U.S. 585, 111 S. Ct. 1522, 113 L. Ed. 2d 622 (1991)). On the facts of this case this prong of the specific jurisdiction test is easily satisfied.

As set forth above, not only was the Settlement Agreement negotiated, executed (at least in part) and performed in California, but according to KS the confidentiality provision in the agreement was intended to apply to both Goemans and Grant. Because KS entered into an agreement which sought to restrict the behavior of California residents, the action clearly arises out of or relates to forum related activities by KS.

In addition, despite the fact that the Does' lawsuit against KS originated in Hawaii, by the time the case settled the Doe-KS litigation moved on to California, pending nearly three years in the Ninth Circuit in San Francisco, where Grant and KS's California counsel argued before the en banc court on June 20, 2006. See Grant Decl. ¶¶ 7-8 at 1.[5]

### 3. *Personal Jurisdiction In California Is Reasonable*.

As set forth above, if the first two prongs of the test for specific jurisdiction are satisfied, "the burden then shifts to [KS] to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Fred Martin Motor Co.*, 374 F.3d at 802. KS has not (an cannot) present that compelling case.

As set forth in KS's Motion, the Ninth Circuit has identified seven factors as relevant to the reasonableness analysis: (1) the extent of the defendants' purposeful interjection into the forum state's

---

[5] Moreover, preserving the Ninth Circuit's favorable judgment was KS's principal object in settling the litigation, as the KS's trustees themselves emphasized in announcing the settlement. (See Grant Dec., ex. 3)

JOHN AND JANE DOE'S OPPOSITION TO MOTION TO DISMISS

affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. A review of these factors demonstrates that virtually all of these factors weigh in favor of the exercise of jurisdiction.

Factor (1)-the extent of the defendants' purposeful interjection into the forum state's affairs. KS argues that it did not purposefully interject itself into California affairs because all it did was simply defend itself from a suit brought in Hawaii by the Does, Hawaii citizens. However, KS's narrow view of the facts ignores the fact that it hired California counsel to negotiate with the Does' California counsel a settlement that was to be performed in California and which sought, among other things, to prevent Goemans and Grant, California residents, from disclosing the terms of the settlement. Looking at the KS's conduct in its entirety, this factor clearly favors jurisdiction.

Factor (2) - the burden on the defendant of defending in the forum. As an entity that has $9.1 billion in assets (see Grant Decl. ¶ 20, at 3), and that was already represented by no fewer than three California law firms before this action was filed (see *id*. ¶¶ 17-18, *id*. ¶¶ 22-23), KS will suffer little burden in defending itself here. Even if KS did not have in excess of 9 billion in assets, courts recognize that modern advances in communications and travel have sufficiently reduced the burden of litigating outside of a defendant's home state. See *Sher v. Johnson,* 911 F.2d 1357, 1365 (9th Cir. 1990) ["In this era of fax machines and discount air travel, requiring the partnership to defend itself in California . . . would not be so unreasonable as to violate due process."]. Consequently, this factor also weighs in favor of jurisdiction.

Factor (3) - the extent of conflict with the sovereignty of the defendants' state. This factor does not need to be considered except when foreign participants are litigating. *J. G. Boswell Tomato Company - Kern, LLC v. Private Label Foods, Inc,* 2008 U.S. Dist. LEXIS 66103 (E.D. Cal. July 31, 2008)

Factor (4)- the forum state's interest in adjudicating the dispute. KS claims that because the underlying litigation, which challenged KS's Hawaiian only admission policies, generated tremendous public interest, it must follow that Hawaii has a far stronger interest in the resolution of this case than California. However, unlike the underlying litigation this case does not raise constitutional issues. Rather, despite a few wrinkles, this is a garden variety dispute over money. Moreover, with respect to Grant,

California "has a substantial interest in adjudicating the dispute of one of its residents who alleges injury due to the tortious conduct of another." *CE Distrib., LLC v. New Sensor Corp.*, 380 F.3d 1107, 1112 (9th Cir. Ariz. 2004). The tortuous conduct here is (from Grant's perspective), KS's threat to sue Grant as a result of Goemans' disclosure. Consequently, again this factor favors jurisdiction.

