JERRY H. STEIN (State Bar No. 78309)
LEVIN & STEIN
28494 Westinghouse Place, Suite 201
Valencia, California 91355
Telephone: (310) 207-4663
Facsimile: (310) 207-2803
Email: jstein@lscslaw.com

KEN T. KUNIYUKI
KUNIYUKI & CHANG
Suite 2660, Pauahi Tower
1003 Bishop Street
Honolulu, HI 96813-3429
Telephone: (808) 524-5111
Facsimile: (808) 521-2389
Email: ken@law-hawaii.com

Attorneys for Defendants and Counter-Claimants JOHN DOE and JANE DOE

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC GRANT, | CASE NO.:08-00672 FCD-KSM |
| Plaintiff, | JOHN AND JANE DOE'S OPPOSITION TO MOTION TO TRANSFER TO DISTRICT OF HAWAII PURSUANT TO 28 U.S.C. §1404 |
| v. | |
| KAMEHAMEHA SCHOOLS/BERNICE PAUAHI BISHOP ESTATE; J. DOUGLAS ING, NAINOA THOMPSON, DIANE J. PLOTTS, ROBERT K.U. KIHUNE, and CORBETT A.K KALAMA, in their capacities as Trustees of the Kamehameha Schools/ Bernice Pauahi Bishop Estate; JOHN DOE; and JANE DOE, | Date: October 31, 2008<br>Time: 10:00 a.m.<br>Courtroom 2<br>Before: Hon. Frank C. Damrell, Jr. |
| Defendants. | |
| JOHN DOE; and JANE DOE, | |
| Counter-Claimants | |
| v. | |
| KAMEHAMEHA SCHOOLS/BERNICE PAUAHI BISHOP ESTATE; J. DOUGLAS ING, NAINOA THOMPSON, DIANE J. PLOTTS, ROBERT K.U. KIHUNE, and CORBETT A.K KALAMA, in their capacities as Trustees of the Kamehameha Schools/ Bernice Pauahi Bishop Estate; and ERIC GRANT, | |
| Counter-Defendants | |

JOHN AND JANE DOE'S OPPOSITION TO MOTION TO TRANSFER TO DISTRICT OF HAWAII
PURSUANT TO 28 U.S.C. §1404

**TABLE OF CONTENTS**

I.  INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II  A REVIEW OF THE ALL OF THE FACTORS TO BE CONSIDERED IN RULING ON A SECTION 1404(A) MOTION TO TRANSFER DEMONSTRATES THAT KS's MOTION TO TRANSFER SHOULD BE DENIED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A.  <u>Factor 1- the Location Where the Relevant Agreements Were Negotiated and Executed Weighs in Favor of Maintaining the Case in this Court.</u>. . . . . . . . . . . . . . . . . . 5

    B.  <u>Factor 2- the State That Is Most Familiar with the Governing Law, Does Not Favor Either Party As The Case Involves Both Hawaiian State Law Issues And California State Law Issues.</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    C.  <u>Factor 3- the Plaintiff's Choice of Forum Weighs Heavily in Favor of Maintaining the Case in this Court</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    D.  <u>Factors 4 and 5 -The Respective Parties' Contacts With The Forum And the Contacts Relating to the Plaintiff's Cause of Action in the Chosen Forum Weigh in Favor of Maintaining the Case in this Court.</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    E.  <u>KS Has Not Addressed Factor 6- the Differences in the Costs of Litigation in the Two Forums. This Factor Favors Maintaining This Case In This Court.</u> . . . . . . . . . . . . . 8

    F.  <u>Factors 7 and 8- The Availability of Compulsory Process to Compel Attendance of Unwilling Non-Party Witnesses, and the Ease of Access to Sources of Proof.</u> . . . . . . . . 9

    G.  <u>The Mandatory Forum Selection Provision In The Grant/Doe Settlement Agreement Weighs In Favor Of Maintaining This Case In This Court.</u> . . . . . . . . . . . . . . 12

    H.  <u>The Relevant Public Policy Factor Weighs In Favor Of Maintaining This Case In This Court.</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

III.  CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

# TABLE OF AUTHORITIES

*800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 135 (S.D.N.Y. 1994)........... 9

*CE Distrib., LLC v. New Sensor Corp.*, 380 F.3d 1107, 1112 (9th Cir. Ariz. 2004).............. *12, 13*

*Citibank, N.A. v. Affinity Processing Corp.*, 248 F. Supp. 2d 172, 177 (E.D.N.Y. 2003) ........... 9

*Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*, 472 F. Supp. 2d 1183, 1193 (S.D. Cal. 2007)....... *11*

*Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986)............... *6, 8*

*Farmer v. Ford Motor Co.*, 2007 U.S. Dist. LEXIS 90289 (N.D. Cal. Nov. 28, 2007)................. *7*

