

1  Eric Grant (Bar No. 151064)
   Attorney at Law
2  8001 Folsom Boulevard, Suite 100
   Sacramento, California 95826
3  Telephone:  (916) 388-0833
   Facsimile:   (916) 691-3261
4  E-Mail:       grant@eric-grant.com

5  James J. Banks (Bar No. 119525)
   Banks & Watson
6  Hall of Justice Building
   813 6th Street, Suite 400
7  Sacramento, California 95814
   Telephone:  (916) 325-1000
8  Facsimile:   (916) 325-1004
   E-Mail:       jbanks@bw-firm.com
9
   Counsel for Plaintiff and
10 Counter-Defendant ERIC GRANT

11

12                    UNITED STATES DISTRICT COURT

13                    EASTERN DISTRICT OF CALIFORNIA

14 ERIC GRANT,                          )  No. 2:08-cv-00672-FCD-KJM
                                        )
15          Plaintiff,                  )
                                        )
16     v.                               )  **PLAINTIFF AND COUNTER-DEFENDANT**
                                        )  **ERIC GRANT'S OPPOSITION TO KSBE**
17 KAMEHAMEHA SCHOOLS/BERNICE           )  **DEFENDANTS' MOTION TO DISMISS**
   PAUAHI BISHOP ESTATE; J. DOUGLAS     )
18 ING, NAINOA THOMPSON, DIANE J.       )
   PLOTTS, ROBERT K.U. KIHUNE, and      )
19 CORBETT A.K KALAMA, in their         )
   capacities as Trustees of the Kamehameha )
20 Schools/Bernice Pauahi Bishop Estate; )  Hearing Date:  Oct. 31, 2008
   JOHN DOE; and JANE DOE,              )  Time:           10:00 a.m.
21                                      )  Courtroom:     2
            Defendants.                 )  Judge:          Hon. Frank C. Damrell, Jr.
22 _____ )

23 JOHN DOE and JANE DOE,               )
                                        )
24          Counter-Claimants,          )
                                        )
25     v.                               )
                                        )
26 KAMEHAMEHA SCHOOLS/BERNICE           )
   PAUAHI BISHOP ESTATE, et al.,        )
27                                      )
            Counter-Defendants.         )
28 _____ )

Vertical left margin text: ERIC GRANT, ATTORNEY AT LAW
8001 Folsom Boulevard, Suite 100
Sacramento, California 95826
Telephone:  (916) 388-0833

Plaintiff and Counter-Defendant Eric Grant's Opposition to KSBE Defendants' Motion to Dismiss

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF RELEVANT FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

   I.    This Court Has Subject-Matter Jurisdiction: The Complaint Frames a
        Case of Complete Diversity, and There Is No Warrant for "Realigning"
        the Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        A.    Realignment Is Not Warranted . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        B.    Even If Realignment Is Warranted, Severance (Not Dismissal)
             Is the Proper Remedy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

  II.   This Court Has Specific Personal Jurisdiction over KSBE . . . . . . . . . . . . . . . . . . . . 8

        A.    KSBE Consummated the Doe-KSBE Settlement Agreement in
             California and Took Deliberate Action Within this State . . . . . . . . . . . . . . . . 10

        B.    The Controversy Between Grant and KSBE Arises out of, and
             Relates to, KSBE's California-Related Activities . . . . . . . . . . . . . . . . . . . . . . 16

        C.    Exercising Jurisdiction over KSBE in this Litigation Would Be
             Reasonable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

III.   There Is No Good Reason for the Court to Decline to Entertain Grant's
        Declaratory Judgment Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

        A.    Declaratory Judgment Actions May Appropriately Adjudicate
             Past Conduct . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

        B.    The Present Action is Not Pre-Emptive or Reactive Litigation . . . . . . . . . . . . . 20

        C.    The Existence of KSBE's Later-Filed Action in Hawaii Circuit
             Court Does Not Support Abstention . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

ERIC GRANT, ATTORNEY AT LAW
8001 Folsom Boulevard, Suite 100
Sacramento, California 95826
Telephone: (916) 388-0833

**Page**

**Cases**

*American National Fire Insurance Co. v. Hungerford*,
   53 F.3d 1012 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15

*CE Distribution, LLC v. New Sensor Corp.*,
   380 F.3d 1107 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 17-18

*Certain Underwriters at Lloyd's v. A&D Interests, Inc.*,
   197 F. Supp. 2d 741 (S.D. Tex. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Continental Airlines, Inc. v. Goodyear Tire & Rubber Co.*,
   819 F.2d 1519 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

*Correspondent Services Corp. v. First Equities Corp.*,
   338 F.3d 119 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Cunningham Bros., Inc. v. Bail*,
   407 F.2d 1165 (7th Cir.),
   *cert. denied*, 395 U.S. 959 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate*,
   470 F.3d 827 (9th Cir. 2006) (en banc),
   *cert. dismissed*, 127 S. Ct. 2160 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Doe v. Unocal Corp.*,
   248 F.3d 915 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Dolch v. United California Bank*,
   702 F.2d 178 (9th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-7

*Dow Agrosciences LLC v. Bates*,
   332 F.3d 323 (5th Cir. 2003),
   *rev'd on other grounds*, 544 U.S. 431 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Employers Insurance of Wausau v. Crown Cork & Seal Co.*,
   942 F.2d 862 (3d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Employers Reinsurance Corp. v. Karussos*,
   65 F.3d 796 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 24-25

*GEICO v. Dizol*,
   133 F.3d 1220 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22-24

*Gray & Co. v. Firstenberg Machinery Co., Inc.*,
   913 F.2d 758 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

ERIC GRANT, ATTORNEY AT LAW
8001 Folsom Boulevard, Suite 100
Sacramento, California 95826
Telephone: (916) 388-0833

|  | **Page** |
|---|---|
| *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542 (9th Cir. 1989) | 22 |
| *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984) | 13-14 |
| *Indianapolis v. Chase National Bank*, 314 U.S. 63 (1941) | 5 |
| *Maryland Casualty Co. v. Knight*, 96 F.3d 1284 (9th Cir. 1996) | 19, 21, 24 |
| *Mayer v. Josiah Wedgwood & Sons*, 601 F. Supp. 1523 (S.D.N.Y. 1985) | 12 |
| *Menken v. Emm*, 503 F.3d 1050 (9th Cir. 2007) | 10-11 |
| *Minnesota Mining & Manufacturing Co. v. Nippon Carbide Industries Co.*, 63 F.3d 694 (8th Cir. 1995), *cert. denied*, 516 U.S. 1184 (1996) | 11-12, 15 |
| *Mitsui Sumitomo Insurance Co. v. Delicato Vineyards*, No. CIV. S-06-2891 FCD GGH (E.D. Cal. May 10, 2007) | 20-21, 23, 25 |
| *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826 (1989) | 8 |
| *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.*, 51 F.3d 1383 (8th Cir. 1995) | 14 |
| *Rodin Properties-Shore Mall, N.V. v. Cushman & Wakefield of Pennsylvania, Inc.*, 49 F. Supp. 2d 709 (D.N.J. 1999) | 12 |
| *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004) | 8-9, 16-17 |
| *Seattle Audubon Society v. Moseley*, 80 F.3d 1401 (9th Cir. 1996) | 19 |
| *Sher v. Johnson*, 911 F.2d 1357 (9th Cir. 1990) | 14-15 |
| *Smith v. Sperling*, 354 U.S. 91 (1957) | 5 |
| *Societe de Conditionnement en Aluminium v. Hunter Engineering Co.*, 655 F.2d 938 (9th Cir.1981) | 22, 25 |
| *Sony Electronics, Inc. v. Guardian Media Technologies, Ltd.*, 497 F.3d 1271 (Fed. Cir. 2007) | 22 |

ERIC GRANT, ATTORNEY AT LAW
8001 Folsom Boulevard, Suite 100
Sacramento, California 95826
Telephone: (916) 388-0833

*Spokane Indian Tribe v. United States*,
972 F.2d 1090 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Sydow v. Acheson & Co.*,
81 F. Supp. 2d 758 (S.D. Tex. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Thompson v. Ecological Science Corp.*,
421 F.2d 467 (8th Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*World-Wide Volkswagen Corp. v. Woodson*,
444 U.S. 286 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Zurn Industries, Inc. v. Acton Construction Co.*,
847 F.2d 234 (5th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8

**Statutes**

28 U.S.C. § 1332 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

42 U.S.C. § 1981 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**Other Authority**

William W. Schwarzer et al., *Rutter Group Practice Guide:*
*Federal Civil Procedure Before Trial* (9th Circuit ed. 2008) . . . . . . . . . . . . . . . . . . . . . 22

ERIC GRANT, ATTORNEY AT LAW
8001 Folsom Boulevard, Suite 100
Sacramento, California 95826
Telephone: (916) 388-0833

Plaintiff and Counter-Defendant Eric Grant's Opposition to KSBE Defendants' Motion to Dismiss

ERIC GRANT, ATTORNEY AT LAW
8001 Folsom Boulevard, Suite 100
Sacramento, California 95826
Telephone: (916) 388-0833

**INTRODUCTION**

Plaintiff and Counter-Defendant Eric Grant ("Grant") brought this action against KSBE[1] and against John and Jane Doe ("the Does"), seeking a declaration that he is not liable in any manner to any of those parties for an alleged breach of a settlement agreement between the Does and KSBE resulting from alleged disclosures of confidential information by non-party John Goemans. KSBE has moved to dismiss Grant's claim against it (doc. 50, filed July 9, 2008). As set forth in this opposition, KSBE's motion lacks merit and should be denied.

