ALSTON HUNT FLOYD & ING
PAUL ALSTON (Admitted Pro Hac Vice)
CLYDE J. WADSWORTH (SBN 118928)
palston@ahfi.com
cwadsworth@ahfi.com
American Savings Bank Tower
1001 Bishop Street, 18th Floor
Honolulu, HI 96813
Telephone: (808) 524-1800
Facsimile: (808) 524-4591

BINGHAM McCUTCHEN LLP
CHARLENE S. SHIMADA (SBN 91407)
JOHN D. PERNICK (SBN 155468)
ROBERT BRUNDAGE (SBN 159890)
charlene.shimada@bingham.com
john.pernick@bingham.com
robert.brundage@bingham.com
Three Embarcadero Center
San Francisco, CA 94111-4067
Telephone: (415) 393-2000
Facsimile: (415) 393-2286

Attorneys for Defendants and Cross-claim Defendants
KAMEHAMEHA SCHOOLS/BERNICE PAUAHI
BISHOP ESTATE; J. DOUGLAS ING, NAINOA
THOMPSON, DIANE J. PLOTTS, ROBERT K.U. KIHUNE,
and CORBETT A.K. KALAMA, in their capacities
as Trustees of the Kamehameha Schools/Bernice Pauahi Bishop Estate

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC GRANT,<br><br>Plaintiff,<br><br>v.<br><br>KAMEHAMEHA SCHOOLS/BERNICE PAUAHI BISHOP ESTATE; et al.,<br><br>Defendants.<br><br>And Related Cross and Counterclaims. | CASE NO. 2:08-cv-00672-FCD-KJM<br><br>KAMEHAMEHA SCHOOLS DEFENDANTS AND CROSS-CLAIM DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER TO DISTRICT OF HAWAI'I PURSUANT TO 28 U.S.C. § 1404; DECLARATION OF PAUL ALSTON; EXHIBITS 1 AND 2<br><br>Date: October 31, 2008<br>Time: 10:00 a.m.<br>Courtroom: 2<br>Before: Hon. Frank C. Damrell, Jr. |

692628 / 8348-4

## I. INTRODUCTION

In opposing the Motion to Transfer to District of Hawai`i Pursuant to 28 U.S.C. § 1404 filed by Defendants and Cross-Defendants KAMEHAMEHA SCHOOLS/BERNICE PAUAHI BISHOP ESTATE; J. DOUGLAS ING, NAINOA THOMPSON, DIANE J. PLOTTS, ROBERT K.U. KIHUNE, and CORBETT A.K KALAMA, in their capacities as Trustees of the Kamehameha Schools/Bernice Pauahi Bishop Estate (collectively "KS"), Plaintiff Grant and the Does seize upon trivial and fortuitous connections between the underlying *Doe* litigation and California and distort the relevant evidence to argue that venue is appropriate in this Court. They are wrong. If this case is not dismissed on jurisdictional grounds, it should be transferred to Hawai`i.

This case arose from a dispute between two sets of parties in *Hawai`i* (Jane Doe and John Doe on the one hand and KS on the other) that arose solely as a result of breach of a confidential agreement, approved in *Hawai`i,* that settled an action initiated in a *Hawai`i* court (the "Settlement Agreement"). The injury occurred in *Hawai`i* following publication of the confidential settlement amount in the *Hawai`i* media. Despite all this, Grant, who is merely one of the Does' former attorneys, is trying to make this dispute all about him – going so far as to file a reactive declaratory judgment action in a forum that may be convenient for him, but has no connection whatsoever to any other party or witness.

Because Hawai`i is the "center of gravity" of this dispute, the most critical witnesses and evidence will naturally be located in Hawai`i and the court hearing this case will apply predominantly (if not entirely) Hawai`i law. Indeed, the only factor that weighs in favor of maintaining venue in this district is the fact that Grant – as the Does' indemnitor – chose to preempt a lawsuit by KS against the Does by filing in his home town. But, given this district's lack of connection to the dispute, Grant's decision is entitled to little if any weight. And even less weight should be given to the forum selection provision in the settlement agreement between Grant and the Does to which KS is not a party. When the factors articulated by the Ninth Circuit in *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) are properly applied, it is clear that transfer pursuant to 28 U.S.C. § 1404 is appropriate for the convenience of the parties and witnesses and in the interests of justice.

