Alston Hunt Floyd & Ing
PAUL ALSTON (Admitted Pro Hac Vice)
CLYDE J. WADSWORTH (SBN 118928)
palston@ahfi.com
cwadsworth@ahfi.com
18th Floor American Savings Bank Tower
1001 Bishop Street
Honolulu, HI 96813
Telephone: 808.524-1800
Facsimile: 808-524-4591

Bingham McCutchen LLP
CHARLENE S. SHIMADA (SBN 91407)
JOHN D. PERNICK (SBN 155468)
ROBERT BRUNDAGE (SBN 159890)
charlene.shimada@bingham.com
john.pernick@bingham.com
robert.brundage@bingham.com
Three Embarcadero Center
San Francisco, CA 94111-4067
Telephone: 415.393.2000
Facsimile: 415.393.2286

Attorneys for Defendants and Cross-claim
Defendants KAMEHAMEHA SCHOOLS/
BERNICE PAUAHI BISHOP ESTATE;
J. DOUGLAS ING, NAINOA THOMPSON,
DIANE J. PLOTTS, ROBERT K.U. KIHUNE, and
CORBETT A.K. KALAMA, in their capacities as
Trustees of the Estate of Bernice Pauahi Bishop

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC GRANT,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>KAMEHAMEHA SCHOOLS/BERNICE PAUAHI BISHOP ESTATE; J. DOUGLAS ING, NAINOA THOMPSON, DIANE J. PLOTTS, ROBERT K.U. KIHUNE, and CORBETT A.K. KALAMA, in their capacities as Trustees of the Estate of Bernice Pauahi Bishop; JOHN DOE; and JANE DOE,<br><br>　　　　Defendants.<br><br>And Related Counterclaims and Cross-Claims | No. 08-00672 FCD-KJM<br><br>KAMEHAMEHA SCHOOLS DEFENDANTS AND CROSS-CLAIM DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS<br><br>Date:　October 31, 2008<br>Time: 10:00 a.m.<br>Courtroom:　2<br>Before: Hon. Frank C. Damrell, Jr. |

691897 / 8384-4

# I. INTRODUCTION

The trustees of Kamehameha Schools/Estate of Princess Bernice Pauahi Bishop (collectively "KS") submit this Reply in Support of their Motion to Dismiss, filed on July 9, 2008, and in response to: (1) Plaintiff and Counter-Defendant Eric Grant's Opposition to the Motion to Dismiss ("Grant Opp."); and (2) John and Jane Does' Opposition to the Motion to Dismiss ("Does Opp."), both filed on October 17, 2008 (collectively the "Oppositions").

The fifty pages of briefing and declarations offered by Grant and the Does are long on rhetoric but lacking in anything that establishes this Court's jurisdiction over KS and this case. For the reasons stated in KS's Opening Memorandum and further explained below, this Court lacks both subject matter jurisdiction over this case and personal jurisdiction over KS. And, even if jurisdiction otherwise exists, Grant's declaratory relief action represents the kind of opportunistic and reactive forum shopping that is not permitted under the Declaratory Judgment Act. The Court should grant KS's motion and dismiss this action.

# II. ARGUMENT

## A. The Court Lacks Subject Matter Jurisdiction Because There Is Not Complete Diversity

### 1. The Does and Grant Must Be Aligned Together Because They Share an Interest in Defeating KS with Respect to the Principal Purpose of This Litigation

The Oppositions are based on two false premises. First, Grant and the Does argue that the "principal purpose" of this suit, or the "primary and controlling matter in dispute," is a function of *Grant's* subjective purpose or self-interest in filing suit, as gleaned from his own allegations. *See* Grant Opp. at 6; Does Opp. at 5. Second, they argue that Grant's only interest vis-à-vis KS is to establish his own, and not the Does', lack of liability for breach of the Settlement Agreement. Grant Opp. at 6; Does Opp. at 5. Both premises are wrong.

While acknowledging that the Court may look "beyond the pleadings" to determine the principal purpose of this litigation, Grant and the Does ultimately (and improperly) limit this

inquiry by focusing on snippets from Grant's Complaint and his recently—and improperly[1]—filed summary judgment motion. Grant Opp. at 5-6; Does Opp. at 7. In so doing, they completely ignore the anticipatory (and derivative) nature of Grant's declaratory relief action, which is based *not* on any independent claim of Grant, but the indisputably false premise that KS threatened to bring a claim for damages against Grant. Indeed, Grant bases his declaratory relief claim on the purported—but actually non-existent—threat by KS to sue him, "among others," for damages resulting from breaches of the Settlement Agreement for which he, "among others," are allegedly responsible. Grant Complaint ¶ 27.