Factor (5)-the most efficient judicial resolution of the controversy. Efficiency of forum, the fifth factor, is evaluated by looking at where the witnesses and the evidence are likely to be located. *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1489 (9th Cir. 1993). KS claims that the vast majority of witnesses and the evidence are located in Hawaii. However, a closer look at the issues demonstrates that KS's claim is wrong. The primary issues involved in this dispute are: (1) Does the confidentiality provision apply to Goemans so as to render the Does liable for Goemans's disclosure;[6] and (2) Did Grant violate the confidentiality provision when he disclosed the terms of the settlement to Goemans before the settlement was executed and/or when he allowed his counsel to provide Esensten, the Does and Goemans' California attorney, with a copy of the executed KS/Doe Settlement Agreement. Because it is undisputed that there never was any direct contract between the Does and the KS trustees, the primary witnesses on the two issues identified above will be: Grant, his attorney, James Banks, Goemans, Sullivan, and Esensten, all of whom are California residents. As to KS's perceived need to call Hawaiian witnesses to establish Goemans' violation of the confidentiality provision, what Goemans did is not in dispute and can be stipulated to without the need for live witnesses. Thus, despite KS's claims to the contrary, the key witnesses in this case are all California witnesses.

Factor (6)-the importance of the forum to the plaintiff's interest in convenient and effective relief. While litigating in one's home forum is obviously most convenient, the Ninth Circuit has recognized that this factor is "not of paramount importance." *CE Distrib., LLC v. New Sensor Corp.*, 380 F.3d 1107, 1112 (9th

---

[6] It must be remembered that here, while arguably the confidentiality provision makes the Does liable for disclosure by their "counsel," the only "counsel" identified in the Settlement Agreement is Grant. There is nothing in the Settlement Agreement which defined the term "counsel" in such a manner as to make the Does liable for any disclosure by Goemans. Had KS intended the Does to be liable for any disclosure by Goemans, it could have clearly so provided. Having failed to so provide it is well settled that "the purely subjective, or secret, intent of a party in assenting is irrelevant in an inquiry into the contractual intent of the parties." *Standard Management, Inc. v. Kekona, 99 Hawai'i* 125, 134, 53 P.3d 264, 273 (App. 2001). In other words, what the Estate may have intended is irrelevant unless specifically made part of the parties' agreement.

Cir. Ariz. 2004). Nevertheless in his Reply Brief filed in connection with the Does' TRO Application Grant stated that he is a solo practitioner who resides and practices law in Sacramento County, and that litigating this dispute in Hawaii state court, where he is not admitted to practice and must therefore hire counsel, would be inconvenient and expensive. The Does have no reason to doubt the veracity of Grant's comments. Therefore, this factor also weighs in favor of exercising jurisdiction.

Factor (7) - the existence of an alternative forum. While clearly Hawaii is an alternative forum to litigate potential liability between the Does and KS under the KS/Doe Settlement Agreement, Hawaii is apparently not an alternative forum to litigate potential liability between KS and Grant as KS did not name Grant as a defendant when it filed its recent Hawaii State Court against the Does. In addition, Hawaii is not an alternative forum to litigate potential liability under the Grant/Doe Settlement Agreement as that agreement contains a choice of law and forum selection provision which requires the Does and Grant to litigate any dispute relating to their agreement pursuant to California law in this Court. (Paragraph 16) As choice of forum provisions are generally enforceable under California law,[7] the Does will not be bringing Grant into the Hawaii State Court proceeding. (Stein Dec in Opposition to Motion to Transfer, ¶6) Even if the Court just focuses on the claims that involve KS and determines that this factor weighs against exercising jurisdiction, the Ninth Circuit recognizes that this factor cannot overcome the other factors where, as here, the other factors favor the forum state. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 841 (9th Cir. 1986)

In summary, because the contract in question was negotiated in California, was to be performed in California and impacted California residents, applying the three-prong specific jurisdiction test to determine personal jurisdiction results in a determination that specific jurisdiction over KS clearly exists.[8] Consequently, KS's Motion to Dismiss based on a lack of jurisdiction should be denied.