*In re Yahoo! Inc.*, 2008 U.S. Dist. LEXIS 20605, 8-9 (C.D. Cal. Mar. 10, 2008). .............. *11*

*Jarvis v. Marietta Corp.*, 1999 U.S. Dist. LEXIS 12659, 7-8 (N.D. Cal. Aug. 12, 1999)......... 6, 7

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir.). ...................... 4, 10, 12, 13

*Library Publ'ns, Inc. v. Doubleday & Co., Inc.,* 414 F. Supp. 1185, 1186 (E.D. Pa. 1976)........... 9

*Noreiga v. Lever Bros. Co.*, 671 F. Supp. 991, 996 (S.D.N.Y. 1987)............................. 6

*Pacific CCar and Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968)...................... 6

*Piper Aircraft*, 454 U.S. at 255. ........................................................ 6

*Pralinsky v. Mut. of Omaha Ins.*, 2008 U.S. Dist. LEXIS 79346 (N.D. Cal. Oct. 9, 2008)........... 5

*Schmidt v. Am. Inst. of Physics*, 322 F. Supp. 2d 28, 32 (D.D.C. 2004). .................. 4, 7, 8, 9

*Sec. & Exch. Comm'n v. Rose Fund, LLC*, 2004 U.S. Dist. LEXIS 22491, No. C 03-04593 WHA, 2004 WL 2445242, at *3 (N.D. Cal. Jan. 9, 2004. .......................................... 10

*SRAM Corp. v. Sunrace Roots Enter. Co.*, 953 F. Supp. 257, 260 (N.D. Ill. 1997). ................ 9

*Standard Management, Inc. v. Kekona*, 99 Hawai'i 125, 134, 53 P.3d 264, 273 (App. 2001)............... 11

*Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988). ........ 4

*The Carolina Casualty Co. v. Data Broad. Corp.*, 158 F. Supp. 2d 1044, 1048 (N.D. Cal. 2001)....... 4

*Trout Unlimited v. United States Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996)............... 4

*Turrett Steel Corp v. Manuel Int'l Inc*., 612 F. Supp. 387, 390 (W.D. Pa. 1985)**. ..................** 6

### *TABLE OF AUTHORITIES CONT'D.*

*U-Haul Int'l, Inc. v. Hire a Helper, LLC*, 2008 U.S. Dist. LEXIS 77629, 4-5 (S.D. Cal. Sept. 22, 2008)9

*Unisys Corp. v. Access Co.*, 2005 U.S. Dist. LEXIS 31897 (N.D. Cal. Nov. 23, 2005)10

**OTHER AUTHORITIES**

28 U.S.C. § 1404(a)............................................................. 4

iii

JOHN AND JANE DOE'S OPPOSITION TO MOTION TO TRANSFER

**I INTRODUCTION AND STATEMENT OF FACTS**

Defendants Kamehameha Schools/Estate of Princess Bernice Pauahi Bishop and its trustees' (collectively "KS") Motion to Transfer is based upon a narrow and slanted version of the facts which cannot withstand even minimal inspection. While KS characterizes Grant's filing of his Complaint in this Court as a transparent effort at forum shopping and emphasizes Hawaii's supposedly "virtually exclusive connection to this action" (Motion:1:14), the facts set forth below evidence this case's close connection to California and that Grant's decision to file his suit in this Court was not procedural gamesmanship. Rather, the settlement agreement between Grant and the Does (the "Grant/Doe Settlement Agreement) contains a mandatory forum selection provision which provided that any dispute between Grant and the Does must be litigated in this Court. Short of foregoing the benefits of this provision, this Court was the only forum in which all the parties could litigate their potential rights and liability arising from John Goemans' ("Goemans") disclosure of the financial terms of the settlement between KS and the Does. Under such circumstances, Grant's decision to file in this Court cannot be criticized as improper forum shopping.

The facts evidencing this case's close connection to California and that Grant's decision to file his suit in this Court was not procedural gamesmanship are:

1. The instant action arises out of a settlement agreement between KS and the Does (the "KS/Doe Settlement Agreement"[1]) that was negotiated exclusively in California by California attorneys, Kathleen Sullivan ("Sullivan") representing KS, and Grant representing the Does. (See Paragraphs 11 and 12 of Grant's Declaration filed in Support of his Reply to KSBE Defendants' Opposition to Doe Defendants' Motion for Preliminary Injunction ("Grant Dec.").

2. The KS/Doe Settlement Agreement was signed by five KS trustees and one former trustee. Two of these six trustees signed the settlement agreement while in California.[2]

3. On a separate page of the KS/Doe Settlement Agreement entitled "Approval as to Form,"

---

[1] The KS/Doe Settlement Agreement was filed under seal by the Does as Exhibit 1 to the Declaration of Jane Doe in support of their Motion for Temporary Restraining Order and Preliminary Injunction on April 3, 2008.