**STATEMENT OF RELEVANT FACTS**

KSBE is a "charitable testamentary trust established [in 1884] by the last direct descendent of King Kamehameha I, Princess Bernice Pauahi Bishop, who left her property in trust for a school dedicated to the education and upbringing of Native Hawaiians." *Doe v. Kamehameha Schools/ Bernice Pauahi Bishop Estate*, 470 F.3d 827, 831 (9th Cir. 2006) (en banc), *cert. dismissed*, 127 S. Ct. 2160 (2007). By its own description, KSBE is "the largest private landowner in the state of Hawaii." Declaration of Eric Grant ("Grant Decl.") ¶ 19, at 3 (attached hereto). By KSBE's own report, "the fair value of [its] total endowment grew by $1.39 billion during fiscal year 2007, increasing the overall endowment fair value to $9.06 billion as of year end. *Id.* ¶ 20, at 3.

Grant represented the Does in a federal civil rights lawsuit against KSBE, which lawsuit attacked KSBE's "Hawaiians only" admissions policy at its K-12 schools as discrimination on the basis of race in violation of 42 U.S.C. § 1981. The lawsuit was filed in June of 2003 in the United States District Court for the District of Hawaii; it was styled *Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate, et al.*, No. 1:03-cv-00316-ACK-LEK (the "Underlying Litigation"). Grant Decl. ¶ 5, at 1. While the Underlying Litigation was pending in the district court, KSBE was represented by California counsel working from California, namely, Kathleen M. Sullivan, then dean of Stanford Law School; she alone argued for KSBE at the one and only hearing before the district court on November 17, 2003. *See id.* ¶ 6, at 1.

---

[1] "KSBE" stands for Defendant Kamehameha Schools/Bernice Pauahi Bishop Estate, along with Defendants J. Douglas Ing, Nainoa Thompson, Diane J. Plotts, Robert K.U. Kihune, and Corbett A.K. Kalama, in their capacities as Trustees of the Kamehameha Schools/Bernice Pauahi Bishop Estate.

After the district court ruled in favor of KSBE and dismissed the Does' action with preju-
dice, Grant appealed on the Does' behalf to the Ninth Circuit in San Francisco, and the Underlying
Litigation was pending in that court from December 30, 2003 through December 5, 2006. Grant
Decl. ¶ 7, at 1. In that appeal, KSBE was again represented by California counsel working from
California, again Ms. Sullivan; she alone argued for KSBE at the oral argument before the 3-judge
panel on November 4, 2004 and at the oral argument before the 15-judge en banc court on June 20,
2006 in San Francisco. *See id.* ¶ 8, at 2. After the en banc court ruled 8-to-7 in favor of KSBE and
affirmed the district court's dismissal of the Does' claim, Grant filed on the Does' behalf a petition
for certiorari in the U.S. Supreme Court. *See id.* ¶ 9, at 2. In that phase of the litigation, KSBE was
again represented by California counsel working from California, again Ms. Sullivan and the law
firm Quinn Emanuel Urquhart Oliver & Hedges, LLP in Redwood Shores, California; Ms. Sullivan
was designated "Counsel of Record" (i.e., lead counsel) for KSBE on its brief in opposition to the
Does' petition. *See id.* ¶ 10, at 2.

While the Does' petition was under consideration by the Supreme Court, Ms. Sullivan on
May 3, 2007 contacted Grant at his office in Sacramento County and proposed to continue settle-
ment negotiations. *See* Grant Decl. ¶ 11, at 2. On May 8, 2007, Ms. Sullivan and Grant met at a
restaurant in Pleasanton, California, where they conducted settlement negotiations over a lengthy
lunch. *See id.* Over the course of the following three days, Ms. Sullivan and Grant continued to
negotiate by telephone and electronic mail from their respective offices in California; they spoke
approximately a dozen times and exchanged at least thirty e-mail messages in that period. *See id.*
¶ 12, at 2.

On May 11, 2007, the parties' negotiations consummated in a written settlement agreement.
*See id.* ¶ 13, at 2. On a separate page of the agreement titled "Approval as to Form," Ms. Sullivan
and Grant executed a provision stating: "On behalf of our respective clients, we approve the fore-
going Settlement Agreement and General Release as to form." *Id.* At KSBE's specific demand,
Grant executed a separate declaration confirming that the signatures of both "John Doe" and "Jane
Doe" were genuine; these executions were accomplished from counsel's respective offices in Cal-
ifornia. *See id.*

The essence of the settlement was an exchange by which the Does received monetary compensation from KSBE for dismissing their pending petition for certiorari. To effect that dismissal, Grant initiated (and Ms. Sullivan joined) a telephone call to the Clerk of the U.S. Supreme Court. *See* Grant Decl. ¶ 14, at 2. Based on the Clerk's instructions, Ms. Sullivan and Grant executed an "Agreed Stipulation to Dismiss" the petition, which Grant filed with the Clerk by facsimile; based on the stipulation, the Clerk entered an order dismissing the Does' petition. *See id.* Subsequently, KSBE discharged its financial obligation under the settlement agreement by making payments to Grant's client trust account at Grant's bank in Sacramento; the logistics of such payments were coordinated by Ms. Sullivan and Grant. *See id.* ¶ 15, at 3.

According to KSBE's memorandum in support of its motion to dismiss ("KSBE Mem.," doc. 51, filed July 9, 2008), the "principal issue" in this case "is whether [KSBE] has a claim for breach of the settlement agreement in the underlying litigation." KSBE Mem. 1:5-6. The immediate cause of that breach (if indeed there was a breach) is not in dispute: John Goemans, Grant's some-time co-counsel in the Underlying Litigation, "spoke by telephone with representatives of newspapers and television stations in Hawaii [on February 7, 2008]. In those interviews, Goemans disclosed what he claimed to be the amount of the settlement between the Does and [KSBE]." *Id.* at 6:4-6. As explained in Grant's pending motion for summary judgment ("Grant MSJ," doc. 81, filed Oct. 3, 2008), insofar as Grant is alleged to be directly liable for the alleged breach resulting from Goemans' disclosures, Grant's liability assertedly arises from one or more of the following alleged acts or omissions by Grant or his attorney:

- Grant told Goemans the amount of the (proposed) settlement payment;

- an attorney representing Grant breached the confidentiality clause by mailing a copy of the agreement to Goemans last year; and

- although Grant did obtain from the Sacramento Superior Court a protective order barring Goemans from disclosing any of the confidential terms of the settlement agreement, he did so only "belatedly."

*See* Grant MSJ 8:27-10:15; *see also* Statement of Undisputed Facts ¶¶ 3, 5, 9-10, at 2-4 (doc. 81-3, filed Oct. 3, 2008). To the extent that these acts or omissions took place at all, they took place in California. *See* Grant Decl. ¶¶ 16-18, at 3.

ERIC GRANT, ATTORNEY AT LAW
8001 Folsom Boulevard, Suite 100
Sacramento, California 95826
Telephone: (916) 388-0833

Plaintiff and Counter-Defendant Eric Grant's Opposition to KSBE Defendants' Motion to Dismiss

**ARGUMENT**

KSBE advances three grounds in support of its motion:  (1) the Court lacks subject-matter jurisdiction in that complete diversity will not exist once the Does are "correctly aligned" as plaintiffs; (2) the Court lacks personal jurisdiction over KSBE; and (3) the Court ought to exercise its discretion not to entertain Grant's claim for declaratory relief.  We address these grounds in turn.

**I.   This Court Has Subject-Matter Jurisdiction:  The Complaint Frames a
Case of Complete Diversity, and There Is No Warrant for "Realigning"
the Parties.**

As alleged in the Complaint (¶¶ 4-8, at 2), Plaintiff Grant is a citizen of California, and all Defendants are citizens of Hawaii.  KSBE admits as much.  *See* KSBE Mem. 7:15.  Accordingly, as framed by the Complaint, this is a case of complete diversity, and the Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).[2]

KSBE does not accept this straightforward analysis:

> For jurisdictional purposes, the parties must be aligned according to their interests in the principal issue in the litigation.  Here, the Does are aligned with Grant, not [KSBE]. Therefore, realignment destroys diversity jurisdiction because [KSBE], a Hawaii citizen, will then be on the opposite side from the Does, who are also Hawaii citizens.

KSBE Mem. 7:16-20.