## II. ARGUMENT

### A. A Trial in Hawai`i Would Be More Convenient for Most Witnesses.

All parties agree that the convenience of witnesses (including party witnesses) is the most important factor in a transfer of venue analysis. But while Grant and the Does purport to weigh the location of the various witnesses, they place a heavy thumb on the scale – discounting both (1) the existence of non-party witnesses in Hawai`i who cannot be forced to travel to California; and (2) the inconvenience to party-related Hawai`i witnesses who would likely voluntarily travel to this district for trial while at the same time ignoring the likelihood that the handful of potential California witnesses (like Grant himself) would likewise voluntarily travel (or be made to travel) to Hawai`i. The willingness of certain Hawai`i witnesses to travel to this district does not make such travel any less inconvenient for them.

Likewise, the fact that the Does would – for their own reasons – prefer to litigate away from their residence in Hawai`i should be discounted. Convenience is determined simply by reference to the witnesses' or the parties' residences, not their idiosyncratic preferences as to forum. *See U.S. Fidelity and Guarantee Co. v. Republic Drug Co., Inc.*, 800 F. Supp. 1076, 1080 (E.D.N.Y. 1992) ("The logical starting point [for a venue transfer analysis] is a consideration of the residence of the parties."); *Morales v. Naveiras de Puerto Rico*, 713 F. Supp. 711, 713 (S.D.N.Y. 1989) ("Because plaintiff is a resident of Puerto Rico he does not, nor can he, seriously argue that New York is a more convenient forum than Puerto Rico ….").

Furthermore, Grant and the Does ignore or unfairly minimize the relevance of the evidence possessed by Hawai`i witnesses.[1] KS's trustees and attorneys will testify as to: (1) the reasons for entering into the Settlement Agreement generally and the confidentiality provision specifically; (2) their expectations as to the operation of that confidentiality provision; (3) representations made by the Does

---

[1] Grant goes so far as to argue that the convenience of witnesses is irrelevant because he has filed a motion for summary judgment. He offers no authority, however, that would authorize this Court to disregard the *Jones* factors based on the possibility that a dispositive motion may obviate the need for a trial. And, he ignores the fact that his filing was made in direct disregard of an agreement reflected in the parties Joint Planning Statement, filed on May 14, 2008, in which the parties advised the Court that they all agreed on phased discovery and dispositive motions, with jurisdiction and venue to be determined first.

(through counsel) about the Settlement Agreement; (4) the materiality of the confidentiality provision; and/or (5) the damage KS suffered due to the breach of the confidentiality provision. KS's employees and other third parties will also testify regarding the damage to KS resulting from the illicit disclosure. Grant argues that it is KS's former attorneys who will testify as to the meaning of the confidentiality provision. But those attorneys were merely acting as agents for KS, conveying information to KS, and implementing KS's instructions. Testimony from KS (though its trustees and employees) is highly relevant to the interpretation of the confidentiality provision and its importance to KS.

Testimony from the Hawai`i reporters to whom Goemans made his disclosure is also relevant: although there is documentary evidence regarding Goemans' statements, there is no reason to believe that the portions of Goemans' statements reported in the press were the entirety of his communications with the reporters. Finally, witnesses to any alleged threats made against the Does as well as those otherwise knowledgeable about the likelihood (or improbability) of harm to the Does if their identities are disclosed must testify regarding the Does' request in their Cross Claim for permanent injunctive relief. Anonymous Internet comments are, by themselves, far from enough to support a permanent injunction protecting the Does' identities. *See, e.g., Doe v. Pleasant Valley School District*, 2007 WL 2234514 (M.D. Pa. 2007) (anonymous "threat" made on an Internet blog was insufficient evidence to support allowing plaintiff to proceed under a pseudonym). And, if there is any reason to enforce—or not enforce—the stipulation for anonymity in the original Hawai`i action, it is ***that court***, not this one, which should make that decision.