The falsity of the allegations regarding the alleged threat—and thus the lack of any dispute ripe for resolution through declaratory relief—is proven by the declarations from the only participants in the meeting at which the alleged threat against Grant was made—Ken Kuniyuki and David Schulmeister. Both men have described that meeting in detail and said **nothing** to indicate there was **any** threat of a lawsuit by KS against Grant. *See* Kuniyuki's April 3, 2008 Declaration at ¶¶ 3-4; and Schulmeister's April 10, 2008 Declaration (filed on April 14 as Docket No. 30). Indeed, Schulmeister specifically, and without contradiction, denies any threat was made. *Id.* at ¶9. In short, Grant is trying to manufacture the illusion of a present controversy with KS by mischaracterizing what transpired at that meeting. However, the undisputed evidence shows no threat was ever made and there was no real controversy between KS and

---

[1] In the Parties' May 14, 2008, Joint Status Report (Docket #45), they all agreed:

> "Until the jurisdictional motion is filed and decided, it is premature to address contemplated dispositive motions. . . ." (Paragraph 8)

and

> "There should be a phased discovery and motion process, with limited jurisdictional discovery and motions being pursued. The outcome of the jurisdictional motion will determine the timing and scope of substantive discovery, motions and trial." (Paragraph 12).

Obviously, Mr. Grant's last-minute filing of his summary judgment motion (now postponed to mid-December) was both contrary to the agreement underlying the Joint Status Report and inconsistent with the commitment to phase these proceedings to avoid spending time on motions that would be mooted by jurisdictional motions. Nevertheless, Grant and the Does rely on the motion as if it were indisputable evidence of their hostility. Instead, it is simply a tactical gambit designed to divert attention from their shared interest in denying relief to KS.

1     Grant when this action was filed.

2         Where a declaratory judgment is based on alleged threats of suit, the feared lawsuit must be "immediate and real, rather than merely speculative." *Hyatt International Corp. v. Coco*, 302 F.3d 707, 712 (7th Cir. 2002). When the defendant contests whether an actual controversy exists, a plaintiff must produce actual evidence of the alleged threats: allegations are not enough. *Banterra America, Inc. v. Bestman*n, 907 F. Supp. 4, 7 (D.D.C. 1995) (plaintiff has burden of proving by a preponderance of the evidence that an actual controversy exists). Here, all the evidence (the declarations of the two attorneys involved in the "threat") indicates that there was no threat against Grant. And, tellingly, Grant has offered **nothing** to counter the Kuniyuki and Schulmeister declarations.[2]

        At most, whether a threat against Grant could be implied is ambiguous. But ambiguous "threats" are insufficient to support jurisdiction under the declaratory judgment act. *International Harvester Co. v. Deere & Co.*, 623 F.2d 1207 (7th Cir. 1980) (affirming dismissal of declaratory judgment action where plaintiff based existence of case or controversy in part on statement by defendant that it would allow plaintiff to produce allegedly infringing product for

---

[2] In *Mitsui Sumitomo Ins. Co. v. Delicato Vineyards*, No. CIV. S-06-2891 FCD GGH (E.D. Cal. May 10, 2007), which is included in Grant's Unpublished Authorities, this Court wrote: "In order for there to exist an actual case or controversy under the Declaratory Judgment Act, the plaintiff must assert a real and reasonable apprehension that he will be subject to liability as a result of defendant's actions. Slip op. at 11-12 (citing *Spokane Indian Tribe v. United States*, 972 F.2d 1090 (9th Cir. 1992)). Further, this Court wrote: "A specific threat of imminent litigation is not necessary to show that the declaratory relief plaintiff held a real and reasonable apprehension that he would be subject to liability." Slip op. at 13.

    In that insurance coverage context, the defendant's "continued assertions that its claim was valid and should be immediately paid in full" and that the policy covered the alleged loss was "enough to create a real and reasonable apprehension of litigation." *Id.* Here, in contrast, KS has asserted no claim against Grant (though it has not waived any possible claim pending the outcome of discovery) and no evidence has been offered to substantiate the alleged threat.

    The absence of such corroborating evidence is important because, as this Court wrote in *Mitsui Sumitomo*: "If . . . the motion constitutes a factual attack, 'no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'" Slip op. at 7 (quoting *Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979), quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). And, further: "In fact, '[w]here a jurisdictional issue is separable from the merits of a case,' the court 'may consider the evidence presented with respect to the jurisdictional issue and rule on that issue, resolving factual disputes if necessary.'" Slip op. at 7 (quoting *Thornhill,* 594 F.2d at 733).

    And, most importantly, the Ninth Circuit has held that in deciding challenges to personal jurisdiction, a court cannot "assume the truth of allegations in a pleading that are contradicted by affidavit." *Alexander v. Circus Circus Enter. Inc.,* 972 F.2d 261 (9th Cir.1992).