---

[7] Under California law forum selection clauses are enforceable unless the plaintiff cam meet a heavy burden of demonstrating that enforcement of the clause would be unreasonable under the circumstances of the case. *Lu v. Dryclean-U.S.A. of Cal.*, 11 Cal. App. 4th 1490, 1493, 14 Cal.Rptr.2d 906 (1992)

[8] See for example, *3M v. Nippon Carbide Indus. Co.*, 63 F.3d 694, 698 (8th Cir. 1995), where the Court stated: "NCI argues that its contacts with Minnesota are insignificant because the essence of the dispute is foreign, but 'an ordinarily insignificant contact with a state becomes constitutionally significant when it gives rise to the claim involved in the lawsuit.'(citations omitted)." Because Grant's complaint arises out of a contract that was negotiated and to be performed (at least in part) in California, subject matter jurisdiction exists.

# IV THE COURT SHOULD NOT DECLINE JURISDICTION TO DETERMINE GRANT'S COMPLAINT

In deciding whether to exercise its discretion to decline jurisdiction under the Declaratory Judgment Act, the pendency of a state court action, especially one filed after the Federal action does not, of itself, require a district court to refuse federal declaratory relief. *Government Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998). Rather, in deciding whether to decline jurisdiction, a federal court must consider three factors, usually referred to as the *Brillhart* factors: (1) avoiding the needless determination of state law issues; (2) discouraging litigants from forum shopping; and (3) avoiding duplicative litigation. *Government Employees Ins. Co. v. Dizol*, supra at 1223, citing *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 62 S. Ct. 1173, 86 L. Ed. 1620 (1942).[9] In *Polido v. State Farm Mut. Auto. Ins. Co.*, 110 F.3d 1418,1422 (9th Cir. 1997), overruled on other grounds, *Government Employees Ins. Co. v. Dizol*, supra, the Ninth Circuit explained: "Exercise of the district court's discretionary jurisdiction under *Brillhart* furthers the policy against needlessly deciding unsettled state law issues, prevents duplicitous litigation, and discourages forum shopping. . . . ."

While, KS claims that each of these factors weighs in favor of the Court declining jurisdiction, in so arguing KS makes two fatal mistakes. First, KS only focuses only on the portion of Grant's complaint that relates to Grant's potential liability to KS, and ignores the portion of Grant's Complain that relates to Grant's potential liability to the Does under the Grant/Doe Settlement Agreement. Second, KS's arguments are premised on supposition that Grant will be a party in the Hawaiian State Court action that KS recently filed. However, KS did not name Grant as a defendant, and because the Grant/KS Settlement Agreement contains a California forum selection provision, the Does do not currently intend to sue Grant in the Hawaiian State Court Action. Because Grant is not currently a party to the Hawaiian State Court action, and likely will not be added as a party, this Court can quickly dismiss KS's argument that Grant's Complaint was a reactive filing that merely duplicates KS's Hawaiian State Court action. In addition, when Grant's potential liability to the Does pursuant to the Grant/Doe Settlement Agreement is considered, it becomes absolutely clear that

---

[9] In addition to the three *Brillhart* factors other considerations that may be relevant are: Whether the declaratory action will settle all aspects of the controversy; Will serve a useful purpose in clarifying the legal relations at issue; Is being sought merely for the purposes of procedural fencing or to obtain a res judicata advantage; Will result in entanglement between federal and state court systems;"and the convenience of the parties. *Government Employees Ins. Co. v. Dizol*, supra, at 1225 n.5

none of the three *Brillhart* factors actually favors this Court declining jurisdiction.

A. While There Are No Unsettled Issues Of Hawaiian Law Relating To Breach Of The Confidentiality Provision, There Are Unsettled Issues of California Law Relating To Grant's Liability to The Does.

With respect to portion of Grant's Complaint relating to potential liability to KS arising from Goeman's disclosure, KS does not claim that there are any unsettled Hawaiian state law issues with respect to the issues raised with respect to potential liability for either Grant or the Does as a result of Goemans' disclosure. Nor are the Does aware of any unsettled Hawaiian state law issues. The case involves interpretation of a contract under well settled legal principles. See footnote 5 above.