[2] See Declarations of Constance Lau and Corbett A.K. Kalama filed in support of KS's Motion to Dismiss.

1  Sullivan and Grant, while in California, each executed a provision stating: "On behalf of our respective clients, we approve the foregoing Settlement Agreement and General Release as to form." (Grant Dec., ¶ 13)

4. At KS's specific demand, Grant while in California, executed a separate declaration that became part of the KS/Doe Settlement Agreement confirming that the signatures of both "John Doe" and "Jane Doe" were genuine. (Grant Dec., ¶ 14)

5. Payment of the settlement amount by KS was made to Grant's client trust account at Grant's bank in Sacramento. (Grant Dec., ¶ 15)

6. The Does' immediate performance under the KS/Doe Settlement Agreement, dismissing their pending petition for certiorari, was accomplished by a stipulation executed by Grant and Sullivan in California and faxed to the United States Supreme Court Clerk from California. (Grant Dec., ¶ 14)

7. As part of the KS/Doe Settlement Agreement KS not only released any and all claims against the Does, it also released any and all claims against the Does' attorneys. This release clearly included Grant, and according to KS, would also have included Goemans, who was also a California citizen at the time. (¶ 5 of KS/Doe Settlement Agreement)

8. As interpreted by KS, the KS/Doe Settlement Agreement not only required confidentiality from the Does, but also by California citizens Grant and Goemans.[3]

9. By August of 2007, Grant, Goemans and the Does were involved in a dispute as to how the contingent fee to be paid by the Does from the settlement with KS was to be divided between Grant and Goemans. On or about August 23, 2007, the Does advanced certain monies to Goemans and Goemans agreed in writing, among other things that he would not take: "... any other action which would jeopardize the confidentiality section of the underlying settlement agreement unless authorized to do so by a Court of competent jurisdiction." This agreement indicates that it was executed by Goemans on August 23, 2007 in Beverly Hills, California. (Exhibit A to the Grant/Doe Settlement Agreement; this document was filed under seal by KS as exhibit 24)

---

[3] Goemans stated in an August 2008 Declaration (Exhibit 1 to Stein's Declaration) that was signed in Los Angeles, California that while the underlying ligation was on going that he was a resident of California. See Goemans' Declaration, ¶ 4

10. Grant and the Does entered into the Grant/KS Settlement Agreement (filed under seal by KS as exhibit 23) which, among other things, provided that the settlement was governed by California law and contained a mandatory forum selection provision requiring any dispute between Grant and the Does to be litigated in this Court. (See ¶ 16 of the Grant/KS Settlement Agreement)

11. In order to attempt to keep Goemans from violating the confidentiality provision in the KS/Doe Settlement Agreement, at the Does' insistence, Grant obtained a temporary restraining order prohibiting Goemans from making the disclosures that he ultimately made. (Declaration of Plaintiff and Counter-defendant Eric Grant in Support of His Motion for Summary Judgment, ("Grant S/J Dec.")¶ 8)

12. KS's threat to sue Grant was communicated by the Does' counsel to Grant's California counsel.

13. On both March 24 and March 25, 2008, the Does through their California counsel also threatened to sue Grant, asserting in conversations with Grant's California counsel that Grant was responsible in whole or in part for any breaches of the KS/Doe Settlement Agreement resulting from Goemans' disclosures, such that Grant had an obligation under the Grant/Doe Settlement Agreement or otherwise to defend and/or indemnify the Does against any action brought against them by KS. (Declaration of Jerry Stein ("Stein Dec.), ¶ 5)

14. While Grant denies either owing a duty to KS or breaching that duty, if KS is correct and there was a breach of some duty by Grant, that breach arose from the following events in California: (a) A telephone conference between the Does, Grant and Goemans that took place before the KS/Doe Settlement Agreement was executed in which Grant disclosed the financial terms of the proposed settlement to the Does and Goemans[4] (Grant S/J Dec."¶ 3); and the transmittal of the executed KS/Doe Settlement Agreement by Grant's California counsel to Robert Esensten ("Esensten"), a California attorney who was representing both the Does and Goemans in the fee dispute with Grant. (Declaration of James Banks, Exhibits 1-2)

As demonstrated below, not only must the presence of a forum selection clause be considered a "significant factor" in the court's § 1404(a) analysis, but when the Court focuses on the truly significant

---

[4] Grant and Goemans were in California at the time. In addition, Goemans was also in California when he made the disclosures to the Hawaii press.

issues in this case, such as whether Goemans was covered by the express terms of KS/Doe Settlement Agreement, and whether Grant acted properly is disclosing the terms of the KS/Doe Settlement Agreement to Goemans, it becomes clear that virtually all of the factors that district courts consider in connection with a Section 1404(a) motion to transfer weigh in favor of allowing this case to proceed in this Court. Consequently, KS's Motion to Transfer should be denied.