The faulty aspect of this syllogism is its minor premise, namely, that the Does are in reality "aligned" with Grant as party plaintiffs (not with KSBE as party defendants), and the Court should formally "*re*align" the parties to reflect this reality.  In truth, however, the Complaint reflects the correct alignment of the parties according to the "principal issue" framed therein—whether *Grant* is liable for *Goemans*' disclosures of the putative amount and other terms of the Doe-KSBE settlement.  Morever, even if the Court were inclined to realign the Does, the proper remedy would not be dismissal of Grant's entire action but rather a severance of the Does' claim against KSBE, leaving Grant free to pursue his claim against KSBE without the Does as a co-plaintiff.

---

[2] As to the amount-in-controversy, the Complaint (¶ 1, at 1:26-27) alleged that "the matter in controversy exceeds the value of $75,000, exclusive of interest and costs."  That allegation was well-founded, not to mention undisputed:  Grant's dispute with KSBE concerns as much as $2 million.  *See* KSBE's Memorandum in Opposition to Does' Motion for Preliminary Injunction 5:22, 18:18 (doc. 28, filed Apr. 14, 2008); Does' Cross-Claim ¶ 13, at 5 (doc. 13, filed Apr. 3, 2008).  Moreover, Grant's dispute with the Does concerns the same amount, *see id.* ¶¶ 21-24, at 6-7, and in any event at least $100,000, *see id.* ¶¶ 29-31, at 8.

ERIC GRANT, ATTORNEY AT LAW
8001 Folsom Boulevard, Suite 100
Sacramento, California 95826
Telephone: (916) 388-0833

**A.      Realignment Is Not Warranted.**

Like KSBE (*see* KSBE Mem. 8:1-15), we begin with the Supreme Court's decision in *Indianapolis v. Chase National Bank*, 314 U.S. 63, 69-70 (1941), as interpreted by the Ninth Circuit in *Dolch v. United California Bank*, 702 F.2d 178, 181 (9th Cir. 1983). *Dolch* stated the governing standard in these terms: "If the interests of a party named as a defendant coincide with those of the plaintiff in relation to the purpose of the lawsuit, the named defendant must be realigned as a plaintiff for jurisdictional purposes." *Id.* (citing *Indianapolis*, 314 U.S. at 69-70).

The first question is to what should the Court look in determining the purpose of the lawsuit and the various parties' interests in relation to that purpose. Surely, courts may look "beyond the pleadings," because "the parties' own determination of who are plaintiffs and who defendants" is not controlling on the courts. *Indianapolis*, 314 U.S. at 69. On the other hand, the pleadings are doubtless the primary evidence of a lawsuit's purpose. *See, e.g., Smith v. Sperling*, 354 U.S. 91, 97 (1957) (opining that the inquiry required by *Indianapolis* "is resolved by the pleadings and the nature of the dispute"); *Correspondent Services Corp. v. First Equities Corp.*, 338 F.3d 119, 124 (2d Cir. 2003) (citing *Smith* for the proposition that "the determinative factors are the issue of antagonism on the face of the pleadings and the nature of the controversy"); *cf. Continental Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1523 (9th Cir. 1987) (aligning one defendant with the plaintiff on the ground, *inter alia*, that such defendant "filed papers below supporting [the plaintiff's] winning summary judgment motion"); *Dolch*, 702 F.2d at 181 (same, where such defendant "in her answer to the complaint admitted all of [the plaintiff's] allegations").

Although the Ninth Circuit has not yet confronted the precise issue, other courts of appeals have concluded that the "determination of the 'primary and controlling matter in dispute' does *not* include the cross-claims and counterclaims filed by the defendants. Instead, it is to be determined by *plaintiff's* principal purpose for filing its suit." *Zurn Industries, Inc. v. Acton Construction Co.*, 847 F.2d 234, 237 (5th Cir. 1988) (emphasis added); *accord, e.g., Employers Insurance of Wausau v. Crown Cork & Seal Co.*, 942 F.2d 862, 866 (3d Cir. 1991) (agreeing with *Zurn* that in general, "courts do not look to cross-claims and counterclaims to determine the primary issue of a dispute").

///

Plaintiff and Counter-Defendant Eric Grant's Opposition to KSBE Defendants' Motion to Dismiss

Eric Grant, Attorney at Law
8001 Folsom Boulevard, Suite 100
Sacramento, California 95826
Telephone: (916) 388-0833

What, then, is the purpose of the Grant's lawsuit, as revealed by the pleadings?  In his complaint, Grant seeks "a declaration that [he] is not liable in any manner to any Defendant in contract or in tort or on any other basis whatsoever" for Goemans' disclosures.  Complaint 6:22-23 (prayer for relief).  Similarly, in his pending motion for summary judgment, Grant seeks, with respect to those disclosures, both (a) a judgment "declaring that Grant is not liable in any manner to KSBE in contract or in tort or on any other basis whatsoever"; and (b) a judgment, "declaring, on Grant's Claim for Relief, that Grant is not liable in any manner to the Does in contract or in tort or on any other basis whatsoever."  Grant MSJ, at i:15-16, i:21-22.  The pleadings thus reveal that Grant is "aligned" against *both* KSBE *and* the Does, in that Grant seeks (in parallel fashion) to establish his non-liability to both of them—regardless of their liability vel non to each other.

The factual premise of KSBE's realignment argument is the idea that "the Does and Grant (as their interests are framed by their September 2007 settlement agreement) share an interest in establishing that [KSBE] has no claim for breach of the Settlement Agreement based upon Goemans' disclosures."  KSBE Mem. 8:27-9:1.  This premise is false.  As Grant's pending motion for summary judgment makes clear, Grant's interest (vis-à-vis KSBE) is to establish that KSBE has no claim *against him* for breach of the Settlement Agreement.  Nothing in Grant's lengthy argument for his non-liability to KSBE, *see* Grant MSJ 7-14, depends on his establishing that KSBE has no such claim *against the Does* (or against anyone else).  In other words, Grant is legally indifferent to the outcome of the dispute between KSBE and the Does:  he intends to pay both parties nothing in any event.  Moreover, Grant's contractual dispute with the Does over his duty to *defend* them against KSBE, *see id.* at 17-18, is logically independent of the merits of the Doe-KSBE dispute.

Given the foregoing, it is easy to show that the realignment cases cited by KSBE are distinguishable.  In *Dolch*, to start with, Marguerite sued both the Bank and her sister Catherine.  With the Ninth Circuit's approval, the district court realigned Catherine as a plaintiff for three reasons:

(1) "she had the same interest in this action as Marguerite";

(2) "Catherine, not Marguerite, was the 'driving force' behind the action"; and

(3) "[b]oth Catherine and Marguerite would benefit from a decision against the Bank," in that "both would receive a one-third interest in [certain] renewal rights if [certain] assignments were invalidated."

702 F.2d at 181.

None of these reasons holds in the present case. First, as noted above, the Does do not have the same interest in this action as Grant. To the contrary, Grant has sued the Does and seeks relief against them distinct from any relief he may obtain against KSBE. The Does, in response, have asserted counter-claims against Grant that seek relief distinct from any relief they may obtain against KSBE. *See, e.g.*, Doe Cross-Claim ¶ 31, at 8:7-8 (alleging that "Grant has an obligation to pay for the first $100,000 of the defense of [KSBE's] claims against the Does"). Contrast that obvious adversity with the situation in *Dolch*, where Catherine "in her answer to the complaint admitted all of Marguerite's allegations." 702 F.2d at 181. Second, Grant, not the Does, was the "driving force" behind his own action. Grant conceived the idea on his own and sought neither the approval nor the endorsement of the Does. *See* Grant Decl. ¶ 22, at 4. Finally, the Does would not necessarily benefit from a decision against KSBE in favor of Grant. As stated above, Grant does not seek to establish that *no one* is liable to KSBE for Goemans' disclosures—only that *he* is not so liable.

Also distinguishable are classic indemnity cases like *Continental Airlines*, as discussed in KSBE Mem. 9-10. As the Ninth Circuit described the situation in that case, both the federal plaintiff and one of the federal defendants "had an identical interest in proving the validity and scope of [the plaintiff's] exculpatory clause. Indeed [that defendant] filed papers below supporting [the plaintiff's] winning summary judgment motion, and the two parties arranged to be represented by the same counsel on this appeal." 819 F.2d at 1523. It is obvious that the situation is far different here: Grant and the Does do not have an "identical interest," for Grant can be (and should be) absolved of liability to KSBE without determining whether the Does are liable to KSBE. And rather than filing papers supporting Grant's summary judgment motion, the Does are some of the *targets* of that motion. Finally, of course, Grant and the Does are (and will continue to be) represented by different counsel. *See* Grant Decl. ¶ 23, at 4.