There is only one genuine potential witness who resides in this district: Grant.[2] Since he: (1) has a nationwide litigation practice that entails frequent travel (including to Hawai`i); and (2) is involved in this matter because he chose to serve as counsel in a Hawai`i lawsuit between Hawai`i parties, any

---

[2] The Does claim that the California lawyers for Grant (Mr. Banks), Goemans (Robert Esensten, of Los Angeles), and the Does (Mr. Stein) are also witnesses as to the dispute between them. But the Does do not explain why the attorneys for these parties – rather than the parties themselves – are needed to testify about this dispute and the lawyers are, at most, peripheral witnesses.

Obviously, Goemans is also likely to be a witness, but it is apparently now known that he is not in this district. On October 23, 2008, he and Ken Kuniyuki, one of the Does' counsel, placed a joint call to Paul Alston, counsel for KS. In that call, Mr. Goemans said he has been in a hospital in Los Angeles for the last month. Declaration of Paul Alston, attached. However, Mr. Goemans has not terminated his ties to Hawai`i; he remains an active member of the Hawai`i bar. *Id.*

inconvenience to him is minimal and should be disregarded. This is especially true in light of the fact that Grant is now counsel in a new challenge to KS's admissions preference policies, and he was in Hawai`i for a hearing in that case just this week.[3] Compared to the inconvenience to KS of having its trustees, attorneys, and employees travel to California for trial as well as the inconvenience to or unavailability of, third party witnesses, there is nothing close to a "tie" that should be awarded to Grant as plaintiff.[4]

### B. There Are Almost No Connections Between This District and the Dispute Giving Rise to this Declaratory Judgment Action.

The Does' lengthy catalog of the connections between this dispute and the entire State of California is largely irrelevant. First, this is fundamentally the wrong inquiry: this dispute's connection with Hawai`i must be measured against its connections with the Eastern District of California, not the entire state. *See Jones*, 211 F.3d at 498 (court should consider "the contacts relating to the plaintiff's cause of action in the chosen *forum*") (emphasis added).

Furthermore, the connections identified by the Does are trivial and fortuitous and should be disregarded for purposes of venue. In *Central Valley Typographical Union No. 46 v. McClatchy Newspapers*, 762 F.2d 741, 745 (9th Cir. 1985) ("*Central Valley*"), *abrogated on other grounds by Cortez Byrd Chips, Inc. v. Bill Harbert Construction Co.*, 529 U.S. 193 (2000), the Ninth Circuit rejected reliance on such fortuitous contacts to determine venue for purposes of the Federal Arbitration Act:

---

[3] Declaration of Paul Alston, attached. KS would certainly be willing to coordinate discovery and hearing schedules to minimize the number of trips Grant would have to make to Hawai`i. *Id.*

[4] Grant complains that KS has not submitted declarations or affidavits specifying the witnesses to be called and the substance of their expected testimony. This is not a universal requirement. *See, e.g., G. Angel, Ltd. v. Camper & Nicholsons USA, Inc.*, 2008 WL 351660 at * 4 (S.D.N.Y. 2008) ("A party moving for transfer of venue for the convenience of witnesses is not required to submit an affidavit from each witness."). In its motion, KS specified the witnesses located in Hawai`i and the general subjects of their testimony, supported by citations to Grant's Complaint and a Request for Judicial Notice. This is sufficient. *See Production Group International, Inc. v. Goldman*, 337 F. Supp. 2d 788, 799 (E.D. Va. 2004) ("[D]efendant has the burden to proffer, by affidavit or *otherwise*, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of evidence and the degree of inconvenience.") (Emphasis added.) With the possible exception of Goemans, there is no dispute about where any witnesses reside or the general subjects of their testimony and requiring declarations regarding such undisputed matters simply compounds the cost of this litigation unnecessarily.