691897 / 8384-4     3

KAMEHAMEHA SCHOOLS DEFENDANTS AND CROSS-CLAIM DEFENDANTS'
REPLY IN SUPPORT OF MOTION TO DISMISS
CASE NO.08-00672 FCD-KJM

payment of money: "We do not believe this ambiguous statement, without more, will support IH's claim of reasonable apprehension").

Furthermore, the fact that KS sued the Does and not Grant in the pending state court action is additional evidence that there is no real controversy between KS and Grant. In declaratory relief actions, the justiciable controversy must exist not only when the complaint is filed but at all stages of review. *IMPRA, Inc. v. Gore Enterprise Holdings, Inc.*, 787 F.2d 572, 5575 (Fed. Cir. 1986) (plaintiff must prove that jurisdiction "existed at, and has continued since, the time the complaint was filed.").

In a declaratory relief action such as this, the "principal purpose" of the suit cannot be determined in a vacuum by looking only at the plaintiff's subjective characterization. *Indianapolis v. Chase National Bank*, 314 U.S. 63, 69-70 (1941). Rather, "because [the plaintiff's suit was declaratory, we can look to the underlying cause of action and see its principal purpose as [the defendant's] claim" for damages. *Continental Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1523, n.2 (9th Cir. 1987).

Here, Grant allegedly feared that KS would make good on a non-existent threat to file suit against him "and others" for damages caused by breach of the Settlement Agreement, and he attempted to preempt that suit. Grant Complaint ¶ 27.[3] Thus, the principal purpose of the litigation is determined by reference to the purpose of the anticipated *underlying cause of action* he anticipated (*i.e.*, KS's claim for damages), not Grant's reactive pleading. *See Continental Airlines*, 819 F.2d at 1523, n.2. *See also Bou-Matic, LLC v. Ollimac Dairy, Inc.*, 2007 WL 2898675, *3-*5 (E.D. Cal. Sept. 28, 2007) (realigning the parties in a preemptive declaratory relief action based in part on the defendant's state court complaint seeking damages against one of its co-defendants).

Viewed in this context, the principal purpose of this litigation is to determine whether KS

---

[3] In fact, on August 6, 2008, KS filed suit only against the Does in Hawai`i state court for, among other things, breach of the Settlement Agreement. *See* Exhibit 25, attached to KS's Supplemental Memorandum in Support of Motion to Dismiss, filed on Aug. 29, 2008. Under FRE 201, KS requests that the Court take judicial notice of this filing and of the fact that the Court in Hawai`i has refused the Does' request for a stay of those proceedings, as they conceded in their Opposition to this motion (*see* Does' Opp. at 23 n. 11).

has any claim for breach of the Settlement Agreement based on Goemans' wrongful disclosures to the press. A ruling against KS, finding that no actionable breach occurred or that Goemans, who is not before the Court, is solely liable for breach of the Settlement Agreement, would necessarily benefit both the Does and Grant (individually and as the Does' indemnitor). Try as they might, they cannot deny this obvious truth. The Does and Grant must be aligned together because they share a common interest in defeating KS with respect to this principal purpose or primary dispute.[4]

To preserve his forum choice, Grant argues disingenuously (and utterly without any sort of evidentiary basis) that his only interest vis-a-vis KS is to establish that it has no claim "*against him*" (*i.e.,* to the exclusion of any interest in KS's claims against others) for breach of the Settlement Agreement, going so far as to say—quite incredibly—that he is "legally indifferent" to the outcome of the dispute between KS and the Does. Grant Opp. at 6. Aside from failing the smell test, his argument fails as a matter of law, since, as the Does' indemnitor under their 2007 settlement agreement, he would obviously benefit from a finding that no actionable breach of the Settlement Agreement occurred and a finding that Goemans is solely liable for any breach.

Grant and the Does mistakenly rely on the Fifth Circuit's decision in *Zurn Industries, Inc. v. Acton Construction Co.*, 847 F.2d 234, 237 (5th Cir. 1988), which appears never to have been cited by the Ninth Circuit or any district court in this circuit. *See* Grant Opp. at 5, 8; Does Opp. at 6. There, the Fifth Circuit said that the first step in the "jurisdiction determination" was to assess whether (1) realignment was appropriate on the original claim and (2) whether the original claim was more than a "sham simply asserted for federal jurisdiction." In *Zurn,* both tests were met. The plaintiff was adverse to all the other parties, and it pleaded "a *bona fide* claim, as all