Rather, KS argues that first, *Brillhart* factor, avoiding the needless determination of state law issues, weighs in its favor because Hawaii state law issues predominate. While KS is correct that the portion of Grant's Complaint directed towards KS raises Hawaiian state law issues, KS is incorrect as to the portion of Grant's Complaint directed towards the Does, as the Grant/Doe Settlement Agreement provides at Paragraph 16 that: "... this Settlement Agreement, and the documents referred to herein, shall be interpreted in accordance with the laws of the State of California..."

Not only does California law apply to the Grant/Doe portion of the dispute, but there is an important issue of California law relating to that dispute that is currently an unsettled issue. Specifically, Grant claims that he cannot have any indemnity obligation to the Does if has no liability to KS. However, Grant's argument that there can be no indemnity without liability raises an issue that has yet to been decided by the California Courts. For example, in *Prince v. Pacific Gas & Electric Co.*, 145 Cal. App. 4th 289, 298 (Cal. App. 2006),[10] the Court noted:

> "The broad issue we consider is whether a defendant who is not liable to the plaintiff can be liable pursuant to a cross-complaint for implied contractual indemnity. The question presented is one of first impression; no reported California decision has considered whether the principle that "there can be no indemnity without liability" applies to claims for implied contractual indemnity. There are a number of cases, however, applying this principle in the context of noncontractual, or tort-based, equitable indemnification. This state of the case law engenders the parties' arguments in this case."

While the *Prince* Court ultimately determined that, contrary to the position taken by Grant in his

[10] Because, review was granted by the California Supreme Court this case has no precedential value. It is only being cited for the purpose of showing that the issue is currently pending in the California Supreme Court.

JOHN AND JANE DOE'S OPPOSITION TO MOTION TO DISMISS

Summary Judgment Motion, there can be indemnity without liability, review was subsequently granted by the California Supreme Court, *Prince (Eve) v. Pacific Gas & Electric Company*, 56 Cal. Rptr. 3d 469 (2007), where the case is still pending. Thus, the existence of California state law issues, which this Court would be better equipped to deal with than a State Court in Hawaii, either is neutral as Grant's Complaint raises both California and Hawaiian state law issues, or weighs in favor of the Court retaining jurisdiction of the dispute given the unsettled nature of California law.

      B.     <u>The Remaining *Brillhart* Factors Weigh In Favor Of The Court Retaining Jurisdiction.</u>

KS filed a state court action in Hawaii against only the Does. Despite the fact that KS did not sue Grant, KS claims that its state court action and this action are parallel actions and, therefore, the only way to avoid duplicative litigation is for this Court to decline to exercise jurisdiction over Grant's Complaint in this action. Of course, KS does not explain how, if Grant is not party to the Hawaiian State Court Action, this action will duplicate the Hawaiian state court action as to Grant. While KS may be expecting the Does to bring Grant in on a cross-claim, that is not likely gong to happen.

As previously discussed, the Grant/KS Settlement Agreement not only contains a California choice of law provision, it also contains a California choice of forum provision. Thus, even if the Does wanted to sue Grant in Hawaii, Grant could get the action transferred based upon the choice of forum provision. Consequently, if the Hawaiian State Court Action proceeds,[11] while Grant will undoubtably be a witness in that case, if Grant is not a party to that action, the Hawaiian State Court litigation will not directly address Grant's potential liability to either KS or the Does.[12] Consequently, because of the forum selection clause while there may be duplication in the Hawaiian State Court Action of the KS/Does portion of this litigation, there will be no duplication of either the Grant/KS or Grant/Doe portion of this litigation.

Similarly, KS's argument that Grant's filing of this action constitutes blatant forum shopping again

---

[11]    The Does filed a Motion to Dismiss under the Hawaiian version of Rule 12(b)(6) claiming that KS had not properly pled its claims against the Does. The Does also asked that the Hawaiian State Court to stay the proceeding pending this Court's ruling on KS's Motions to Dismiss or to Transfer. The Court denied the Motion to Dismiss and refused to stay the proceeding in its entirety, but did order that there be no discovery undertaken pending a status conference on November 7, 2008 at which time the Court wanted to be brought up to speed on this Court's ruling.