**II      A REVIEW OF THE ALL OF THE FACTORS TO BE CONSIDERED IN RULING ON A SECTION 1404(A) MOTION TO TRANSFER DEMONSTRATES THAT KS's MOTION TO TRANSFER SHOULD BE DENIED**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). A motion to transfer venue lies within the broad discretion of the district court, and must be determined on an individualized basis. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir.), citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988). Under Section 1404(a) the moving party bears the burden of establishing that the requested transfer is appropriate. *Schmidt v. Am. Inst. of Physics*, 322 F. Supp. 2d 28, 32 (D.D.C. 2004); *The Carolina Casualty Co. v. Data Broad. Corp.*, 158 F. Supp. 2d 1044, 1048 (N.D. Cal. 2001); *Trout Unlimited v. United States Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996).

District courts use a two-step analysis to determine whether a transfer is proper. The threshold question under section 1404(a) requires the court to determine whether the case could have been brought in the forum to which the transfer is sought. If venue would be appropriate in the would-be transferee court, then the court must make an "individualized, case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc., supra* at 498.

At page 4 of its Motion KS quotes from *Jones v. GNC Franchising, Inc.*, to establish that there are 8 factors that the Court must consider in ruling on a motion to transfer. However, KS presented a truncated version of the quote from *Jones v. GNC Franchising, Inc.*. As demonstrated by the full quote set forth below, in addition to the 8 factors set forth in KS's brief, the *Jones* Court stated that a trial court should also consider the existence of a forum selection clause and the relevant public policy of the forum state as significant factors in the trial court's decision as to whether to transfer the case. Thus, the unedited quote

from *Jones v. GNC Franchising, Inc.*, provides:

> "Under § 1404(a), the district court has discretion 'to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.' A motion to transfer venue under § 1404(a) requires the court to weigh multiple factors in its determination whether transfer is appropriate in a particular case. For example, the court may consider: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof. **Additionally, the presence of a forum selection clause is a 'significant factor' in the court's § 1404(a) analysis. We also conclude that the relevant public policy of the forum state, if any, is at least as significant a factor in the § 1404(a) balancing.** (Footnotes Omitted)" [Emphasis Added]

In accord see *Pralinsky v. Mut. of Omaha Ins.*, 2008 U.S. Dist. LEXIS 79346 (N.D. Cal. Oct. 9, 2008), where the Court noted that among the factors that a district court may consider in deciding whether a transfer is in the interest of justice were the 10 factors set out in the *Jones* decision. As demonstrated below, an analysis of each of the 10 factors set forth by the *Jones* Court conclusively demonstrates that KS's Motion to Transfer should be denied.

### A. Factor 1- the Location Where the Relevant Agreements Were Negotiated and Executed Weighs in Favor of Maintaining the Case in this Court.

Grant's Complaint involves not just the KS/Doe Settlement Agreement, but also the Grant/Doe Settlement Agreement. It is undisputed that both the KS/Doe Settlement Agreement and the Grant/Doe Settlement were negotiated exclusively in California. (Grant Dec., ¶¶ 11-12; Stein Dec., §4)

Two of the six current or former trustees who signed the KS/Doe Settlement Agreement did so in California. The remaining KS trustees executed the agreement in Hawaii as did the Does. In addition, to signatures by the KS trustees and the Does, on a separate page of the KS/Doe Settlement Agreement entitled "Approval as to Form," Sullivan and Grant, while in California, each executed a provision stating: "On behalf of our respective clients, we approve the foregoing Settlement Agreement and General Release as to form." Finally, at KS's specific demand, Grant while in California, executed a separate declaration that became part of the KS/Doe Settlement Agreement confirming that the signatures of both "John Doe" and "Jane Doe" were genuine.. (Grant Dec., ¶¶ 13-14)

With respect to the Grant/Doe Settlement Agreement, that Agreement was executed by Grant in

1  California and by the Does in Hawaii.

2  Given that the two agreements at issue in Grant's Complaint were negotiated in California and that
3  each agreement was executed in part in California, this factor weighs in favor of maintaining the case in this
4  Court.

### B. Factor 2- the State That Is Most Familiar with the Governing Law, Does Not Favor Either Party As The Case Involves Both Hawaiian State Law Issues And California State Law Issues.

Hawaiian state law governs the KS/Doe Settlement Agreement. Pursuant to the choice of law provision in the Grant/Doe Settlement Agreement (¶16), California law governs that agreement. As the case involves issues related to both Hawaiian state law issues and California state law issues, this factor does not favor either party.