"In sum," argues KSBE, "the Does and Grant must be aligned together because they share a common interest in defeating [KSBE] with respect to the main dispute." KSBE Mem. 11:22-23. But one could just as easily say that KSBE and Grant must be aligned together because they share a common interest in imposing monetary liability on the Does. Or that the Does and KSBE must

be aligned together because they share a common interest in imposing monetary liability on Grant. How to determine which is, as KSBE puts it, the "main dispute"? As explained above, that is "to be determined by *plaintiff's* principal purpose for filing its suit." *Zurn Industries*, 847 F.2d at 237. *Grant's* principal purpose—as clearly and consistently revealed by the pleadings—is to be totally absolved of liability to both KSBE and the Does without regard to the dispute between those parties. Therefore, the Does are correctly aligned as defendants with KSBE, and there is no warrant for the Court to *re*align them.

### B. Even If Realignment Is Warranted, Severance (Not Dismissal) Is the Proper Remedy.

If the Court were to realign the Does with Grant, then of course complete diversity would no longer exist. There is no requirement, however, that the "case must be dismissed" in that circumstance. KSBE Mem. 11:24. Rather, Federal Rule of Civil Procedure 21 expressly authorizes the Court to sever Grant's dispute with KSBE from the Does' dispute with KSBE: "On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." *See also Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989) ("it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time, even after judgment has been rendered").

Given the relative ease of resolving the Grant-KSBE dispute by means of summary judgment, and given the alternative forum in Hawaii for the Does and KSBE to litigate their dispute, severance of the Does' cross-claim against KSBE is a reasonable solution if the Court determines that realignment is warranted. In any event, dismissal is inappropriate, and so KSBE's motion to dismiss must be denied.

## II. This Court Has Specific Personal Jurisdiction over KSBE.

KSBE challenges this Court's personal jurisdiction over it. *See generally* KSBE Mem. 12-22. In the face of such a challenge, the plaintiff "bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Unless and until an evidentiary hearing is held on the jurisdictional dispute, a "plaintiff need only make a prima facie showing of jurisdictional facts"; that is, courts "only inquire into whether [the

plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction." *Id.* In this context, "[c]onflicts between parties over statements contained in affidavits must be resolved in the *plaintiff's* favor." *Id.* (emphasis added). This brings us to the governing standard:

> Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits. Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same. For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least "minimum contacts" with the relevant forum such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice.

*Id.* at 800-01 (citations omitted). Minimum contacts are typically analyzed under the headings of "general jurisdiction" and "specific jurisdiction." Having had the opportunity to conduct discovery on the issue, Grant does not contend that this Court has *general* jurisdiction over KSBE.

It is readily apparent, however, that this Court has *specific* jurisdiction over KSBE. As analyzed in detail below, the settlement agreement giving rise to this action was negotiated entirely in California by California attorneys retained voluntarily by their respective clients; the one-time obligations imposed by the agreement were performed completely in California, with the expectation that future obligations would likewise be performed in substantial part in California. Under well-established law, these facts are more than sufficient to subject KSBE to specific jurisdiction in California for an action (like this one) arising out of or relating to that agreement.

The Ninth Circuit has set out a three-pronged test for specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Id.* at 802. The plaintiff "bears the burden of satisfying the first two prongs of the test"; if he does, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* We consider the three prongs in turn.

ERIC GRANT, ATTORNEY AT LAW
8001 Folsom Boulevard, Suite 100
Sacramento, California 95826
Telephone: (916) 388-0833

ERIC GRANT, ATTORNEY AT LAW
8001 Folsom Boulevard, Suite 100
Sacramento, California 95826
Telephone: (916) 388-0833

### A. KSBE Consummated the Doe-KSBE Settlement Agreement in California and Took Deliberate Action Within this State.

Just last year, the Ninth Circuit opined that "in contract cases, we typically inquire whether a defendant 'purposefully avails itself of the privilege of conducting activities' or 'consummates a transaction' in the forum, focusing on activities such as delivering goods or executing a contract." *Menken v. Emm*, 503 F.3d 1050, 1057 (9th Cir. 2007). Moreover, in an action alleging breach of contract, "the 'purposeful availment' requirement is satisfied if the defendant has taken deliberate action within the forum state." *CE Distribution, LLC v. New Sensor Corp.*, 380 F.3d 1107, 1113 (9th Cir. 2004). In the present action, KSBE consummated a transaction in California and otherwise took deliberate action within this state.

KSBE's California counsel working from California contacted Grant at his office in Sacramento County and proposed to resume settlement negotiations on behalf of their respective clients. *See* Grant Decl. ¶ 11, at 2. The two lawyers met face-to-face in Northern California, *see id.*, after which they engaged in three days of intensive negotiations by telephone and electronic mail from their respective offices in California. *See id.* ¶ 12, at 2. The negotiations consummated in the Doe-KSBE settlement agreement on May 11, 2007. *See id.* ¶ 13, at 2. Both Grant and KSBE's counsel executed a provision by which they approved the agreement "as to form" on behalf of their respective clients; at KSBE's specific demand, Grant executed a separate declaration confirming that the signatures of "John Doe" and "Jane Doe" were genuine. *See id.* All of these executions occurred in California, *see id.*, as KSBE had to have known they would.

The one-time obligations imposed by the Doe-KSBE settlement agreement were performed in California. For its part, KSBE bargained for a dismissal of the Does' pending petition for certiorari. *See* Grant Decl. ¶ 14, at 2. That dismissal was put in motion by a telephone call, initiated by Grant and then joined by KSBE's California counsel working from California, to the Clerk of the Supreme Court; it was substantially complete when both counsel executed in their respective California offices an "Agreed Stipulation to Dismiss" the petition; and it was finally accomplished (as far the parties' own actions) by Grant's facsimile filing of that stipulation with the Clerk from Grant's office in Sacramento County. *See id.* For their part, the Does bargained for compensation

ERIC GRANT, ATTORNEY AT LAW
8001 Folsom Boulevard, Suite 100
Sacramento, California 95826
Telephone: (916) 388-0833

1   from KSBE.  *See id.*  That obligation was performed in full when KSBE later subsequently made

2   payments to Grant's client trust account at his bank in Sacramento.  *See id.* ¶ 15, at 3.

3       The Doe-KSBE settlement agreement imposed additional, ongoing obligations as well.  As

4   KSBE describes it, "the agreement provided that no signatory or releasee—'including counsel'—

5   would disclose . . . any term of the Settlement Agreement."  KSBE Mem. 4:4-6.  As emphasized

6   by KSBE itself, the continuing obligation of *counsel* not to make certain disclosures was expressly

7   contemplated.  KSBE knew (or reasonably should have known) that both of the individuals who

8   had for four years been identified as the Does' counsel (Grant and Goemans) were then California

9   residents.  *See, e.g.*, Declaration of Eric Grant (doc. 81-4, filed Oct. 3, 2008), Exh. 1 (cover page

10  of brief filed on March 27, 2007, identifying Does' counsel as Eric Grant of Sacramento and John

11  Goemans of Beverly Hills, California).  In other words, in KSBE's view, the settlement agreement

12  expressly created ongoing obligations between KSBE and residents of this state.

13      Finally, it is fair to say that the Doe-KSBE settlement agreement "related to" litigation in

14  California.  *Menken*, 503 F.3d at 1058.  To be sure, the Underlying Litigation *began* in Hawaii, but

15  it moved on to California, pending nearly three years in the Ninth Circuit in San Francisco, where

16  Grant and KSBE's California counsel argued before the 15-judge en banc court on June 20, 2006.

17  *See* Grant Decl. ¶¶ 7-8 at 1.  Furthermore, preserving the *Ninth Circuit*'s favorable judgment was

18  KSBE's principal object in settling the litigation, as KSBE's Trustees themselves repeatedly em-

19  phasized in announcing the settlement:  "This means that the Circuit Court ruling stands . . . .  The

20  ruling from the 9th Circuit Court is a pono one for Kamehameha Schools and for kanaka maoli."

21  *Id.* ¶ 21, at 3.

22      The federal courts have routinely sustained the exercise of personal jurisdiction in similar

23  circumstances.  In *Minnesota Mining & Manufacturing Co. v. Nippon Carbide Industries Co.*, 63

24  F.3d 694 (8th Cir. 1995) ("*3M*"), *cert. denied*, 516 U.S. 1184 (1996), the parties "entered into ex-

25  tensive negotiations to discuss a way to settle [their] dispute."  *Id.* at 697.  "Part of those negotia-

26  tions took place in Minnesota," and the two parties eventually "came to an agreement, which was

27  finally executed in Minnesota."  *Id.*  On these facts, the court of appeals found that the defendant

28  "came voluntarily to Minnesota with the business purpose of terminating on-going litigation"; in

Plaintiff and Counter-Defendant Eric Grant's Opposition to KSBE Defendants' Motion to Dismiss

other words, "the defendant's activities in Minnesota were directed toward the consummation of the contract in dispute." *Id.* at 697, 698. Given these findings, the court concluded that the defendant had minimum contacts with the forum state: "By coming into the State of Minnesota and by negotiating a contract which could be enforced under the laws of Minnesota, [the defendant] purposefully availed itself of the laws of the State." *Id.* at 698.