4

> The residence of the arbitrator, or the location at which he drafts the decision, or the place from which the decision is mailed cannot be determinative of venue. If they were, venue would be subject to fortuitous events that would eliminate all predictability for litigants.... If an arbitrator from New York had been chosen to hold the proceeding in Sacramento, and then had written his decision while on vacation in Hawaii and posted it from his home in New York, the [proposed] test would leave us at a loss to determine the proper venue.

As just one example, the fact that one of the attorneys to the negotiations of the Settlement Agreement was located in this district is insignificant. The location of the parties – not their attorneys – is what counts. *See Crow Construction Co. v. Jeffrey M. Brown Associates, Inc.*, 2001 WL 1006721 (S.D.N.Y. 2001) ("A party's hiring of counsel from a particular district, or the location of that counsel when he or she sends or receives a given communication, is purely fortuitous" and not entitled to any weight for purposes of venue). The ministerial acts that effected the settlement between the Hawai`i parties – the approval as to form by attorneys, the execution of the stipulation of dismissal, and the receipt of the payments—are even less significant. None of those events has any relevance to this case. *See Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003) (venue was not proper in Alabama even though one party to the contract at issue signed there: "[o]nly the events that directly give rise to a claim are relevant" for purposes of venue); *Woodke v. Dahm*, 70 F.3d 983, 985-86 (8th Cir. 1995) (fact that trailers that allegedly violated Lanham Act were manufactured in forum state was insufficient to support venue: "It is true that manufacturing the trailers was a necessary event, in a causal sense, to an attempt to pass them off, but we do not think that it is an event giving rise to Mr. Woodke's claim because it was not itself wrongful.").

In contrast to the connections emphasized by the Does which have nothing whatsoever to do with the breach and the resulting damages, the connections between this dispute and Hawai`i are deep and pervasive. The Settlement Agreement settled a lawsuit between Hawai`i residents filed in a Hawai`i court. The substance of the Settlement Agreement was agreed to by residents of Hawai`i. The settlement payment was made by the Hawai`i defendants to the Hawai`i plaintiffs. The breach of the confidentiality provision occurred through disclosure to Hawai`i reporters, which resulted in the publication of the settlement amount in Hawai`i. And any breach of the confidentiality provision of the Settlement Agreement – either by KS or the Does – would most certainly cause injury felt almost

exclusively in Hawai`i. The fact that one of the Hawai`i parties chose to be represented in a Hawai`i lawsuit by counsel who lives in this district (the *one* fact from which *all* the other alleged connections to this district flow) cannot outweigh these connections.

For similar reasons, the Settlement Agreement was not "negotiated and executed" in this district for purpose of the first *Jones* factor. The parties – located in Hawai`i – negotiated and executed the Settlement Agreement. The fact that the Does' intermediary – Grant – happened to be located in this district is, as the Ninth Circuit stated in *Central Valley*, purely fortuitous.

### C. Mr. Grant's Choice of Forum is Entitled to Little Weight Given the Lack of Connections Between This Lawsuit and This Forum.