---

[4] Contrary to Grant's argument, he and the Does need not have "identical interests" or have taken the same position with respect to the selected issues raised by Grant's premature summary judgment motion, which was tactically filed in an attempt to blunt the force of this motion. *See* Grant Opp. at 7. Realignment is required if the interests of a party named as a defendant coincide with those of the plaintiff in relation to *the primary matter in dispute*, "even if a diversity of interests exists on other issues." *Dolch v. United Cal. Bank*, 702 F.2d 178, 181 (9th Cir. 1983). *See Continental Airlines*, 819 F.2d at 1523. These parties need not have *identical* interests; if they are both antagonistic toward or stand to benefit from a decision against a defendant regarding the primary issue, then realignment is required. *See Dolch*, 702 F.2d at 181; *Bou-Matic, LLC v. Ollimac Dairy, Inc.*, 2007 WL 2898675 at *3.

parties admit, not just asserted to create federal jurisdiction." 847 F.2d at 237. Under these circumstances, the court concluded that the determination of the primary matter in dispute "does not include the cross-claims and counterclaims filed by the defendants." *Zurn Industries*, 847 F.2d at 237. Instead, it was to be determined by the subcontractor's principal purpose in filing suit, *i.e.,* to recover damages from the defendants.

Here, in contrast, there is no agreement regarding whether Grant has any bona fide claim against KS and whether he has presented a sham claim in an effort to establish federal jurisdiction over KS. Rather, he filed a reactive sham claim by ignoring what was actually said by KS's counsel and proceeding hastily based upon fiction in hopes of forcing KS to litigate in California. In this context, based on binding Ninth Circuit precedent, the principal purpose of the litigation must be determined by reference to the purpose of the anticipated *underlying cause of action*, *i.e.*, KS's claim for damages against the Does. *See Continental Airlines*, 819 F.2d at 1523, n.2.

Moreover, the Does are wrong in arguing, based on *Zurn*, that realignment is precluded because there is a purported "actual and substantial controversy" between the Does and Grant regarding Grant's indemnity obligations to the Does. Does Opp. at 8. The Does rely on out-of-circuit case law that the Ninth Circuit does not follow. The Ninth Circuit, like the Third and Sixth Circuits, follows the "principal purpose" or "primary issue" test, under which the court must first identify the *primary* issue in controversy and then determine whether a real dispute exists between opposing parties over that issue. *See, e.g., Continental Airlines*, 819 F.2d at 1523.[5]

Here, the primary issue is liability for breach of the Settlement Agreement; the other issues—in particular the dispute regarding Grant's indemnity obligations to the Does—are at most collateral to that issue. *See* KS's Opening Mem. at 9-10; *Continental Airlines*, 819 F.2d at

---

[5] This primary issue test differs from the "collision of interest" or "substantial controversy" test followed by the Second, Seventh, Eighth and Tenth Circuits, under which a court determines merely whether *any* substantial conflict exists between opposing parties, regardless of whether it is the primary issue in dispute or whether parties have a common position on equally important issues. *See Maryland Casualty Co. v. W.R. Grace & Co.*, 23 F.3d 617, 622 (2d Cir. 1994) (distinguishing the primary issue test from the substantial controversy test). In these other jurisdictions, as long as any actual, substantial conflict exists between opposing parties, realignment is not permitted.

691897 / 8384-4

6

1523 n.2 (dispute over contribution was "ancillary to the essential controversy"). Because Grant and the Does are not adverse with respect to the primary issue in controversy, the Does must be aligned as involuntary plaintiffs and that destroys diversity, leaving this Court without subject matter jurisdiction.

### 2. Dismissal, Not Severance, Is Required

Grant argues incorrectly that if realignment is warranted, then severance of the Does' cross-claim against KS, rather than dismissal of the entire action, is the proper remedy. Grant Opp. at 8. That cross-claim is not the source of any jurisdictional problems. Rather, it is the fact that both Grant and the Does are aligned on the primary bona fide issue, which is whether KS has a viable claim against the Does for breach of the Settlement Agreement. Here, as in *Continental Airlines*, they become adverse only after that issue is resolved in KS's favor. At that point, if necessary, they can litigate whenever and wherever they may desire over how they allocate the defense costs and liability. Accordingly, dismissal of the entire action, not severance, is required.