[12]    For example, a finding that the Does are contractually liable under the KS/Doe Settlement Agreement for Goemans' disclosure would not necessarily make Grant also liable to KS.

ignores the impact of the forum selection provision in the Grant/Doe Settlement Agreement. In the prototypical *Brillhart* abstention case, the plaintiff files an action in state court, and the defendant then files a "reactive" declaratory relief action in federal court seeking a more favorable venue. See *Lenscrafters, Inc. v. Liberty Mut. Fire Ins. Co.*, 2007 U.S. Dist. LEXIS 71101 (N.D. Cal. Sept. 18, 2007). While acknowledging that its State Court Action was filed six months after Grant's action, KS argues that it still should be considered a disfavored reactive lawsuit.

Not only would KS's argument have more weight if KS actually sued Grant in its Hawaiian State Court Action,[13] but once again KS ignores the impact of the forum selection provision in the Grant/Doe Settlement Agreement. Because Grant was clearly within his rights to sue the Does in this Court, it follows that Grant's decision to have his potential liability decided in one action in which the Court clearly had jurisdiction over all the parties is not forum shopping, but efficient use of the judicial system.

Simply put, there is nothing in the record that supports KS's claim that Grant engaged in forum shopping when he filed this action. Because Grant is not currently a party to the Hawaiian State Court action, and likely will not be added as a party, this Court can quickly dismiss KS's argument that this is a reactive filing that merely duplicates KS's Hawaiian State Court action. Because none of *Brillhart* factors supports the Court declining jurisdiction, KS's Motion requesting that the Court decline jurisdiction should be denied.

## V.    CONCLUSION

With respect to KS's argument that the Court must realign the Does on the same side of the case as Grant, KS ignores the overwhelming evidence that there is an actual and substantial controversy between Grant and KS, as evidenced by Grant's recent Summary Judgment Motion wherein Grant seeks to eliminate his potential to KS and the Does while leaving the Does still potentially liable to KS.

With respect to KS's argument that this Court does not have specific jurisdiction over KS, KS again ignores the evidence and tries to characterize its agreement with the Does as an agreement that only involves Hawaiian residents and interests. However, the evidence ignored by KS demonstrates that the KS/Doe Settlement Agreement was negotiated in California; was to be performed in California by KS by payment

---

[13]    While KS did not sue Grant in its State Court proceeding, it not only refuses to acknowledge that it has no claim against Grant, but KS intends to conduct discovery in order to oppose Grant's Motion For Summary Judgment as to KS.

to a specified California bank and by the Does by dismissal of their petition for certiorari; the agreement (according the KS) was designed at least in part to prevent a disclosure of the terms of the settlement by Grant and Goemans, California residents; and to the extent that there was conduct that potentially makes Grant liable, the transmittal of the settlement agreement to Goemans, that conduct occurred in California. Based upon this evidence the three-prong specific jurisdiction test to determine personal jurisdiction is easily satisfied.

With respect to KS's argument that the Court should decline jurisdiction as to Grant's declaratory relief claims, KS's position is that the three *Brillhart* factor are met because Grant's claim is a reactive filing that merely duplicates KS's Hawaiian State Court action and involves only Hawaiian State law issues. However, KS's argument ignores the fact that it did not sue Grant in its Hawaiian State Court action and Grant will not be brought into that case by the Does. If Grant is not a party to the Hawaiian State Court action it is hard to classify Grant's action in filing the Complaint as forum shopping, and impossible to show any duplication with respect to Grant's potential liability to either KS or the Does. Finally, in arguing that Grant's Complaint only involves Hawaiian State law issues, KS ignores the fact that the Grant/Doe settlement is governed by California law. Therefore, Grant's Complaint involves both Hawaiian State law issues and California State law issues.

Because of the substantial contacts between KS and California relating to the negotiation and performance of the KS/Doe Settlement Agreement specific jurisdiction exists. Because this is the only forum in which all of the potential claims against Grant be litigated, Grant's decision to file in this Court was proper and the Court should retain jurisdiction. Therefore, for all of the foregoing reasons, the Does respectfully request that the Court deny KS's Motion to Dismiss.

DATED: October 17, 2008   KUNIYUKI & CHANG,
             and
          LEVIN & STEIN


         By: /s/ Jerry H. Stein[14]
          JERRY H. STEIN
          Attorneys for the DOES

---

[14]  Counsel has the executed original.