Even if KS can somehow convince this Court that Hawaiian state law issues are more important to this case than California state law issues, district courts regularly apply the law of states other than the forum state, and this factor alone does not require the transfer of an action pursuant to section 1404(a). See *Noreiga v. Lever Bros. Co.*, 671 F. Supp. 991, 996 (S.D.N.Y. 1987); *Turrett Steel Corp v. Manuel Int'l Inc.*, 612 F. Supp. 387, 390 (W.D. Pa. 1985).

### C. Factor 3- the Plaintiff's Choice of Forum Weighs Heavily in Favor of Maintaining the Case in this Court.

In its Motion KS cites *Jarvis v. Marietta Corp.*, 1999 U.S. Dist. LEXIS 12659, 7-8 (N.D. Cal. Aug. 12, 1999), for the proposition that Grant's choice of forum should be given little weight if the transaction giving rise to the action lacks a significant connection to the forum selected by Grant. Specifically, the *Jarvis* Court summarized the law on this issue as follows:

> "In considering motions to transfer venue, there is a 'strong presumption in favor of plaintiff's choice of forum.' *Piper Aircraft*, 454 U.S. at 255. Therefore, there is a heavy burden on Defendant to overcome this presumption and demonstrate that the balance of inconveniences substantially weighs in favor of transfer. See *Decker Coal*, 805 F.2d at 843 (9th Cir. 1986).
>
> While Plaintiff's choice of forum is to be given great weight, 'it is not the final word' *Pacific Car and Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968). In determining the weight to be given to this choice, 'consideration must be given to the extent both of the defendant's business contacts with the chosen forum and of the plaintiff's contacts, including those relating to his cause of action. If the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or subject matter, the plaintiff's choice is entitled to only minimal consideration.'"

In *Jarvis,* the Court found that beyond any contacts the plaintiff may have had with the Northern District of California as a resident, all of the specific actionable events at issue in that case happened outside of California. Unlike the situation in *Jarvis,* and the other cases cited by KS,[5] here the majority of operative facts giving rise to Grant's potential liability occurred in this District.

As explained in more detail in Grant's Motion for Summary Judgment, because Grant is not a party to the KS/Doe Settlement Agreement, the mere fact that Goemans disclosed the financial terms of the settlement would not ordinarily give rise to liability on Grant's part. Rather, if Grant has any liability, that liability arises from Grant disclosing the terms of the settlement to Goemans. As set forth at Paragraph 3 of the Declaration of Plaintiff and Counter-defendant Eric Grant in Support of His Motion for Summary Judgment, in telephone conferences with the Does and Grant, that took place before the KS/Doe Settlement Agreement was executed, Grant disclosed the monetary terms of the settlement to Goemans. In addition, on June 22, 2007, James Banks, Grant's California counsel sent a copy of the KS/Doe Settlement Agreement to Robert Esensten, a California attorney who represented both the Does and Goemans. See Exhibits 1 and 2 to the Declaration of James J. Banks in Support of Plaintiff and Counter-Defendant Eric Grant's Motion for Summary Judgment. Thus, if Grant violated any duty owed to KS, that breach occurred in Sacramento, where the disclosures by Grant occurred.

In summary, because the KS/Doe Settlement Agreement was negotiated in this District; was to be performed in California by KS by payment to a specified bank in this District and by the Does by dismissal

---

[5] The other cases cited by KS are also clearly distinguishable on their facts. For example, in *Farmer v. Ford Motor Co.*, 2007 U.S. Dist. LEXIS 90289 (N.D. Cal. Nov. 28, 2007), the plaintiff filed suit for damages relating to a car accident that occurred in Akron, Ohio. The Court found that: "Here, a majority of the operative facts giving rise to this case occurred in Ohio; the accident took place in Ohio, the car was serviced and maintained in Ohio, and plaintiffs were treated on the scene and at an Ohio hospital. Plaintiffs are correct that the design and assembly of the vehicle did not take place in Ohio; however, neither of those transactions occurred in California."

In *Schmidt v. Am. Inst. of Physics*, 322 F. Supp. 2d 28, 30 (D.D.C. 2004), the plaintiff having been fired from his job, brought suit against his former employer, AIP, in the District of Columbia where he lived alleging breach of contract and other claims. In response, AIP moved to transfer the action to the District of Maryland. With respect the deference given to the plaintiff's choice of forum the Court concluded the District of Columbia lacked meaningful ties to the controversy, because AIP officials made the decision to discharge the plaintiff in Maryland, and communicated this decision to him while he was in Maryland, therefore, the material events that constitute the factual predicate for the plaintiff's claims occurred in Maryland.