Similarly, in *Thompson v. Ecological Science Corp.*, 421 F.2d 467, 469 (8th Cir. 1970), the parties held a two-day conference in Arkansas to negotiate the basic terms of the contract at issue, followed by several telephone conversations. The contract was prepared in Arkansas and executed there by the plaintiff. Thereafter, the defendant executed the contract in another state. In holding that the defendant was subject to specific jurisdiction in Arkansas, the court of appeals observed that the "defendant's activities in Arkansas were directed toward the consummation of the contract in question." *Id.* at 470. Furthermore, the "fact that the actual final execution of the contract may have been in Florida, rather than in Arkansas, is immaterial." Id. at 469. In the present case, the activities of KSBE's California counsel in California were directed toward the consummation of the settlement agreement in question. The fact that the parties (though not their counsel) executed the agreement in Hawaii, *see* KSBE Mem. 3:14-16, is "immaterial."

*3M* and *Thompson* are only two of many opinions to uphold personal jurisdiction on facts similar to those here. *See also, e.g., Sydow v. Acheson & Co.*, 81 F. Supp. 2d 758, 767 (S.D. Tex. 2000) (holding that "because the alleged contracts envisioned Texas performance, . . . Defendants availed themselves of the privilege of conducting business in Texas and invoked the protections of Texas law"); *Rodin Properties-Shore Mall, N.V. v. Cushman & Wakefield of Pennsylvania, Inc.*, 49 F. Supp. 2d 709, 718 (D.N.J. 1999) ("By hiring local counsel, Reid purposefully availed itself of the privilege of conducting activities in New Jersey and invoked the benefits and protections of New Jersey law."); *Mayer v. Josiah Wedgwood & Sons*, 601 F. Supp. 1523, 1531 (S.D.N.Y. 1985) ("Preliminary negotiations in New York that are 'essential to the existence of the contract' provide sufficient contact to establish . . . personal jurisdiction over the nondomiciliary defendant.").

KSBE does not dispute the above-documented facts, nor does it contradict the above-stated authority. KSBE rather proffers several reasons why, in the teeth of the facts and the law, it would

ERIC GRANT, ATTORNEY AT LAW
8001 Folsom Boulevard, Suite 100
Sacramento, California 95826
Telephone: (916) 388-0833

1   have this Court conclude that KSBE "has not purposely availed itself of the privilege of conduct-

2   ing activities relating to the Does in California." KSBE Mem. 16:1-2. These reasons lack merit.

3       *First*, KSBE contends that "to the extent that [it] engaged in any activities related to Cali-

4   fornia in connection with this action, those activities cannot confer personal jurisdiction because

5   they were merely *fortuitous and attenuated* events that occurred during [KSBE's] efforts to resolve

6   Hawaii litigation between Hawaii parties." KSBE Mem. 16:3-6 (emphasis added). In this regard,

7   KSBE deems it "purely fortuitous" that it "chose to be represented in Hawaii by a lawyer residing

8   in California." *Id.* at 16:14-15. Moreover, KSBE asserts that its "settlement payment to Grant's

9   client trust account in California was also fortuitous and attenuated." *Id.* at 17:11-12. In general,

10  KSBE appears to think activities and events are fortuitous if they "could have been accomplished

11  anywhere," not just in California. *Id.* at 18:28.

12      It is apparent that KSBE misunderstands the terms *fortuitous* and *attenuated*. They come

13  from the Supreme Court's oft-quoted maxim that the "'purposeful availment' requirement ensures

14  that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or

15  'attenuated' contacts." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). As used here,

16  *fortuitous* is the opposite of *purposeful* or *deliberate*. KSBE's engagement of California counsel

17  was its own purposeful or deliberate choice—not something thrust on it randomly, like "the fortu-

18  itous circumstance that a single Audi automobile, sold in New York to New York residents, hap-

19  pened to suffer an accident while passing through Oklahoma." *World-Wide Volkswagen Corp. v.

20  Woodson*, 444 U.S. 286, 295 (1980). The same is true of KSBE's settlement payment: it did not

21  just happen to be sent to California; that destination was the result of an express contractual pro-

22  vision to which KSBE agreed. *See* Declaration of Jane Doe (doc. 9-2, filed Apr. 3, 2008), Exh. 1,

23  ¶ 2, at 2 (directing KSBE to make payment to a specified bank account in Sacramento). Indeed,

24  the same is true of all of the activities described above: they resulted from KSBE's purposeful and

25  deliberate choices to accomplish its goals *in California*.

26      *Second*, KSBE invokes the principle that the "unilateral activity of another party or a third

27  person is not an appropriate consideration when determining whether a defendant has sufficient

28  contacts with a forum State to justify an assertion of jurisdiction." *Helicopteros Nacionales de*

*Colombia, S. A. v. Hall*, 466 U.S. 408, 417 (1984), *quoted in* KSBE Mem. 16:10-12. In this regard, KSBE describes various actions of others as "unilateral." *See id.* at 16:8-10 ("It was the Does who sued [KSBE] in Hawaii, but then appealed an unfavorable decision to the Ninth Circuit, compelling [KSBE] to respond in California."); *id.* at 17:20-21 (asserting that it was the "Does and Grant who specified where the settlement payment was to be sent"); *id.* at 18:5-6 ("Grant's communication with the U.S. Supreme Court from California to dismiss the Does' petition for certiorari [is] irrelevant to the issue of jurisdiction over [KSBE].").

It is apparent that KSBE also misunderstands the term *unilateral*. It is irrelevant whether KSBE had to "respond" to the Doe's appeal, for Grant does not predicate personal jurisdiction on KSBE's defending an appeal in the Ninth Circuit. Personal jurisdiction is predicated on KSBE's entirely voluntarily and wholly self-motivated decision to approach Grant in California, negotiate with him in California, cause him to execute and to perform the resulting settlement agreement in California, and seek to impose on him continuing obligations that he necessarily must perform in California. As for the destination of the settlement payment, it is just false to assert that the Does and Grant specified where it was to be sent. As documented above, the destination was specified *by contract*.[3] (Is this $9 billion entity suggesting that it lacked bargaining power vis-à-vis two anonymous individuals and the solo practitioner who represented them?) As for Grant's communication with the Supreme Court, it was not just something he thought up for fun: it was precisely what the very first substantive paragraph of the settlement agreement expressly required of him; KSBE could not reasonably have expected him to do otherwise.

*Third*, KSBE argues that the "Ninth Circuit's decision in *Sher* [*v. Johnson*, 911 F.2d 1357 (9th Cir. 1990)] confirms the lack of jurisdiction here." KSBE Mem. 18:13. Actually, *Sher* confirms the *existence* of jurisdiction here. As KSBE observes, *Sher* held that "the mere existence of a contract with a party in the forum state does not constitute sufficient minimum contacts for juris-

---

[3] In this context, KSBE observes that "[m]ere payments into the forum normally do not create personal jurisdiction." KSBE Mem. 17:12-13. Of course not, but it is untenable to suggest that Grant is relying on "mere payment" here. *See Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.*, 51 F.3d 1383, 1388 (8th Cir. 1995) ("In determining whether there is personal jurisdiction, the courts consider the defendant's contacts with the forum in the aggregate, not individually; they look at the totality of the circumstances.").

ERIC GRANT, ATTORNEY AT LAW
8001 Folsom Boulevard, Suite 100
Sacramento, California 95826
Telephone: (916) 388-0833

Plaintiff and Counter-Defendant Eric Grant's Opposition to KSBE Defendants' Motion to Dismiss

ERIC GRANT, ATTORNEY AT LAW
8001 Folsom Boulevard, Suite 100
Sacramento, California 95826
Telephone: (916) 388-0833

diction." *Id.* at 1362. Of course, Grant does not argue that the "mere existence" of putative contractual relationship between himself and KSBE suffices. Like the Ninth Circuit, he would have this Court "look to 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.' " *Id.* (quoting *Burger King*, 471 U.S. at 479), *quoted in* KSBE Mem. 18:17-18. As documented above, significant pre-execution negotiations (including face-to-face ones) occurred in California as the result of KSBE's "deliberate" decision to initiate and continue contact with Grant in that state. *Sher*, 911 F.2d at 1362. As further documented above (and as amplified in the following paragraphs), the contemplated future consequences of that contact were indeed "continuing obligations" between Grant and KSBE.