Although generally "the defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum," *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986), that rule has less force where (as here, for the reasons explained above) there is little or no connection between the plaintiff's chosen forum and the dispute. *See Selah v. Titan Corp.*, 361 F. Supp. 2d 1152, 1157 (S.D. Cal. 2005) ("[N]umerous courts have given less deference to the plaintiff's choice of forum where the action has little connection with the chosen forum."). District courts in the Ninth Circuit have found that the plaintiff's choice of venue can be outweighed by the other *Jones* factors, even where the plaintiff resides in his or her chosen forum. *See, e.g.,Farmer v. Ford Motor Co.*, 2007 US Dist. LEXIS 90289 at *7 (N.D. Cal. Nov. 28, 2007) ("where the transactions giving rise to the action lack a significant connection to the plaintiff's chosen forum, the plaintiff's choice of forum is given considerably less weight, even if the plaintiff is a resident of the forum"); *Joe Boxer Corp. v. R. Siskind & Co.*, 1999 U.S. Dist. LEXIS 9622 at *25-26 (N.D. Cal. June 1, 1999) (same). And, although this Court in *Young v. Coastal Island Charters*, No. CIV. S-05-1639 FCD GGH (E.D. Cal. Dec. 12, 2005) (attached as Exhibit "2" to Grant's Appendix of Non-Standard Authorities) found that the plaintiffs' residence in this district was a factor in favor of retaining venue, this Court also considered the fact that the defendants regularly solicited business in this district and carefully scrutinized the other *Jones* factors, including the convenience of witnesses. The fact that Grant resides in this district is entitled to some weight, but it is far from dispositive and it is clearly outweighed by the other factors supporting a change in venue.

6
KAMEHAMEHA SCHOOLS DEFENDANTS AND CROSS-CLAIM DEFENDANTS' REPLY MEMORANDUM IN
SUPPORT OF MOTION TO TRANSFER TO DISTRICT OF HAWAI`I PURSUANT TO 28 U.S.C. § 1404
Case No. 2:08-cv-00672-FCD-KJM

**D. Hawai`i Law Will Predominate In This Action.**

The Does concede that Hawai`i law will govern the key issue in dispute – the interpretation of the Settlement Agreement. Nevertheless, they argue that this factor is a "tie" because California law will govern interpretation of a separate settlement and indemnity agreement between the Does and Grant. The Settlement Agreement is much more significant than the Does / Grant agreement—which is irrelevant to the alleged dispute (and the resulting claim) between Grant and KS. The Does' claims against Grant are only derivative claims for indemnity. The outcome of those claims will largely depend on a prior finding that the Settlement Agreement was breached in a manner that triggers Grant's obligations.[5]

Grant, on the other hand, claims that California law may somehow apply to the Settlement Agreement, even though the parties to that agreement were both in Hawai`i and the agreement settled a Hawai`i lawsuit. This is incorrect as a matter of California law. Pursuant to California Civil Code § 1646, issues of contractual interpretation are governed "according to the law and usage of the place

---

[5] Customarily, an insurer/indemnitor is not permitted to force its indemnitee/insured into a lawsuit regarding its indemnity obligations until *after* the underlying dispute has been resolved. The reasons are simple: (1) the duty to defend is triggered – even for indemnitors who are not, strictly speaking, insurers by *any possibility* of indemnity, *Crawford v. Weather Shield Mfg. Inc.*, 187 P.3d 424, 434 (Cal. 2008); and (2) the indemnitee is not obligated to participate – undefended – in a three-way battle with its indemnitor and the claimant. *See Allstate Ins. Co. v. Harris*, 445 F. Supp. 847, 851 (N.D. Cal. 1978) ("the insured could not possibly have anticipated that the very resources for which he bargained would be turned against him"). And courts will not force the indemnitee to choose between (1) proving its right to indemnification and defense and (2) proving it has no liability (and, thus, foregoing the benefits of its pact with the indemnitor). *State Farm Fire and Casualty Co. v. Finney*, 770 P.2d 460, 466 (Kan. 1989) ("the insured may be prejudiced by being forced into claiming the acts were *merely* negligent to insure coverage"). Placing the indemnitee in that difficult situation is contrary to the indemnitee's expectations and the indemnitor's duties. *Hartford Ins. Group v. District Court for Fourth Judicial District*, 625 P.2d 1013, 1017 (Colo. 1981). For these reasons, the dispute over the scope of the defense and indemnity obligations is usually stayed. *See Montrose Chemical Corp. v. Superior Court*, 861 P.2d 1153, 1162 (Cal. 1993) ("[A] stay of the declaratory relief action pending resolution of the third party suit is appropriate when the coverage question turns on facts to be litigated in the underlying action.") Only in that way is it possible to avoid the unfairness inherent in forcing the Does simultaneously to (1) fight to establish their rights as an indemnitee (here, by proving the alleged breach was caused by Grant, as required under Paragraph 5 of their agreement, Exhibit 23 to the Declaration of Paul Alston, filed July 14, 2008 under seal), and (2) to defend against KS's allegations that the confidentiality provision was breached.
 Here, the lack of adversity between the Does and Grant is demonstrated by the Does' willingness to litigate what *superficially* appears to be a three way battle with both Grant and KS. In fact they have a common goal, which is to establish that Goemans alone is to blame and no one else is responsible for his wrongful disclosures.