## B. The Court Lacks Personal Jurisdiction Over KS

Grant and the Does concede that this Court lacks general jurisdiction over KS. Grant Opp. at 9; Does Opp. at 12. They are, then, forced to establish specific jurisdiction, which they can do only if they prove: (1) KS purposefully availed itself of the privilege of conducting business activities in California; (2) Grant's claim arises out of KS's California-related activities; and (3) the Court's exercise of jurisdiction over KS in this case is reasonable. *See, e.g., Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205-06 (9th Cir. 2006). Grant and the Does clearly cannot satisfy the first and third of these three requirements, and their ability to prove the second is doubtful, at best.[6]

---

[6] In the Ninth Circuit, the focus is on whether "but for" the defendant's forum related activities, the injury would not have occurred. *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 379 (9th Cir. 1990) (citations omitted), *rev'd on other grounds*, 499 U.S. 585 (1991). The critical focus of this inquiry is whether the entire course of events was an uninterrupted whole which **began with**, and was uniquely made possible by, the defendant's contacts in the forum state. *See Norris v. Oklahoma City Univ.*, U.S. Dist. LEXIS 11349 (N.D. Cal. 1993). The events in California were nowhere near the beginning of the chain of events that underlie this action.

691897 / 8384-4               7

### 1. Grant and the Does Have Failed to Establish "Purposeful Availment."

KS's fortuitous contacts with California related to the Settlement Agreement are insufficient as a matter of law to establish purposeful availment, which requires that the defendant have created a "substantial connection" with the forum state or "ongoing obligations" toward residents there. *Boschetto v. Hansing*, 539 F.3d 1011, 1017 (9th Cir. 2008); *S.H. Silver Co. v. David Morris Int'l,* 2008 WL 4058364 (N.D. Cal. Aug. 28, 2008).

In *Boschetto*, the Ninth Circuit held that a "one-shot" contract did not support specific jurisdiction, precisely because it did not create substantial, continuing obligations. There, the defendant non-resident sold a car on eBay to a California buyer. After the deal was made, the non-resident seller delivered the car to the buyer in California. The Court ruled that "the lone transaction for the sale of one item does not establish that the Defendants purposefully availed themselves of the privilege of doing business in California." 539 F.3d at 1017. The arrangement was "insufficient to have created a substantial connection with California" because "Neither [the plaintiff's] complaint nor his affidavit in opposition to dismissal point to any *continuing commitments assumed by the Defendants under the contract*. Nor did performance of the contract require the Defendants to engage in any substantial business in California." *Id.* (emphasis added); *see also id*. at 1017 n.3 (the "dispositive" fact is that "that the nature of the contract entered into did not create any "substantial connection" between Boschetto and the Defendants beyond the contract itself."). Thus, the Ninth Circuit held, the contract did "not provide sufficient 'minimum contacts' to establish jurisdiction over a nonresident defendant in the forum state" and the case was properly dismissed for lack of personal jurisdiction. 539 F.3d at 1020.

Similarly, *Silver* held that a one-time contract between a foreign buyer and a California seller did not create personal jurisdiction over the buyer. The court held that a "handful" of communications with California to negotiate and execute the agreement did not create personal jurisdiction. "[T]he communications between [defendant] and [plaintiff] were neither numerous nor part of a continuous and ongoing business relationship. Rather, [defendant's] handful of calls and two wire transfers were part of a 'one-shot affair.'" 2008 WL 4058364, *4 (quoting

*Boschetto*). "Under the circumstances, Morris could not have reasonably anticipated being haled into court in California." *Id.*

This case is similar. The Settlement Agreement and related negotiations were insufficient to demonstrate that KS purposefully availed itself of the privilege of doing business in California. This was a one-shot contract: the "essence" of the contract as Grant acknowledges, was that the Does dismissed their certiorari petition in return for a sum of money paid by KS. Grant Opp. at 3. KS assumed no continuing obligations toward anyone in California, including Grant. Under *Boschetto,* this is not enough. *See generally Premier Lending Services, Inc. v. J.L.J. Assocs.*, 924 F. Supp. 13 (S.D.N.Y. 1996) (plaintiff failed to establish that defendants' mail, phone and fax contacts with New York concerning a mortgage from a New Jersey bank for a New Jersey business rose to the level of purposeful availment of New York laws).

There are multiple flaws in the positions taken by Grant and the Does on this issue. First, the negotiation and alleged "part performance" of the Settlement Agreement in California do not come close to creating a purposeful and "substantial connection" between KS and this state. The personal-jurisdiction inquiry is "practical and pragmatic." *Boschetto*, 539 F.3d at 1016. The "essence" of the Settlement Agreement (Grant Opp. at 3) was an agreement between Hawai`i citizens to settle a Hawai`i-based dispute. Grant purposefully went to Hawai`i to represent Hawai`i citizens against a Hawai`i defendant. He was admitted *pro hac vice* in Hawai`i and submitted himself to the jurisdiction of the Hawai`i District Court when he and Goemans haled KS into court in Hawai`i to test the legality of KS's treatment in Hawai`i by Hawai`i residents seeking admission to a school in Hawai`i. The "essence" of the Settlement Agreement was that Hawai`i resident KS would pay money to Hawai`i residents the Does, who would dismiss the last appeal in their lawsuit filed in Hawai`i.