7
JOHN AND JANE DOE'S OPPOSITION TO MOTION TO TRANSFER

of their petition for certiorari from this District; the agreement (according the KS) was designed at least in part to prevent a disclosure of the terms of the settlement by Grant, a resident of this District and Goemans, a California resident; and to the extent that there was conduct that potentially makes Grant liable, the disclosure transmittal of the settlement agreement to Goemans, that conduct occurred in this District, there are sufficient ties to this District so that there is strong presumption in favor of Grant's choice of forum, and there is a heavy burden on KS to overcome this presumption and demonstrate that the balance of inconveniences substantially weighs in favor of transfer.[6] *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

D. <u>Factors 4 and 5 -The Respective Parties' Contacts With The Forum And the Contacts Relating to the Plaintiff's Cause of Action in the Chosen Forum Weigh in Favor of Maintaining the Case in this Court.</u>

With respect to factor 5, the contacts relating to the plaintiff's cause of action in the chosen forum, those are detailed in the preceding section of this Opposition and clearly demonstrate that Grant's contacts with the forum weighs in favor of maintaining the case in this Court. With respect to Factor 4, as to KS's contacts with the District, while KS may not have been physically present in the District it did hire a California agent, Sullivan, to negotiate the settlement with Grant and performed the contract by making payment to Grant's Bank in Sacramento. So again, there are sufficient contacts so that this factor also weighs in favor of maintaining the case in this Court.

E. <u>KS Has Not Addressed Factor 6- the Differences in the Costs of Litigation in the Two Forums. This Factor Favors Maintaining This Case In This Court.</u>

According to KS's Motion at page 4, the sixth factor to be considered in ruling on a motion to transfer is the differences in the costs of litigation in the two forums. However, in its Motion does KS address this issue. Because the burden of proving that the transfer is appropriate is on KS (*Schmidt v. Am. Inst. of Physics*, supra; *Trout Unlimited v. United States Dep't of Agric.*, supra). KS's failure even to address

---

[6] By contrast, at page 9 of its Motion, KS ignores the facts set forth above and instead argues that the case arises from Goemans' disclosure of the settlement terms, KS's alleged threats to bring claims against Grant and to disclose the Does' identities; and Grant's decision to represent Hawaii clients in a Hawaii lawsuit against Hawaii defendants. Not only does KS's characterization of the events ignore Grant's conduct and role in this case, but it also ignores the fact that while the Does' lawsuit against KS originated in Hawaii, by the time the case settled the Doe-KS litigation moved on to California, pending nearly three years in the Ninth Circuit in San Francisco, where Grant and KS's California counsel argued before the en banc court on June 20, 2006. See Grant Decl. ¶¶ 7-8 at 1

this issue is a tacit admission that this factor favors maintaining the case in this Court.

In addition, Courts recognize that the financial impact of litigating in a distant forum depends in part on the financial strength of the party. As the Court noted in *U-Haul Int'l, Inc. v. Hire a Helper, LLC*, 2008 U.S. Dist. LEXIS 77629, 4-5 (S.D. Cal. Sept. 22, 2008):

> "Plaintiffs' principal place of business is Arizona, but U-Haul is a large, international corporation doing business around the globe. HH, by contrast, is a small, newly-formed California company with four employees. 'The disruption of business affairs due to the time and cost of distant litigation is far more severe and detrimental to a small [company] than it is to a much larger corporation.' *SRAM Corp. v. Sunrace Roots Enter. Co.*, 953 F. Supp. 257, 260 (N.D. Ill. 1997). This factor therefore weighs strongly in favor of transferring the case to the Southern District of California. See id.; *Library Publ'ns, Inc. v. Doubleday & Co., Inc.,* 414 F. Supp. 1185, 1186 (E.D. Pa. 1976) (balance of convenience weighed in favor of small corporation employing only five employees); *800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 135 (S.D.N.Y. 1994) (disparity between the relative means of the two corporate parties favored transfer to district of smaller corporation); *Citibank, N.A. v. Affinity Processing Corp.*, 248 F. Supp. 2d 172, 177 (E.D.N.Y. 2003) (same).

Here, on the one hand KS is an entity with 9 billion in assets. (see Grant Decl. ¶ 20, at 3) On the other hand in connection with the Does' TRO Application Grant stated that he is a solo practitioner who resides and practices law in Sacramento County, and that litigating this dispute in Hawaii state court, where he is not admitted to practice and must therefore hire counsel, would be inconvenient and expensive. Under the circumstances it will be far more burdensome for Grant to litigate this case in Hawaii, then it will be for KS to litigate this case in this Court.