*Finally*, KSBE argues that for purposes of minimum contacts, "activities are not considered significant unless they create substantial or 'continuing' obligations *toward* residents of the forum state." KSBE Mem. 19:1-2 (emphasis added). This rule assertedly exonerates KSBE because its "only continuing obligations are *toward residents of Hawaii*, the Does. [It] has no continuing obligations toward residents of California, including Grant." *Id.* at 20:3-4. KSBE misreads the law: contacts are significant if they create continuing obligations not just *toward* forum residents, but more generally *between* forum residents and the defendant, which includes obligations *from* such residents to the defendant. Thus, *Burger King* ruled that where the defendant "created 'continuing obligations' *between* himself and residents of the forum, . . . it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." 471 U.S. at 476 (emphasis added). Indeed, KSBE itself quotes the Ninth Circuit's application of *Burger King* in *Gray & Co. v. Firstenberg Machinery Co., Inc.*, 913 F.2d 758 (9th Cir. 1990), which held that there was no personal jurisdiction because, in part, "[t]here is no evidence the sale contemplated a continuing relationship *between* Gray and the defendants." *Id.* at 761 (emphasis added), *quoted in* KSBE Mem. 19:3-5.[4]

---

[4] KSBE deceptively argues that *3M* supports a "toward" rule because the Eighth Circuit found that "in settling [defendant] NCI had undertaken 'continuing obligations' toward [forum resident] 3M." KSBE Mem. 20:1 (citing *3M*, 63 F.3d at 697-99). The opinion does not say anything like that. It opines that the minimum contacts test "is met if a defendant has deliberately engaged in activities, *such as having created continuing obligations*, and such actions invoke the benefits and protection of a state's law." 63 F.3d at 697 (emphasis added) (citing *Burger King*, 471 U.S. at 475-76).

In the present case, of course, the settlement agreement contemplated (in KSBE's view) a continuing relationship *between* KSBE and Grant in that the agreement imposed on Grant a continuing obligation to KSBE to keep confidential the amount and other terms of the Doe-KSBE settlement. *See, e.g.*, KSBE Mem. 4:4-6 (asserting that "the agreement provided that no signatory or releasee—'including counsel'—would disclose . . . any term of the Settlement Agreement"). That putative obligation to KSBE on the part of a California resident is precisely what permitted KSBE (under its view of the agreement) to "invok[e] the benefits and protections of [California's] laws," a hallmark of purposeful availment. *Gray & Co.*, 913 F.3d at 760.

As noted above, the "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts. As we have shown. KSBE had numerous contacts with California—consisting of KSBE's own deliberate actions—that far exceed such threshold. The first prong of specific jurisdiction is satisfied.

**B.    The Controversy Between Grant and KSBE Arises out of, and Relates to, KSBE's California-Related Activities.**

Next, a plaintiff must show that his claim "arises out of or relates to the defendant's forum-related activities." *Fred Martin Motor Co.*, 374 F.3d at 802. The Ninth Circuit has said that "[t]o determine whether a claim arises out of forum-related activities, courts apply a 'but for' test," that is, asking whether Grant's "claims would have arisen but for [KSBE's] contacts with California." *Doe v. Unocal Corp.*, 248 F.3d 915, 924 (9th Cir. 2001). In the present litigation, that question is trivial: but for consummating the Doe-KSBE settlement agreement in California, KSBE would not be holding over Grant's head the threat of a suit for an alleged breach of that agreement, and Grant would not be seeking a declaratory judgment in response to such threat.

Without actually addressing the Ninth Circuit's "but for" test, KSBE attempts to shift the focus of this litigation from the settlement agreement (and its breach) to the Underlying Litigation. Doubtless that litigation did involve a dispute that began in Hawaii between residents of Hawaii. The present action, however, does not arise from KSBE's racially exclusionary admissions policy or the Does' challenge to that policy. Rather, it is arises solely out of a settlement agreement negotiated by California attorneys in California and for the alleged breach of which KSBE has been

ERIC GRANT, ATTORNEY AT LAW
8001 Folsom Boulevard, Suite 100
Sacramento, California 95826
Telephone: (916) 388-0833

harassing a California resident, namely, Grant. As described above, the agreement was the result of KSBE's California-related activities. The second prong of specific jurisdiction is also satisfied.

### C.     Exercising Jurisdiction over KSBE in this Litigation Would Be Reasonable.

Grant having satisfied the first two prongs, "the burden then shifts to [KSBE] to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Fred Martin Motor Co.*, 374 F.3d at 802. KSBE cannot present that compelling case.

The Ninth Circuit has identified seven factors as relevant to the reasonableness analysis:

> (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*CE Distribution*, 380 F.3d at 1112. As set out below, a majority of these factors weigh in favor of the exercise of jurisdiction.

Factor (1) weights in favor of exercising jurisdiction. As described above, KSBE purposefully interjected itself into California by (in its view) imposing continuing obligations on Grant, a California resident.

Factor (2) also weighs in favor of exercising jurisdiction. As an entity that has $9.1 billion in assets, *see* Grant Decl. ¶ 20, at 3, and that was already represented by at least three California law firms *before* this action was filed, *see* Declaration of Eric Grant ¶¶ 17-18, at 3 (doc. 36-2, filed Apr. 15, 2008); *id.* ¶¶ 22-23, at 4, KSBE will suffer little burden in defending itself here. As for the convenience of the Does and putative witnesses who reside in Hawaii, *see* KSBE Mem. 21:4-6, we address that issue in our concurrently filed opposition to KSBE's motion to transfer.

Factor (3) also weighs in favor of exercising jurisdiction. Because this dispute arose out of litigation in the *federal* courts involving a *federal* claim, the sovereignty of the State of Hawaii is not implicated. That the Underlying Litigation "generated intense interest in Hawaii," *id.* at 21:9, hardly poses any "conflict with the sovereignty of defendant's state," *id.* at 20:16.

///

ERIC GRANT, ATTORNEY AT LAW
8001 Folsom Boulevard, Suite 100
Sacramento, California 95826
Telephone: (916) 388-0833

ERIC GRANT, ATTORNEY AT LAW
8001 Folsom Boulevard, Suite 100
Sacramento, California 95826
Telephone: (916) 388-0833

1    Factor (4) also weighs in favor of exercising jurisdiction. California "has a substantial in-

2    terest in adjudicating the dispute of one of its residents who alleges injury due to the tortious con-

3    duct of another." *CE Distribution*, 380 F.3d at 1112. The tortious conduct here is KSBE's legally

4    and factually groundless threat to sue Grant for a breach of the Doe-KSBE settlement agreement.

5    *See generally* Grant MSJ 7-14.

6    Factor (5) also weighs in favor of exercising jurisdiction. As set out in detail in our con-

7    currently filed opposition to KSBE's motion to transfer, this controversy can most efficiently be

8    resolved here.

9    Factor (6) favors jurisdiction here. Grant is a solo practitioner who resides and practices

10   law in Sacramento County, and he is a member of the Bar of this Court. *See* Grant Decl. ¶¶ 3-4, at

11   1. Litigating this dispute in Hawaii Circuit Court, where he is not admitted to practice and must

12   therefore hire counsel, would be inconvenient and expensive. That Grant might be subject to per-

13   sonal jurisdiction in Hawaii, *see* KSBE Mem. 21:24-22:4, does not make that forum convenient.

14   Factor (7) alone weighs against exercising jurisdiction. Hawaii is an alternative forum, if

15   an inconvenient one for Grant.

16   Accordingly, KSBE cannot present a case, let alone *a compelling* case, that the exercise of

17   jurisdiction over it would not be reasonable. For that reason, and because the first two prongs of

18   specific jurisdiction are satisfied as well, this Court has specific personal jurisdiction over KSBE

19   as to Grant's claim.

20
21   **III.    There Is No Good Reason for the Court to Decline to Entertain Grant's
             Declaratory Judgment Claim.**

22   Finally, KSBE argues that "even if subject matter and personal jurisdiction exist, the Court

23   should exercise its discretion to decline to entertain Grant's declaratory judgment claim." KSBE

24   Mem. 22:10-11 (section heading). According to KSBE, the Court should so exercise its discretion

25   for three reasons, which we address in turn.[5]

26   _____

27   [5] Grant has addressed at some length the propriety of his seeking declaratory relief against KSBE
     —and particularly the fact that there is an "actual controversy" between Grant and KSBE—in his
     pending motion for summary judgment. *See* Grant MSJ 3-7. The present discussion is confined

28   to the two specific points raised in Part III.C of KSBE's motion to dismiss.

Plaintiff and Counter-Defendant Eric Grant's Opposition to KSBE Defendants' Motion to Dismiss

ERIC GRANT, ATTORNEY AT LAW
8001 Folsom Boulevard, Suite 100
Sacramento, California 95826
Telephone: (916) 388-0833

## A. Declaratory Judgment Actions May Appropriately Adjudicate Past Conduct.

As its first basis for urging the Court to decline jurisdiction, KSBE proffers the notion that "courts generally decline to exercise jurisdiction over a declaratory relief action unless the plaintiff is able to show that a declaratory judgment would enable it to change its conduct to avoid damages that have not accrued." *Id.* at 22:19-21. In other words, according to KSBE, it is "inappropriate" to bring a declaratory judgment action "solely to adjudicate past conduct." *Id.* at 23:4. In support of this notion, KSBE offers what might charitably be called a dearth of authority: a 1969 opinion from the Seventh Circuit, a 1991 opinion from a district court in Pennsylvania, and an unpublished opinion from a district court in Missouri. *See id.* at 22:21-23:4. There is good reason for this poor showing: KSBE's notion is flatly wrong.