where it is to be performed; or if it does not indicate a place of performance, according to the law and usage of the place where it is made."

Hawai`i supplies the governing law under either standard. First, the Settlement Agreement was intended to be performed almost entirely in Hawai`i. The settlement payment was made from Hawai`i defendants to Hawai`i plaintiffs. And the vast majority of the individuals subject to the Settlement Agreement's confidentiality provision (the Does and KS, its trustees, and employees) are located in Hawai`i. These circumstances clearly indicate that the parties intended Hawai`i to be the place of performance for the Settlement Agreement. *See Frontier Oil Corp. v. RLI Insurance Co.*, 63 Cal. Rptr. 3d 816, 827 (Cal. App. Ct. 2007) ("[A] contract 'indicates' a place of performance within the meaning of §1646 if the intended place of performance can be gleaned from the nature of the contract and its surrounding circumstances.") Second, the Settlement Agreement was "made" in Hawai`i. The parties to the agreement were both located in Hawai`i (albeit they happened to act through California counsel). The Settlement Agreement became effective when it was executed by the Does (in Hawai`i) and the KS Trustees (three of whom were in Hawai`i). *See Ury v. Jewelers Acceptance Corp.*, 38 Cal. Rptr. 376, 379 (Cal. App. Ct. 1964) (the place of acceptance is regarded as the place the contract was made). Hawai`i law will govern the key issues in dispute and the Hawai`i District Court's familiarity with that law weighs in favor of transfer.

### E. Neither the Forum Selection Provision in the Grant / Does Agreement nor California's Public Policy is Entitled to Any Weight.

Both Grant and the Does rely on a forum selection provision in the agreement between them. KS is not a party to that agreement and it is therefore irrelevant to KS's motion to transfer. Neither Grant nor the Does have cited any authority enforcing such a provision against a non-party or even considering such a provision where a non-party requests transfer. If Grant and the Does are insistent that their dispute be resolved in this district pursuant to the forum selection clause, they can request severance of their claim prior to transfer. *See White v. ABCO Engineering Corp.*, 199 F.3d 140, 144-45 (3rd Cir. 1999) (Section 1404 authorizes a court to sever claim against some defendants and transfer the severed claims, even without a formal severance order pursuant to F.R.C.P Rule 21). Furthermore, the

indemnity dispute between Grant and the Does should be decided only after the underlying issue of breach of the Settlement Agreement for the reasons explained in footnote 4, *supra.*

Equally insignificant is California's wholly imaginary public policy interest in this dispute. Although Grant claims that California has an interest in protecting him from injury, he has not raised any claims against KS other than for declaratory relief and it is, in any event, uncertain why California cares about liability arising out of Grant's work as *pro hac vice* counsel in a Hawai`i lawsuit for Hawai`i clients. By contrast, Hawai`i has a substantial public policy interest in: (1) enforcing settlement agreements between Hawai`i residents; and (2) regulating the conduct of out-of-state attorneys who choose to represent Hawai`i residents in Hawai`i litigation. Furthermore, neither Grant nor the Does dispute the Hawai`i public's great interest in this dispute and the consequent policy favoring local adjudication of matters of broad public interest. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947) ("In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only.").