In contrast to all this are the lawyers' location during their negotiations and the other logistical details that the Does and Grant break into many fragments in hope of creating enough "chaff" to create a false target for the Court's analysis. As the principals' signatures reflect, the lawyers had no power to conclude any deal, the lawyers could have negotiated from offices anywhere in the world, and their location during the few days leading up to the Settlement

691897 / 8384-4

9

KAMEHAMEHA SCHOOLS DEFENDANTS AND CROSS-CLAIM DEFENDANTS'
REPLY IN SUPPORT OF MOTION TO DISMISS
CASE NO.08-00672 FCD-KJM

1  Agreement had nothing to do with the terms, implementation, or breach of the Settlement
2  Agreement. To call this connection to California "substantial" is to drain all meaning from the
3  word.
4        Second, the fact that the settlement proceeds were initially wired to Grant's account in
5  Sacramento resulted from *the Does' choice* to hire Grant, and does not indicate any purpose of
6  KS to invoke California law. KS had to deal with the Does' lawyer wherever he was located.
7  When a defendant is forced to deal with a party in a foreign forum, the defendant's responsive
8  activity in that forum does not create personal jurisdiction. *See, e.g., Hunt v. Erie Insurance
9  Group*, 728 F.2d 1244, 1248 (9th Cir.1984) ("[t]he mere fact that [the insurance company]
10 communicated with [the plaintiff] in the state, and may have committed a tort in the exchange of
11 correspondence, does not show that [the insurance company] purposefully availed itself of the
12 privilege of conducting business in California. [The plaintiff's] move to California forced [the
13 insurance company] to send mail to that State concerning her claim."); *Davis v. American Fam.
14 Mut. Ins. Co.*, 861 F.2d 1159, 1162 (9th Cir. 1988) ("The fact that American Family hired an
15 adjuster who had an office in Montana and sent correspondence to Davis in Montana resulted
16 solely from the fact that Davis returned to his home in Montana after the accident in the state of
17 North Dakota. Unlike an insurance defendant whose activities are purposely directed towards
18 participating in the forum state's insurance market . . . American Family's activities in Montana
19 were conducted for the sole purpose of fulfilling its obligation to adjust Davis' claim . . . .").
20       Similarly, wiring money into a forum does not create personal jurisdiction. *See, e.g.,
21 S.H. Silver Co., supra, and the discussion in* KS's Memorandum in Support at 17. This is
22 especially true in this case, where the wiring destination of the settlement funds was chosen not
23 by KS, but by Grant and the Does.
24       Third, KS never undertook any *continuing* obligations—indeed, it did not assume *any*
25 obligation—in California under the Settlement Agreement. As explained above, "one-shot"
26 contracts do not support personal jurisdiction. *See Boschetto*, 539 F.3d at 1017 & n.3; *S.H.
27 Silver*, 2008 WL 4058364 at *4. But here, there was not even that level of connection. The
28 essence of the Settlement Agreement was a "one-shot affair" *with Hawai`i residents*: dismiss the

1. suit in exchange for payment *to the Does*. *Grant's* obligation to remain silent regarding the settlement terms is not forum-specific and, even if it were, it entails no California-related commitment by KS. Absent such commitments by KS, it cannot be said that KS purposefully availed itself of the privilege of doing business in this state. *See Boschetto*, 539 F.3d at 1017.

### 2. Personal Jurisdiction in California Is Not Reasonable

Contrary to Grant and the Does' argument, virtually all of the relevant factors indicate that it would be unreasonable to exercise jurisdiction over KS in California.

- Grant and Goemans came to Hawai`i and sued KS on behalf of their Hawai`i clients, the Does. KS's relationship with the Does' lawyers was thrust upon KS, as was the need to employ the expertise of Ms. Sullivan as defense counsel. KS discharged its obligations to the Does under the Settlement Agreement, never undertook any obligations to Grant or Goemans, and assumed no continuing obligations to anyone in California. In this setting, it is trivial that KS hired California counsel and authorized her to negotiate with Grant. This was a Hawaii-centered dispute thrust upon KS in Hawaii. By choosing a California lawyer and negotiating with the Does' chosen California lawyer, KS did not purposefully change it into a California dispute, any more than it would have injected itself into Maine or Georgia, if the Does' counsel resided in those places or was vacationing there for the few days it took to negotiate the Settlement Agreement. *See* Does Opp. at 18; Grant Opp. at 17.