  F. <u>Factors 7 and 8- The Availability of Compulsory Process to Compel Attendance of Unwilling Non-Party Witnesses, and the Ease of Access to Sources of Proof.</u>

With respect to attempting to meet its burden of demonstrating that the ease of access to sources of proof factor weighs in favor of transfer of this case to Hawaii, KS claims in conclusionary fashion that: "The vast majority of the documents relevant to this action are in Hawaii. Any documents the Does or KS possesses are in Hawaii. The documents relating to Goemans' service as the Does' counsel are also, according to Goemans, in Hawaii." (Opposition, 6-19-21)

This is not document intensive case. In fact, virtually all the relevant documents appear to have already been identified and filed with the Court as part of the Motion practice in this case. (Stein Dec., ¶ 7) Absent some explanation from KS as to what relevant documents in Hawaii are needed, the Court should disregard KS's claim that documents located in Hawaii justify the transfer of the case to Hawaii.

As to the location of Goemans' documents relating to Goemans' service as the Does' counsel, the Does have no idea why such documents would be relevant in this case, or how voluminous they are. Again, without some actual facts, the Court should disregard KS's claim that documents located in Hawaii relating to Goemans' service as the Does' counsel justify the transfer of the case to Hawaii.[7]

With respect to the sixth factor from *Jones v. GNC Franchising, Inc.,* the availability of compulsory process to compel attendance of unwilling non-party witnesses, to satisfy its burden of proof with respect to this factor KS must identify relevant witnesses, state their location and describe their testimony and its relevance. *See Unisys Corp. v. Access Co.*, 2005 U.S. Dist. LEXIS 31897 (N.D. Cal. Nov. 23, 2005); *Sec. & Exch. Comm'n v. Rose Fund, LLC*, 2004 U.S. Dist. LEXIS 22491, No. C 03-04593 WHA, 2004 WL 2445242, at *3 (N.D. Cal. Jan. 9, 2004). The only Hawaiian non-party witnesses identified by KS are its attorney, David Schulmeister; the Does' attorney, Ken Kuniuyki, the journalists who heard Goemans' disclosure, and unspecified witnesses who will testify that the Does will suffer injury if their identities are disclosed.

As to the Does' attorney, Ken Kuniuyki, he will appear voluntarily for trial. (Stein Dec., ¶ 3) Since he will also be in Sacramento for the trial, he obviously will also be available to be served with a subpoena if necessary.

With respect to KS's attorney, David Schulmeister, it is hard to imagine that Mr. Schulmeister would not make himself available to testify if asked to do so by KS. In this regard it should be remembered that KS had no problem getting a Declaration from Mr. Schulmeister to support its Opposition to the Does' request for an injunction.

With respect to journalists who heard Goemans' disclosure, there is no dispute that Goemans made the disclosures in question. KS has filed copies of the articles that were written concerning Goemans' disclosures. The parties undoubtedly will stipulate as to the fact that Goemans made the disclosures in question, thereby obviating the need for testimony from the journalists who heard Goemans' disclosures.

Finally, as to the unspecified witnesses who will supposedly testify that the Does will suffer injury

---

[7] If the documents relating to the work done by the Does' attorneys was in fact relevant, virtually all the work done in the underlying lawsuit was done by Grant and his documents are in the District.

1 if their identities are disclosed, based upon the authorities cited above, the Court should disregard the
2 supposed testimony of these unspecified witnesses in its analysis of KS's Motion to Transfer.

3 In its Motion KS also argues that an analysis of the convenience of witnesses should go beyond just
4 non-parties and also include the convenience of all witnesses who may testify citing, among other cases, *In
5 re Yahoo! Inc.*, 2008 U.S. Dist. LEXIS 20605, 8-9 (C.D. Cal. Mar. 10, 2008). What the Court actually said
6 in *In re Yahoo! Inc.*, was:

> "The convenience of the witnesses is usually the most important factor to consider in deciding whether to transfer an action. (Citations Omitted) "'Convenience of witnesses' includes both non-party witnesses outside the scope of the Court's subpoena power and the geographic location of any witnesses likely to testify in this case." *Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*, 472 F. Supp. 2d 1183, 1193 (S.D. Cal. 2007). However, it is often the convenience of the non-party witnesses that figures most prominently in this analysis. (Citation Omitted) A court must consider "not simply how many witnesses each side has and the location of each, but also the importance of the witnesses." *Costco Wholesale Corp.*, 472 F. Supp. 2d at 1193 (quoting *Saleh*, 361 F. Supp. 2d at 1157)."

12 With respect to its argument relating to the convenience of all the witness in this case, in addition
13 to the non-party witnesses identified above, Schulmeister and Kuniuyki, KS claims that the other Hawaiian
14 witnesses that the Court should consider are the trustees and employees of KS and the Does; and the only
15 California witnesses are Grant and perhaps Goemans. However, KS's attempt to identify witnesses is based
16 upon a very narrow and slanted view of the issues.