In truth, nothing precludes a declaratory judgment plaintiff from "seeking an exculpatory ruling that he is not liable" in connection with what KSBE calls "past conduct." *Id.* at 23:6. As the *Ninth Circuit* has explained, "the Act is intended to allow earlier access to federal courts in order to spare potential defendants from the threat of impending litigation." *Seattle Audubon Society v. Moseley*, 80 F.3d 1401, 1405 (9th Cir. 1996) (per curiam). That such litigation may concern "past conduct" is obvious from one of the few Ninth Circuit cases on which KSBE relies here, namely, *Maryland Casualty Co. v. Knight*, 96 F.3d 1284 (9th Cir. 1996), *quoted in* KSBE Mem. 23:14-17.

In that case, Knight "obtained a policy of fire insurance from [Maryland] on a commercial building he owned in San Diego"; in May of 1991, that building "was heavily damaged by fire." 96 F.3d at 1286. Knight claimed under the policy; Maryland made substantial payments on those claims, but Knight demanded more. Accordingly, in March of 1992, "Maryland filed its complaint in district court against Knight for declaratory judgment to resolve all of the parties' disputes under the policy." *Id.* at 1287. The district court did indeed resolve the disputes about the *past conduct* between the parties and entered judgment for Maryland. On appeal, the Ninth Circuit specifically considered "the threshold issue of the district court's exercise of jurisdiction under the Declaratory Judgment Act," and the court of appeals "conclude[d] that the district court properly exercised jurisdiction over this matter." *Id.* at 1288.

Plaintiff and Counter-Defendant Eric Grant's Opposition to KSBE Defendants' Motion to Dismiss

1    The same basic situation—and the same result—obtained in this Court in *Mitsui Sumitomo*

2    *Insurance Co. v. Delicato Vineyards*, No. CIV. S-06-2891 FCD GGH (E.D. Cal. May 10, 2007).[6]

3    Mitsui insured Delicato's wine, which suffered inventory spoilage in July of 2006 as the result of

4    a heat wave in California's Central Valley. *See* slip op. at 2. Delicato sought reimbursement for

5    that loss, but Mitsui denied coverage. To resolve the parties' dispute over this *past conduct*, Mitsui

6    brought a declaratory judgment action against Delicato in this Court in December of 2006, invok-

7    ing diversity jurisdiction. *See id.* at 5. The Court held that "Mitsui's complaint presents an actual

8    case or controversy within the meaning of Article III and the Declaratory Judgment Act." *id.* at 11,

9    and the Court determined to "exercise its discretion to assume jurisdiction over the instant declar-

10   atory judgment action," *id.* at 16.

11   In this Circuit and in this Court, a declaratory judgment plaintiff in Grant's position may

12   rightly seek an "exculpatory ruling" in connection with past conduct. KSBE's authority-poor arg-

13   ument to the contrary should be rejected.[7]

14   **B.    The Present Action is Not Pre-Emptive or Reactive Litigation.**

15   As its second basis for urging the Court to decline jurisdiction, KSBE attempts to cast this

16   action as "pre-emptive," KSBE Mem. 23:13, that is, a case in which "Grant and the Does rushed

---

17   [6] A copy of the quoted opinion is reproduced as Exhibit 1 to the Appendix of Non-Standard Auth-
18   orities filed concurrently herewith.

19   [7] For the sake of completeness, we note that the Seventh Circuit case cited by KSBE may be read
20   to recognize the narrow right of a *personal injury victim* not to be ousted from his chosen forum by
     means of a declaratory judgment action. *See Cunningham Bros., Inc. v. Bail*, 407 F.2d 1165, 1168-
     69 (7th Cir.) ("Although our holding may require the [federal] plaintiff here to litigate a number of
21   lawsuits with the injured parties, we feel that this result does not outweigh the right of a *personal
     injury plaintiff* to choose the forum and the time, if at all, to assert his claim." (emphasis added)),
22   *cert. denied*, 395 U.S. 959 (1969), *cited in* KSBE Mem. 22-23; *see also Certain Underwriters at
     Lloyd's v. A&D Interests, Inc.*, 197 F. Supp. 2d 741, 750 (S.D. Tex. 2002) ("The principal justifi-
23   cation for [the *Cunningham*] rule is that it would be a perversion of the Declaratory Judgment Act
     to compel potential *personal injury plaintiffs* to litigate their claims at a time and in a forum chosen
24   by the apparent tortfeasor." (emphasis added)).

25   This narrow right does not help KSBE, which is not a personal injury victim. Furthermore,
     given the *Maryland Casualty* and *Mitsui Sumitomo* cases discussed in the text, the right recognized
26   by the Seventh Circuit certainly has not been afforded any broader recognition in either the Ninth
     Circuit or this Court. *See also, e.g., Dow Agrosciences LLC v. Bates*, 332 F.3d 323, 328 (5th Cir.
27   2003) (*Cunningham* "emphasized repeatedly that the underlying action was one of personal injury.
     Because the scope of *Cunningham* appears limited to personal injury actions, and is not a ruling of
28   this Circuit, we find it to be of little persuasion."), *rev'd on other grounds*, 544 U.S. 431 (2005).

Plaintiff and Counter-Defendant Eric Grant's Opposition to KSBE Defendants' Motion to Dismiss

to file their declaratory relief claims in this Court in anticipation" that KSBE would "file a Hawaii state court lawsuit," *id.* at 24:7-9. KSBE's characterization of Grant's action is wholly lacking in factual foundation.

As set forth above, the disclosures that supply the basis for KSBE's putative claims against Grant were made on February 7, 2008 and reported in the press the following day. Grant did not "rush" to file this action following those events; instead, he waited until March 28, 2008, or more than *seven weeks*. In any event, nearly seven *months* later, KSBE still has not sued Grant in any court. In this situation, *Maryland Casualty* makes clear that any exercise of discretion to decline jurisdiction is "unnecessary, if not inappropriate." 96 F.3d at 1289. As in *Maryland Casualty*, the "federal action here is neither 'reactive' to, nor duplicative of, any parallel state proceeding" given that "[t]here was no state action pending in state court when [Grant] filed this action." *Id.* Moreover, even were KSBE later to sue Grant (or were Grant to be drawn into KSBE's pending action against the Does), nothing would change: the Ninth Circuit has repeatedly held that the "propriety of the district court's exercise of jurisdiction is judged *as of the time of filing*." *Id.* n.5 (emphasis added) (citing *Employers Reinsurance Corp. v. Karussos*, 65 F.3d 796, 800 (9th Cir. 1995); *American National Fire Insurance Co. v. Hungerford*, 53 F.3d 1012, 1016 (9th Cir. 1995)).

As before, *Mitsui Sumitomo* is also very much on point. In that case, the federal defendant argued that the federal declaratory judgment action fell "within the type of 'reactive' litigation that the Ninth Circuit has cautioned exercising jurisdiction over." Slip op. 13:21-23. While acknowledging the general policy against "reactive declaratory actions," this Court nevertheless held that "the pendency of a state court action does not require a district court to dismiss a declaratory relief action that was filed before the state court action," as is the case here. *Id.* at 14:6-9. Indeed, this Court found that "[w]hile there was a clear dispute between the parties and [plaintiff] Mitsui had a reasonable apprehension of litigation, there was no indication that [defendant] Delicato would be filing a non-removable state court action immediately." *Id.* at 15:1-4. This was true even though the state-court action was filed less than three weeks after the federal one. *See id.* at 5:26-28. In the present case, of course, KSBE has *never* filed a state-court action against Grant.

///

ERIC GRANT, ATTORNEY AT LAW
8001 Folsom Boulevard, Suite 100
Sacramento, California 95826
Telephone: (916) 388-0833

Eric Grant, Attorney at Law
8001 Folsom Boulevard, Suite 100
Sacramento, California 95826
Telephone: (916) 388-0833

This last point highlights the fundamental flaw in KSBE's argument. As demonstrated in in Grant's pending motion for summary judgment, *see* Grant MSJ 3-7, this is hardly a case where Grant "rushed to file" in order to "pre-empt" KSBE's choice of forum to resolve their dispute. It is rather a case where KSBE has refused to initiate litigation that would resolve the dispute. KSBE prefers instead to threaten Grant with literally *millions* of dollars in potential liability while cagily refusing to give Grant a judicial forum to dispose of that serious threat. The Ninth Circuit has long recognized that a federal declaratory judgment action is precisely tailored to these circumstances: "The Declaratory Judgment Act was designed to relieve potential defendants from the Damoclean threat of impending litigation which a harassing adversary might brandish, while initiating suit at his leisure or never." *Societe de Conditionnement en Aluminum v. Hunter Engineering Co., Inc.*, 655 F.2d 938, 943 (9th Cir. 1981) (*SCAL*), *quoted in Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1556 (9th Cir. 1990), *quoted in Spokane Indian Tribe v. United States*, 972 F.2d 1090, 1091 (9th Cir. 1992); *accord, e.g., Sony Electronics, Inc. v. Guardian Media Technologies, Ltd.*, 497 F.3d 1271, 1284 (Fed. Cir. 2007) (acknowledging that "the Declaratory Judgment Act was intended to fix the problem that arises when the other side does not sue"); William W. Schwarzer, et al., *Rutter Group Practice Guide: Federal Civil Procedure Before Trial* ¶ 10.5 (9th Circuit ed. 2008) (same, citing both *Hal Roach Studios* and *Sony Electronics*), *cited in* KSBE Mem. 24:1-6.[8]

## C. The Existence of KSBE's Later-Filed Action in Hawaii Circuit Court Does Not Support Abstention.

In its supplemental memorandum in support of its motion to dismiss, KSBE contends that its "filing of a state lawsuit"—more than four months after the present action was filed—dealing with the same subject matter as this action provides another reason for this Court to exercise its discretion to decline to hear this declaratory relief action." KSBE Supp. Mem. 1:9-10 (doc. 80, filed Aug. 29. 2008). As set out below, this contention has no merit.