### F. Transfer Is Warranted Precisely Because Venue is Not Proper Under 28 U.S.C. § 1391.

Finally, Grant argues that KS has "effectively admitted" that "a substantial part of the events or omissions giving rise to the claims occurred in this district" within the meaning of 28 U.S.C. § 1391(a) by not moving for dismissal pursuant to F.R.C.P. Rule 12(b)(3). KS has made no such admission. Although KS has not moved to dismiss (as opposed to transfer) this action for improper venue, venue in fact is not proper under Section 1391(a) and that provides an additional reason to transfer venue to the District of Hawai`i, where venue would unquestionably be proper. The concerns underlying §1391(a) and §1404 are closely related. *See In Re Volkswagen of America, Inc.*, __ F.3d __, 2008 WL 4531718 (5th Cir. 2008) ("The underlying premise of 1404(a) is that courts should prevent plaintiffs from abusing their privilege under § 1391 …."); *Joseph v. Liberty Nat. Life Ins. Co.*, 2008 WL 2026006 *1-2 (S.D. Fla. 2008) (analyzing in Section 1404 transfer motion Section 1391 standard of "where a substantial party of the events giving rise to the named Plaintiffs' cause of action occurred"). A case that fails to meet even the liberal requirements for venue under 1391(a) – like this one – is *a fortiori* one that should be transferred to a district where venue would lie under Section 1391(a).

Since this action is based on diversity jurisdiction, venue is only proper in: (1) "a judicial district where any defendant resides, if all defendants reside in the same state" or (2) "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." A "corporation" resides in "any judicial district in which it is subject to jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). Even assuming this rule applies to a trust such as KS, KS is not subject to personal jurisdiction in California as a whole, much less this specific district,[6] as argued in KS's Motion to Dismiss for Lack of Personal Jurisdiction. Indeed, KS's contacts with this district are even fewer, more fortuitous, and less purposeful than its contacts with California as a whole. Although KS's attorney, Kathleen Sullivan, was in California when she participated in the negotiation and signing of the Settlement Agreement, she was not in this district.

Furthermore, "a substantial part of the events or omissions giving rise to the claim" did not occur in this district. Grant's claim is based on an alleged breach of the Settlement Agreement. As argued above, that agreement was made in Hawai`i and intended to be performed in Hawai`i. Thus, the acts or omissions giving rise to the claim arose in Hawai`i and venue is not proper in this district. *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 842 (9th Cir. 1986) ("venue for a claim based on breach of contract [is] the place of intended performance rather than the place of repudiation"). The fact that some part of the negotiations of that agreement involved someone who – while acting as an agent – was in this district is by itself insufficient to establish venue. *See Bolus v. Morrison Homes, Inc.*, 2008 WL 4452658 at * 4 (M.D. Pa. 2008) (contract negotiations which occurred through telephone conversations between a party located in Pennsylvania and a party located in Florida were insufficient to support venue in Pennsylvania).

## III. CONCLUSION

For the foregoing reasons, this action should be transferred to the United States District Court for the District of Hawai`i.

---

[6] For purposes of Section 1391(c), in determining personal jurisdiction, this district must be analyzed as if it were a separate state. ("[S]uch corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State").

| | | |
|---|---|---|
| 1 | DATED: October 24, 2008 | ALSTON HUNT FLOYD & ING |
| 2 | | BINGHAM McCUTCHEN LLP |
| 3 | | |
| 4 | | By: /s/ Paul Alston |
| | | PAUL ALSTON |
| | | LOUISE K. Y. ING |
| 5 | | CLYDE J. WADSWORTH |
| 6 | | Attorneys for Defendants and Cross-claim Defendants KAMEHAMEHA SCHOOLS/BERNICE PAUAHI BISHOP ESTATE; J. DOUGLAS ING, NAINOA THOMPSON, DIANE J. PLOTTS, ROBERT K.U. KIHUNE, and CORBETT A.K. KALAMA, in their capacities as Trustees of the Kamehameha Schools/Bernice Pauahi Bishop Estate |