- KS's assets are irrelevant to the physical burdens that its employees, lawyers and witnesses would suffer and the substantial time they would lose in traveling (and transporting necessary materials) from Hawai`i to California for this matter. *See* Does Opp. at 18; Grant Opp. at 17. Even large multinational corporations are not subject to personal jurisdiction where they lack minimum contacts. *See, e.g., Yahoo!, supra; Thomson v. Toyota Motor Corp.,* __ F.3d __, 2008 WL 2952784 (6th Cir. 2008). And the expense would clearly be substantial. Grant and the Does cite no authority for the proposition that such expense represents no burden when the defendant is a trust with obligations to its students.

- Grant and the Does argue that California has an interest in adjudicating a dispute of one of its residents who alleges injury due to a tort. *See* Does Opp. at 18; Grant Opp. at 17. But neither Grant nor any other California citizen claims to have been injured by tortious conduct. The only harm has been inflicted on Hawai`i citizens by other Hawai`i residents (the Does) or one or more of their agents. And Hawai`i has a far stronger interest in resolving this dispute, which involves primarily Hawai`i residents, caused harm to KS principally in Hawai`i, and arose from underlying litigation that generated intense interest in Hawai`i. *See* Opening Mem. at 21.

- For the reasons previously stated, these controversies can be most efficiently resolved in the Hawai`i court. *See id*. Grant and the Does' lame effort to constrict the issues and artificially limit the witnesses to a small set of California residents is transparent gamesmanship. The Settlement Agreement was entered into and breached in Hawai`i. The vast majority of the witnesses are there.

- Grant claims he would be inconvenienced by litigation in Hawai`i. However, he neglects to mention that he has recently filed and is pursuing another case against KS in Hawai`i. *Jacob Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate*, Civ. No. 08-00359 JSM-BMK (D. Haw. 2008). Regardless, having purposefully interjected himself into Hawai`i affairs, Grant can reasonably expect to litigate any resulting dispute in Hawai`i. *See* Opening Mem. at 21.

In short, the exercise of personal jurisdiction over KS is unreasonable and inconsistent with fair play and substantial justice. The Court lacks personal jurisdiction over KS and it should dismiss KS from this action.

### C. The Court Should Decline to Entertain Grant's Declaratory Relief Claim

#### 1. Grant Forum Shopped in Anticipation of an Impending State Court Suit by KS

Grant filed this action because he allegedly feared that KS was about to sue him in Hawai`i for Goemans' disclosures. Grant Complaint ¶¶ 27-29. He became aware of this alleged threat on March 24, 2008 (*id.* ¶ 27), and just four days later, on March 28, he filed this action.

Rather than file in Hawai`i, where the parties to the Settlement Agreement reside and the disclosures occurred, he chose to file in Sacramento, where he practices law, for his own convenience. This is the very definition of "reactive" or "preemptive" filing as a means of forum shopping.

It is settled law in the Ninth Circuit that "a district court should exercise its discretion to decline jurisdiction when the federal action has simply been filed in *anticipation* of an *impending* state court suit." *Maryland Casualty Co. v. Knight*, 96 F.3d 1284, 1289 (9th Cir. 1996) (emphasis added). Contrary to Grant's argument, a parallel state action need *not* have been already *pending* in state court when he filed his federal action. He need only have *anticipated* an *impending* state action, which is exactly what his Complaint alleges. *Id. See also Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 115 S. Ct. 2137, 2143 (1995) (affirming stay of federal declaratory relief action filed over one month before parallel state action); *Huth v. Hartford Ins. Co. of the Midwest*, 298 F.3d 800, 804 (9th Cir. 2002) ("the fact that Hartford won the race to the courthouse by several days does not place it in a preferred position").

Grant's reliance on this Court's decision in *Mitsui Sumitomo Ins. Co. v. Delicato Vineyards*, No. CIV. S-06-2891 FCD GGH (E.D. Cal. May 10, 2007), is misplaced. There, a California wine producer filed a claim with its insurer seeking reimbursement for a property loss. Following threatening correspondence by the insured, and the eventual denial of coverage for the claim, the insurer filed a declaratory relief action against the insured in this Court. The insured subsequently filed a state court action against the insurer and moved to dismiss the federal action, seeking the Court's abstention from exercising jurisdiction. The Court denied the motion, in part because it found no evidence that the plaintiff had filed the case as "reactive" litigation in an effort to forum shop. *See* slip op. at 14-16. The court also found that asserting jurisdiction over the suit would not encourage forum shopping. *See* slip op. at 14-15.

That is clearly not the case here. Just days after allegedly learning of a (non-existent) "threat" by KS to sue him, Grant filed this action in his own backyard, half an ocean away from the parties whose contractual rights he seeks to have adjudicated. He filed here for his own convenience, to force KS to litigate in a distant and inconvenient forum, and to deprive KS of its choice of forum. Allowing a suit such as this to proceed can only encourage forum shopping.