17 The primary issues involved in this dispute are: (1) Does the confidentiality provision apply to
18 Goemans so as to render the Does liable for Goemans's disclosure;[8] and (2) Did Grant violate the
19 confidentiality provision when he disclosed the terms of the settlement to Goemans before the settlement
20 was executed and/or by allowing his counsel to provide Esensten, the Does and Goemans' California
21 attorney, with a copy of the executed KS/Doe Settlement Agreement. Because it is undisputed that there
22 never was any direct contract between the Does and the KS trustees, the primary witnesses on the two issues

---

[8] Specifically, while arguably the confidentiality provision makes the Does liable for disclosure by their "counsel," the only "counsel" identified in the Settlement Agreement is Grant. There is nothing in the Settlement Agreement which defined the term "counsel" in such a manner as to make the Does liable for any disclosure by Goemans and Goemans eventually came to believe that he was not bound by the confidentiality provision. (Goemans' Dec., ¶9) Because "the purely subjective, or secret, intent of a party in assenting is irrelevant in an inquiry into the contractual intent of the parties." *Standard Management, Inc. v. Kekona*, 99 Hawai'i 125, 134, 53 P.3d 264, 273 (App. 2001), the Court will have to determine whether from the negotiations between Sullivan and Grant that it was communicated and agreed upon that the term "counsel" was intended to cover Goemans.

identified above will be: Grant, his attorney, James Banks, Goemans, Sullivan, and Esensten, all of whom are California residents. Thus, as to the key issues in this case, all the important witnesses are located in California. Therefore, the convenience of the witnesses factor clearly weighs in favor of a California forum.[9]

G. The Mandatory Forum Selection Provision In The Grant/Doe Settlement Agreement Weighs In Favor Of Maintaining This Case In This Court.

The law is well settled that a mandatory forum selection provision while not dispositive with respect to venue is entitled to substantial consideration by the Court. *Jones v. GNC Franchising, Inc*. Supra; *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 880 (3d Cir. Pa. 1995). Because the Grant/Doe Settlement Agreement contains a provision requiring the parties to litigate any dispute between them in this Court, as between Grant and the Does, clearly this is the proper venue for their dispute. In fact, had the Does attempted to sue Grant in Hawaii, Grant would undoubtedly been able to have the case transferred to this Court.

While KS will undoubtedly point out in its Reply Brief that it never agreed to litigate in this Court, nevertheless under the circumstances of this case, transferring this case to Hawaii will deprive Grant of the benefit of the forum selection provision in his settlement with Does. While such a result theoretically is within the Court's discretion, the bottom line is that on balance KS has failed to demonstrate that Hawaii is clearly a more convenient forum than this Court. Consequently, the Court should consider the Does and Grant's contractual agreement to litigate in this forum as a significant factor in favor of maintaining this case in this Court.

H. The Relevant Public Policy Factor Weighs In Favor Of Maintaining This Case In This Court.

California "has a substantial interest in adjudicating the dispute of one of its residents who alleges injury due to the tortious conduct of another." *CE Distrib., LLC v. New Sensor Corp.*, 380 F.3d 1107, 1112 (9th Cir. Ariz. 2004). The tortuous conduct here is (from Grant's perspective), KS's threat to sue Grant as a result of Goemans' disclosure. Consequently, again this factor favors mainlining this case in this Court.

---

[9] As to the Does, although located in Hawaii they would prefer the case be litigated in California as it would be much easier for their identities to be discovered as a result of a case pending in Hawaii, as opposed to a case pending in Sacramento. (Stein Dec., ¶ 8)

12

JOHN AND JANE DOE'S OPPOSITION TO MOTION TO TRANSFER

## III. CONCLUSION

As demonstrated above, not only is there is a strong presumption in favor of a plaintiff's choice of forum, but the defendant has a heavy burden to overcome this presumption and demonstrate that the balance of inconveniences substantially weighs in favor of transfer.

In *Jones v. GNC Franchising, Inc.*, the Court set forth 10 factors that a district court should consider in ruling on a motion to transfer brought pursuant to Section 1404. The analysis of the 10 *Jones* Court factors set forth above demonstrates that 9 of the factors clearly favor maintaining this case in this Court, and one factor favors neither party. Consequently, the Court should deny KS's Motion to Transfer as KS has not even come close to meeting its heavy burden necessary to overcome the strong presumption in favor of Grant's choice of forum.

DATED: October 17, 2008

Respectfully submitted,

KUNIYUKI & CHANG,
and
LEVIN & STEIN

By: /s/ Jerry H. Stein[10]
    JERRY H. STEIN
    Attorneys for the DOES

---

[10] Counsel has the executed original.