The Ninth Circuit authoritatively summarized the governing principles a decade ago:

---

[8] A copy of the quoted treatise is reproduced as Exhibit 2 to the Appendix of Non-Standard Authorities filed concurrently herewith.

Plaintiff and Counter-Defendant Eric Grant's Opposition to KSBE Defendants' Motion to Dismiss

The *Brillhart* factors remain the philosophic touchstone for the district court. The district court should avoid needless determination of state law issues; it should discourage litigants from filing declaratory actions as a means of forum shopping; and it should avoid duplicative litigation. If there are parallel state proceedings involving the same issues and parties pending at the time the federal declaratory action is filed, there is a presumption that the entire suit should be heard in state court. The pendency of a state court action does not, of itself, require a district court to refuse federal declaratory relief. Nonetheless, federal courts should generally decline to entertain reactive declaratory actions.

*GEICO v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998) (en banc); *see also, e.g., Mitsui Sumitomo*, slip op. at 12:7-23. We join KSBE in addressing these points in order.

*First*, although it is not surprising that state-law issues predominate in an action based on diversity jurisdiction, that bare fact is of marginal significance. Instead, as this Court recognized in *Mitsui Sumitomo*, it is far more important that "the instant dispute does not require this court to decide novel questions of state law." Slip op. at 13:6-7. *Mitsui* involved a dispute over the interpretation of an insurance policy, and this Court concluded that although the dispute "was governed by state law, the principles of contract interpretation are well settled, and this court is an appropriate forum to adjudicate this matter." *Id.* at 13:9-11 (citing *Dizol*, 133 F.3d at 1225). Similarly, as is evident from Grant's pending motion for summary judgment, his dispute with KSBE is governed by well-settled (indeed, garden-variety) principles of contract and tort law. *See* Grant MSJ 7-14. Accordingly, this Court is likewise an "appropriate forum to adjudicate this matter." In any event, this Court's determination of the state-law issues raised by Grant's dispute with KSBE would not be "needless." Because Grant is not a party to KSBE's action in Hawaii Circuit Court, that court will have no occasion to determine such issues, making it *necessary* for this Court to do so.[9]

*Second*, KSBE asserts that Grant "filed this preemptive declaratory relief action as a means of forum shopping." KSBE Supp. Mem. 3:18-19. In fact, this is not a case of forum shopping. As exhaustively catalogued in Part II above (pp. 8-18), the Grant-KSBE dispute has a demonstrable "connection to this district." *Id.* at 3:23. Furthermore, as explained in the immediately preceding

---

[9] To be sure, KSBE speculates that "[i]t is likely that the *Does* as defendants in the Hawaii Circuit Court action will assert a third-party claim against Grant for indemnity." KSBE Supp. Mem. 5 n.3. This speculation ignores not only the record to date—the Does have not asserted such a claim in the more than *ten weeks* since they were sued by KSBE—but also the forum selection clause in the Grant-Doe settlement agreement, which requires their dispute to be adjudicated in *this Court*. We discuss that clause in our currently filed opposition to KSBE's motion to transfer.

ERIC GRANT, ATTORNEY AT LAW
8001 Folsom Boulevard, Suite 100
Sacramento, California 95826
Telephone: (916) 388-0833

section (pp. 20-22), there was no "race to the courthouse," and this action is not a "reactive" one. *Id.* at 4:1, 4:10. Quite the contrary: given KSBE's cagey refusal to put up or shut up with respect to its putative claims against Grant, this Court is presently the *only* forum for resolving the dispute between those parties.

*Third*, KSBE asserts that if "this action is not stayed or dismissed, this Court and the Hawaii Circuit Court will simultaneously be asked to resolve exactly the same factual and legal issues arising from the breach of the Settlement Agreement, including [1] whether Goemans was one of the Does' 'counsel' for purposes of that agreement and [2] who (between and among the Does, Goemans, and Grant) bears financial responsibility for the breach." *Id.* at 4:19-23. This assertion lacks any rational basis. As for the first of the two identified issues, it need not be resolved by this Court: as shown by Grant's pending motion for summary judgment, his dispute with KSBE (and with the Does for that matter) can be resolved in its entirety without the need to address Goemans' status vel non as the Does' counsel. *See* Grant MSJ 7-14.[10] As for the second issue identified by KSBE, the Hawaii Circuit Court cannot resolve whether *Grant* bears any financial responsibility for the alleged breach, because Grant is not a party to that action—and the Does cannot make him a party consistent with the forum selection clause in their settlement agreement with him. In short, the proceedings in Hawaii Circuit are simply not "duplicative" of the present action.

*Fourth*, KSBE errs in contending that "[f]or purposes of *Dizol*, this action and the Hawaii Circuit Court action are parallel." KSBE Supp. Mem. 5:20. *Dizol* ruled thus: "If there are parallel state proceedings involving the same issues and parties pending *at the time the federal declaratory action is filed*, there is a presumption that the entire suit should be heard in state court." 133 F.3d at 1225 (emphasis added). At the time Grant's federal declaratory judgment action was filed, there were *no* state proceedings. *Accord Maryland Casualty*, 96 F.3d at 1289 n.5 ("The propriety of the district court's exercise of jurisdiction is judged as of the time of filing."); *Employers Reinsurance*

---

[10] In the interest of completeness, we note that one of Grant's third-level alternative arguments as to why he is not liable to KSBE for breach of contract depends on the proposition that "Grant *reasonably believed* at the time [the Does were considering KSBE's settlement offer] that Goemans was then acting as the Does' counsel." Grant MSJ 9:6-7 (emphasis added). That is not the issue identified by KSBE, and given his other arguments, Grant does not expect the Court to reach the issue in any event.

ERIC GRANT, ATTORNEY AT LAW
8001 Folsom Boulevard, Suite 100
Sacramento, California 95826
Telephone: (916) 388-0833

1  *Corp.*, 65 F.3d at 800 ("the propriety of the district court's assumption of jurisdiction is judged as

2  of the time of filing"). Therefore, "[f]or purposes of *Dizol*," there is *no* presumption that this dis-

3  pute should be heard in state court. Indeed, this Court has ruled that "the pendency of a state court

4  action does not require a district court to dismiss a declaratory relief action that was filed before

5  the state court action." *Mitsui Sumitomo*, slip op. at 14:7-9; *see also id.* at 14:21-23 (holding that

6  "there is also no requirement that any pending state court action requires dismissal of a first-filed

7  federal action"). In *Mitsui* itself, this Court declined to dismiss a federal declaratory judgment ac-

8  tion filed just three days before the federal defendant sued the federal plaintiff in state court. Here,

9  some seven months after this action was filed, there is still no state proceeding to which Grant is a

10 party. For all these reasons, the mere existence of KSBE's action against the Does in Hawaii Cir-

11 cuit Court does not support abstention.

12     KSBE has given the Court no good reason to decline to entertain Grant's declaratory judg-

13 ment claim. To the contrary, the "Damoclean sword" that KSBE is brandishing over Grant like a

14 "harassing adversary"—the very kind of threat that the Declaratory Judgment Act was "designed

15 to relieve"—gives the Court a very good reason to exercise jurisdiction and proceed to the merits.

16 *SCAL*, 655 F.2d at 943.

17 **CONCLUSION**

18     According to KSBE, "this is a Hawaii case." *Id.* at 22:5. Not so. The Underlying Litiga-

19 tion was a Hawaii case, or at least it began that way. But KSBE created a California case when it

20 voluntarily came to this state to impose on a resident lawyer continuing contractual obligations that

21 it maliciously charges he has breached.

22     For the foregoing reasons, KSBE's motion to dismiss should be denied.

23     Dated: October 17, 2008.

24                                 Respectfully submitted,

25                                 /s/ Eric Grant
                                ERIC GRANT

26

27                                 Counsel for Plaintiff and
                                Counter-Defendant ERIC GRANT

28

Plaintiff and Counter-Defendant Eric Grant's Opposition to KSBE Defendants' Motion to Dismiss