691897 / 8384-4

13

KAMEHAMEHA SCHOOLS DEFENDANTS AND CROSS-CLAIM DEFENDANTS'
REPLY IN SUPPORT OF MOTION TO DISMISS
CASE NO.08-00672 FCD-KJM

## 2. The Pendency of the Hawai`i State Court Action Weighs in Favor of Dismissing This Action

The fact that there is now a pending action in Hawai`i dealing with the same subject matter as Grant's declaratory relief action is an additional factor strongly favoring abstention. *See Government Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998) (*en banc*) (district courts should generally decline to entertain reactive declaratory actions); KS Supplemental Memorandum in Support of Motion to Dismiss, filed on Aug. 29, 2008. Dismissing or staying this action in favor of the Hawai`i action will allow this Court to avoid needless determination of state law issues, discourage forum shopping and avoid duplicative litigation. *See Dizol*, 133 F.3d at 1225. All of these factors weigh heavily toward abstention.

There is no dispute that issues of Hawai`i law predominate in this action or that the Hawai`i court is best suited to decide these issues. Grant simply argues that his dispute with KS presents no *novel* issues of state law.[7] Grant Opp. at 23. His motion for summary judgment suggests otherwise, as he relies on California rather than Hawai`i case law in arguing that he is not liable in contract or tort to KS. *See* Grant's Motion for Summary Judgment at 7-13. If his dispute with KS were governed entirely by "well-settled" principles of Hawai`i law, one would expect to see a summary judgment motion based upon Hawai`i statutes or case law. That is not what Grant filed. *See id.* Particularly with respect to his alleged non-liability in tort, Grant's "claim" may well raise novel issues of Hawai`i law.

Grant's reliance on *Mitsui Sumitomo* is, once again, misplaced. *See* Grant Opp. at 23. That case involved well-settled principles of *California* contract law. Slip op. at 13. The Court did not rule that it was best suited to decide issues of Hawai`i law, novel or otherwise. The undeniable fact that Hawai`i law issues predominate in this action is a factor that weighs heavily in favor of abstention. *See Phoenix Assurance PLC v. Marimed Foundation for Island Health Care Training*, 125 F. Supp. 2d 1214 (D. Haw. 2000).

---

[7] The Does, on the other hand, assert that Grant's claim against them raises novel issues under California law. Does Opp. at 22. Of course, were the Court to dismiss this action, nothing would prevent Grant and the Does from litigating their indemnity issues in this Court after the Hawai`i court resolved the underlying liability issues.

The fact that Grant is not currently a party to the Hawai`i action does not: (1) make it "necessary" for this Court to decide Hawai`i law issues; (2) absolve Grant of his blatant forum shopping; or (3) render the Hawai`i action non-"parallel" for purposes of the *Dizol* test. *See* Grant Opp. at 23-25; Does Opp. at 23-24. Nothing prevents Grant from seeking declaratory relief in the Hawai`i court, and nothing precludes Grant and the Does from agreeing to litigate their indemnity issues in the Hawai`i court or even in California—**after KS is gone from this case**. *See Employers Reinsurance Corp. v. Karussos*, 65 F.3d 796, 800-01 (9th Cir. 1995), *over'd in part on other grounds by Dizol*, 133 F.3d at 1227 (fact that declaratory relief plaintiff was not a party to state case was not dispositive because it could have sought declaratory relief from the state court). Regardless, this declaratory relief action clearly arises from the same factual circumstances as the Hawai`i action, *i.e.,* the Settlement Agreement and the breach of its confidentiality provisions. As a matter of law, this suffices to establish a parallel state action. *See Golden Eagle Ins. Co. v. Travelers Cos.*, 103 F.3d 750, 754-55 (9th Cir. 1996), *over'd in part on other grounds by Dizol*, 133 F.3d at 1227 (to be parallel, "[i]t is enough that the state proceedings arise from the same factual circumstances").

Ultimately, Grant's anticipatory filing of this action—in a forum with only the most tenuous ties to this dispute—constitutes precisely the type of forum shopping that the federal courts consistently seek to discourage. Accordingly, the Court should exercise its discretion and dismiss Grant's declaratory relief action.

### III. CONCLUSION

For all of these reasons, the Court should grant this motion to dismiss.

DATED: October 24, 2008

ALSTON HUNT FLOYD & ING

BINGHAM McCUTCHEN LLP

By: /s/ Paul Alston
 PAUL ALSTON
 CLYDE J. WADSWORTH
Attorneys for Defendants and
Cross-Claim Defendants KS

691897 / 8384-4

15

KAMEHAMEHA SCHOOLS DEFENDANTS AND CROSS-CLAIM DEFENDANTS'
REPLY IN SUPPORT OF MOTION TO DISMISS
CASE NO.08-00672 FCD-KJM